Neal Walters (020901993)
Casey Watkins (060122014)
Kristen Petagna
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
(856) 761-3400
(856) 761-1020 fax
waltersn@ballardspahr.com
watkinsc@ballardspahr.com
petagnak@ballardsparh.com

Attorneys for Defendants Subaru Corporation
and Subaru of America, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In re Subaru Battery Drain Products Liability Litigation** | Case No. 1:20-cv-03095-JHR-JS |
| | **Defendants Subaru of America, Inc. and Subaru Corporation's Consolidated Brief in Support of their Motion to Dismiss or for a More Definite Statement [Fed. R. Civ. P. 12(b)(1), (6), (e)]** |
| | Motion Day: October 5, 2020 |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1
II.    BACKGROUND .................................................................................................. 2
       A.    Plaintiffs' Allegations ............................................................................... 2
       B.    The Warranties Made by Subaru of America, Inc. .................................. 2
       C.    The alleged battery design defect ............................................................ 3
       D.    The Claims and Relief Sought ................................................................. 4
III.   ARGUMENT ....................................................................................................... 5
       A.    Plaintiffs lack standing to assert any claims on behalf of owners of 2015–
             2020 Subaru Forester or 2020 Subaru Legacy vehicles........................... 5
       B.    The Claims of nonresident Plaintiffs asserting violations of New Jersey
             law must be dismissed. ............................................................................ 6
             1.    New Jersey's choice-of-law rules apply ........................................ 6
             2.    Conflicts exist between the laws of New Jersey and Plaintiffs'
                   home states........................................................................................ 7
             3.    Plaintiffs' home states have the most significant relationship.................. 8
       C.    Plaintiffs' breach of express warranty claims fail. (Counts II–IV)..................... 10
             1.    Defendant SBR made no express warranties to Plaintiffs; the
                   express warranty claims against SBR must be dismissed........................ 10
             2.    The New Vehicle Limited Warranty does not cover design defects. ....... 11
             3.    Certain Plaintiffs' claims fail because they do not sufficiently
                   allege they provided SOA an opportunity to repair their vehicles or
                   that the New Vehicle Limited Warranty was breached. ......................... 14
             4.    Certain Plaintiffs' warranty claims should be dismissed for failure
                   to provide the requisite pre-suit notice........................................... 16
             5.    Plaintiffs' allegations of reliance are insufficient. ................................... 16
       D.    Plaintiffs' implied warranty claims fail. (Counts I, III, & 5)................................ 17
             1.    Plaintiffs Stone, Bulgatz, Miller, Baladi, and Franke lack the
                   requisite privity with SOA to assert breach of implied warranty
                   claims................................................................................................ 17
             2.    Plaintiff Franke's and George's implied warranty claim are barred
                   by the statute of limitations........................................................... 17
       E.    Plaintiffs' Magnuson-Moss Warranty Act claims must be dismissed................. 18
             1.    The Court lacks subject matter jurisdiction over Plaintiffs'
                   MMWA claims asserted on behalf of the putative nationwide class......... 18
             2.    Even if this Court could exercise jurisdiction over Plaintiffs'
                   MMWA claim, it fails for the same reasons as Plaintiffs' express
                   and implied warranty claims........................................................ 21
       F.    Plaintiffs Miller and Franke's breach of express warranty claims under the
             Song-Beverly Act fail as a matter of law. (Count IV) ........................... 21
       G.    Plaintiff Miller's breach of implied warranty claim under the Song-
             Beverly Act fails because the alleged breach did not occur within one-year
             of purchase. (Count V)............................................................................ 22
       H.    Plaintiffs' fraud claims fail for several reasons. (Counts VI–XV) ..................... 23
             1.    Plaintiffs fail to plead fraud with the particularity required by
                   Federal Rule of Civil Procedure 9(b)................................................... 23
             2.    Plaintiff Baladi and O'Shaughnessy's NYGBL claims under
                   Section 350 fail to sufficiently allege they relied upon misleading
                   advertisements. (Count XIII) .......................................................... 30
             3.    Plaintiffs fail to state a claim under the New York statutes because
                   no alleged misconduct occurred in New York. (Counts XII & XIII) ....... 31

4.     Plaintiff Beck's MCPA claim fails because automotive sales are exempt from the MCPA. (Count XI) ........................................................ 32

5.     Plaintiff Bulgatz's ICFA must dismissed to the extent it seeks relief under the unfair practices prong of ICFA. (Count X) .................... 32

6.     Plaintiffs Miller and Franke's UCL claims must be dismissed to the extent they seek monetary relief; and they may not recover restitution damages from Subaru. (Count VIII) ......................................... 33

7.     Plaintiff Franke's CLRA claim is time barred. (Count VII) .................... 34

8.     Plaintiff Miller and Franke's UCL and CLRA claims for equitable relief also must be dismissed because they have an adequate remedy at law. (Counts VII–VIII) ............................................................. 34

9.     The economic loss doctrine bars certain Plaintiffs fraudulent concealment claims. (Count XV) ........................................................... 35

10.     Plaintiff Davis's fraudulent concealment fails because Texas does not recognize a cause of action for fraudulent concealment. (Count XV) ............................................................................................................. 36

I.     Plaintiffs' unjust enrichment claims fail for several reasons. (Count XVI) ......... 36

1.     An express contract covers the identical subject matter of the unjust enrichment claims and Plaintiffs rely on such a contract in pleading their unjust enrichment claim. .................................................... 36

2.     Plaintiffs did not purchase their vehicles directly from SOA or SBR. ........................................................................................................... 37

3.     Plaintiffs do not allege they expected remuneration from the Subaru Defendants. ................................................................................. 38

4.     Plaintiffs Stone's, Baladi's, and O'Shaughnessy's unjust enrichment claims are duplicative of their consumer fraud claim. ........... 38

J.     Plaintiffs seek injunctive relief they lack standing to pursue. .............................. 39

K.     Plaintiffs' Consolidated Complaint fails to plead which claims are asserted against which defendant and must be dismissed for that reason; or, alternatively, the Subaru Defendants are entitled to a more definite statement. ............................................................................................................. 39

IV.     CONCLUSION ........................................................................................................... 40

# TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*Aberin v. Am. Honda Motor Co.*,
   No. 16-cv-04384-JST, 2018 U.S. Dist. LEXIS 49731 (N.D. Cal. Mar. 26, 2018) ................ 13

*Abraham v. Volkswagen of Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986) ................................................................................ 18

*Acedo v. DMAX, Ltd.*,
   No. 15-02443, 2015 U.S. Dist. LEXIS 189402 (C.D. Cal. July 31, 2015) ........................... 33

*In re Actimmune Mktg. Litig.*,
   No. 08-02376, 2009 U.S. Dist. LEXIS 103408 (N.D. Cal. Nov. 6, 2009) ........................... 24

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541, 579-580 (C.D. Cal. 2019) .................................................... 33

*Alban v. BMW of N. Am., LLC*,
   No. 09-5398, 2011 U.S. Dist. LEXIS 26754 ........................................................ 28

*Amato v. Subaru of Am., Inc.*,
   No. 18-16118, 2019 U.S. Dist. LEXIS 209659 (D.N.J. Dec. 15, 2019) ........................ 11, 12

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. Nov. 4, 2013) .................................................... 8, 34

*Atchison, T. & S.F.R. Co. v. Buell*,
   480 U.S. 557 (1987) ........................................................................................ 20

*Baranco v. Ford Motor Co.*,
   294 F. Supp. 3d 950 (N.D. Cal. 2018) ................................................................ 15

*Baye v. HBI Branded Apparel Enters.*,
   No. 12-12869, 2013 U.S. Dist. LEXIS 174599 (E.D. Mich. Dec. 13, 2013) ...................... 8

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017) .............................................................. 25

*Berni v. Barilla S.P.A.*,
   No. 19-1921-cv, 2020 U.S. App. LEXIS 21167 (2d Cir. July 8, 2020) ............................ 39

*Beshwate v. BMW of N. Am., LLC*,
   No. 17-00417, 2017 U.S. Dist. LEXIS 204467 (E.D. Cal. Dec. 12, 2017) ..................... 25, 31

*In re Big Heart Pet Brands Litig.*,
   No. 18-00861, 2019 U.S. Dist. LEXIS 229340 (N.D. Cal. Oct. 4, 2019) ........................ 35

*Block v. Jaguar Land Rover N. Am., LLC*,
   No. 15-cv-5957 (SRC), 2016 U.S. Dist. LEXIS 69085 (D.N.J. May 26, 2016) ............. 24, 37

*Block v. Jaguar Land Rover N. Am., LLC*,
No. 15-cv-5957 (SRC), 2017 U.S. Dist. LEXIS 31807 (D.N.J. Mar. 7, 2017) ..................... 38

*Brisson v. Ford Motor Co.*,
No. 08-2491, 2009 U.S. Dist. LEXIS 137789 (M.D. Fla. Jan. 20, 2009) ............................ 19

*Bruce Martin Constr. v. CTB, Inc.*,
735 F.3d 750 (8th Cir. 2013) ............................................................................... 11

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 ................................................................................................. 29

*Cadena v. Am. Honda Motor Co.*,
No. 18-4007, 2019 U.S. Dist. LEXIS 117584 (C.D. Cal. May 29, 2019) ........................... 19

*Cardenas v. Toyota Motor Corp.*,
418 F. Supp. 3d 1090 (S.D. Fla. 2019) .......................................................... 35-36

*Chi. v. EDF*,
511 U.S. 328 (1994) ......................................................................................... 21

*Chowning v. Kohl's Dep't Stores, Inc.*,
No. 15-8673, 2016 U.S. Dist. LEXIS 187402 (C.D. Cal. July 27, 2016) ............................ 33

*Coba v. Ford Motor Co.*,
932 F.3d 114 (3d Cir. 2019) ................................................................................ 11

*Coba v. Ford Motor Co.*,
2016 U.S. Dist. LEXIS 136283 (D.N.J. Sep. 30, 2016) ..................................................12, 13

*Cont'l 332 Fund, LLC v. Albertelli*,
No. 17-41, 2018 U.S. Dist. LEXIS 23283 (M.D. Fla. Feb. 13, 2018) ..................................... 8

*Cooper v. Samsung Elecs. Am., Inc.*,
374 Fed. App'x 250 (3d Cir. 2010) ....................................................................... 21

*Cox v. Chrysler Grp., LLC*,
No. 14-7573, 2015 U.S. Dist. LEXIS 133393 (D.N.J. Sept. 30, 2015) ................................. 14

*Crawford Fitting Co. v. J. T. Gibbons, Inc.*,
481 U.S. 437 (1987) ......................................................................................... 21

*Cummings v. FCA US LLC*,
401 F. Supp. 3d 288 (N.D.N.Y. 2019) .............................................................. 23, 26

*Dahse v. C.R. Bard, Inc.*,
No. 2:12-cv-02701, 2016 U.S. Dist. LEXIS 168922 (S.D.W. Va. Dec. 7, 2016) ................... 7

*Darne v. Ford Motor Co.*,
No. 13-03594, 2015 U.S. Dist. LEXIS 169752 (N.D. Ill. Dec. 18, 2015) ............................ 29

- iv -

*David v. Volkswagen Grp. of Am., Inc.*,
   No. 17-cv-11301-SDW-CLW, 2018 U.S. Dist. LEXIS 70284 (D.N.J. Apr. 26, 2018) .......... 5

*Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*,
   No. 10-61519, 2011 U.S. Dist. LEXIS 51440 ....................................................... 36

*Dialectic Distrib. LLC v. Power Play Mktg. Grp., LLC*,
   No. 18-003388, 2018 U.S. Dist. LEXIS 217827 (D.N.J. Dec. 28, 2018) ................. 36-37, 37

*Divis v. GM LLC*,
   No. 18-13025, 2019 U.S. Dist. LEXIS 166570*23 ................................................ 32

*E. River S.S. Corp. v. Transamerica Delaval*,
   Inc., 476 U.S. 858 (1986) ........................................................................... 35

*Ebin v. Kangadis Food Inc.*,
   No. 13-2311, 2013 U.S. Dist. LEXIS 107224 (S.D.N.Y. July 26, 2013) .................. 19, 20-21

*Elfaridi v. Mercedes-Benz USA, LLC*,
   No. 16-1896, 2018 U.S. Dist. LEXIS 145196 (E.D. Mo. Aug. 27, 2018) ........................... 37

*Elias v. Ungar's Food Prods., Inc.*,
   252 F.R.D. 233 (D.N.J. 2008) ........................................................................ 8

*Estate of Bass v. Regions Bank, Inc.*,
   947 F.3d 1352 (11th Cir. January 21, 2020) ................................................... 39, 40

Estate of *Cowart v. Nicklos Drilling Co.*,
   505 U.S. 469 (1992) .................................................................................. 20

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   280 F. Supp. 3d 975 (E.D. Mich. 2017) .......................................................... 29

*Fisher v. Honda N. Am.*,
   Inc., No. 13-09285, 2014 U.S. Dist. LEXIS 84570 (C.D. Cal. June 12, 2014) ..................... 28

*Floyd v. Am. Honda Motor Co.*,
   No. 18-55957, 2020 U.S. App. LEXIS 23743 (9th Cir. July 28, 2020) ............................. 18

*Floyd v. Am. Honda Motor. Co.*,
   No. 17-08744, 2018 U.S. Dist. LEXIS 132750 (C.D. Cal. June 13, 2018) ..................... 19, 20

*In re Ford Motor Co. Bronco II Prods. Liab. Litig.*,
   No. MDL-991-G, 1995 U.S. Dist. LEXIS 18207 (E.D. La. Dec. 4, 1995) ..................... 18-19

*Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..................................................................... 23

*In re Franklin Mut. Funds Fee Litig.*,
   388 F. Supp. 2d 451 (D.N.J. 2005) ................................................................ 5

DMEAST #41743007 v4

*Goldstein v. GM LLC*,
  No. 3:19-cv-01778-H-AHG, 2020 U.S. Dist. LEXIS 64851 (S.D. Cal. Apr. 13, 2020) ........ 19

*Gotthelf v. Toyota Motor Sales, U.S.A.*,
  525 F. App'x 94 (3d Cir. 2013) ......................................................................... 27

*Gould Elecs., Inc. v. United States*,
  220 F.3d 169 (3d Cir. 2000) ............................................................................... 5

*Granillo v. FCA US LLC*,
  No. 16-153, 2016 U.S. Dist. LEXIS 116573 (D.N.J. Aug. 29, 2016) ............................ 23, 28

*Green v. Bock Laundry Mach. Co.*,
  490 U.S. 504 (1989) ......................................................................................... 21

*Hamilton v. TBC Corp.*,
  328 F.R.D. 359 (C.D. Cal. Aug. 24, 2018) ............................................................... 7

*Hindsman*,
  2018 U.S. Dist. LEXIS 92319 ............................................................................. 13

*Hrycay v. Monaco Coach Corp.*,
  No. 07-2605, 2008 U.S. Dist. LEXIS 18055 (E.D. Pa. Mar. 7, 2008) .................................. 17

*Hughes v. Panasonic Consumer Elecs. Co.*,
  2011 WL 2976839 (D.N.J. July 21, 2011) ............................................................... 13

*Jager v. Bos. Rd. Auto Mall, Inc.*, No. 14 Civ.
  614 (LLS), 2015 U.S. Dist. LEXIS 5509 (S.D.N.Y. Jan. 15, 2015) ................................... 20

*Johansson v. Cent. Garden & Pet Co.*,
  804 F. Supp. 2d 257 (D.N.J. 2011) .................................................................. 17, 21

*Johnson v. Nissan N. Am., Inc.*,
  No. 17-cv-00517-WHO, 2018 U.S. Dist. LEXIS 26065 (N.D. Cal. Feb. 15, 2018) ............... 7

*Kas v. Mercedes-Benz U.S., LLC*,
  No. 11-1032, 2012 U.S. Dist. LEXIS 196248 (C.D. Cal. Jan. 19, 2012) ....................... 29-30

*Kearney v. Bayerische Motoren Werke AG.*,
  No. 17-13544, 2018 U.S. Dist. LEXIS 147746 (D.N.J. Aug. 29, 2018) ............................... 14

*Keegan v. Am. Honda Motor Co*
  ., 284 F.R.D. 504 (C.D. Cal. 2012) ....................................................................... 34

*Knafo v. Jaguar Land Rover N. Am. LLC*,
  No. 18-01401, 2019 U.S. Dist. LEXIS 210836 (C.D. Cal. July 12, 2019) ........................... 22

*Koronthaly v. L'Oreal USA, Inc.*,
  No. 07-CV-5588 (DMC), 2008 U.S. Dist. LEXIS 59024 (D.N.J. July 25, 2008) ................... 5

*Kounelis v. Sherrer*,
    No. 04-4714, 2005 U.S. Dist. LEXIS 20070 (D.N.J. Sept. 5, 2005) ............................... 39-40

*Laney v. Am. Standard. Cos.*,
    No. 07-3991, 2010 U.S. Dist. LEXIS 100129 (D.N.J. Sept. 23, 2010) .................................. 37

*Leon v. Cont'l AG*,
    301 F. Supp. 3d 1203 (S.D. Fla. 2017) ................................................................................... 6

*Licul v. Volkswagen Grp. of Am.*,
    No. 13-61686, 2013 U.S. Dist. LEXIS 171627 (S.D. Fla. Dec. 5, 2013) .............................. 39

*Lieb v. Am. Motors Corp.*,
    538 F. Supp. 127 (S.D.N.Y. 1982) ........................................................................................ 19

*MacDonald*,
    37 F. Supp. 3d ....................................................................................................................... 18

*MacDougall v. Am. Honda Motor Co.*,
    No. 17-01079, 2017 U.S. Dist. LEXIS 221537 (C.D. Cal. Dec. 4, 2017) ............................. 21

*Mack Trucks Inc. v. BorgWarner Turbo Systems, Inc.*,
    508 F. App'x 180 (3d Cir. 2012) ........................................................................................... 11

*Marcus v. BMW of N. Am., L.L.C.*, No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908 (D.N.J.
    Nov. 19, 2010) ......................................................................................................................... 8

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013) .................................................................. 27-28, 29

*McGarvey v. Penske Auto. Grp., Inc.*,
    No. 08-5610, 2010 U.S. Dist. LEXIS 32228 (D.N.J. Mar. 29, 2010) ................................... 21

*McGee v. Cont'l Tire N. Am., Inc.*,
    No. 06-6234, 2007 U.S. Dist. LEXIS 62869 (D.N.J. Aug. 27, 2007) ................................... 19

*McNair v. Synapse Grp., Inc.*,
    672 F.3d 213 (3d Cir. 2012) .................................................................................................. 39

*MDNet, Inc. v. Pharmacia Corp.*,
    147 F. App'x 239 (3d Cir. 2005) ..................................................................................... 23, 24

*Montanez v. D&D Auto, LLC*,
    No. 15-397, 2016 U.S. Dist. LEXIS 40911 (D. Conn. Mar. 29, 2016) ................................ 19

*Mut. Serv. C*as. Ins. Co. v. Elizabeth State Bank,
    265 F.3d 601 (7th Cir. 2001) ................................................................................................ 35

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) ....................................................................... 7, 16, 24

*Nautica Int'l*, Inc. *v. Intermarine USA, L.P.*,
    5 F. Supp. 2d 1333 (S.D. Fla. 1998) ................................................................. 38

*Nelson v. Nissan N. Am., Inc.*,
    No. 11-5712, 2014 U.S. Dist. LEXIS 175224 (D.N.J. Dec. 19, 2014) .......................... 11, 13

*Nelson*,
    2014 U.S. Dist. LEXIS 175382 ................................................................. 13

*Nguyen v. Cree, Inc.*, No. 3:18-cv-02097-SB, 2019 U.S. Dist. LEXIS 220007 (D. Or. Nov.
    6, 2019) ................................................................................... 7

*O'Boyle v. Braverman*,
    337 F. App'x 162 (3d Cir. 2009) ................................................................. 6

*In re OnStar Contract Litig.*,
    600 F. Supp. 2d 861 (E.D. Mich. 2009) .......................................................... 14

*Otsuka Pharm. Co. v. Torrent Pharm. Ltd.*,
    118 F. Supp. 3d 646 (D.N.J. 2015) ............................................................ 29

*Parrott v. Family Dollar, Inc.*,
    No. 17 C 222, 2019 U.S. Dist. LEXIS 160569 (N.D. Ill. Sept. 20, 2019) ........................ 7

*Pilgrim v. GM Co.*,
    408 F. Supp. 3d 1160 (C.D. Cal. 2019) ........................................................ 19

*Peterson v. Mazda Motor of Am. Inc.*,
    44 F. Supp. 3d 965 (C.D. Cal. 2014) .......................................................... 22

*Pittsburgh & Lake Erie R.R. v. Railway Labor Executives' Ass'n*,
    491 U.S. 490 (1989) ......................................................................... 20

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
    880 F. Supp. 2d 801 (S.D. Ohio July 19, 2012) ................................................ 37

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007) ........................................................ 38

*Quitno v. General Motors, LLC*,
    No. 18-07598, 2020 U.S. Dist. LEXIS 26904 (N.D. Ill. Feb. 18, 2020) ...................... 32-33

*Ramziddin v. Monmouth Cnty. Sheriff Dep't*,
    No. 09-4829 (FLW), 2010 U.S. Dist. LEXIS 42798 (D.N.J. Apr. 30, 2010) ...................... 39

*Red Hawk Fire & Sec., LLC v. Siemens Indus.*,
    No. 19-13310, 2020 U.S. Dist. LEXIS 54563 (D.N.J. Mar. 30, 2020) .......................... 35

*Resnick v. Hyundai Motor Am., Inc.*,
    No. 16-00593, 2016 U.S. Dist. LEXIS 160179 (C.D. Cal. Nov. 14, 2016) ...................... 25

*Reynolds v. Lifewatch, Inc.*,
 136 F. Supp. 3d 503 (S.D.N.Y. 2015) ................................................................. 38

*Robinson v. Kia Motors Am., Inc.*,
 No. 13-006, 2015 U.S. Dist. LEXIS 121755 (D.N.J. Sept. 11, 2015) ....................... 25, 26, 31

*Roe v. Ford Motor Co.*,
 No. 18-12528, 2019 U.S. Dist. LEXIS 130956 (E.D. Mich. Aug. 6, 2019) ......................... 25

*Rogath v. Siebenmann*,
 129 F.3d 261 (2d Cir. 1997) ................................................................................ 8

*Rosen v. Uber Tech., Inc.*,
 164 F. Supp. 3d 1165 (N.D. Cal. 2016) ................................................................. 33

*Saitsky v. DirecTV, Inc.*,
 No. 08-cv-7918, 2009 U.S. Dist. LEXIS 134817 (C.D. Cal. Sept. 22, 2009) ....................... 33

*Sauer v. Subaru of Am., Inc.*,
 Civil Action No. 18-14933, 2020 U.S. Dist. LEXIS 55592 (D.N.J. Mar. 31, 2020) ............ 12

*In re Seagate Tech. LLC Litig.*,
 233 F. Supp. 3d 776, 783-784 (N.D. Cal. Feb. 9, 2017) ......................................... 15

*Short v. Hyundai Motor Co.*,
 No. C19-0318JLR, 2020 U.S. Dist. LEXIS 45314 (W.D. Wash. Mar. 15, 2020) ................ 19

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*, No. 03 Civ.
 9608 (SCR), 2004 U.S. Dist. LEXIS 27086 (S.D.N.Y. June 23, 2004) ........................ 2, 3, 29

*Sweezey v. C.R. Bard Inc.*,
 No. 19-2172, 2020 U.S. Dist. LEXIS 43922 (N.D. Tex. Mar. 12, 2020) .............................. 36

*In re Takata Airbag Prods. Liab. Litig.*,
 396 F. Supp. 3d 1101 (S.D. Fla. 2019) .......................................................... 5-6, 6

*Tietsworth Sears, Roebuck & Co.*,
 720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................. 22

*In re Toshiba America HD DVD Marketing and Sales Practices Litigation*,
 No. 08-939, 2009 U.S. Dist. LEXIS 82833 (D.N.J. Sept. 11 2009) ...................................... 25

*In re Toyota Motor Corp. Hybrid Brake Mktg.*
 Sales Practices & Prods. Liab. Litig., 915 F. Supp. 2d 1151 (C.D. Cal. 2013) ..................... 15

*Traynor v. Turnage*,
 485 U.S. 535 (1985) ................................................................................ 20

*Troup v. Toyota Motor Corp.*,
 545 F. App'x 668 (9th Cir. 2013) ................................................................ 11

- ix -

*United States v. Providence Journal Co.*,
  485 U.S. 693 (1988) ..................................................................................... 20

*United States v. Smith*,
  499 U.S. (1991) ........................................................................................... 21

United States.'" *Matanky v. GM LLC*,
  370 F. Supp. 3d 772 ..................................................................................... 32

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
  No.: 16-2765 (JLL), 2017 U.S. Dist. LEXIS 70299 (D.N.J. May 8, 2017) ........................... 7

*In re VTech Data Breach Litig.*,
  No. 15-10889, 2018 U.S. Dist. LEXIS 65060 (N.D. Ill. Apr. 18, 2018) ............................. 32

*Washington v. Warden Sci-Greene*,
  608 F. App'x 49 (3d Cir. 2015) ..................................................................... 39

*Watkins v. Vital Pharms., Inc.*,
  No. 12-09374, 2013 U.S. Dist. LEXIS 162495 (C.D. Cal. Nov. 7, 2013) .............................. 34

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015) ..................................................................... 39

*Yi* v. *BMW of N. Am., L.L.C.*,
  No. 2:17-cv-06467-SVW, 2018 U.S. Dist. LEXIS 171313 (C.D. Cal. May 24, 2018) ......... 22

*Zarrella v. Pac. Life Ins. Co.*,
  755 F. Supp. 2d 1218 (S.D. Fla. 2010) ............................................................. 37

## Federal Statutes

15 U.S.C. § 1232 ........................................................................................ 30

15 U.S.C. § 2301 ..................................................................................... 4, 18

15 U.S.C. § 2310 ............................................................................14, 18, 20, 21

28 U.S.C. § 1367 ....................................................................................... 20

28 U.S.C. §§ 1711–15 ................................................................................... 19

## State Cases

*Am. Bumper & Mfg. Co. v. Transtech. Corp.*,
  252 Mich. App. 340 (2002) ......................................................................... 16

*Berkman*,
  841 N.Y.S.2d a ......................................................................................... 31

*In re Cadillac V8-6-4 Class Action*,
  93 N.J. 412 (1983) .................................................................................. 14

*Cornett v. Johnson & Johnson*,
   211 N.J. 362 (2012) ........................................................................... 7

*Corsello v. Verizon N.Y., Inc.*,
   967 N.E.2d 1177 (N.Y. 2012) ........................................................ 36

*Enry v. Estate of Merola*,
   171 N.J. 86 (2002) ............................................................................. 9

*Goshen* v. *Mut. Life Ins. Co.*,
   774 N.E.2d 1190, (N.Y. 2002) ........................................................ 31

*Luciano v. World-Wide Volkswagen Corp.*,
   514 N.Y.S.2d 140 (3d Dep't 1987) .................................................. 7

*Mountz* v. *Glob. Vision Prods.*,
   770 N.Y.S.2d, (2003) ....................................................................... 32

*Neu* v. Neu,
   756 N.Y.S.2d, (2d Dep't 2003) ....................................................... 32

*Osborne v. Subaru of Am. Inc.*,
   198 Cal. App. 3d 646 (1988) .......................................................... 17

*P.V. ex rel. T.V. v. Camp Jaycee*,
   197 N.J. 132 (2008) ........................................................................... 7

*Ramirez v. Autosport*,
   88 N.J. 277 (1982) ........................................................................... 14

*Thiedemann*,
   183 N.J. .......................................................................................... 15

DMEAST #41743007 v4

## I.      INTRODUCTION

Plaintiffs bring this putative class action against Defendants Subaru of America, Inc. ("SOA") and Subaru Corporation ("SBR") (collectively, the "Subaru Defendants") alleging each Plaintiff purchased or leased a vehicle sold with a design defect that can cause their vehicle's batteries to drain while not in use. Plaintiffs attempt to assert various breach of warranty, unjust enrichment, and statutory fraud claims.

This consolidated action now concerns a putative class of approximately 2.6 million vehicles, comprising five vehicle models and crossing multiple design generations. Thus, although the Plaintiffs allege numerous complaints to third parties regarding battery drain, that is simply an artifact of Plaintiffs' overly broad class. Those complaints represent a small fraction of the putative class. In any event, Plaintiffs' claims fail as a matter of law.

Plaintiffs lack standing to bring claims on behalf of those vehicles they have not owned or leased because the Engine Control Modules ("ECM") and software files that control the battery charging logic, as well as certain vehicle platforms, differ materially among those vehicles. Plaintiffs are also between a rock and a hard place, as they must premise their express warranty claims solely upon an alleged design defect in an attempt to support class certification across different vehicle models. It is now well settled, however, that a design defect is not covered by express warranties covering materials and workmanship—such as SOA's warranty here. Finally, Plaintiffs' state-law fraud claims fail for various reasons, including failure to plead any alleged fraud with the required particularity.

The Subaru Defendants respectfully request Plaintiffs' consolidated class action complaint be dismissed for lack of subject matter jurisdiction and failure to state a claim.

## II.    BACKGROUND

### A.    Plaintiffs' Allegations

The Consolidated Class Action Complaint (ECF No. 18) now includes thirteen Plaintiffs asserting claims arising from their purchase and use of various Subaru vehicles.[1] For each Plaintiff, the name, vehicle, purchase date, and the state of purchase are:

| PLAINTIFF | VEHICLE[2] | PURCHASE DATE | PURCHASE STATE |
|---|---|---|---|
| Amy Burd | 2017 Subaru Outback | August 2016 | New Jersey |
| David Hansel | 2019 Subaru Outback | June 2019 | New Jersey |
| Glen McCartney | 2016 Subaru Outback | July 2016 | New Jersey[3] |
| Walter Gill | 2017 Subaru Outback | January 2017 | New Jersey |
| Tamara O'Shaughnessy | 2019 Subaru Outback | August 2019 | New York |
| Roger Baladi | 2018 Subaru Outback | April 2018 | New York |
| Anthony Franke | 2015 Subaru WRX | February 2015 | California |
| Matthew Miller | 2017 Subaru Outback | July 2018 | California |
| Steven Stone | 2017 Subaru Outback | September 2016 | Florida |
| Howard Bulgatz | 2019 Subaru Legacy | August 2018 | Illinois |
| Mary Beck | 2020 Subaru Outback | December 2019 | Michigan |
| David Davis | 2019 Subaru Ascent | August 2018 | Texas |
| Colin George | 2016 Subaru Outback | January 2016 | Washington |

*See* Consol. Compl. ¶¶ 30, 40, 47, 54, 60, 68, 75, 82, 89, 97, 109, 115.

### B.    The Warranties Made by Subaru of America, Inc.

SBR "is a corporation organized under the laws of Japan, having its principal place of business in Tokyo, Japan. It is a … manufacturer engaged in the development and manufacture of Subaru vehicles, parts, and accessories." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, No. 03 Civ. 9608 (SCR), 2004 U.S. Dist. LEXIS 27086, at *5 (S.D.N.Y. June 23, 2004). SBR does not sell or market vehicles to consumers in the United States. Instead, it relies on its distributor, SOA, to distribute, and market Subaru-brand vehicles. *Id.* Neither SOA nor SBR sells vehicles

---

[1] Former plaintiffs Tomasian, Albright, and Dalen have voluntarily dismissed their claims. (ECF No. 22).

[2] Throughout this brief, a reference to a year in connection with a vehicle model refers to the model year of that vehicle, which does not necessarily relate to the calendar year.

[3] Plaintiff McCartney is a resident of New York.

- 2 -

directly to consumers; instead, independent franchisee authorized retailers sell vehicles to consumers.[4] *See, e.g.*, Consol. Compl. ¶¶ 30, 40, 47, 54, 60, 68, 75, 82, 89, 97, 109, 115 (alleging Plaintiffs purchased vehicles from "authorized Subaru dealership[s]").

SOA is the warrantor of such vehicles. Consol. Compl. ¶ 24. As the warrantor, SOA provides several express written warranties to purchasers of Subaru vehicles that "cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use." Consol. Compl. ¶ 140. Among them is the New Vehicle Limited Warranty, which covers the entire vehicle, subject to exclusions in the Warranty & Maintenance Booklets, for three years or 36,000 miles, whichever comes first. *Id.* Further, no person is "authorize[d] to assume for any [Subaru entity] any obligations or liabilities greater than or different from those set forth in" the Warranty and Maintenance Booklet. *See, e.g.*, Walters Decl. Ex. A, at 15 (2017 Warranty & Maintenance Booklet).

### C.     The alleged battery design defect

Plaintiffs allege that 2015–2020 Subaru Outback, 2015–2020 Subaru Forester, 2015–2020 Subaru Legacy, 2015–2020 Subaru WRX, and 2019–2020 Subaru Ascent vehicles suffer from a defect that results in parasitic drain of the vehicle's battery power. *See* Consol. Compl. ¶ 124. This alleged defect causes the battery to fail prematurely and renders the vehicles inoperable. *Id.* Although the exact mechanism of the defect alleged is unclear from the pleadings, the crux of Plaintiffs' contention is that the software programming of the Controller Area Network ("CAN") system contains a defect that prevents the CAN system from entering a sleep mode, which is designed to cease electrical draw on the system when the Class Vehicles are not in use. *Id.* ¶¶ 133–36. Despite referring to this defect as a "manufacturing" defect, *id.* ¶ 134, Plaintiffs allege no manufacturing defect. In an attempt to support class certification, Plaintiffs

---

[4] That is required by law because "direct manufacturer auto sales are prohibited in almost every state by franchise laws requiring that new cars be sold only by dealers." Gerald R. Bodisch, US Department of Justice, *Economic Effects of State Bans on Direct Manufacturer Sales to Car Buyers* (2009), *available at* www.justice.gov/atr/economiceffects-state-bans-direct-manufacturer-sales-car-buyers.

DMEAST #41743007 v4

criticize the uniform design and implementation of the CAN system's programming, which is a design issue. *See supra* Part III.C.2.

### D.     The Claims and Relief Sought

Plaintiffs seek to represent a nationwide class comprising "[a]ll persons in the United States who bought or leased, other than for resale, a Class Vehicle." Consol. Compl. ¶ 182. Plaintiffs also seek to represent separate state subclasses for California, New York, Florida, New Jersey, Illinois, Michigan, Texas, and Washington. *Id.* ¶ 183. They assert sixteen causes of action:

| COUNT | CAUSE OF ACTION | ON BEHALF OF |
|---|---|---|
| One | Breach of Implied Warranty of Merchantability | Nationwide Class or the State Subclasses |
| Two | Breach of Express Warranty | Nationwide Class or the State Subclasses |
| Three | Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 (2018) | Nationwide Class |
| Four | Violations of the Song-Beverly Consumer Warranty Act (Express Warranty), Cal. Civ. Code § 1790-1795.8 (Deering) | California Subclass |
| Five | Violations of the Song-Beverly Consumer Warranty Act (Implied Warranty), Cal. Civ. Code § 1790-1795.8 (Deering) | California Subclass |
| Six | Violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 | New Jersey Subclass |
| Seven | Violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750-1785 (Deering) | California Subclass |
| Eight | Violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200-17210 (Deering) | California Subclass |
| Nine | Violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 | Florida Subclass |
| Ten | Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 | Illinois Subclass |
| Eleven | Violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 | Michigan Subclass |
| Twelve | Violations of the New York General Business Law, N.Y. Gen. Bus. Law § 349 | New York Subclass |
| Thirteen | Violations of the New York General Business Law, N.Y. Gen. Bus. Law § 350 | New York Subclass |
| Fourteen | Violation of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 | Washington Subclass |
| Fifteen | Fraudulent Concealment | State Subclasses |
| Sixteen | Unjust Enrichment | State Subclasses |

DMEAST #41743007 v4

III.    **ARGUMENT**

A.    **Plaintiffs lack standing to assert any claims on behalf of owners of 2015–2020 Subaru Forester or 2020 Subaru Legacy vehicles.**

Plaintiffs lack Article III standing to seek recovery for injuries they did not, and could not have, sustained. Plaintiffs seek to represent all purchasers of 2015–2020 Subaru Outback, 2015–2020 Subaru Forester, 2015–2020 Subaru Legacy, 2015–2020 Subaru WRX, and 2019–2020 Subaru Ascent vehicles. However, no Plaintiff has ever purchased or leased a Subaru Forester of any model year, or a 2020 Subaru Legacy. *See supra* Part II.A. Plaintiffs' claims relating to vehicles none have ever owned must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

The need for standing does "not change in the context of a putative class action …." *Koronthaly v. L'Oreal USA, Inc.*, No. 07-CV-5588 (DMC), 2008 U.S. Dist. LEXIS 59024, at *13 (D.N.J. July 25, 2008). "Standing cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action." *Id.; see also In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). When a defendant raises a factual challenge to the court's subject matter jurisdiction—as the Subaru Defendants do here—"the court may consider evidence outside the pleadings." *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)).

A class representative lacks Article III standing to assert claims based on products she has not owned. *David v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-11301-SDW-CLW, 2018 U.S. Dist. LEXIS 70284, at *7 (D.N.J. Apr. 26, 2018) (noting that "[i]n the context of putative class actions … a plaintiff has standing only for claims related to [vehicle models] he purchased or used," and dismissing claims brought by class representative concerning model year vehicles not owned by representative); *see also In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1125–27 (S.D. Fla. 2019) (dismissing claims brought by Audi purchasers against Mercedes and Volkswagen and rejecting the plaintiffs' argument that component was

substantially similar between the vehicles); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1221–22 (S.D. Fla. 2017) (holding purchasers of Mercedes C Class model lacked standing to bring claims on behalf or owners of Mercedes GLK Class model vehicles). That there may be similarities between the different models or model-year vehicles cannot confer standing. *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d at 1126–27. And, here, material differences exist between the Forester, 2020 Legacy, and the vehicles that Plaintiffs purchased. The ECMs and software PAK files—which control the battery charging logic—are different between the vehicles. *See* Walters Decl. Ex. B, at 2 (TSB 11-174-17R) (displaying unique ECM part numbers, PAK files, and descriptions for "2015-2017MY Legacy and Outback, 2015-2017MY WRX, [and] 2017-2018MY Forester"). And, the 2020 Legacy, as the "seventh-generation" Legacy, is a fundamentally different vehicle than the 2015-2019 Legacy models and is built on a different platform. *See* Walters Decl. Ex. C (Feb. 7, 2019 Press Release).

Plaintiffs lack standing to bring claims for any model they did not purchase and are not entitled to obtain "back-door" standing based on alleged injury to unidentified class members who own different vehicles. Their claims related to the 2015–2020 Forester and the 2020 Legacy must be dismissed.

### B.    The Claims of nonresident Plaintiffs asserting violations of New Jersey law must be dismissed.

By asserting most claims individually and on behalf of state-specific subclasses only, Plaintiffs acknowledge that choice-of-law rules preclude them from asserting certain claims on behalf of a nationwide class. Yet, Plaintiffs attempt to expand the reach of New Jersey law, seeking primarily to assert New Jersey warranty claims on a nationwide basis. Other than Plaintiffs Burd, Hansel, and Gill—New Jersey residents—the named Plaintiffs purchased and used their vehicles in states other than New Jersey. As to them, the New Jersey claims must be dismissed for failure to state a claim.

### 1.    New Jersey's choice-of-law rules apply

New Jersey's choice-of-law rules apply to this case. *O'Boyle v. Braverman*, 337 F. App'x 162, 165 (3d Cir. 2009). "The first step in a choice-of-law analysis is to determine whether there

is in fact a conflict of law between the states having a nexus to the matter." William A Dreier et al., *New Jersey Products Liability & Toxic Torts Law* § 20:2-1 (2018 ed.). Where a conflict exists, New Jersey follows the "most significant relationship test" of the Restatement (Second) of Conflict of Laws to determine which state's law applies. *See Cornett v. Johnson & Johnson*, 211 N.J. 362, 372 (2012). There is a presumption the law of the state of injury applies "unless another state has a more significant relationship to the parties and issues." *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143 (2008).

> **2.     Conflicts exist between the laws of New Jersey and Plaintiffs' home states.**

Various conflicts exist between New Jersey and Plaintiffs' home states regarding the contract claims. First, Texas, Illinois, and Michigan require formal pre-suit notification to a remote seller, and failure to do so requires dismissal of the claims. *Parrott v. Family Dollar, Inc.*, No. 17 C 222, 2019 U.S. Dist. LEXIS 160569, at *5 (N.D. Ill. Sept. 20, 2019); *Johnston v. PhD Fitness, LLC*, No. 16-14152, 2018 U.S. Dist. LEXIS 15470, at *7–8 (E.D. Mich. Jan. 31, 2018); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 978 (N.D. Cal. 2014). *Dahse v. C.R. Bard, Inc.*, No. 2:12-cv-02701, 2016 U.S. Dist. LEXIS 168922, at *15 (S.D.W. Va. Dec. 7, 2016) (recognizing Texas Law's pre-suit notice requirement for warranty claims "applies to manufacturers as well as sellers"). New Jersey has no such requirement. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No.: 16-2765 (JLL), 2017 U.S. Dist. LEXIS 70299, at *41 (D.N.J. May 8, 2017).

California, Florida, New York, and Illinois law require plaintiffs asserting implied warranty claims to be in direct vertical privity with the defendant. *See, e.g.,* J*ohnson v. Nissan N. Am., Inc.,* No. 17-cv-00517-WHO, 2018 U.S. Dist. LEXIS 26065, at *17–18 (N.D. Cal. Feb. 15, 2018); *Nguyen v. Cree, Inc.*, No. 3:18-cv-02097-SB, 2019 U.S. Dist. LEXIS 220007, at *18 (D. Or. Nov. 6, 2019); *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 381 (C.D. Cal. Aug. 24, 2018) ; *Luciano v. World-Wide Volkswagen Corp.*, 514 N.Y.S.2d 140, 142 (3d Dep't 1987). Material conflicts also exist between New Jersey law and California's warranty law codified in the Song

Beverly Act. Under New Jersey law, a plaintiff's remedy for breach of express warranty is limited to actual damages plus any incidental or consequential damages. N.J.S.A. 12A:2-714. Song-Beverly provides for actual damages and, for willful violations, a civil penalty of up to two times actual damages. Cal. Civ. Code § 1794(b), (c) (Deering). Song-Beverly also allows recovery of costs and expenses, including attorneys' fees, unlike New Jersey. *Id.* § 1794(d) (Deering). Plaintiffs cannot pursue a claim under the MMWA without relying on the underlying state's warranty law. *Marcus v. BMW of N. Am., L.L.C.*, No. 08-5859 (KSH), 2010 U.S. Dist. LEXIS 122908, at *28 (D.N.J. Nov. 19, 2010). To the extent each Plaintiff's home-state law governs their breach of warranty claims, it must also govern their MMWA claims.

States also define differently the "basis of the bargain" for express warranty obligations. New Jersey does not strictly require reliance on the warranty at the time of purchase. *See Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 239 (D.N.J. 2008) (quoting *Bregman Screen & Lumber Co. v. Bechefsky*, 16 N.J. Super. 35 (App. Div. 1951)). Florida, Michigan, and New York each impose a reliance requirement on breach of warranty claims. *See Rogath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997); *Cont'l 332 Fund, LLC v. Albertelli*, No. 17-41, 2018 U.S. Dist. LEXIS 23283, at *15 (M.D. Fla. Feb. 13, 2018); *Baye v. HBI Branded Apparel Enters.*, No. 12-12869, 2013 U.S. Dist. LEXIS 174599, at *4–5 (E.D. Mich. Dec. 13, 2013). And, California requires proof of reliance when the plaintiff and defendant are not in privity of contract. *See Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1334 (C.D. Cal. Nov. 4, 2013).

Numerous conflicts exist between New Jersey law and the law of each Plaintiff's home state regarding the warranty claims.

### 3.    Plaintiffs' home states have the most significant relationship.

Having determined that conflicts exist between the laws of New Jersey and Plaintiffs' home states, the Court must determine which state has the most significant relationship to each claim. That analysis involves an application of the elements of Restatement § 148, applicable to the contract claims, and the general elements of Restatement § 6, applicable to every claim.

### a.      Contract Claims – Restatement § 188

Plaintiffs' warranty-based causes of action are governed by Restatement § 188. That section considers: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. If the place of negotiating and the place of performance are in the same state, the law of that state is presumed to apply. *See* Restatement § 188(3).

The non-New Jersey Plaintiffs negotiated their vehicle purchases, drove and allegedly experienced the alleged battery problems, and presented their vehicles for repair, in their respective home states outside of New Jersey. Consol.[5] Compl. at 7–24. The presumption for each state's law applies. Even if the presumption provided by § 188(3) did not apply, four of the five factors favor the law of Plaintiffs' home states, as they were the places of contracting, negotiation, performance, and the location of the vehicles. The fifth and final factor is, at best, a draw. The law of each Plaintiff's home state governs their respective contract claims.

### b.      All Claims – Restatement § 6

Restatement § 6, applies to all claims. That section serves only to reinforce the conclusion that the law of Plaintiffs' home states governs. That section considers: (1) interstate comity; (2) the interests of the parties; (3) the underlying field of law; (4) the interests of judicial administration; and, (5) the interests of the states. The Supreme Court of New Jersey has noted that factors two and four carry the least weight. *See Enry v. Estate of Merola*, 171 N.J. 86, 101–02 (2002).

On the first factor—interstate comity—the Third Circuit has been clear:

> [T]he interests of interstate comity favor applying the law of the [plaintiff's] own state. Applying New Jersey law to every potential out-of-state claimant would frustrate the policies of each [plaintiff's] state.

---

[5] Plaintiff McCartney, a resident of New York, purchased his vehicle in New Jersey. Consol. Compl. ¶ 54.

*Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 209 (3d Cir. 2013) (internal citation omitted). On the second factor—the interests of the parties—the Third Circuit has been equally clear: "Because the only contacts between the parties took place in [the plaintiff's home state], it is reasonable to assume that they expected that [that state's] law would apply." *Id.* at 209–10.

The third factor—the underlying field of law—slightly favors the law of each Plaintiff's home state. Contract claims serve two purposes: compensating injured parties, which favors Plaintiffs' home states, and deterring corporate misconduct, which favors either New Jersey or Japan—where the two Defendants are located. *See id.* at 210. The fourth factor—the interests of judicial administration—might favor New Jersey, as applying a single state's law might be simpler, but those interests "must yield to the interests of the other factors." *Id.* (citing *Fu v. Fu*, 160 N.J. 108 (1999)). Finally, the fifth factor—the interests of the states—plainly favors the law of Plaintiffs' home states, as "the interest [of the home state] in having its law apply to its own consumers outweighs the interests of New Jersey in protecting out-of-state consumers from consumer fraud." *Id.*

Restatement § 6 overwhelmingly favors applying the law of each Plaintiff's home state, reinforcing the application of the claim-specific elements of Restatement § 188. To the extent non-New Jersey Plaintiffs bring claims under New Jersey law, those claims must be dismissed. At a minimum, those Plaintiffs claims must proceed "under the laws of their respective home states" as Plaintiffs alternatively plead. Consol. Compl. ¶¶192, 204.

**C.    Plaintiffs' breach of express warranty claims fail. (Counts II–IV)**

**1.    Defendant SBR made no express warranties to Plaintiffs; the express warranty claims against SBR must be dismissed.**

Plaintiffs' express warranty claims against SBR (Counts II-IV) fail at the outset because SBR was not a party to the express written warranties. The Warranty and Maintenance Booklet conspicuously states, "[t]hese warranties are made by Subaru of America, Inc. ("SOA")." Walters Decl. Ex. A, at 4 (2017 Warranty & Maint. Booklet). There is no mention of SBR as a warrantor in that document, and plaintiffs do not otherwise plead any contract with SBR in regarding their vehicle purchases. *See supra* Part II.B. It is a fundamental precept of contract law

- 10 -

that "nonparties to contracts cannot be held responsible for breach." *D.R. Horton Inc. v. Dynastar Dev., L.L.C.*, No. 00-1808, 2005 N.J. Super. Unpub. LEXIS 842, at *17 (Law Div. Aug. 10, 2005); *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 450 (Tex. App. 2016) (holding entity not a party to contract not obligated by contract). Plaintiffs' claims for breach of warranty against SBR must be dismissed. *See also infra* Part III.K (alternatively requesting more definite statement regarding which claims are asserted against which defendant).

> ### 2.      The New Vehicle Limited Warranty does not cover design defects.

Plaintiffs' express warranty claims (Counts II-IV) fail as a matter of law because the New Vehicle Warranty does not cover design defects. It explicitly covers defects in "material[] or workmanship," Consol. Compl. ¶ 140:

> These warranties cover any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use.

*See* Walters Decl. Ex. A, at 4 (2017 Warranty & Maint. Booklet).

"[T]he vast weight of authority hold[s] that a workmanship and materials warranty cannot encompass a design defect claim." *Nelson v. Nissan N. Am., Inc.*, No. 11-5712, 2014 U.S. Dist. LEXIS 175224, at *7–9 (D.N.J. Dec. 19, 2014) (emphasis added). Express warranties covering defects in material or workmanship—like the warranties pleaded by Plaintiffs here—do not cover design defects. *See Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) ("The plain and ordinary meaning of the term 'defect[s] in … materials or workmanship,' unambiguously excludes 'design' defects." (internal citation omitted)); *Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750, 753 (8th Cir. 2013) ("[W]here a product is manufactured correctly but designed inappropriately, the defect is one of design and not 'material or workmanship.'"); *Mack Trucks Inc. v. BorgWarner Turbo Systems, Inc.*, 508 F. App'x 180, 184–85 (3d Cir. 2012) (finding the ordinary meaning of "manufacture" does not include design); *Amato v. Subaru of Am., Inc.*, No. 18-16118, 2019 U.S. Dist. LEXIS 209659, at *13 (D.N.J. Dec. 15, 2019); *Troup v. Toyota Motor Corp.*, 545 F. App'x 668, 668–69 (9th Cir. 2013).

DMEAST #41743007 v4

Plaintiffs try to skirt this precedent—even after discussing the design of the CAN system for thirteen paragraphs, Consol. Compl. ¶¶ 123-36—by nakedly referring to the alleged battery defect as a "manufacturing" defect. Consol. Compl. ¶ 134. However, that single use of the word "manufacturing" represents the entirety of any attempt to allege a manufacturing defect. The Consolidated Complaint fails to allege a single fact regarding the alleged manufacturing defect; there are no allegations that the manufacturing of any Plaintiffs' *specific vehicle* somehow deviated from its intended design or construction.[6] At a minimum, this fails to satisfy Plaintiffs' obligation to plead a plausible claim under Rule 8.

A plain reading of the factual contentions that exist in the Consolidated Complaint explains the lack of any manufacturing allegations: Plaintiffs are instead attempting to allege a *design* defect. Specifically, Plaintiffs allege that a uniformly existing software programming issue causes parasitic battery draw. *Id.* ¶¶ 123–36. Plaintiffs do not allege that any of their vehicles was manufactured with a CAN system, ECU, or battery that does not conform to its intended design. *Id.* Plaintiffs similarly do not point to any flaw in the manufacturing process by which these components are produced. *Id.* Rather, Plaintiffs are criticizing the design choices—i.e., the use of the CAN system or the software programming—themselves. *See, e.g.*, *Coba*, 930 F.3d at 123 (affirming dismissal of warranty claims because defect complained of concerned "the 'overall plan of construction and operation' of the fuel tanks."); *Amato*, 2019 U.S. Dist. LEXIS 209659, at *17 ("Such criticism fails to allege a problem in the process of constructing the [component], rather it alleges a flaw in the overall intended construction (a design decision).").

The ECU and CAN software programming and are unquestionably issues of design, not manufacturing. *See Sauer v. Subaru of Am., Inc.*, Civil Action No. 18-14933, 2020 U.S. Dist. LEXIS 55592, at *16-18 (D.N.J. Mar. 31, 2020) (holding allegations related to engine software programming constituted alleged design defect not covered by SOA's express warranties);

---

[6] That Plaintiffs intend to certify a class further shows that they allege a design, and not a manufacturing defect. It beggars belief that Plaintiffs could have knowledge of a specific individualized manufacturing defect in each of the 2.6 million vehicles putative class vehicles.

- 12 -

*Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *19 (D.N.J. July 21, 2011) ("A defect in the programming of the software . . . is not akin to a defect in materials or substandard workmanship used by Panasonic in replacing or repairing parts under warranty."). Other courts have reached that conclusion concerning similar parasitic battery drains cases. *See Aberin v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2018 U.S. Dist. LEXIS 49731, at *20–21 (N.D. Cal. Mar. 26, 2018) (dismissing express warranty claims because alleged "parasitic electrical drain" was an uncovered design defect).

Plaintiffs' express warranty claims cannot be salvaged by a deliberate refusal to call the alleged battery defect a design defect. *See Nelson*, 2014 U.S. Dist. LEXIS 175224, at *8; *Coba v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 136283, at *29 (D.N.J. Sep. 30, 2016). In *Nelson*, this Court rejected a similar express warranty claim where that plaintiff alleged the class vehicles' transmissions were defective because the lead bushings used were vulnerable to high heat. In its analysis, the Court noted that "absent specific language to the contrary, design defects cannot be encompassed within the meaning of defects in workmanship or materials." *Nelson*, 2014 U.S. Dist. LEXIS 175382, at *5 (quoting *Mack Trucks Inc.*, 508 F. App'x at 184). Finding that the allegedly defective lead bushings were "undisputedly common to every Class Vehicle," their use was a design defect, not a manufacturing defect. *Id*. at *7–8.

Similarly, no claim can survive when a plaintiff has intentionally refused to plead that the defect alleged was one of design. *Coba*, 2016 U.S. Dist. LEXIS 136283 at *29. Because all the facts presented showed the plaintiff was alleging a design defect, the Court rejected the warranty claim because design defects were not covered by the express workmanship and materials warranty. *Id.* Here, Plaintiffs, seemingly intentionally, fail to properly classify the alleged defect. The Consolidated Complaint can support only a claim for design defect, which is not covered under the express warranty. Boilerplate allegations regarding supposed manufacturing defects do not satisfy Rule 8's plausibility standard. *Hindsman*, 2018 U.S. Dist. LEXIS 92319, at *23. Plaintiffs' express warranty claim must fail.

DMEAST #41743007 v4

**3.      Certain Plaintiffs' claims fail because they do not sufficiently allege they provided SOA an opportunity to repair their vehicles or that the New Vehicle Limited Warranty was breached.**

Plaintiffs can pursue no relief unless they can plausibly allege either that (1) SOA was given notice and an opportunity to repair their vehicles or (2) the New Vehicle Limited Warranty failed of its essential purpose because of numerous failed repair attempts. *See Cox v. Chrysler Grp., LLC*, No. 14-7573, 2015 U.S. Dist. LEXIS 133393, at *17 (D.N.J. Sept. 30, 2015); *see also* 15 U.S.C. § 2310(e) ("No action … may be brought under subsection (d) … under any written or implied warranty or service contract … unless the [warrantor] … is afforded a reasonable opportunity to cure such failure to comply."); *In re Cadillac V8-6-4 Class Action*, 93 N.J. 412, 429 (1983) (noting "consumers must provide an automobile dealer with an opportunity to cure the defect"). Multiple Plaintiffs fail to clear that hurdle.

Plaintiffs Gill and George do not allege they presented their vehicles to an authorized Subaru dealership for repair. Consol Compl. ¶¶ 40-46, 119. Courts routinely dismiss claims for breach of limited warranties when plaintiffs do not allege they sought repairs "within the durational limits specifi[ed] in their respective … warranties," and the warranty claims of these Plaintiffs should be dismissed. *In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 877 (E.D. Mich. 2009); *see also Kearney v. Bayerische Motoren Werke AG.*, No. 17-13544, 2018 U.S. Dist. LEXIS 147746, at *45 (D.N.J. Aug. 29, 2018). Likewise, the express warranties provided by SOA require that the vehicle be presented to an authorized Subaru dealership for warranty repairs. *See, e.g.*, Walters Decl., Ex. A at 6, 12, 16, 22 (2017 Warranty & Maint. Booklet). When an opportunity to cure is a condition precedent under a written warranty, that condition must be satisfied before a plaintiff can pursue a claim for breach of warranty under to the Uniform Commercial Code. *See, e.g., R*amirez v. Autosport, 88 N.J. 277, 285 (1982).

Similarly, Plaintiffs Burd, Baladi, Miller, and Stone fail to allege they presented their vehicles for repair or diagnosis after receiving a repair under the New Vehicle Limited Warranty. *See* Consol. Compl. ¶¶ 34–39, 65–67, 85–88, 91–96. That those Plaintiffs claim they experienced an issue with their vehicles after receiving a free warranty repair does not amount to a breach of

- 14 -

the New Vehicle Limited Warranty and those Plaintiffs must still comply with the presentment requirement of that warranty. *See In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 783-784 (N.D. Cal. Feb. 9, 2017) ("While there would likely be some point at which repeated failure of replacement drives would deprive consumers of the essential purpose of the warranty, the Court declines to hold, in the absence of authority, that a mere two successive failures within the warranty period—or in other words, only one unsuccessful replacement—can meet that test where a warranty both specifically contemplates replacement of defective drives and provides the same warranty coverage for replacement drives"); *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 973–74 (N.D. Cal. 2018) (dismissing breach of express warranty claims when automaker complied with "repair, replace, or adjust" provision of warranty even if battery drain defect arose again).

Finally, Plaintiffs Hansel, O'Shaughnessy's and Davis' breach of express warranty claims fail because they allege SOA complied with its obligations under the New Vehicle Limited Warranty. They allege they presented their vehicles to an authorized dealership for repair and that they received repairs. They conspicuously fail to allege they have had any further battery issues. Consol. Compl. ¶¶ 51, 71–74, 112–14.[7] The automotive warranty system exists because of the unchanging reality that "[d]efects can, and do, arise with complex instrumentalities such as automobiles." *Thiedemann*, 183 N.J. at 251. Accordingly, "[d]efects that arise and are addressed by warranty, at no cost to the consumer, do not provide" grounds for a claim. *Id.* Thus, Plaintiffs Hanse, O'Shaughnessy, and Davis have failed to plead a necessary element of their claims: that SOA failed to honor its warranty. They have not stated a claim for breach of any warranty, express or implied. *Cf. id.*; 1 White & Summers, *Uniform Commercial*

---

[7] Indeed, the ability of these Plaintiffs to represent the class they seek to represent is doubtful. When a vehicle owner has received a repair that resolves the issue, "that owner is not permitted to represent a class of purchasers who actually may have been injured and he also may not recover." *In re Toyota Motor Corp. Hybrid Brake Mktg. Sales Practices & Prods. Liab. Litig.*, 915 F. Supp. 2d 1151, 1154, 59 (C.D. Cal. 2013).

DMEAST #41743007 v4

*Code* 11:3, 970-71 n.2 (6th ed. 2012) ("[A] plaintiff may not recover repair costs the defendant absorbed as part of its warranty obligation.").

> **4.      Certain Plaintiffs' warranty claims should be dismissed for failure to provide the requisite pre-suit notice.**

Texas, Illinois, and Michigan require plaintiffs asserting warranty claims to first provide the manufacturer or seller with pre-suit notice. *See supra* Part III.B.2. The Consolidated Complaint baldly asserts that "Subaru was provided notice of the issues complained of herein within a reasonable time by numerous complaints online, directly to Subaru and its authorized dealers, class members, taking their vehicle to its dealers, Plaintiffs' demand letters, and the instant lawsuit." Consol. Compl. ¶¶ 198, 215. Critically, "the filing of a complaint does not constitute notice." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 978 (N.D. Cal. 2014). And, "generalized knowledge of concerns are also insufficient to meet the notice requirement: 'The manufacturer must be made aware of a problem with a particular product purchased by a particular buyer.'" *Id*; *see also Am. Bumper & Mfg. Co. v. Transtech. Corp.*, 252 Mich. App. 340, 347 (2002) (holding "it is not enough for the buyer to only notify the seller that it is having difficulty with the goods," that plaintiff must also "notif[y] defendants that they were in breach"). Even if that conclusory allegation could sustain a breach of warranty claim, several Plaintiffs cannot even genuinely avail themselves of it. Plaintiffs Bulgatz, Beck, and Davis were not a part of any of the initial complaints consolidated under this docket and the have failed to satisfy the pre-suit notice requirements of their respective states.

> **5.      Plaintiffs' allegations of reliance are insufficient.**

Plaintiffs O'Shaughnessy's, Baladi's, McCartney's, Franke's, Miller's, Bulgatz's, Beck's, and Davis's allegations of reliance are insufficient. Each of their home states requires that reliance plausibly be alleged. *See supra* Part III.B.2 Yet, they fail to plead how any representations concerning the alleged battery defect became the basis of the bargain. Plaintiffs only mentions of reliance regarding their warranty claims comprise general statements that "Plaintiffs and other Class Members" relied on "direct representations regarding the high quality" of Subaru vehicles. *See, e.g.*, Consol. Compl. ¶¶ 199, 212, 227. Notably, Plaintiffs do

not allege that absent a warranty provision concerning the vehicle's battery or CAN system, they would not have purchased their vehicles. Nor do Plaintiffs even allege they viewed the New Vehicle Warranty prior to their purchases. They have failed to sufficiently plead reliance as required by their home state's laws.

### D. Plaintiffs' implied warranty claims fail. (Counts I, III, & 5)

#### 1. Plaintiffs Stone, Bulgatz, Miller, Baladi, and Franke lack the requisite privity with SOA to assert breach of implied warranty claims.

California, Florida, New York, and Illinois law require plaintiffs asserting implied warranty claims to be in direct vertical privity with the defendant. *See supra* Part III.B.2. Here, those Plaintiffs purchased their vehicle from a third-party authorized Subaru dealership—not from SOA or SBR. *See, e.g.*, Consol. Compl. ¶¶ 75 , 82 , 89 , 97; *supra* Part II.B. Thus, these Plaintiffs are in "vertical privity" with their respective third-party retailers—but not with SOA or SBR. *See, e.g., Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 (1988). Plaintiffs Stone, Bulgatz, Miller, Baladi, and Franke cannot state a claim for breach of the implied warranty of merchantability.

#### 2. Plaintiff Franke's and George's implied warranty claim are barred by the statute of limitations.

The statute of limitations on Plaintiffs Franke's and George's claims for breach of the implied warranty of merchantability under the UCC (Count I) and MMWA (Count III) is four years. *See* Cal. Com. Code § 2725; Rev. Code Wash. (ARCW) § 62A.2-725(1); *Hrycay v. Monaco Coach Corp.*, No. 07-2605, 2008 U.S. Dist. LEXIS 18055, at *12 (E.D. Pa. Mar. 7, 2008) (noting courts apply a state's UCC statute of limitations to MMWA claims).[8] The limitations period for implied warranty claims under the UCC (and by extension, the MMWA) runs from delivery to the first purchaser, "*regardless of the aggrieved party's lack of knowledge of the breach*," because a breach of the implied warranty of merchantability applies only where

---

[8] Absent special circumstances not present here, the MMWA does not create a cause of action. Instead, a claim brought under the Act is, in substance, entirely derived from state law. *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011). Thus, where Plaintiffs have alleged only a breach of the MMWA, the controlling law will be the law of Plaintiffs' home states.

the defect existed when the goods left the manufacturer's control. *See* Cal. Com. Code § 2725(2); Rev. Code Wash. (ARCW) § 62A.2-725(2); *MacDonald*, 37 F. Supp. 3d at 1100 ("[T]he latest each Plaintiff could have brought a claim was four years after … purchase[].").

Plaintiff Franke pleads that he purchased his vehicle in "February 2015." Consol. Compl. ¶ 75. And, Plaintiff George pleads he purchased his vehicle on "January 23, 2016." *Id.* ¶ 115. Neither asserted claims against the Subaru Defendants until the June 18, 2020 filing of the Consolidated Class Action Complaint. The applicable statutes of limitation bar their claims because they purchased their vehicles before June 18, 2016.

### E.   Plaintiffs' Magnuson-Moss Warranty Act claims must be dismissed.

#### 1.   The Court lacks subject matter jurisdiction over Plaintiffs' MMWA claims asserted on behalf of the putative nationwide class.

A consumer wishing to allege a claim under the MMWA on behalf of a putative class must satisfy certain jurisdictional requirements. 15 U.S.C. § 2310(d)(1), (B). Specifically, a consumer may allege claims on behalf of a putative class only if (1) the amount in controversy of any individual claim is not less than $25; (2) the aggregate amount in controversy is greater than $50,000; and (3) the number of named plaintiffs is at least 100. *Id.* § 2310(d)(3).

The Consolidated Complaint does not allege jurisdiction under the MMWA, and Plaintiffs do not clear the jurisdictional threshold of having at least 100 named plaintiffs. *See* Consol. Compl. ¶ 7. The statutory provision cited by Plaintiffs as the basis for their MMWA claim, Consol. Compl. ¶ 224 (citing 15 U.S.C. § 2310(d)), permits an *individual* to bring a claim but not in the capacity of a class representative without satisfying the 100-named plaintiff requirement.

The requirement there be at least 100 named plaintiffs has been strictly construed. *Floyd v. Am. Honda Motor Co.*, No. 18-55957, 2020 U.S. App. LEXIS 23743, at *3 (9th Cir. July 28, 2020) ("CAFA may not be used to evade or override the MMWA's specific numerosity requirement."); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 244–47 (2d Cir. 1986) (noting decertification of class required if number of named plaintiffs falls below 100); *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. MDL-991-G, 1995 U.S. Dist. LEXIS 18207,

- 18 -

at *32 (E.D. La. Dec. 4, 1995) (holding each named plaintiff must state a claim for relief to be counted toward the 100-plaintiff requirement); *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 135 (S.D.N.Y. 1982) (dismissing MMWA claims "for failure to name 100 plaintiffs"). Plaintiffs' pleading of jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1711–15, CAFA—an act that expanded diversity jurisdiction—does not allow Plaintiffs to end-run the MMWA's federal question jurisdictional requirements. The "MMWA's requirement to name one hundred plaintiffs must be met independently of CAFA's jurisdictional standard." *Floyd v. Am. Honda Motor. Co.*, No. 17-08744, 2018 U.S. Dist. LEXIS 132750, at *3 (C.D. Cal. June 13, 2018); *see also Short v. Hyundai Motor Co.*, No. C19-0318JLR, 2020 U.S. Dist. LEXIS 45314, at *39-41 (W.D. Wash. Mar. 15, 2020); *Goldstein v. GM LLC*, No. 3:19-cv-01778-H-AHG, 2020 U.S. Dist. LEXIS 64851, at *19 (S.D. Cal. Apr. 13, 2020); *Cadena v. Am. Honda Motor Co.*, No. 18-4007, 2019 U.S. Dist. LEXIS 117584, at *34 (C.D. Cal. May 29, 2019); *Montanez v. D&D Auto, LLC*, No. 15-397, 2016 U.S. Dist. LEXIS 40911, at *22 (D. Conn. Mar. 29, 2016); *Ebin v. Kangadis Food Inc.*, No. 13-2311, 2013 U.S. Dist. LEXIS 107224, at *4 (S.D.N.Y. July 26, 2013) (dismissing MMWA claims for lack of subject-matter jurisdiction and holding that the argument that MMWA claims that do not satisfy that statute's requirements may be brought under CAFA to be "flatly contradicted by the plain text of the MMWA"); *Brisson v. Ford Motor Co.*, No. 08-2491, 2009 U.S. Dist. LEXIS 137789, at *1–3 (M.D. Fla. Jan. 20, 2009).

While some earlier cases had reached the opposite conclusion without undertaking a meaningful analysis to reconcile the two statutes, *see, e.g.*, *McGee v. Cont'l Tire N. Am., Inc.*, No. 06-6234, 2007 U.S. Dist. LEXIS 62869, at *8 (D.N.J. Aug. 27, 2007) (holding CAFA provides alternative basis for jurisdiction), "the weight of more recent authority is that the 100-plaintiff requirement cannot be supplanted by the prerequisites for exercising diversity jurisdiction under CAFA." *Cadena*, 2019 U.S. Dist. LEXIS 117584, at *34; *e.g.*, *Pilgrim v. GM Co.*, 408 F. Supp. 3d 1160, 1169 (C.D. Cal. 2019); *Floyd*, 2018 U.S. Dist. LEXIS 132750, at *11.

The recent and significant trend of better-reasoned authority holding that CAFA does not supplant the MMWA's jurisdictional requirements is grounded in the text of the MMWA and a more thoughtful analysis of the purposes of the two statutory schemes. Under well-settled principles of statutory construction, courts must follow the plain meaning of statutory text, unless that text suggests an absurd result or a scrivener's error. *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992); *United States v. Providence Journal Co.*, 485 U.S. 693, 700–01 (1988). The language of § 2310(d)(3)(C) of the MMWA is clear:

> No claim shall be cognizable in a suit brought … if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

That lack of ambiguity mandates compliance with the plain text of the statute. Decisions permitting class claims under the MMWA to proceed with fewer than 100 named plaintiffs "attempt to create an exception to § 2310(d)(3)(C)—an exceptions without statutory support— for situations where there is an alternative jurisdictional basis like CAFA." *Floyd*, 2018 U.S. Dist. LEXIS 132750, at *9. Because CAFA does not expressly address the MMWA's jurisdictional requirements, such cases also violate the strong presumption in our courts against repeals by implication. *See Pittsburgh & Lake Erie R.R. v. Railway Labor Executives' Ass'n,* 491 U.S. 490, 509 (1989); *Traynor v. Turnage*, 485 U.S. 535, 547–48 (1985); *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 564–67 (1987).

There is no basis for the "supplemental jurisdiction" to the extent Plaintiffs seek to avail themselves of 28 U.S.C. § 1367. *See* Consol. Compl. ¶ 7. Section 1367 allows for supplemental jurisdiction "*[except] as expressly provided otherwise by Federal statute*." (emphasis added). The MMWA is just such a federal statute. "[B]y enacting the specific jurisdictional limitations for [MMWA] claims in federal court, Congress foreclosed the exercise of supplemental jurisdiction over [MMWA] claims" when the jurisdictional requirements of 15 U.S.C. § 2310(d) are not satisfied. *Jager v. Bos. Rd. Auto Mall, Inc.*, No. 14 Civ. 614 (LLS), 2015 U.S. Dist. LEXIS 5509, at *10 (S.D.N.Y. Jan. 15, 2015); *accord Ebin*, 2013 U.S. Dist. LEXIS 107224, at

- 20 -

*4 (S.D.N.Y. July 25, 2013). While CAFA expanded the diversity jurisdiction of federal courts over class action litigation, its general provisions did not supersede the more specific provisions governing federal question jurisdiction of MMWA claims. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 514–15 (1989) (holding specific provisions targeting a particular issue apply instead of provisions more generally covering an issue); *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 481 U.S. 437, 444–45 (1987) (same); *United States v. Smith*, 499 U.S. 166–67 (1991) (cautioning against creating exceptions additional to those specified by Congress); *Chi. v. EDF*, 511 U.S. 328, 337–38 (1994) (noting presumption against creating exemption in a statute that has none); s*ee also MacDougall v. Am. Honda Motor Co.*, No. 17-01079, 2017 U.S. Dist. LEXIS 221537, at *4 (C.D. Cal. Dec. 4, 2017).("CAFA—a basis for federal courts to exercise jurisdiction over state law disputes between diverse parties—doesn't fill in the gaps for missing substantive requirements of a federal law.").

> **2.      Even if this Court could exercise jurisdiction over Plaintiffs' MMWA claim, it fails for the same reasons as Plaintiffs' express and implied warranty claims.**

Plaintiffs also fail to state a claim under the MMWA, even if they could satisfy the jurisdictional requirements. The MMWA creates a cause of action for "consumers damaged by the failure of a … warrantor … to comply with any obligation under … a written warranty[ or an] implied warranty." 15 U.S.C.A. § 3210(d); *McGarvey v. Penske Auto. Grp., Inc.,* No. 08-5610, 2010 U.S. Dist. LEXIS 32228, at *1 (D.N.J. Mar. 29, 2010). Absent a specific regulatory provision of the Act, a claim under the MMWA is, in substance, entirely derived from state law. *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011). Here, Plaintiffs' MMWA warranty claim is substantively identical to their express and implied warranty claims and must be dismissed for all of the same reasons. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. App'x 250, 254 (3d Cir. 2010).

> **F.      Plaintiffs Miller and Franke's breach of express warranty claims under the Song-Beverly Act fail as a matter of law. (Count IV)**

A plaintiff must demonstrate these elements to sufficiently plead a breach of express warranty claim under the Song-Beverly Act: (1) the product had a defect or nonconformity

- 21 -

covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repairs. *Gonzalez v. Ford Motor Co.*, No. 19-652, 2019 U.S. Dist. LEXIS 50844, at *14–15 (C.D. Cal. Mar. 22, 2019) (citing *Arteaga v. Carmax Auto Superstores W. Coast, Inc.*, No. 14-1888, 2014 U.S. Dist. LEXIS 95593, at *3 (C.D. Cal. July 11, 2014). Both Plaintiffs Miller and Franke's claims fail to satisfy the first element because the Defect, a design defect, is not covered by the NVLW. *See supra* Part III.C.2; *Milman v. FCA U.S., LLC*, No. 18-00686, 2018 U.S. Dist. LEXIS 226613, at *13–16, 20 (C.D. Cal. Aug. 30, 2018) (dismissing plaintiffs' breach of express warranty claims under the Song-Beverly Act because design defects were not covered by the warranty at issue).

Plaintiff Miller's claim additionally fails to satisfy the third element because he only presented his vehicle for repair once. Consol. Comp. ¶¶ 85–88. The Song-Beverly Act requires a "reasonable number of attempts," which indicates "repairs must exceed one attempt." *Knafo v. Jaguar Land Rover N. Am. LLC*, No. 18-01401, 2019 U.S. Dist. LEXIS 210836, at *4–5 (C.D. Cal. July 12, 2019). Plaintiffs Miller and Franke's breach of express warranty claims under the Song-Beverly Act should be dismissed.

### G.   Plaintiff Miller's breach of implied warranty claim under the Song-Beverly Act fails because the alleged breach did not occur within one-year of purchase. (Count V)

The maximum statutory implied warranty under the Song-Beverly Act runs for one year from the date new consumer goods are purchased. Cal. Civ. Code § 1791.1(c); *Yi v. BMW of N. Am., L.L.C.*, No. 2:17-cv-06467-SVW, 2018 U.S. Dist. LEXIS 171313, at *15 (C.D. Cal. May 24, 2018); *Tietsworth Sears, Roebuck & Co.*, 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010); *Peterson v. Mazda Motor of Am. Inc.*, 44 F. Supp. 3d 965, 972 (C.D. Cal. 2014). Plaintiff Miller's breach of implied warranty claim under the Song-Beverly Act fails because he purchased his Class Vehicle in June 2018 and alleges no failure within the limitations period. The first mention of any issues is in January 2020, well past the one-year statutory period. Consol. Compl. ¶¶ 82, 84.

**H.  Plaintiffs' fraud claims fail for several reasons. (Counts VI–XV)**

**1.  Plaintiffs fail to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).**

Plaintiffs' California, Florida, New Jersey, Illinois, Michigan, and Washington statutory consumer fraud claims (Counts VI-XI, XIV), and fraudulent concealment claim (Count XV), are subject to the heightened pleading standard of Rule 9(b).[9] When fraud is alleged, the Rule 8 standard is enhanced by Rule 9(b), which commands that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Specifically, the plaintiff must plead or allege the 'date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Granillo v. FCA US LLC*, No. 16-153, 2016 U.S. Dist. LEXIS 116573, at *16–17 (D.N.J. Aug. 29, 2016). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Kearns f. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Plaintiffs must state the precise conduct underlying their fraud claims. And, where a complaint alleges fraud against multiple defendants, the complaint must "plead with particularity … the [specific] allegations of fraud" applicable to each defendant. *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005).

Plaintiffs generally allege a fraudulent scheme to conceal from consumers that the Class Vehicles are supposedly defective. Plaintiffs assert in conclusory fashion that "Subaru"—with no distinction between SOA and SBR— intended to mislead consumers through both misrepresentations and material omissions" Consol. Compl. ¶¶ 166-67. Each is addressed separately.

---

[9] While not explicitly governed by Rule 9(b),when, as here, a plaintiff makes claims under N.Y. G.B.L. §§ 349–50 based on alleged omissions, she "must allege facts plausibly suggesting that (a) Defendant alone possessed material information about the defect, and (b) Defendant failed to provide that information to [her] and other consumers." *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 307 (N.D.N.Y. 2019).

### a.    Plaintiffs plead no affirmative misrepresentations.

The Consolidated Complaint pleads no actual statement, by any actual person, at any actual time. Instead, Plaintiffs advance generic assertions regarding build quality and vehicle capabilities made in advertising and other forms of communications. The Consolidated Complaint identifies no actual statements, when they were made, by whom they were made, or to whom they were made. Simply noting that SOA's website contains advertisements about safety and reliability, or making boilerplate allegations that "[p]rior to purchasing [their vehicles], [Plaintiffs] viewed Subaru marketing materials concerning the Class Vehicle, including Subaru television commercials and online advertising, viewed the Monroney sticker on the vehicle, and spoke with Subaru sales representatives concerning the vehicle's features," *id.* ¶¶ 31, 41, 48, 55, 61, 69, 76, 83, 90, 98, 103, 110, 116, without identifying those statements to any extent, at undisclosed dates and times, is far from sufficient.

Plaintiffs' wholly conclusory allegations of general "safety concerns," knowledge of the alleged defect, and unspecified affirmative misrepresentations do not suffice. These allegations are insufficient as a matter of law under Rules 9(b), 12(b)(6), *Twombly*, and *Iqbal*. No Plaintiff alleges he received any affirmative representations about the battery life or CAN programming, or relied on such representations when purchasing a vehicle. Such boilerplate allegations may properly be disregarded. *See In re Actimmune Mktg. Litig.*, No. 08-02376, 2009 U.S. Dist. LEXIS 103408, at *42 (N.D. Cal. Nov. 6, 2009). Those bare recitations are untethered to any actual facts, and courts have dismissed analogous claims. *See, e.g.*, *Block v. Jaguar Land Rover N. Am., LLC*, No. 15-cv-5957 (SRC), 2016 U.S. Dist. LEXIS 69085, at *9 (D.N.J. May 26, 2016) (dismissing fraud claims arising from alleged parasitic battery drain when no facts concerning misrepresentations were pleaded). For example, In *re MyFord Touch*, the court dismissed plaintiffs' fraud claims based on affirmative misrepresentations when they generically alleged, without details, they viewed advertisements and spoke to dealership employees about Ford's vehicles prior to purchase, 46 F. Supp. 3d 936, 954 (N.D. Cal. 2014). Plaintiffs here plead even less.

Unable to identify actionable misrepresentations, Plaintiffs aver that they saw advertisements or spoke with sales representatives regarding the vehicle's features or reliability. Consol. Compl. ¶¶ 31, 41, 48, 61, 69, 76, 83, 90, 98, 103, 110, 116. Plaintiffs also point to various general advertisements that speak to the vehicle as a whole and never representations regarding the specifics of the Class Vehicle's batteries or CAN system programming. Consol. Compl. ¶ 166. But, those "vague, highly subjective" statements are mere puffery and not actionable as opposed to "specific, detailed factual assertions" that are entirely lacking from Plaintiffs' Complaint. *In re Toshiba America HD DVD Marketing and Sales Practices Litigation*, No. 08-939, 2009 U.S. Dist. LEXIS 82833, at *32 (D.N.J. Sept. 11 2009) (quoting *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994)); *see also Roe v. Ford Motor Co.*, No. 18-12528, 2019 U.S. Dist. LEXIS 130956, at *12 (E.D. Mich. Aug. 6, 2019) (holding certain statements as mere puffery because "[i]n some instances, Ford [was] touting the safety or durability of its entire fleet of vehicles" and "even when Ford reference[d] a single model, the statements refer to the vehicle as whole"); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 750 (E.D. Mich. 2017) ("[T]o the extent [Plaintiff] is claiming that he relied on any [of Defendant's] representations regarding their vehicles' general safety, quality, reliability, or performance, those assertions undoubtedly constitute non-actionable puffery."); *Resnick v. Hyundai Motor Am., Inc.*, No. 16-00593, 2016 U.S. Dist. LEXIS 160179, at *29 (C.D. Cal. Nov. 14, 2016) ("Defendants' representations that its paint process was 'state-of-the art' and 'will stand the test of time' were mere puffery."); *Beshwate v. BMW of N. Am., LLC*, No. 17-00417, 2017 U.S. Dist. LEXIS 204467, at *32-33 (E.D. Cal. Dec. 12, 2017); *Robinson v. Kia Motors Am., Inc.*, No. 13-006, 2015 U.S. Dist. LEXIS 121755, at *10-11 (D.N.J. Sept. 11, 2015) (finding the statement "[w]e have a lot of confidence in the quality and durability of every new Kia that rolls off the assembly line. So much confidence, that we offer an industry-leading Kia 10-year or 100,000-mile warranty program" non-actionable puffery).

**b.      Plaintiffs fail to adequately plead fraudulent omissions.**

Plaintiffs similarly fail to adequately plead any fraudulent omissions. They allege no

actual knowledge by anyone at SOA or SBR, but instead repeat generic allegations throughout

the Consolidated Complaint. Parroting vague and unfounded conclusions, Plaintiffs allege that

> Subaru easily could have provided Class Vehicle owners and lessees with adequate and satisfactory notice of the Defect, including through its sales and marketing representations, its network of agents and dealers, in owners' manuals, on its website, in Class Vehicle brochures, and on Class Vehicle Monroney stickers. Had Subaru disclosed the Defect in any of these places, reasonable consumers would have been aware of it. But, instead of notifying the consuming public or Class Vehicle owners and lessees of the Defect, Subaru actively concealed this material information from Plaintiffs and similarly situated consumers and continued to sell and lease Class Vehicles.

Consol. Compl. ¶ 167.

Plaintiffs baldly assert, with no supporting factual specificity, that the Subaru Defendants

knew or should have known of the alleged defect before selling Plaintiffs' vehicles. Consol.

Compl. ¶ 146. To support those unfounded assertions, Plaintiffs first make general allegations

about "internal pre-release testing data." *Id.* That allegation is woefully insufficient. At no point

do Plaintiffs allege that any such pre-release testing actually revealed any defect, nor do

Plaintiffs allege any background concerning any pre-release testing. Such pleading failures

mandate dismissal. *See Cummings*, 401 F. Supp. 3d at 308–09 ("Plaintiff does not allege any

facts plausibly suggesting that this testing in fact showed any sort of defect … or any occurrence

of the problems Plaintiff alleges she and others have experienced … [T]he mere existence of

[pre-production] testing, without any allegations as to what the testing revealed, does not

plausibly suggest that Defendant was aware of the alleged defect.")

Nor or Plaintiffs' broad and generic statements that SOA collects data and warranty

information and maintains an internal quality management system, Consol. Compl. ¶¶ 147–51,

sufficient to satisfy the heightened pleading standard of Rule 9(b) or even Rule 8's plausibility

standard.[10] *See Gotthelf v. Toyota Motor Sales*, U.S.A., 525 F. App'x 94, 104 (3d Cir. 2013). In *Gotthelf*, the Third Circuit affirmed dismissal on the pleadings of statutory fraud claims where plaintiff alleged "that Toyota should have been aware of the [alleged] defect through its own '[b]ooks of [k]nowledge, internal testing, information on dealership repair orders, warranty data, [and] records of customer complaints.'" *Id*. The court ruled that such general allegations about a car company's business operations were insufficiently pleaded because the plaintiff did "not state when the alleged complaints were received, or to whom at Toyota these alleged complaints were sent." "Such conclusory allegations [were] insufficient to establish Toyota's knowledge, and concealment, of the [alleged] defect." *Id.*

Having alleged no presale knowledge based on supposed "internal pre-release testing," Plaintiffs point to complaints posted on the National Highway Traffic Safety Administration's ("NHTSA") website (many of which do not apply to vehicles owned by Plaintiffs), statements appearing in online forums, and on a technical service bulletin ("TSB") previously issued by SOA in 2014 that *does not apply* to the Class Vehicles. Consol. Compl. ¶¶ 156–63. In essence, Plaintiffs are attempting to use post-sale service data and owner complaints to third parties to suggest that the Subaru Defendants had pre-sale knowledge of the supposed battery design defect. If Plaintiffs suggest that warranty data and NHTSA communications from vehicles *in use* would have been available *before* the vehicles were sold, that argument strains credulity.

Those cited complaints to NHTSA or posted on other third-party websites were not made to either SOA or SBR, and they provide no support for Plaintiffs' fraud claims. *See, e.g.*, *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1370 (N.D. Ga. 2013) (quoting *Friedman v. Am. Guardian Warranty Servs.*, 837 So.2d 1165, 1166 (Fla. Dist. Ct. App. 2003) (holding "[f]raud based upon a failure to disclose material information exists only when a duty to make such disclosure exists" and finding no duty to disclose alleged defect when plaintiff failed to plausibly

---

[10] The Court may take judicial notice of the fact that every automotive company collects warranty data and maintains a quality management system as required by federal regulations (e.g., TREAD Act and NHTSA's early warning reporting regulations, 49 C.F.R. §§ 579.1–.21). Therefore, Plaintiffs' allegations say nothing about the Subaru Defendants' requisite knowledge.

allege knowledge of the defect before sale)). Likewise, Plaintiffs' references to online forums and twitter are similarly unavailing. Setting aside that most the posts referenced in the Consolidated Complaint post-date the sale of most of the named plaintiffs' vehicles, "[c]ourts in this district have repeatedly found that consumer complaints on third-party websites are not sufficient to infer a manufacturer's knowledge of a product defect where there are no allegations that the manufacturer saw such complaints." *Granillo*, 2016 U.S. Dist. LEXIS 116573, at *29–30; *see also Fisher v. Honda N. Am., Inc.*, No. 13-09285, 2014 U.S. Dist. LEXIS 84570, at *13–14 (C.D. Cal. June 12, 2014) (finding allegations of consumer complaints on government website allegedly "tracked" by the defendant could not support presale knowledge; *Alban v. BMW of N. Am., LLC*, No. 09-5398, 2011 U.S. Dist. LEXIS 26754, at *3, 10–12 (D.N.J. Marc. 15, 2011) (declining to view statements made to third parties as admission of knowledge).

Nor can Plaintiffs' citation to TSB No. 07-85-14, issued in 2014, support a fraud claim because that bulletin, does not apply to the Class Vehicles that postdate the models sold in 2014. *See* Walters Decl., Ex. D (TSB 07-85-14); *see supra* Part II.A. Nor does that TSB identify the CAN defect alleged by Plaintiffs as the cause of any parasitic battery drain.[11] *See Block v. Jaguar Land Rover N. Am., LLC*, No. 15-cv-5957 (SRC), 2019 U.S. Dist. LEXIS 221297, at *15–17, 30 (D.N.J. Dec. 23, 2019) (dismissing NJCFA and common law fraud claims alleging fraudulent omission regarding to battery drain defect when the TSBs relied on by the plaintiffs discussed a different underlying cause than that alleged). For that reason, Plaintiffs citation to TSBs regarding other potential issues arising in the field—*see, e.g.*, TSB No. 07-89-15R (concerning "no start condition during very cold temperatures");[12] TSB No. 07-106-16R (concerning replacement of battery sensor to prevent unnecessary check-engine light);[13] TSB No. 11-174-17R (addressing unnecessary check-engine light, battery discharge after "repeated short-trip

---

[11] Indeed, TSB No. 07-85-14 does not identify any cause of parasitic battery draw. It simply details the diagnostic method to be undertaken to determine if the parasitic dray on the battery is within the acceptable tolerance.

[12] Consol. Compl. at 34 n. 6.

[13] *Id.* at n. 7.

DMEAST #41743007 v4

driving," and high idle after depressing clutch pedal)[14]—cannot support fraud claims because they in no way demonstrate presale knowledge of the software programming defect *actually alleged* in the Consolidate Complaint. *See Block*, 2019 U.S. Dist. LEXIS 221297, at *15–17.

Further, the additional TSBs referenced in the Consolidated Complaint cut against Plaintiffs' omission-based claim because those documents were—as demonstrated by Plaintiffs' citations—publicly available on NHTSA's website and Plaintiffs, at a minimum, had constructive notice of it.[15] *See, e.g.*, Cal. Civ. Code § 1795.91(a) (requiring new vehicle dealerships to post signage notifying customers that TSBs are available from the manufacturer or NHTSA). Such notice is fatal to Plaintiffs' fraud claims. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1006 (E.D. Mich. 2017) (dismissing fraud claims based on allegedly concealed defect when defendant had previously filed a recall notice of defect with NHTSA); *Darne v. Ford Motor Co.*, No. 13-03594, 2015 U.S. Dist. LEXIS 169752, at *39 (N.D. Ill. Dec. 18, 2015) (acknowledging "[t]hat Ford publicly issued a number of TSBs related to the 6.4L engine is incompatible with the allegations that it attempted to conceal these defects" and that plaintiff "could have discovered that information with the exercise of reasonable diligence").

The statutory fraud claims asserted against SBR are even more tenuous because SBR does not sell, distribute, market, warrant, or service Subaru vehicles in the United States, and could never have omitted or misrepresented any information to Plaintiffs in marketing materials, during a sale transaction, or otherwise. *See Subaru Distribs. Corp*, 2004 U.S. Dist. LEXIS 27086, at *5. Nor could SBR have had a duty to avoid making any omission or misrepresentation. *See McCabe*, 948 F. Supp. 2d at 1370; *Kas v. Mercedes-Benz U.S., LLC*, No.

---

[14] *Id.* at n. 8.

[15] These documents relied on in the Consolidated Complaint may be considered without converting this motion to one for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 at 1426. They are also available on NHTSA's website and their authenticity cannot reasonably be disputed. *See* Fed. R. Evid. 201(c)(2); *Otsuka Pharm. Co. v. Torrent Pharm. Ltd.*, 118 F. Supp. 3d 646, 654–55 n.7 (D.N.J. 2015) (taking judicial notice of an FDA press release available on the agency's website).

11-1032, 2012 U.S. Dist. LEXIS 196248, at *5 (C.D. Cal. Jan. 19, 2012) (dismissing claims against foreign parent because no transaction ever occurred between parent and Plaintiff).

Finally, Plaintiffs' mention of the "Monroney sticker" is irrelevant for both their fraudulent misrepresentation and omission claims because the categories of information to be included on that label are prescribed by law and do not include information about potential vehicle defects. *See* 15 U.S.C. § 1232 (delineating label and entry requirements). It is insufficient to allege that the Subaru Defendants omitted information that, by law, is not disclosed on this label.

Plaintiffs have pleaded no facts or specifics that establish who at SOA or SBR supposedly knew about the alleged defect or when that knowledge supposedly came about. Plaintiffs' omission-based fraud claims must be dismissed.

**2. Plaintiff Baladi and O'Shaughnessy's NYGBL claims under Section 350 fail to sufficiently allege they relied upon misleading advertisements. (Count XIII)**

"The standard for NYGBL § 350 is identical but only applies to false advertising and requires 'proof of actual reliance.'" *Tobin v. Samsung Elecs. Am.*, No. 18-12473, 2019 U.S. Dist. LEXIS 52360, at *21-22 (D.N.J. Mar. 27, 2019) (quoting *Tomasino v. Estee Lauder Co.*, Inc., 44 F. Supp. 3d 251, 257 (E.D.N.Y. 2014) (citing *Goshen v. Mitt. Life Ins. Co. of N.Y.*, 746 N.Y.S.2d 858 (2002)); *see also Morrissey v. Nextel Partners, Inc.*, 895 N.Y.S.2d 580 (N.Y. App. Div. 2010) ("[P]laintiffs' cause of action for false advertising under General Business Law § 350, unlike their General Business Law § 349 claim, requires proof of reliance."). A claim for false advertising has four elements: (1) the advertisement was consumer-oriented, (2) the advertisement was materially misleading, (3) the plaintiff relied on the advertising, and (4) the plaintiff was injured because of the advertisement. *Zaccagnino v. Nissan N. Am., Inc.*, No. 14-3690, 2015 U.S. Dist. LEXIS 78441, at *7 (S.D.N.Y. June 16, 2015) (quoting *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005)). "The reliance requirement 'means that the plaintiff must 'point to [a] specific advertisement or public pronouncement' upon which he or she

relied.'" *Id.* In *Zaccagnino*, the court noted that the following allegation was the only allegation of reliance for the named plaintiff:

> Plaintiff saw advertisements for Nissan vehicles on television, in magazines, on billboards, in brochures and on the internet before he purchased his Altima. Before he purchased the 2013 Altima, he recalls that safety and quality were consistent themes across the advertisements he saw. These representations about safety and quality influenced Plaintiffs decision to purchase the 2013 Altima.

*Id.* at 7-8. The court did not focus on this entire allegation. Instead, the court concluded "consideration of the section 350 claim is limited to those themes of quality and safety that [the named plaintiff] allegedly relied on." *Id.* at 8. The court dismissed the plaintiff's NYGBL claim under Section 350 because such allegations are puffery and insufficient to demonstrate reliance under Section 350. *Id.* ("Like speed and ease for internet service, safety and reliability are desirable qualities for a car. However, promoting a car as generally safe and reliable is too general a representation to be proven true or false. It is puffery and cannot be materially misleading under section 350.").

The only allegations that even detail the substance of what Plaintiffs Baladi and O'Shaughnessy relied on are advertisements regarding reliability, safety, and quality of the Class Vehicles. Consol. Compl. ¶¶ 61, 69, 147, 350. Under *Zaccagnino*, these allegations of reliance are insufficient because promoting a car as generally safe and reliable is puffery and Plaintiffs Baladi's and O'Shaughnessy's Section 350 claims should be dismissed. *See Beshwate*, 2017 U.S. Dist. LEXIS 204467, at *32–33; *Robinson*, 2015 U.S. Dist. LEXIS 121755, at *10–11; *Tatum v. Chrysler Grp. L.L.C.*, No. 10-cv-4269(DMC)(JAD), 2011 U.S. Dist. LEXIS 32362, at *13–15 (D.N.J. Mar. 28, 2011).

### 3. Plaintiffs fail to state a claim under the New York statutes because no alleged misconduct occurred in New York. (Counts XII & XIII)

To state a claim under New York's consumer protection statute and false advertising law, "the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1195 (N.Y. 2002); *see also Berkman*, 841 N.Y.S.2d at 825. To have standing under either statute, a plaintiff must allege that the deceptive acts giving rise to the claim took place

inside the State of New York.  *See Neu v. Neu*, 756 N.Y.S.2d 598, 598 (2d Dep't 2003); *Mountz v. Glob. Vision Prods.*, 770 N.Y.S.2d 603, 603 (2003). Here, Plaintiffs strive to convince the Court that the allegedly deceptive acts occurred in either New Jersey or Japan, not in New York. *See* Consol. Compl. ¶¶ 23-24, 166-77.

> ### 4.   Plaintiff Beck's MCPA claim fails because automotive sales are exempt from the MCPA. (Count XI)

"The MCPA does not apply to '[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States.'" *Matanky v. GM LLC*, 370 F. Supp. 3d 772, 799 (E.D. Mic. 2019) (quoting Mich. Comp. Laws § 445.904(1)). "The Michigan Supreme Court construes this exemption broadly, finding that 'the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Id.* (quoting *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210 (2007)). "[T]he sale of a new car by a licensed dealer … is one specifically authorized and regulated by law; thus it is exempt from the MCPA." *Id.* (citing *Jimenez v. Ford Motor Credit Co.*, 2015 Mich. App. LEXIS 2429 (Mich. Ct. App. Dec. 22, 2015); *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 U.S. Dist. LEXIS 193339 (E.D. Mich. Oct. 21, 2016)), *aff'd* 708 F. App'x 242 (6th Cir. 2017); *see also Divis v. GM LLC*, No. 18-13025, 2019 U.S. Dist. LEXIS 166570, *23 (E.D. Mic. Sept. 27, 2019).

> ### 5.   Plaintiff Bulgatz's ICFA must dismissed to the extent it seeks relief under the unfair practices prong of ICFA. (Count X)

ICFA claims based on unfair practices need not satisfy 9(b). However, "plaintiffs cannot rely on the same conduct to establish separate unfair and deceptive theories under the ICFA." *In re VTech Data Breach Litig.*, No. 15-10889, 2018 U.S. Dist. LEXIS 65060, at *21 (N.D. Ill. Apr. 18, 2018). ICFA claims based entirely on alleged deceptive conduct, whereby a Defendant omitted information about the defect, must satisfy the 9(b) requirement and Plaintiff Bulgatz cannot avoid this pleading requirement by simply stating a defendant's actions were unfair. *Quitno v. General Motors, LLC*, No. 18-07598, 2020 U.S. Dist. LEXIS 26904, at *11-12 (N.D.

Ill. Feb. 18, 2020); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 579-580 (C.D. Cal. 2019). Here,

Plaintiff Bulgatz, in a conclusory fashion, alleges Defendants actions were unfair *and* deceptive;

however, he only includes allegations of deceptive conduct.  Consol Compl. ¶¶ 322-26. His

ICFA claim must dismissed to the extent it seeks relief under the unfair practices prong.

### 6. Plaintiffs Miller and Franke's UCL claims must be dismissed to the extent they seek monetary relief; and they may not recover restitution damages from Subaru. (Count VIII)

The only relief available under the UCL is injunctive relief or restitution. To the extent

any other relief is sought, it is not available. *Saitsky v. DirecTV, Inc.*, No. 08-cv-7918, 2009 U.S.

Dist. LEXIS 134817, at *5 (C.D. Cal. Sept. 22, 2009); *see also Chowning v. Kohl's Dep't Stores,

Inc.*, No. 15-8673, 2016 U.S. Dist. LEXIS 187402, at *1 (C.D. Cal. July 27, 2016). Restitution is

not available from SOA or SBR because the third-party retailers are the entities that would have

received money for repairing Plaintiffs' vehicles. Restitution is limited to situations in which the

defendant directly took property from plaintiff.  *Rosen v. Uber Tech., Inc.*, 164 F. Supp. 3d 1165,

1178 (N.D. Cal. 2016); *Acedo v. DMAX, Ltd.*, No. 15-02443, 2015 U.S. Dist. LEXIS 189402, at

*16 (C.D. Cal. July 31, 2015).

Even if there are no direct dealings, the California Plaintiffs must still plead sufficient

allegations demonstrating their purchase monies can be traced to Subaru's possession. *Acedo v.

DMAX, Ltd.*, No. 15-02443, 2015 U.S. Dist. LEXIS 189402, at *47–48 (C.D. Cal. July 31,

2015). In *Acedo*, the plaintiff merely alleged "[d]efendants earned direct and indirect profits from

the deceptive sale of the trucks" and that the plaintiffs paid a premium price to GM because they

were unaware of the alleged defect and GM misrepresented the true quality of the product. *Id.* at

*47. That could not state a claim for restitution because the allegations did not indicate

"defendants, as opposed to independent GM dealers, obtained [plaintiff's] money or property, or

that defendants are in possession of funds that rightly belong to [plaintiff]." *Id.* at *47–48. The

California Plaintiffs' claims for restitution fail for the same reasons because they fail to allege

Defendants rather than the dealerships have the funds that rightly belong to them. *See generally*

Consol. Compl.

7.     **Plaintiff Franke's CLRA claim is time barred. (Count VII)**

Under the CLRA, the three-year statute of limitations commences on the date the improper consumer practice is alleged to have been committed. Cal. Civ. Code § 1783. A CLRA claim generally runs from purchase when a plaintiff alleges omissions or misrepresentations at the time of sale. *See, e.g.*, Consol. Compl. ¶¶ 166–68, 279; *see also Watkins v. Vital Pharms., Inc.*, No. 12-09374, 2013 U.S. Dist. LEXIS 162495, at *14–16 (C.D. Cal. Nov. 7, 2013); *Asghari v.Volkswagen Group of Am., Inc.*, 42 F. Supp. 3d 1306, 1319 (C.D. Cal. 2013); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 544 (C.D. Cal. 2012). Plaintiff Franke's CLRA claim expired in February 2018—three years following his purchase—and is untimely.

8.     **Plaintiff Miller and Franke's UCL and CLRA claims for equitable relief also must be dismissed because they have an adequate remedy at law. (Counts VII–VIII)**

"It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." *Loo v. Toyota Motor*, No. 19-00750, 2019 U.S. Dist. LEXIS 225771, at *39 (C.D. Cal. Dec. 20, 2019) (quoting *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996). "[E]quitable relief is not appropriate where an adequate remedy exists at law." *Id.* (quoting *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009)). For determining whether there is an adequate remedy, the question is not whether plaintiffs are likely to prevail on their legal claims. Instead, the question is whether, assuming they could prevail, the remedy available would be "adequate." *Mullins v. Premier Nutrition Corp.*, No. 13-01271, 2018 U.S. Dist. LEXIS 10810, at *5 (N.D. Cal. Jan. 23, 2018). "[L]egal and equitable claims based on the same factual predicates are not 'true alternative theor[ies] of relief but rather [are] duplicative.'" *Loo*, 2019 U.S. Dist. LEXIS 225771, at *40. Here, Plaintiffs Miller and Franke fail to "allege[] how their legal claims would not provide them with an 'adequate remedy law'" and their equitable UCL and CLRA claims rely on "the same factual predicates" as their breach of warranty and fraud claims. *Id.* The dismissal of Plaintiff Miller and Franke's UCL and CLRA claims for equitable relief is warranted. *See Id.* (dismissing plaintiffs' equitable UCL claims as duplicative of their breach of warranty and fraud claims); *Mullins*, 2018

- 34 -

U.S. Dist. LEXIS 10810, at *5-13 (dismissing plaintiffs equitable UCL and CLRA claims where an adequate remedy at law existed despite plaintiffs' election to not pursue a damages remedy under the CLRA).

### 9.   The economic loss doctrine bars certain Plaintiffs fraudulent concealment claims. (Count XV)

Under the "economic loss" rule, a claim that a product has disappointed a customer may proceed only as a claim for breach of contract or warranty, if at all. *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871–72 (1986); *see also Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 615 (7th Cir. 2001) (quoting *Collins v. Reynard*, 154 Ill. 2d 48 (1992) ("In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations.")). Plaintiffs attempt to frame their dissatisfaction with the Class Vehicles as a scheme to induce individuals to purchase Subaru vehicles, but their claims are grounded in the assertion that they did not receive the full benefit of their bargain. *See* Consol. Compl. ¶ 371. They are attempting to predicate a tort claim, fraudulent concealment, on a purely economic loss.  Those claims are barred because a purchaser may not sue in tort based on the allegation that the product she purchased did not perform as expected.

Under New Jersey, Florida, California, and Illinois, the economic loss doctrine precludes fraud claims that are not extraneous to express warranty claims, such as claims where, the same alleged representations by defendants are cited as underlying both the warranty and tort claims and concern the quality of goods subject to the contract. *Red Hawk Fire & Sec., LLC v. Siemens Indus.*, No. 19-13310, 2020 U.S. Dist. LEXIS 54563, at *23 (D.N.J. Mar. 30, 2020); *In re Big Heart Pet Brands Litig.,* No. 18-00861, 2019 U.S. Dist. LEXIS 229340 (N.D. Cal. Oct. 4, 2019); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1104 (S.D. Fla. 2019) (S.D. Fl. Sept. 30, 2019) (applying the economic loss doctrine to plaintiff's fraud claims where the plaintiff sought "economic loss damages for his 'fraud or fraudulent concealment' claim, which allege[d] precisely what his breach of warranty claim allege[d]—that his Toyota Camry did not work as

promised"); *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, No. 10-61519, 2011 U.S. Dist. LEXIS 51440, at *17 (S.D. Fl. May 13, 2011) (applying Illinois and Florida law and noting "[w]here the only alleged misrepresentations concerns the heart of the parties' agreement simply applying the lanes of 'fraudulent inducement' to a cause will not suffice to subvert the sound policy rationales underlying the economic loss doctrine.").

Here Plaintiffs Burd, Gill, Hansel, McCartney, Franke, Miller, Stone, and Bulgatz's fraudulent concealment claims are not extraneous to the NVLW because they relate to the quality or character of the vehicle sold. The vehicle sold is the subject of the parties' bargain for the product and, therefore, not extraneous to the contractual claim. Consol. Compl. ¶¶ 366-72.

### 10.   Plaintiff Davis's fraudulent concealment fails because Texas does not recognize a cause of action for fraudulent concealment. (Count XV)

Under Texas law, "[f]raudulent concealment is not an independent cause of action, but is rather a tolling provision to prevent the defendant from relying upon a statute of limitations period as an affirmative defense. *Sweezey v. C.R. Bard Inc.*, No. 19-2172, 2020 U.S. Dist. LEXIS 43922, at *4 (N.D. Tex. Mar. 12, 2020). Plaintiff Davis's fraudulent concealment must be dismissed.

### I.   Plaintiffs' unjust enrichment claims fail for several reasons. (Count XVI)

### 1.   An express contract covers the identical subject matter of the unjust enrichment claims and Plaintiffs rely on such a contract in pleading their unjust enrichment claim.

"Unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1182 (N.Y. 2012). It is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.* That is why pleading of simultaneous breach of contract and quasi-contractual claims is not permitted when a valid contract covers the subject matter of the quasi-contractual claim. *Dialectic Distrib. LLC v. Power Play Mktg. Grp., LLC*, No. 18-003388, 2018 U.S. Dist. LEXIS 217827, at *9 (D.N.J. Dec. 28, 2018) ("[Where] there is an express contract covering the identical subject matter of the claim, plaintiff[s] cannot pursue a quasi-contractual claim for

unjust enrichment."); *see also Elfaridi v. Mercedes-Benz USA, LLC*, No. 16-1896, 2018 U.S. Dist. LEXIS 145196, at *26-30 (E.D. Mo. Aug. 27, 2018) (dismissing plaintiff's Washington unjust enrichment claim where the claim was based "based in part on the express terms of the warranty, it arises out of the warranty contract and must be dismissed"); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 850 (S.D. Ohio July 19, 2012) (dismissing plaintiffs' Illinois unjust enrichment claims where the parties did not dispute the warranty covered the subject matter of the unjust enrichment claim and the validity of the warranty was undisputed); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) (dismissing a Florida unjust enrichment claim because no one contested the existence of a valid and enforceable express contract).

An unjust enrichment claim that incorporates by reference all of the preceding paragraphs must fail where earlier in the complaint, the plaintiff pleads the "existence of an express contract covering the identical subject matter of the claim. *Dialectic Distrib. LLC*, 2018 U.S. Dist. LEXIS 217827, at *9. Even though it states the claims are pled in the alternative, Plaintiffs failed to correctly plead their unjust enrichment claims in the alternative to their contract claims. Plaintiffs incorporate by reference all preceding paragraphs, which includes allegations on how Subaru breached its express warranty, into their unjust enrichment claims. Consol. Compl. ¶¶ 204–18, 373.

### 2. Plaintiffs did not purchase their vehicles directly from SOA or SBR.

Plaintiffs each alleged they purchased their vehicles from independent third parties—not SOA or SBR. And Plaintiffs fail to allege any direct relationship with either Defendant or that they directly conferred any benefit upon Defendants that they retained to their detriment. That is fatal to their unjust enrichment claims. *Block*, 2016 U.S. Dist. LEXIS 69085, at *9 (D.N.J. May 26, 2016); *Laney v. Am. Standard. Cos.*, No. 07-3991, 2010 U.S. Dist. LEXIS 100129, at *34–35 (D.N.J. Sept. 23, 2010).

3.      **Plaintiffs do not allege they expected remuneration from the Subaru Defendants.**

Plaintiffs also fail to plead that they expected remuneration from the Subaru Defendants—a required element of an unjust enrichment claim. *Block v. Jaguar Land Rover N. Am., LLC*, No. 15-cv-5957 (SRC), 2017 U.S. Dist. LEXIS 31807, at *5 (D.N.J. Mar. 7, 2017) (dismissing with prejudice unjust enrichment claim arising from supposed parasitic battery drain defect).

4.      **Plaintiffs Stone's, Baladi's, and O'Shaughnessy's unjust enrichment claims are duplicative of their consumer fraud claim.**

Plaintiffs Stone's, Baladi's, and O'Shaughnessy's unjust enrichment claims must be dismissed because they duplicates their fraud claims. When a plaintiff's unjust enrichment claim is predicated upon the same alleged wrongful conduct as her consumer fraud claims, the unjust enrichment claim must be dismissed. *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524–25 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of claims under § 349 and for fraud); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236–37 (S.D. Fla. 2007) (dismissing unjust enrichment claim where "plaintiffs seek recovery for the exact same wrongful conduct as in their consumer fraud" claims) (citing *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) ("The [d]efendants' quasi contract claim is predicated on the same set of allegations supporting their claims under … FDUTPA. Accordingly, … Defendants have not stated a claim upon which relief may be granted for … unjust enrichment.")). Importantly, even if the other duplicative claims are dismissed, the unjust enrichment claim still fails because the "unjust enrichment claim would not remedy the defects because of the similarity in the underlying allegations." *Reynolds*, 136 F. Supp. 3d at 524.

Further, unjust enrichment is "not available where there is an adequate legal remedy." *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333, 1342 (S.D. Fla. 1998). "[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of

action" and rightfully dismissed as duplicative. *Licul v. Volkswagen Grp. of Am.*, No. 13-61686, 2013 U.S. Dist. LEXIS 171627, at *19-20 (S.D. Fla. Dec. 5, 2013).

> ### J.      Plaintiffs seek injunctive relief they lack standing to pursue.

Among other relief, Plaintiffs seek "[a]no order permanently enjoining Subaru from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged" in the Consolidated Complaint. Consol Compl. at 108. To the extent Plaintiffs are seeking base their fraud claims on supposed false advertising, *e.g.*, Consol. Compl. ¶¶ 166, 263, 279, 339, 346, they lack Article III standing to pursue such injunctive relief as past purchasers. *See Berni v. Barilla S.P.A.*, No. 19-1921-cv, 2020 U.S. App. LEXIS 21167, at *14 (2d Cir. July 8, 2020); *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 225-26 (3d Cir. 2012).

> ### K.      Plaintiffs' Consolidated Complaint fails to plead which claims are asserted against which defendant and must be dismissed for that reason; or, alternatively, the Subaru Defendants are entitled to a more definite statement.

Plaintiffs make indiscriminate allegations against "Defendants" or "Subaru" without specifically referring to either SOA or SBR. *See generally* Consol. Compl. That is, the Consolidated Complaint is a classic vague and inconsistent shotgun pleading that "assert[s] multiple claims against multiple defendants without specifying which of defendants are responsible for which acts or omission, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Washington v. Warden Sci-Greene*, 608 F. App'x 49, 51 (3d Cir. 2015). "Such a pleading is never plain because it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. January 21, 2020); *Ramziddin v. Monmouth Cnty. Sheriff Dep't*, No. 09-4829 (FLW), 2010 U.S. Dist. LEXIS 42798, at *20 (D.N.J. Apr. 30, 2010) ("[T]he claims must be stated in a manner that specifies which defendant engaged in which specific acts that are alleged to give rise to liability."); *Kounelis v. Sherrer*, No. 04-4714, 2005 U.S. Dist. LEXIS 20070, at *10 (D.N.J. Sept. 5, 2005) ("[I]n multiple defendant actions, the complaint must 'clearly specify the claims with which each individual defendant is charged.'")

(quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1248 (2d ed. 1990)).

Plaintiffs' Consolidated Complaint must be dismissed for failing to satisfy the basic pleading standards of Rule 8(a)(2). Some Circuit Courts have even gone so far recently as to instruct district courts to sua sponte order repleading of such complaints. *See, e.g.*, *Estate of Bass*, 947 F.3d at 1358. At a minimum, the Subaru Defendants are entitled to a more definite statement under Federal Rule of Civil Procedure 12(e) regarding which claims are asserted against which Defendant. Without that information, which is entirely within the possession of Plaintiffs and unknown to the Subaru Defendants, it is not possible to frame an answer.

## IV.   CONCLUSION

For all these reasons, Defendants SOA and SBR respectfully request this Court enter an order dismissing Plaintiffs' claims as stated above for lack of subject matter jurisdiction or for failure to state a claim.

Dated: August 3, 2020

Respectfully submitted,

*s/Neal Walters*

Neal Walters (ID No. 020901993)
waltersn@ballardspahr.com
Casey Watkins (ID No. 060122014)
watkinsc@ballardspahr.com
Kristen Petagna
petagnak@ballardspahr.com
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
856.761.3400
856.761.1020 fax

Attorneys for Defendants Subaru of America, Inc. and Subaru Corporation