## UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re Subaru Battery Drain Products Liability Litigation | Civil Action No. 1:20-cv-03095-JHR-JS<br><br>**Opinion** |

This matter comes before the Court on the Motion to Dismiss or for a More Definite Statement filed by Defendants Subaru of America, Inc. ("SOA") and Subaru Corporation ("SBR") (collectively "Defendants") [Dkt. 34] in the above-referenced case, and the opposition thereto filed by Plaintiffs Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George (collectively "Plaintiffs") individually and on behalf of all others similarly situated (the "Class"). [Dkt. 38]. The Court has reached the following conclusions:

1. Defendants' motion to preclude Plaintiffs from seeking remedies for Subaru Forester and 2020 Subaru Legacy vehicles for lack of standing is GRANTED;

2. Defendants' motion to dismiss all of Plaintiffs' express warranty claims against SBR (Counts II–IV) is GRANTED;

3. Defendants' motion to dismiss all of Plaintiffs' express warranty claims (Counts II-IV) for improperly alleging a design defect is DENIED;

4. Defendants' motion to dismiss Plaintiffs Gill and George's common-law express warranty claims for failure to present their vehicles for repair is hereby GRANTED (Count II);

5. Defendants' motion to dismiss Plaintiffs Burd, Baladi, Miller and Stone's common-law express warranty claims (Count II) for inadequate opportunity to repair is GRANTED;

6.  Defendants' motion to dismiss Plaintiffs Hansel, O'Shaughnessy, and Davis's common-law express warranty claims (Count II) for failure to allege continued defects is GRANTED;

7.  Defendants' motion to dismiss common-law express warranty claims (Count II) for lack of pre-suit notice is DENIED as to Plaintiffs Beck (Michigan) and Davis (Texas), and GRANTED as to Plaintiff Bulgatz (Illinois);

8.  Defendants' motion to dismiss common-law implied warranty claims (Count I) for lack of privity is DENIED as to California Plaintiffs Franke and Miller, Florida Plaintiff Stone, New York Plaintiffs Baladi, McCartney, and O'Shaughnessy, and GRANTED as to Illinois Plaintiff Bulgatz;

9.  Defendants' motion to dismiss common-law implied warranty claims (Count I) as untimely is DENIED as to Plaintiff George and GRANTED as to Plaintiff Franke;

10. Defendants' motion to dismiss Plaintiffs' Magnuson-Moss Warranty Act (Count III) claims for lack of standing is GRANTED;

11. Defendants' motion to dismiss express warranty claims under the Song-Beverly Act (Count IV) is GRANTED as to Plaintiff Miller, and DENIED as to Plaintiff Franke;

12. Defendants' motion to dismiss Plaintiff Miller's implied warranty claim under the Song-Beverly Act (Count V) as untimely is DENIED;

13. Defendants' motion to dismiss Plaintiffs' common-law and statutory fraud claims is GRANTED to the extent Plaintiffs have alleged affirmative fraudulent misrepresentations;

14. Defendants' motion to dismiss Plaintiffs' statutory fraud and fraudulent concealment claims for lack of knowledge is DENIED;

15. Defendants' motion to Dismiss Plaintiffs' fraud claims as to SBR for lack of duty is GRANTED as to Plaintiffs' New Jersey Consumer Fraud Act (Count VI), Illinois Consumer Fraud and Deceptive Business Practices Act (Count X), and common-law fraudulent concealment under New Jersey, Illinois, Michigan, and Florida law (Count XV), but is otherwise DENIED;

16. Defendants' motion to dismiss claims under Sections 349 and 350 of the New York General Business Law (Counts XII and XIII) for failure to plead deceptive practices in New York is DENIED as to Plaintiffs Baladi and O'Shaughnessy, but GRANTED as to Plaintiff McCartney;

17. Defendants' motion to dismiss claims under Section 350 of the New York General Business Law (Count XIII) as to Plaintiffs Baladi and O'Shaughnessy is

DENIED;

18. Defendants' motion to dismiss Plaintiff Bulgatz's Illinois Consumer Fraud and Deceptive Business Practices Act claim (Count X) for "unfair" conduct is GRANTED;

19. Plaintiff Beck's Michigan Consumer Protection Act claim (Count XI) is DISMISSED;

20. Defendants' motion to limit remedies available to Plaintiffs Miller and Franke under the California Unfair Competition Law (Count VIII) to restitution and injunctive relief is GRANTED;

21. Defendants' motion to dismiss Plaintiffs' California Unfair Competition Law claims (Count VIII) for failing to plead traceability is DENIED;

22. Defendants' motion to dismiss Plaintiff Franke's claim under the California Consumers Legal Remedies Act (Count VI) as untimely is GRANTED;

23. Defendants' motion to dismiss Plaintiffs Franke and Miller's claims for equitable relief under the California Unfair Competition Law (Count VIII) and the California Consumers Legal Remedies Act (Count VI) as duplicative of legal remedies is GRANTED as to Count VI and denied as to Count VIII;

24. Defendants' motion to dismiss the fraudulent concealment claims (Count XV) of New Jersey, California, Florida, and Illinois plaintiffs is GRANTED;

25. Defendants' motion to dismiss Plaintiff Davis's (Texas) fraudulent concealment claim (Count XV) is GRANTED;

26. Defendants' motion to dismiss Plaintiffs' claim for unjust enrichment (Count XVI) is GRANTED;

27. Defendants' motion to preclude Plaintiffs from enjoining Defendants from falsely advertising their vehicles is GRANTED;

28. Defendants' motion to dismiss for failure to satisfy Federal Rule of Civil Procedure 8(a)(2) is DENIED; and

29. Defendants' motion for a more definite statement is DENIED.

## I.   Background

Defendant Subaru Corporation is a Japanese corporation with a principal place of business in Tokyo, Japan that is engaged in the business of designing and manufacturing Subaru automobiles

worldwide.  [Consol. Compl., Dkt. 18 at ¶ 23].[1]  Defendant Subaru of America, Inc. ("SOA") is a wholly owned subsidiary of Subaru Corporation with a principal place of business in Camden, New Jersey.  [*Id.* ¶ 24].  SOA "distributes, advertises, markets, sells, warrants, and services Subaru vehicles in the United States."  [*Id.*].

As described in detail below Plaintiffs are thirteen individuals who purchased Subaru vehicles between 2015 and 2019.  [*Id.* ¶¶ 10–22, 30 40, 47, 54, 60, 68, 75, 82, 89, 97, 109, 115].  Plaintiffs bring this putative class action "individually and on behalf of all current and former owners and lessees of the following model year ("MY") Subaru vehicles: MY 2015-2020 Outback, MY 2015-2020 Forester, MY 2015-2020 Legacy, MY 2015-2020 WRX, and MY 2019-2020 Ascent (the "Class Vehicles")."  Plaintiffs allege that the Class Vehicles suffer from a common defect which causes the vehicles' batteries to drain quickly and which renders their vehicles inoperable.  [*Id.*  ¶¶ 123–36].  Each of the Subaru vehicles at issue here contains the same electrical system called a Controller Area Network ("CAN"), through which the vehicles' "components like electronic units, microcontrollers, devices, sensors and actuators communicate…"  [*Id.* ¶¶ 125, 127, 130].  "When the vehicle is in use, the CAN system in the Class Vehicles relies on electrical current so that the vehicle can be operated as intended.  When the vehicle is not being operated, the CAN system should enter a sleep mode in which it stops drawing significant electrical current."  [*Id.* ¶ 133].  However, the CANs in the class vehicles do not enter sleep mode when the vehicle turns off, resulting in "parasitic battery drain."  [*Id.* ¶¶ 124, 134].  Causes of this parasitic battery drain include "software errors."  [*Id.* ¶ 134].  The Court will refer to this defect as the "Battery Defect."

---

[1] The operative complaint is Plaintiffs' Consolidated Class Action Complaint.  [Dkt. 18].

Due to the nature of the Battery Defect, Plaintiffs claim that replacing batteries in the Class Vehicles does not ensure that users can operate their cars.  [*Id.* ¶ 143].  Plaintiffs also allege that "[v]ehicle batteries are not designed to be continually drained down to low volumes of power…. The Defect therefore makes it necessary to replace the battery in Class Vehicles far more often than is typical with other, non-defective vehicles.  [*Id* ¶ 170].  Owners must replace their batteries frequently as a result.

SOA provided a New Vehicle Limited Warranty (the "Limited Warranty") for each class vehicle that lasts for three years or 36,000 miles.  [*Id.* ¶ 140; *see also* Dkt. 34-2 at 7].  The Limited Warranty covers "any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use."  [*Id.*].  The Limited Warranty provides that covered defects "will be repaired without charge" by authorized Subaru retailers.  [Dkt. 34-2 at 10].  The Limited Warranty further states that

> **THESE WARRANTIES AND THE EMISSION RELATED WARRANTIES APPEARING ELSEWHERE IN THIS BOOKLET ARE THE ONLY EXPRESS WARRANTIES BY SOA ON THE VEHICLE AND ON GENUINE SUBARU OPTIONAL ACCESSORIES INSTALLED ON THE VEHICLE PRIOR TO DELIVERY.THESE WARRANTIES ARE LIMITED IN DURATION TO THE TIME PERIOD OF THE WRITTEN WARRANTIES. THESE WARRANTIES ARE IN LIEU OF ALL OTHER OBLIGATIONS, LIABILITIES OR WARRANTIES, WHETHER EXPRESS OR IMPLIED. ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE END AT THE SAME TIME COVERAGE ON THE PARTICULAR COMPONENT ENDS**. SOA, its Distributors, and Authorized SUBARU Retailers do not authorize any person to assume for any of them any obligations or liabilities greater than or different from those set forth in these warranties. Some states do not allow limitations on how long an implied warranty lasts, so the above limitations may not apply. These warranties give you specific legal rights and you may also have other rights under state law.

[*Id.* (capitalization and emphasis in the original)].

The Limited Warranty contains an "Authorized Genuine Subaru Replacement Battery Warranty" (the "Battery Warranty") which states

> Authorized Genuine Subaru Replacement Batteries are warranted by the 30-month/unlimited mileage Authorized Genuine Subaru Replacement Battery Warranty or the balance of the Basic New Vehicle Limited Warranty, whichever is longer. During the 30-month Authorized Genuine Subaru Replacement Battery Warranty period, or the balance of the Basic New Vehicle Limited Warranty period, coverage includes reimbursement for testing and replacement labor costs provided the battery was installed by an authorized Subaru retailer. In addition, if the vehicle cannot be driven due to a defect covered by this warranty, the cost of towing to the nearest authorized Subaru retailer is covered. Authorized Genuine Subaru Replacement Batteries that fail after the 30-month Authorized Genuine Subaru Replacement Battery Warranty period or the Basic New Vehicle Limited Warranty has expired are eligible for prorated warranty coverage for a limited period of 85 months. Reimbursement for testing, replacement labor or towing is not covered. Prorating begins on the date the battery was originally installed.

[Consol. Compl. ¶ 141]. The Limited Warranty requires that "[a]ny and all repairs must be performed by an Authorized SUBARU Retailer located in the United States." [Dkt. 34-2 at 7]. According to Plaintiffs, when they took their vehicles for repairs under the Limited Warranty and Battery Warranty, Subaru either refused to fix the vehicles or simply replaced the batteries. [Consol. Compl. ¶ 143].

Plaintiffs allege that Defendants were aware of the Battery Defect as early as 2014, but did not disclose the defect to its customers and actively concealed the defect as they continued to sell vehicles with the Battery Defect. [*Id.* ¶¶ 165–66]. Plaintiffs allege that Defendants gained knowledge of the Battery defect through various sources, including "internal pre-release testing data, consumer complaints to Subaru and its dealers, Subaru's testing in response to the

complaints and in connection with service bulletins, warranty data from its dealers, replacement parts sales data from its internal databases, and reimbursement claims paid to Subaru dealers for work performed in response to warranty claims."  [*Id.* ¶ 146].  Plaintiffs refer specifically to several Technical Service Bulletins ("TSB") which Subaru issued as early as June 2014 which discuss technical problems including rapid battery drain in some Subaru vehicles.  [*Id.* ¶¶ 153–59].  Plaintiffs also point to several consumer complaints posted on the National Highway Traffic Safety Administration ("NHTSA") website, Subaru owner message boards, and social media websites.  [*Id.* ¶ 162].  Plaintiff claims that, despite its knowledge of the defects, Subaru marketed its vehicles as "safe and reliable."  [*Id*. ¶ 166].  Plaintiffs also claim that neither the Class Vehicles' Monroney stickers[2]  nor Subaru sales representatives disclosed the Battery Defect before Plaintiffs purchased their Class Vehicles.  Plaintiffs all claim that they would not have purchased their Class Vehicles if they knew of the Battery Defect.

Plaintiffs filed a consolidated class action complaint alleging sixteen causes of action, some of which apply to the entire class and some of which apply to certain sub-classes.  The following chart summarizes the claims and the applicable Plaintiffs:

| Count | Cause of Action | On Behalf Of |
|---|---|---|
| I | Breach of Implied Warranty of Merchantability | Nationwide Class or State Subclasses |
| II | Breach of Express Warranty | Nationwide Class or State Subclasses |
| III | Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–12 | Nationwide Class |
| IV | Violation of the Song-Beverly Consumer Warranty Act (Express Warranty), Cal. Civ. Code § 1790-1795.8 | California Subclass |

---

[2] Defendants, like all automobile manufacturers, are required to affix "Monroney stickers" to every vehicle under the Automobile Information Disclosure Act of 1958, 15 U.S.C. § 1231 *et seq*.

| V | Violation of the Song-Beverly Consumer Warranty Act (Implied Warranty), Cal. Civ. Code § 1790-1795.8 | California Subclass |
|---|---|---|
| VI | Violations of New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("NJCFA") | New Jersey Subclass |
| VII | Violations of California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750-1785 | California Subclass |
| VIII | Violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200-17210 | California Subclass |
| IX | Violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq. ("FDUTPA") | Florida Subclass |
| X | Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1 et seq. ("ICFA") | Illinois Subclass |
| XI | Violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, et seq. ("MCPA") | Michigan Subclass |
| XII | Violations of the New York General Business Law N.Y. Gen. Bus. Law § 349 ("NYGBL § 349") | New York Subclass |
| XIII | Violations of the New York General Business Law, N.Y. Gen. Bus. Law § 350 ("NYGBL § 350") | New York Subclass |
| XIV | Violations of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 et seq. ("WCPA") | Washington Subclass |
| XV | Fraudulent Concealment | State Subclasses |
| XVI | Unjust Enrichment | State Subclasses |

[Consol. Compl. ¶¶ 191–380].

### a. Plaintiff-Specific Allegations

This Section outlines the factual allegations pled for each individual class Plaintiff. The

following table summarizes the most pertinent facts:

| Name | Vehicle | Purchase Date | Purchase State | Residence |
|---|---|---|---|---|
| Amy Burd | 2017 Outback | August 2016 | NJ | NJ |
| Walter Gill | 2017 Outback | January 2017 | NJ | NJ |
| David Hansel | 2019 Outback | June 2019 | NJ | NJ |
| Glen McCartney | 2016 Outback | July 2016 | NJ | NY |
| Roger Baladi | 2018 Outback | April 2018 | NY | NY |
| Tamara O'Shaughnessy | 2019 Outback | August 2019 | NY | NY |
| Anthony Franke | 2015 WRX | February 2015 | CA | CA |
| Matthew Miller | 2017 Outback | July 2018 | CA | CA |
| Steven Stone | 2017 Outback | September 2016 | FL | FL |

| Howard Bulgatz | 2019 Legacy | August 2018 | IL | IL |
| Mary Beck | 2020 Outback | December 2019 | MI | MI |
| David Davis | 2019 Ascent | August 2018 | TX | TX |
| Colin George | 2016 Outback | January 2016 | WA | WA |

### i.  Plaintiff Amy Burd

Plaintiff Amy Burd, a New Jersey Resident, purchased a 2017 Subaru Outback on or around August 23, 2013 from Freehold Subaru in Freehold, New Jersey.  [Consol. Compl. ¶ 30]. Before purchasing the vehicle, Plaintiff Burd reviewed Subaru advertisements and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect.  [*Id.* ¶ 31].  In October or November 2018, Plaintiff Burd brought her vehicle to World Nissan after her car failed to start numerous times, and that dealership replaced the battery.  [*Id.* ¶¶ 33–34].  Plaintiff Burd purchased a portable booster to jumpstart her car for approximately $65.  [*Id.* ¶ 35].  On September 23, 2019, Plaintiff Burd brought her Subaru to Open Road Subaru, which replaced her car's battery and stated that "the quality of the battery is a known issue."  [*Id.* ¶ 36].  The battery continued to fail and Plaintiff Burd purchased a third-party battery at her own expense.  [*Id.* ¶ 38].

### ii.  Plaintiff Walter Gill

Plaintiff Walter Gill, a citizen and resident of New Jersey, purchased a new 2017 Subaru Outback from Haldeman Subaru, an authorized Subaru dealership located in Trenton, New Jersey on or around January 2017.  [*Id.* ¶ 40].  Mr. Gill also purchased a seven-year extended warranty.  [*Id.* ¶ 42].  Before purchasing the vehicle, Plaintiff Gill reviewed Subaru advertisements and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect.  [*Id.* ¶ 41].  Within eight months of his purchase, Plaintiff Gill's car battery began to fail, and failed at least four times by March 2020.  [*Id.* ¶ 43–44].

### iii.  Plaintiff David Hansel

On or around June 19, 2019, Plaintiff David Hansel, a citizen and resident of New Jersey, purchased a 2019 Subaru Outback from Haldeman Subaru, an authorized Subaru dealership located in Trenton, New Jersey.  [*Id.* ¶ 47].  Before purchasing the vehicle, Plaintiff Hansel reviewed Subaru advertisements and the vehicle's Monroney sticker and spoke to sales representatives, none of which disclosed the Battery Defect.  [*Id.* ¶ 48].  Around February 2020 and with approximately 9,000 miles on the vehicle, Mr. Hansel's battery failed, and he brought his vehicle to Haldeman Subaru which replaced his battery.  [*Id.* ¶ 49].  Plaintiff purchased jumper cables at his own expense in case of future battery failure.  [*Id.* ¶ 50].   In May 2020, his car's battery died again and the vehicle would not start.  On June 1, 2020, Mr. Hansel took his vehicle to Flemington Subaru, which tested the battery and performed an "ECM update" to "help with battery health."  [*Id.* ¶ 51].

### iv.  Plaintiff Glen McCartney

On or about July 28, 2016, Plaintiff Glen McCartney, a citizen and resident of New York, purchased a new 2016 Subaru Outback from Ramsey Subaru, an authorized Subaru dealership located in Ramsey, New Jersey.  [*Id.* ¶ 54].  Before purchasing the vehicle, Plaintiff McCartney reviewed the vehicle's Monroney sticker and spoke to sales representatives, which did not disclose the Battery Defect.  [*Id.* ¶ 55].  In 2019 with approximately 35,000 miles on the odometer, his vehicle's battery failed, and he brought his vehicle to Ramsey Subaru, an authorized Subaru dealership, for service.  [*Id.* ¶ 56].  Ramsey Subaru tested the battery and declined to replace it, so Mr. McCartney purchased a replacement battery at his own expense. [*Id.* ¶ 56–57].

### v.  Plaintiff Roger Baladi

In April 2018 Plaintiff Roger Baladi, a citizen and resident of New York purchased a new 2018 Subaru Outback from Milea Subaru, an authorized Subaru dealership in Bronx, New York. [*Id.* ¶ 60]. Before purchasing the vehicle, Plaintiff Baladi reviewed Subaru advertisements and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect. [*Id.* ¶ 61]. Beginning in October 2018, Mr. Baladi's car battery began to fail, and he purchased jumper cables and a jump starter at his own expense. [*Id.* ¶ 63]. On or Around March 13, 2019, Mr. Baladi brought his vehicle to Koeppel Subaru, an authorized Subaru dealership in Queens, New York, for service. Koeppel Subaru replaced the battery. [*Id.* ¶ 64]. Plaintiff's car battery failed several times after this repair. [*Id.* ¶ 65].

### vi.  Plaintiff Tamara O'Shaughnessy

On or around August 12, 2019, Plaintiff Tamara O'Shaughnessy, a citizen and resident of New York, purchased a new 2019 Subaru Outback from Van Bortel Subaru of Rochester, an authorized Subaru dealership in Rochester, New York. [*Id.* ¶ 68]. Before purchasing the vehicle, Plaintiff O'Shaughnessy reviewed Subaru advertisements and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect. [*Id.* ¶ 69]. In or about October 2019, with approximately 1,000 miles on the odometer, Plaintiff O'Shaughnessy's car battery failed. [*Id.* ¶ 70]. On or around April 24, 2020, she returned to Van Bortel Subaru where the battery failed to start and the dealership replaced the battery. [*Id.* ¶ 71]. Plaintiff purchased a portable jump starter at her own expense to use when her battery dies. [*Id.* ¶ 72].

### vii.  Plaintiff Anthony Franke

In February 2015, Plaintiff Anthony Franke, a citizen and resident of California, purchased a new 2015 Subaru WRX from Subaru of El Cajon, an authorized Subaru dealership

located in El Cajon, California.  [*Id.* ¶ 75].  Before purchasing the vehicle, Plaintiff Franke reviewed Subaru advertisements and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect.  [*Id.*¶ 76].  Beginning around March 2015, Mr. Franke's battery failed and failed to start on at least four occasions. [*Id.* ¶ 77].  Mr. Franke took his Class Vehicle to Subaru of El Cajon for assistance, but the dealership refused to replace the battery.  [*Id.* ¶ 78].  Mr. Franke claims that he "prefers the features and aesthetics of Subaru vehicles to other vehicles" and would like to purchase Subaru vehicles in the future, but "he will not do so unless Subaru takes sufficient steps to cure the defect and ensure the accuracy of its representations about its vehicles."  [*Id.* ¶ 81].

### viii.   Plaintiff Matthew Miller

On or about July 21, 2018 Plaintiff Matthew Miller, a citizen and resident of California, purchased a new 2017 Subaru Outback from Ocean Subaru, an authorized Subaru dealership in Fullerton, California.  [*Id.* ¶ 82].  Before purchasing the vehicle, Plaintiff Miller reviewed Subaru advertisements and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect.  [*Id.* ¶ 83].  In or about January 2020, with about 15,000 miles on the odometer, the battery in Plaintiff Miller's vehicle failed.  [*Id.* ¶ 84].  Mr. Miller's battery died three more times, and he brought his vehicle to a Subaru dealership in March 2020, where the vehicle's battery was replaced.  [*Id.* ¶ 85].  Plaintiff Miller's battery failed again six more times between March 2020 and May 2020.  [*Id.*].  Mr. Miller claims that he "prefers the features and aesthetics of Subaru vehicles to other vehicles" and would like to purchase Subaru vehicles in the future, but "he will not do so unless Subaru takes sufficient steps to cure the defect and ensure the accuracy of its representations about its vehicles."  [*Id.* ¶ 88].

### ix.   Plaintiff Steven Stone

On or around September 15, 2016 Plaintiff Steven Stone, a citizen and resident of Florida, purchased a new 2017 Subaru Outback from Ocala Subaru Volvo, an authorized Subaru dealership located in Ocala, Florida. [*Id.* ¶ 89]. Before purchasing the vehicle, Plaintiff Stone reviewed Subaru advertisements and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect. [*Id.* ¶ 90]. In or about May 2017, with approximately 9,000 miles on the odometer, Plaintiff's battery failed and his vehicle was towed to Ocala Subaru. The dealership replaced Mr. Stone's battery. [*Id.* ¶ 91]. Around June 2018, his vehicle's battery failed again and he paid to replace it. [*Id.* ¶ 92]. Around October 2019, his vehicle's battery died again. AAA jump-started his vehicle, but the battery failed again the next day. Mr. Stone's vehicle was towed locally for repair and he paid to have another new battery installed. [*Id.* ¶ 93]. Even after this third battery replacement, his vehicle's battery continued to fail. [*Id.* ¶ 94].

### x.  Plaintiff Howard Bulgatz

On or around August 31, 2018, Plaintiff Howard Bulgatz, a citizen and resident of Illinois, leased a new 2019 Subaru Legacy from Napleton Subaru, an authorized Subaru dealership in Arlington Heights, Illinois. [*Id.* ¶ 97]. Before purchasing the vehicle, Plaintiff Bulgatz reviewed Subaru advertisements and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect. [*Id.* ¶ 98]. Beginning around October 2018, the battery in Plaintiff Bulgatz's vehicle failed approximately three times. After the third failure, Mr. Bulgatz brought his vehicle to the Napleton dealership for repair, but the dealership declined to replace the battery, and the battery failed again thereafter. [*Id.* ¶ 99].

### xi.  Plaintiff Mary Beck

13

On or about December 14, 2019, Plaintiff Mary Beck, a citizen and resident of Michigan, purchased a new 2020 Subaru Outback from Glassman Automotive Group, an authorized Subaru dealership in Southfield, Michigan. [*Id.* ¶ 102]. Before purchasing her vehicle, Plaintiff Beck reviewed the vehicle's Monroney sticker and spoke to sales representatives, neither of which disclosed the Battery Defect. [*Id.* ¶ 103]. In or about April 2020, with approximately 4,500 miles on the odometer, the battery in Plaintiff Beck's Class Vehicle began to fail and she had to jump start it several times. Ms. Beck brought her vehicle to Glassman Automotive, but the dealership declined to replace the battery. [*Id.* ¶ 105]. Plaintiff Beck then purchased a replacement battery with a larger capacity. [*Id.* ¶ 106].

### xii.   Plaintiff David Davis

On or around August 20, 2018, Plaintiff David Davis, a citizen and resident of Texas, purchased a new 2019 Subaru Ascent from Austin Subaru, an authorized Subaru dealership in Austin, Texas. [*Id.* ¶ 109]. Before purchasing the vehicle, Plaintiff Davis reviewed Subaru advertisements and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect. [*Id.* ¶ 110]. On or about April 2020, with approximately 20,000 miles on the odometer, Mr. Davis's battery failed and he had his vehicle towed to Austin Subaru. Austin Subaru inspected Plaintiff Davis's vehicle and replaced the battery. [*Id.* ¶ 112].

### xiii.   Plaintiff Colin George

On or about January 23, 2016, Plaintiff Colin George, a citizen and resident of Washington, purchased a new 2016 Subaru Outback from Carter Subaru, an authorized Subaru dealership in Seattle, Washington. [*Id.* ¶ 115]. Before purchasing the vehicle, Plaintiff George reviewed Subaru marketing materials and the vehicle's Monroney sticker, and spoke to sales representatives, none of which disclosed the Battery Defect. [*Id.* ¶ 116]. Beginning in or about

14

January 2019, with approximately 33,000 miles on the odometer, Plaintiff George's battery began to fail.  [*Id.* ¶ 117].  Plaintiff has had his battery replaced twice.  [*Id.* ¶ 119].  Mr. George purchased a AAA membership and a jump starter due to the Battery Defect.  [*Id.* ¶ 120].

## II.  Analysis

### a.  Standing

In this case, the named Plaintiffs seek to recover for Battery Defects in various Subaru vehicle models, including 2015–2020 Subaru Foresters and the 2020 Subaru Legacy.  [Consol. Compl. ¶ 1].  However, none of the named Plaintiffs have owned or leased a Subaru Forester of any year, or a 2020 Subaru Legacy.  Defendants argue that Plaintiffs lack standing to assert claims based on these vehicles which Plaintiffs have not leased or owned.  [Dkt. 34-1 at 17].

The Constitution limits the subject matter jurisdiction of federal courts to "cases" and "controversies."  *See* U.S. Art. III § 2.  To establish Article III standing, a plaintiff must plead specific facts to show "an 'injury in fact' or an 'invasion of a legally protected interest that is concrete and particularized,' ... a 'causal connection between the injury and the conduct complained of,' and 'a likelihood that the injury will be redressed by a favorable decision.'"  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)); *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 88 (3d Cir. 2000).  In a class action context, the plaintiff must still "show that she has personally been injured; indeed, the class plaintiff cannot rely on 'injuries suffered by other, unidentified members of the class.'"  *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)).

15

In *Sauer v. Subaru of America, Inc.*, this Court recently noted that courts in this district are divided as to "whether 'a class plaintiff who brings a claim for a product within a line of products' has standing to assert claims for those other related products." *Sauer v. Subaru of Am., Inc.*, No. CV 18-14933, 2020 WL 1527779, at *3 (D.N.J. Mar. 31, 2020) (quoting *Cox v. Chrysler Grp., LLC*, No. CV 14-7573, 2015 WL 5771400, at *15 (D.N.J. Sept. 30, 2015)). In one line of cases, "courts have dismissed the remaining claims concerning the rest of the product line, holding that named plaintiffs lack standing for claims relating to products they did not purchase." *Id.* (quoting *Cox*, 2015 WL 5771400, at *15). *See also Cox*, 2015 WL 5771400, at *15 (citing *Lieherson*, 865 F. Supp. 2d at 537; *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 280 (D.N.J.2011); *Hemy v. Perdue Farms. Inc.*, No. 11–888, 2011 WL 6002463, at *11 (D.N.J. Nov. 30, 2011)). In a second line of cases, courts "have refused to dismiss claims for products that the named plaintiffs did not buy themselves." *Sauer*, 2020 WL 1527779, at *3 (citing *Haas v. Pittsburgh Nat. Bank*, 526 F.2d 1083, 1088 (3d Cir. 1975)). Courts in this second line of cases apply a three-part test to determine whether class plaintiffs have standing to assert claims for products they do not own: (1) whether the basis for the claims is the same; (2) whether the products are closely related; and (3) whether the defendants are the same. *Cox*, 2015 WL 5771400, at *15.

In *Sauer*, this Court declined to decide which standard applied because Plaintiffs had not pled facts to establish standing under the three-factor test even if that standard applied. *Sauer*, 2020 WL 1527779, at *3. Here, Plaintiffs allege that this second line of cases applies, that they have satisfied the three-part test, and that they have standing to assert claims for vehicles which they have not leased or purchased. [Dkt. 38 at 19–20]. Defendants urge the Court to follow the first line of cases and to dismiss for lack of standing. [Dkt. 34-1 at 17–18].

The Court here agrees with Defendants' position and the first line of cases discussed above.  There is no dispute that the named Plaintiffs have not suffered an injury due to defects in Subaru Foresters of any year or the 2020 Subaru Legacy because no Plaintiff has purchased or leased one of these vehicles.  Standing for an individual plaintiff "cannot be predicated on an injury which the plaintiff has not suffered."  *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 461 (D.N.J. 2005), *as amended* (Sept. 22, 2005) (citing *Allee v. Medrano*, 416 U.S. 802, 828–29, 94 S. Ct. 2191, 40 L.Ed.2d 566 (1974)).  And as the Supreme Court, courts in this district, and courts elsewhere have acknowledged, "[t]hat a suit may be a class action ... adds nothing to the question of standing…."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20, 96 S. Ct. 1917, 48 L.Ed.2d 450 (1976)); *Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252 (4th Cir.), *cert. denied*, 141 S. Ct. 373, 208 L. Ed. 2d 96 (2020) ("The strictures of Article III standing are no less important in the context of class actions…. In a class action, we analyze standing based on the allegations of personal injury made by the named plaintiffs.") (citations omitted); *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) ("The requirements for standing do not change in the class action context."); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009) ("[E]ach claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one plaintiff has suffered the injury that gives rise to that claim.").  *See also Green*, 279 F.R.D. at 280 (dismissing claims as to unpurchased products because the "standing inquiry does not change in the context of a putative class action") (citations and quotations omitted); *Lieberson*, 865 F. Supp. 2d at 537 (same).  The Court therefore finds that Plaintiffs do not have standing to bring claims for Subaru Foresters of

any year or the 2020 Subaru Legacy, and dismisses Plaintiffs' Consolidated Complaint as to claims for these vehicles.

### b.  Motion to Dismiss for Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  *Id.*  In general, only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration when deciding a motion to dismiss under Rule 12(b)(6).[1]  *See Chester County Intermediate Unit v. Pa. Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence.  *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the plaintiff will ultimately prevail.  *Watson v. Abington Twp.*, 478 F.3d 144, 150 (2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where there are

---

[1]"Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). *Accord Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted).

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred.  "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.*

well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). *Accord Iqbal*, 556 U.S. at 678–80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### i.  Plaintiffs' Concessions

In their Response, Plaintiffs concede that their Consolidated Complaint fails to state the following claims against Defendants: (1) Plaintiffs Gill and George's common-law express warranty claims; (2) Plaintiff Miller's implied warranty claim under the Song-Beverly Act; (3) Plaintiff Beck's claim under the Michigan Consumer Protection Act; (4) express warranty claims against SBR.  [Dkt. 38 at 17 n.1, 38 n.7].  These claims are therefore dismissed.

### ii.  Choice of Law

Defendants argue that individual Plaintiffs who do not reside in New Jersey should not be permitted to sue Defendants under New Jersey Law.  [Dkt. 34-1 at 18].  This argument applies to Plaintiffs' common-law express and implied warranty claims (Counts I and II) for which Plaintiffs seek to recover individually and on a class-wide basis.  Defendants argue that the Court should engage in a choice-of-law analysis to determine that those Plaintiffs can only bring claims under the laws of their respective home states.  [Dkt. 34-1 at 19–22].  Plaintiffs argue that such a choice-of-law analysis would be premature at the pleading stage.  [Dkt. 38 at 23].

"[C]ourts in this Circuit have sometimes determined that the choice of law analysis in a putative class action can be done at the motion to dismiss stage."  *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 718 (D.N.J. 2011) (collecting cases).  When performing a choice-of-law analysis, the Court applies choice-of-law rules of the forum state, which is New Jersey in this case.  *Barbey v. Unisys Corp.*, 256 Fed. Appx. 532, 533 (3rd Cir. 2007).  Under New Jersey rules, the "choice of law analysis must be undertaken on an issue-by-issue basis."  *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009) (citing *Rowev v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J.2007)). Therefore, the Court will analyze each claim separately to determine whether a choice-of-law analysis is proper, and if so, determine which state's law applies to each claim.

### iii.  Common Law Express Warranty Claims (Count II)

Plaintiffs allege that Defendants[3] breached express warranties contained in the Limited Warranty, which applies to "any repairs needed to correct defects in material or workmanship reported" within three years of purchase or 36,000 miles.  [Consol. Compl. at ¶¶ 140, 203–33]. Defendants argue that because the Limited Warranty applies only to defective "material or workmanship," it does not apply to the complained-of Battery Defect which is, at bottom, a design defect.  [Dkt. 34-1 at 23].  Defendants also argue that New Jersey warranty law conflicts with the laws of certain Plaintiffs' home states, and home-state law should govern those Plaintiffs' express warranty claims.  Thus, the Court will first conduct a choice-of-law analysis to determine whether a conflict exists and, if so, which state's law should apply to each Plaintiff's express warranty claim.

### 1.  Choice of Law for Express Warranty Claims

The Court must first apply New Jersey's choice of law rules to determine whether there is an actual conflict between New Jersey law and the laws of the other relevant jurisdictions. *Powell v. Subaru of Am., Inc.*, No. 1:19-CV-19114, 2020 WL 6886242, at *10–11 (D.N.J. Nov. 24, 2020).  Defendants point to several potential conflicts.  First, they argue that the laws of Texas, Illinois, and Michigan "require formal pre-suit notification to a remote seller, and failure to do so requires dismissal of the claims."  [Dkt. 34-1 at 19 (citing cases)].  Accordingly, Defendants argue that local law applies to Plaintiffs Davis, Bulgatz, and Beck, respectively.  [*See id.*].  Defendants are correct that New Jersey law does not require pre-suit notice, but that Texas, Illinois, and Michigan law do require pre-suit notice.  *See Powell*, 2020 WL 6886242, at *11

---

[3] As noted above, Plaintiffs have conceded that their express warranty claims extend only to SOA, and that the express warranty claims against SBR should be dismissed.

(citing cases and comparing New Jersey law with Texas and Michigan law with respect to pre-suit notice*); Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 492, 675 N.E.2d 584, 589 (1996) ("[I]n general, buyers such as the instant plaintiffs must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty (citing 810 ILCS 5/1–201(26) (West 1994))) *accord Parrott v. Fam. Dollar, Inc.*, No. 17 C 222, 2019 WL 4573222, at *2 (N.D. Ill. Sept. 20, 2019). Because this issue of pre-suit notice may dispose of Plaintiffs Davis, Bulgatz, and Becks' claims, "there is an actual conflict between the relevant laws of [Illinois,] Texas and Michigan on one hand and New Jersey on the other." *Powell*, 2020 WL 6886242, at *11.

Step two of New Jersey's choice of law analysis requires the Court to "determine which jurisdiction has the 'most significant relationship to the claim.'" *Amato v. Subaru of Am., Inc.*, No. CV 18-16118, 2019 WL 6607148, at *12 (D.N.J. Dec. 5, 2019) (citing *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW-CLW, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014)). New Jersey Courts turn to § 188 and § 6 of the Restatement (Second) of Conflict of Laws to determine which state has the "most significant relationship" to the claims. *Powell*, 2020 WL 6886242, at *10–11. Section 188 applies to contract claims like Plaintiffs' warranty claims and advises courts to consider factors including "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties." *Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, No. CIV. 10-05321, 2012 WL 924380, at *11 (D.N.J. Mar. 19, 2012) (citing Restatement (Second) Conflict of Laws § 188(2)). "With limited exception, the Restatement also provides that '[i]f the place of negotiating the contract and the place of performance are in the same state, the local law

22

of this state will usually be applied.'" *Powell*, 2020 WL 6886242, at *11 (quoting *Amato*, 2019 WL 6607148, at *12).  Section 6 provides general principles to consider in all conflict-of-law analyses: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of [ ] law; (4) the interests of judicial administration; and (5) the competing interests of the states."  *P.V. v. Camp Jaycee*, 197 N.J. 132, 962 A.2d 453, 463 (2008).

Applying these factors, the Court finds that warranty laws of Illinois, Michigan, and Texas apply to the express warranty claims of Plaintiffs Bulgatz, Beck, and Davis, respectively. Section 188 factors weigh in favor of applying Plaintiffs' home-state law because Plaintiffs leased or purchased their Class Vehicles from Subaru dealerships located in their home states. Presumably, Plaintiffs negotiated and signed sales contracts in the states where they purchased their Class Vehicles and drove their vehicles in their home states.  After experiencing battery failures, these Plaintiffs returned their Class Vehicles to the same dealerships in their home states for repair under their respective Limited Warranties.  Outside of their contractual relationship with SOA, which has its principal place of business in Camden, New jersey, the Plaintiffs have no relevant connections to New Jersey.  Courts have found that, under facts such as these, the law of a Plaintiffs' home state has the most significant relationship to the Plaintiffs' warranty claims.  *Powell*, 2020 WL 6886242, at *11 (citing *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 209 (3d Cir. 2013)); *Amato*, 2019 WL 6607148, at *12–13.

Section 6 factors also favor applying non-New Jersey law to these Plaintiffs' express warranty claims.  Under circumstances such as these, "the interests of interstate comity [under § 6] favor applying the law of the individual claimant's own state.  Applying New Jersey law to every potential out-of-state claimant would frustrate the policies of each claimant's state." *Maniscalco*, 709 F.3d at 209.  Further, "[e]ach plaintiff's home state has an interest in protecting

its consumers from in-state injuries caused by foreign corporations and in delineating the scope

of recovery for its citizens under its own laws." *In re Ford Motor Co. Ignition Switch Prod.*

*Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997).  Thus, under the facts and circumstances of this

case, the warranty laws of Illinois, Michigan, and Texas apply to the express warranty claims of

Plaintiffs Bulgatz, Beck, and Davis respectively.

Defendants also argue that Florida, Michigan, and New York warranty laws require

Plaintiffs to plead "reliance on the warranty at the time of purchase," and that "California

requires proof of reliance when the plaintiff and defendant are not in privity of contract."  [Dkt.

34-1 at 20].  Because New Jersey does not require reliance, Defendants argue that a conflict

exists.

The Court has already found that Michigan law will apply to Michigan Plaintiff Beck's

express warranty claim.  Defendants are right that New Jersey law does not require reliance but

New York law does.  *Compare Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 721

(D.N.J. 2011) (New Jersey law) *with Avola v. Louisiana-Pac. Corp.*, 991 F. Supp. 2d 381, 391

(E.D.N.Y. 2013) (citing *CBS Inc. v. Ziff–Davis Publ'g Co.*, 75 N.Y.2d 496, 502–504, 554

N.Y.S.2d 449, 553 N.E.2d 997 (1990)) (New York law).  While there is some disagreement,

Florida law appears not to require reliance where, as here, the dispute concerns an express

written warranty as opposed to an express warranty by mere affirmation or promise.  *See*

*Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1340–41 (S.D. Fla. 2013); *see also*

*S. Broad. Grp., LLC v. Gem Broad., Inc.*, 145 F. Supp. 2d 1316, 1321 (M.D. Fla. 2001), *aff'd sub*

*nom. S. Broad. v. GEM Broad.*, 49 F. App'x 288 (11th Cir. 2002) ("The Florida Supreme Court

has not yet decided whether proof of reliance is required to recover for breach of an express

written warranty" and discussing widespread confusion about when reliance is required under

24

Florida warranty law).  Further, courts in this district have comprehensively compared California's breach of express warranty law with New Jersey's to find that no conflict exists with respect to reliance, even without privity of contract.  *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 2:12-CV-07849 WHW, 2013 WL 5574626, at *11–13 (D.N.J. Oct. 9, 2013).  Thus, for the purposes of deciding this choice-of-law issue, the only state whose law is inconsistent with New Jersey's is New York.

Inquiry into New York Plaintiffs' reliance, however, is too fact-intensive to conduct a choice-of-law analysis at this time.  *See Powell*, 2020 WL 6886242, at *15 ("[T]he Court is unable to determine whether Plaintiffs would be able to put forth sufficient evidence of reliance, and therefore whether this difference between the relevant states' laws would have an impact on the success of Plaintiffs' warranty claims.").

In sum, and for the purposes of deciding Defendants' Motion to Dismiss, the Court will apply New Jersey law to the express warranty claims of all Plaintiffs except the Illinois, Michigan, and Texas Plaintiffs.  The Court will now turn to Defendants' substantive express warranty arguments.

## 2.   Whether the Limited Warranty Covers the Battery Defect

As stated above, Defendants argue that Plaintiffs' express warranty claims should be dismissed because the complained-of Battery Defect is, at bottom, a design defect, and the Limited Warranty only applies to defective materials or workmanship.  A warranty covering "'defect[s] in … materials or workmanship[]' unambiguously excludes 'design defects.'" *Amato*, 2019 WL 6607148, at *5 (quoting *Coba v. Ford Motor Co.,* 932 F.3d 114, 121 (3d Cir. 2019)).  In *Coba*, the Third Circuit explained the differences among defects in material, workmanship, and design:

25

> [D]efects in "workmanship" and "materials" are flaws pertaining to the construction or manufacture of a product, while defects in "design" are shortcomings that arise in the plans for a product's creation.  More specifically, a "materials" defect is a failing in the quality of the actual substances used to make a product; a "workmanship" defect is a deficiency in the execution of a product's assembly or construction; and a "design" defect is a flaw inherent in the product's intended operation and construction . . .

*Coba*, 932 F.3d at 121.

Plaintiffs allege that they have sufficiently pled facts showing that the class vehicle defect is a workmanship defect which the Limited Warranty covers.  Plaintiffs describe in detail the CAN system that is common among all class vehicles and that allegedly malfunctions to cause parasitic battery drain.  [Consol. Compl., Dkt. 18 at ¶¶ 123–133].  When describing the Battery Defect itself, Plaintiffs allege the following:

> The Class Vehicles contain a manufacturing defect (including software errors) that results in the CAN system not entering the necessary sleep mode when the vehicle is turned off.  As a result, the CAN system draws significant "dark current" (parasitic battery draw) even when the vehicle is turned off and not being operated.

[*Id.* at ¶ 134].  The Court cannot accept the conclusory allegation that the underlying problem is a "manufacturing defect" as fact.  *Iqbal*, 556 U.S. at 678.  And according to Plaintiffs' pleadings, the alleged parasitic drain is the result of the alleged defect, not the defect itself.  Thus, Plaintiffs have pled one fact regarding the alleged defect itself: that "software errors" cause the complained-of parasitic battery drain.  [Consol. Compl., Dkt. 18 at ¶ 134].

Construing these allegations in favor of Plaintiffs, as the Court must at this stage, the Court cannot decide as a matter of law that these "software errors" result from a design defect rather than an error in implementing an otherwise functional design.  *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (noting that at the motion to dismiss stage, a court is "required to accept as true all of the allegations in the complaint and all reasonable inferences

26

that can be drawn therefrom."). *See also Alin v. Am. Honda Motor Co.*, No. CIV A 08-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) (noting that, before discovery, "the distinction between defect in design and defect in materials or workmanship is a matter of semantics."). Plaintiffs do not allege that software was programmed according its design. *Cf. Cooper v. Samsung Elecs. Am., Inc.*, 374 Fed. Appx. 250, 253–254 (3d Cir. 2010) (dismissing breach of warranty claim because the plaintiff "agree[d] his TV was manufactured as designed."). Discovery is therefore necessary to determine the nature of the underlying software defect. *See Morris v. BMW of N. Am., LLC*, No. CIV.A. 13-4980 JLL, 2014 WL 793550, at *10–11 (D.N.J. Feb. 26, 2014) (denying motion to dismiss based on defective software in car's navigation system).

Defendants' arguments to the contrary are unavailing. Defendants cite *Sauer v. Subaru of America, Inc.* for the proposition that claims related to software design defects were not covered by SOA's warranties. [Dkt. 34-1 at 24 (citing *Sauer*, 2020 WL 1527779, at *6)]. But in *Sauer*, Plaintiffs explicitly pled that the engine defects at issue were design defects, and sought to recover under a warranty that covered "material or workmanship." *Sauer*, 2020 WL 1527779, at *6 ("Taking Plaintiff's allegations as true in this case, the Complaint explicitly pleads the engine defect at the time of sale is a design defect"). As required, the Court in that case construed Plaintiff's allegations as true and found that the plaintiff failed to plead breach of the warranty at issue. *Id.* The Court did not find that alleged engine defects constituted a design defect as a matter of law.

Defendants also argue that Plaintiffs' claims should be dismissed because they have deliberately "refus[ed] to call the alleged battery defect a design defect." [Dkt. 34-1 at 25]. Whatever Plaintiffs' intentions, it is no less plausible at this stage of the litigation that the

27

"software error" that caused parasitic battery drain resulted from manufacturing errors than design errors.

In sum, the Court finds that Plaintiffs have plausibly alleged that the Battery Defect is a manufacturing defect, and denies Defendant's motion to the extent it seeks dismissal on this issue.

### 3. Failure of Express Warranty Claims Due to Lack of Opportunity to Repair

Defendants argue that Plaintiffs Gill, George, Burd, Baladi, Miller, and Stone cannot recover under the Limited Warranty because they did not provide Defendants adequate opportunity to repair their Class Vehicles. [Dkt. 34-1 at 26]. As mentioned above, Plaintiffs have conceded this issue with respect to Plaintiffs Gill and George. However, Plaintiffs argue that Defendants had ample opportunity to repair the other Plaintiffs' vehicles. [Dkt. 38 at 32–33].

For the purposes of this motion, New Jersey law applies to the express warranty claims of Plaintiffs Burd, Baladi, Miller and Stone.[4] Under New Jersey law, parties may "expressly agree" to exclusive remedies for breach of contract. *Cox*, 2015 WL 5771400, at *6 (citing N.J.S.A. 12A:2–719(1)(b)). "But even when parties expressly agree to an exclusive remedy provision, [other remedies may be available] '[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose.'" *Id.* (quoting N.J.S.A. 12A:2–719(2)). Where a warranty contains an exclusive remedy provision, the warranty

> may limit the seller's obligation to repair or replace the defective equipment. In these types of cases—where the seller has limited

---

[4] The Court has already determined that no conflict exists between New Jersey law and Florida law (Stone) as to express warranty claims, and that it will apply New Jersey law to New York Plaintiffs' express warranty claims (Baladi). Neither party has argued that non-New Jersey law should apply to express warranty claims of Plaintiff Burd (New Jersey) or Plaintiff Miller (California).

the warranty to the repair or replacement of a defective part or product—before the exclusive remedy is considered to have failed its essential purpose, the seller must be given an opportunity to repair or replace the product.

*BOC Grp., Inc. v. Chevron Chem. Co.*, LLC, 359 N.J. Super. 135, 147, 819 A.2d 431, 438 (App. Div. 2003 (citations and quotations omitted).

In this case, Plaintiffs agreed to the Limited Warranty which "limit[s] the seller's obligation to repair or replace the defective equipment." *BOC Grp., Inc.*, 359 N.J. Super. at 147, 819 A.2d at 438. The Limited Warranty states that "**THESE WARRANTIES AND THE EMISSION RELATED WARRANTIES APPEARING ELSEWHERE IN THIS BOOKLET ARE THE ONLY EXPRESS WARRANTIES BY SOA ON THE VEHICLE**," and "**THESE WARRANTIES ARE IN LIEU OF ALL OTHER OBLIGATIONS, LIABILITIES OR WARRANTIES, WHETHER EXPRESS OR IMPLIED.**" [Dkt. 34-2 at 10] (capitalization and emphasis in the original). The Limited Warranty further states that "[u]nder these warranties, parts that malfunction or fail during the warranty period as a result of a manufacturing defect will be repaired without charge." [*Id.*]. And, as discussed above, Plaintiffs have plausibly alleged a defect covered by the Limited Warranty.

Thus, the issue is whether the Warranty has failed as to its essential purpose. Courts have recognized two circumstances where a warranty fails for its essential purpose: (1) where a plaintiff gives the defendant "the opportunity to repair the defect but [is] refused service under the Warranty;" and (2) where "'after numerous attempts to repair,' the product does not operate free of defects." *Cox*, 2015 WL 5771400, at *7 (quoting *BOC Grp., Inc.*, 359 N.J. Super. at 148, 819 A.2d at 438).

Plaintiffs Burd, Baladi, Miller, and Stone do not meet these pleading requirements. These Plaintiffs allege that they brought their Class Vehicles to Subaru dealerships for repair, but

29

do not allege that the dealership denied them service.  Instead, they allege that they received new

batteries under the Limited Warranty, but only one time.  [*See* Consol. Compl. ¶¶ 30–39; 60–67;

82–96].  New Jersey courts permit remedies outside of the warranty only "after numerous

attempts" at repairing the complained-of defect.  *BOC Grp., Inc.*, 359 N.J. Super. at 148, 819

A.2d at 438.  By its plain meaning, "numerous" means more than once.  Merriam-Webster,

*Numerous* ("consisting of great numbers of units or individuals; many"), https://www.merriam-

webster.com/dictionary/numerous.[5]  Plaintiff Burd alleges that she brought her vehicle to a

Nissan dealership for repair, but does not allege any facts connecting this dealership to

Defendants.  [Consol. Compl. ¶ 34].  Further, the Limited Warranty requires authorized Subaru

retailers to service Subaru vehicles.  [Dkt. 34-2 at 10].  Thus, Plaintiff Burd gave Defendants

only one opportunity to repair her vehicle under the Limited Warranty.  Because Plaintiffs Burd,

Baladi, Miller, and Stone only gave Defendants one attempt to repair their vehicles, they did not

provide Defendants adequate opportunity to remedy the alleged Battery Defect as the Limited

Warranty requires.  Their common-law express warranty claims are therefore dismissed.

Defendants also argue that Plaintiffs Hansel (New Jersey), O'Shaughnessy (New York),

and Davis's (Texas) express warranty claims must be dismissed because they fail to allege that

Defendants' repairs under the Limited Warranty were unsuccessful.  [Dkt. 34-1 at 27–28].

Plaintiffs respond that, "[i]n lieu of repairing or replacing the actual defective part(s) that cause

---

[5] Plaintiffs argue that "[i]f Subaru's position were adopted, a plaintiff would never have a ripe claim for breach of express warranty because every time a failure occurred after a failed repair attempt, it would trigger an obligation to go back to the dealer."  [Dkt. 38 at 33].  The Court does not believe that such an infinite regression will follow by concluding that "numerous" means "more than once."

the parasitic battery drain, the dealers provided ineffective service, such as replacing the battery."
[Dkt. 38 at 33].

The Court agrees with Defendants' reading of the facts as pled in the Consolidated
Complaint.  Plaintiffs Hansel, O'Shaughnessy, and Davis do not allege that they continued to
experience defects after Defendants serviced their vehicles.  [*See* Consol. Compl. ¶¶ 47–53; 68–
74; 109–114].  Plaintiffs argue that Defendants' repair efforts are beside the point because
"replacing one defective part with another equally defective part would render [the warranty]
meaningless."  [Dkt. 38 at 34] (quoting *Coba*, 2013 WL 244687, at *6).  The problem, however,
is that Plaintiffs do not plead facts to show that the replacement parts were "equally defective"
for Plaintiffs Hansel, O'Shaughnessy, or Davis.[6]  In other words, Plaintiffs have not alleged that
the repair services offered under the Limited Warranty failed to cure these Plaintiffs' mechanical
issues.[7]  This omission is fatal because pleading failure of a warranty's essential purpose requires
Plaintiffs to allege that "the product does not operate free of defects" even after Defendants
attempted to repair their vehicles.  *Cox*, 2015 WL 5771400, at *7 (quoting *BOC Grp., Inc.*, 359

---

[6] The Court acknowledges that it determined that Texas law will apply to Plaintiff Davis's
express warranty claim.  However, the Court's analysis and conclusion here is consistent with
Texas law.  *See Orthoflex, Inc. v. ThermoTek, Inc.*, No. 3:10-CV-2618-D, 2013 WL 4045206, at
*7 (N.D. Tex. Aug. 9, 2013) ("A limitation of remedies fails of its essential purpose when a
warrantor fails to correct the defect within a reasonable time or after multiple attempts." (citing
*Mostek Corp. v. Chemetron Corp.*, 642 S.W.2d 20, 27 (Tex. App. 1982)); *cf. Mercedes-Benz of
N. Am., Inc. v. Dickenson*, 720 S.W.2d 844, 854 (Tex. App. 1986)  (finding that plaintiff
adequately pled failure of essential purpose where plaintiff "alleged that after having returned the
car for repairs at least seven times, Mercedes' authorized dealer was unable to repair the car's
defective transmissions, squealing brakes, rattles in the dashboard, and low gas mileage.").

[7] Plaintiffs' failure to plead facts showing that Defendants' repair efforts failed points to a more
fundamental problem.  Specifically, it suggests that Plaintiffs Hansel, O'Shaughnessy, and Davis
did not suffer the same defects as the other Plaintiffs for whom repair efforts were futile.

N.J. Super. at 148, 819 A.2d at 438).  The Court therefore dismisses the express warranty claims

of Plaintiffs Hansel, O'Shaughnessy, and Davis.

### 4.  Pre-Suit Notice for Illinois and Michigan Plaintiffs[8]

As decided above, the Court will apply the law of Illinois and Michigan to Plaintiffs

residing in those states to determine whether their claims should be dismissed for failure to

allege pre-suit notice.  To meet this requirement, Plaintiffs must "demonstrate more than simply

general knowledge of an issue with the product line on the part of the defendant — instead, they

must allege that the defendant had 'actual knowledge of the alleged breach of the particular

products purchased by the named plaintiffs in this lawsuit.'"  *Powell*, 2020 WL 6886242, at *15

(discussing notice requirement under Illinois and Michigan law); *McKay v. Novartis Pharm.*

*Corp.*, 934 F. Supp. 2d 898, 913 (W.D. Tex. 2013), *aff'd*, 751 F.3d 694 (5th Cir. 2014) ("[T]he

notice must have alerted Novartis to a particular buyer/end user, namely McKay, who was

having problems with its products.").

While Plaintiffs dispute the notice requirement entirely, they also argue that they have

satisfied each state's notice requirement.  Plaintiffs first argue that they have satisfied pre-suit

notice requirements because "[o]n April 27, 2020, Plaintiff Davis sent a letter to Subaru on

behalf of himself and all similarly situated individuals residing in Texas who purchased 2016–

2020 Subaru Outbacks [and] 2019–2020 Subaru Ascents' regarding parasitic drain in the

vehicles batteries."  [Dkt. 38 at 34 n.11 (quotations omitted)].  Plaintiffs also state that on June

15, 2020, Plaintiff Miller of California

> sent a pre-suit notice on behalf of himself and a 'class of persons
> who purchased or leased a 2015-2019 Subaru Outback, 2015-2019

---

[8] Defendants also argue that Texas Plaintiff Davis's express warranty claim fails for lack of pre-suit notice.  The Court has determined above that his claim fails for failure to plead continuing defect.

> Forester, 2015-2019 Legacy, 2015-2019 WRX, or 2019-2020
> Ascent' concerning the Battery Drain Defect.  Mr. Miller
> explained the Battery Drain Defect and noted Subaru had breached
> express and implied warranties of merchantability with respect to
> Class Vehicles.

[*Id.*].  The Court finds that the letters would provide sufficiently specific notice for Plaintiffs

Davis and Miller.  But neither party has argued that California law requires pre-suit notice, and

the Court has already dismissed Plaintiff Davis's express warranty claim.  Further, because the

law requires notice as to "particular end users," the products they purchased, and the specific

defect, the Court finds that these letters do not provide adequate notice for other Plaintiffs'

express warranty claims.  *McKay*, 934 F. Supp. 2d at 913.

Plaintiffs further argue that they satisfied pre-suit notice requirements because

"presenting a vehicle to an authorized dealer for repair, as Plaintiffs did, also constitutes notice."

[Dkt. 38 at 34].  Under Michigan law, a single repair attempt is sufficient to create a question of

fact as to whether Plaintiffs have satisfied their pre-suit notice requirements.  *Gregorio v. Ford*

*Motor Co.*, No. 20-11310, 2021 WL 778913, at *11 (E.D. Mich. Mar. 1, 2021) (citing *Francis v.*

*Gen. Motors, LLC*, No. 19-11044, 2020 WL 7042935, at *12 (E.D. Mich. Nov. 30, 2020)).

Because Michigan Plaintiff Beck alleges that she brought her Class Vehicle to a dealership for

service, Plaintiffs' complaint survives the pre-suit notice requirement as to its Michigan Plaintiff

Beck.  Illinois courts, however, have found repair attempts insufficient to satisfy Illinois's pre-

suit notice requirement.  *See Darne v. Ford Motor Co.*, No. 13 CV 03594, 2017 WL 3836586, at

*9 (N.D. Ill. Sept. 1, 2017).

Finally, Plaintiffs argue that Plaintiff-specific notice was not required because

Defendants already knew of the Battery Defect in Plaintiffs' Class vehicles.  However, "the

Illinois Supreme Court has expressly rejected this theory of notice, and this Court is bound by its

decision." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 715 (N.D. Ill. 2020) (citing *In re Emerald Casino, Inc.*, 867 F.3d 743, 765 (7th Cir. 2017) and *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 221 Ill. Dec. 389, 675 N.E.2d 584, 589 (1996)).  Thus, Plaintiffs have failed to adequately plead pre-suit notice under Illinois law.

In sum, the Court rejects Defendant's' pre-suit notice arguments as to Michigan Plaintiff Beck, but grants Defendants' Motion to Dismiss as to Illinois Plaintiff (Bulgatz) on this issue.

### iv.   Breach of Implied Warranty (Count I)

Count I of the Consolidated Complaint alleges that Defendants breached their implied warranty of merchantability by selling vehicles that were not fit for their ordinary uses.  [Dkt. 18 at ¶¶ 191–202].  At the outset, Defendants argue that New Jersey's implied warranty law conflicts with the implied warranty law of several other states.  Thus, the Court will first determine which states' laws apply to Plaintiffs' breach of implied warranty claims.

### 1.   Choice of Law

Defendants argue that the laws of California, Florida, New York, and Illinois "require plaintiffs asserting implied warranty claims to be in direct vertical privity with the defendant," but that New Jersey law has no privity requirement.  [Dkt. 34-1 at 19 (citing cases)].  Defendants argue that the law of those states should therefore govern their resident Plaintiffs' implied warranty claims.

To determine whether to apply New Jersey law or the law of each Plaintiff's home state, the court must first determine whether this issue of privity is outcome determinative and, therefore, whether New Jersey law conflicts with the laws of California, Florida, New York, and Illinois.  *Powell*, 2020 WL 6886242, at *10.  Under New Jersey law, "the buyer need not establish privity with the remote supplier to maintain an action for breach of express or implied

warranties." *Amato*, 2019 WL 6607148, at *11 (quoting *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 489 A.2d 660, 663 (N.J. 1985)). California, Florida, New York, and Illinois all require privity of contract. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *16 (D.N.J. May 8, 2017) (citing *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983-85 (N.D. Cal. 2014) (California law) and *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233–34 (S.D. Fla. 2014) (Florida law)). New York and Illinois law also require privity. *See id.* ("[N]o implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged." (quoting *Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp.*, 504 N.Y.S.2d 192, 193-94 (N.Y. App. Div. 1986))) (New York law); *Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 86 Ill. App. 3d 980, 992–93, 408 N.E.2d 403, 412 (1980) (Illinois law). Therefore, a conflict exists between New Jersey law and the law of California, Florida, Illinois and New York. *Amato*, 2019 WL 6607148, at *11 (finding that privity requirements establish a conflict with New Jersey law).

Next, the Court must determine which state has the most significant relationship to claims of the California, Florida, Illinois, and New York Plaintiffs. *Amato*, 2019 WL 6607148, at *12 (quoting *Skeen*, 2014 WL 283628, at *3). The Court has already determined that the state-interest analysis favors application of Illinois law with respect to express warranties, and finds that the analysis here mirrors the express warranty analysis. The state-interests analysis is no different for the California, Florida, and New York Plaintiffs, except Plaintiff McCartney. Although Plaintiff McCartney resides in New York, he purchased his vehicle in New Jersey. [Consol. Compl. ¶ 54]. Thus, the Court cannot determine at this time which state has the strongest relationship to Plaintiff McCartney's claim, and New Jersey law will apply for the

purposes of this motion to dismiss.  *See Powell*, 2020 WL 6886242, at \*12 (deferring determination of applicable law where Plaintiff resided in one state and purchased his vehicle in another).

In sum, conflicts exist between New Jersey law and the law of California, Florida, Illinois, and New York with respect to privity, and the Court will apply local law to the implied warranty claims of all Plaintiffs from these states, except Plaintiff McCartney.  Defendants' motion to dismiss Plaintiff McCartney's claim for lack of privity under New York law is therefore denied.

### 2.   Dismissal for Lack of Privity

Defendants argue that the implied warranty claims of Plaintiffs Miller and Franke (California), Stone (Florida), Baladi and O'Shaughnessy (New York), and Bulgatz (Illinois) should be dismissed because they failed to adequately plead privity as their respective state laws require.  [Dkt. 34-1 at 29].  Plaintiffs argue that these states permit exceptions to the privity requirement "when a plaintiff is the intended beneficiary of implied warranties in agreements linking a retailer and a manufacturer, and therefore lack of privity does not bar plaintiffs' implied warranty claims."  [Dkt. 38 at 28–29 (quoting *Roberts v. Electrolux Home Prod., Inc.*, No. CV 12-1644 CAS, 2013 WL 7753579, at \*10 (C.D. Cal. Mar. 4, 2013))].

California and Florida "have exceptions to the vertical privity requirement when, as is the case here, the consumer, rather than the dealer, is the ultimate user."  *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at \*16 (citing *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 983-85 (California law) and *Sanchez-Knutson*, 52 F. Supp. 3d at 1233–34 (Florida law)).  These exceptions apply here because Plaintiffs are the "ultimate users" of Defendants' vehicles, and Defendants' motion to dismiss these claims is therefore denied.

36

Under Illinois law, however, such an exception only applies "where there is a direct relationship between the manufacturer and the seller or where … the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *Frank's Maint. & Eng'g, Inc.*, 86 Ill. App. 3d at 992–93, 408 N.E.2d 412.  Plaintiffs argue that such a direct relationship exists because Defendants "marketed the Class Vehicles to Plaintiffs as reliable and functional" and that "Subaru was aware that Plaintiffs and consumers require safe and reliable transportation."  [Dkt. 38 at 27–28].  However, these general marketing efforts are insufficient to establish such a "direct relationship" with the specific Illinois Plaintiff here.  *See In re VTech Data Breach Litig.*, No. 15 CV 10889, 2018 WL 1863953, at *5 (N.D. Ill. Apr. 18, 2018) (rejecting argument that advertising is sufficient to establish a "direct relationship" and dismissing implied warranty claim for lack of privity).  Illinois Plaintiff Bulgatz's implied warranty claim is therefore dismissed.

With respect to New York law, courts have found that the privity analysis is too fact intensive to resolve at the motion to dismiss stage where Plaintiffs plead a third-party beneficiary relationship.  *Argabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 487 (D.N.J. 2017) ("The Court finds that the issue of privity between the Defendants and the seller of Romeo's automobile involves issues of fact not appropriate for resolution at the motion to dismiss stage.  Defendants may renew this argument on a motion for summary judgment if they choose." (quoting *Dewey v. Volkswagen AG*, 558 F.Supp.2d 505, 524 n.17 (D.N.J. 2008))).  Because Plaintiffs have alleged that they are "third-party beneficiaries of contracts between Subaru and its dealers, and specifically Subaru's implied warranties," the Court will deny Defendants' motion as to Plaintiffs Baladi and O'Shaughnessy's implied warranty claims.

### 3. Timeliness of Plaintiff Franke and George's Implied Warranty Claims

Defendants also argue that California and Washington four-year statutes of limitations bar Plaintiffs Franke and George's implied warranty claims (Count I) and MMWA claims (Count III) because Plaintiffs Franke and George did not bring their claims within four years of purchasing their Class Vehicles. [Dkt. 38-1 at 29]. Plaintiffs argue that their implied warranty claims should be tolled and are timely because they pled that Defendants deliberately concealed the Battery Defect. [Dkt. 38 at 29].

As discussed below, the Court will dismiss Plaintiffs' MMWA claims on other grounds, and therefore declines to address this timeliness argument. As decided above, the Court will apply California law to Plaintiff Franke's implied warranty claim, under which a four-year statute of limitations applies. Cal. Com. Code § 2725. The Court also notes that Defendants have not argued that New Jersey law conflicts with Washington law as to the statute of limitations for implied warranty claims. Nor could they: both states also impose a four-year statute of limitations on implied warranty claims. *See Argabright*, F. Supp. 3d at 484 (citing N.J.S.A. § 12A:2–725(1)); Rev. Code Wash. (ARCW) § 62A.2-725(1). Under New Jersey law, equitable tolling applies to implied warranties "'where defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action'; the essence of equitable tolling 'is not whether [the p]laintiff was in possession of all the information necessary to prevail on [her] claims, but whether plaintiff had enough information to commence a lawsuit.'" *Argabright*, 258 F. Supp. 3d at 485 (quoting *Jackson v. Eddy's LI RV Ctr.*, 845 F. Supp. 2d 523, 533 (E.D.N.Y. 2012)) (alterations in the original). California applies an analogous standard. *See Rosal v. First Fed. Bank of California*, 671 F. Supp. 2d 1111, 1123 (N.D. Cal. 2009) ("Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on

the existence of his claim." (quoting *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000))).  Thus, "'the statute of limitations will be tolled if the plaintiff pleads, with particularity, the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim.'"  *Id.* (quoting *Statistical Phone Philly v. NYNEX Corp.*, 116 F. Supp. 2d 468, 482 (S.D.N.Y. 2000)).

With respect to Plaintiff George, Plaintiffs explicitly pled elements (1) and (2), and allege that he did not begin to experience problems with his car until January 2019.  [Consol. Compl. ¶¶ 117, 178, 301].  Accepting Plaintiffs' representations as true, it is plausible to infer that that he could not have discovered the defect sooner, even if he exercised due diligence.

Plaintiff Franke claims that he purchased his Class Vehicle in February 2015 and experienced battery failures as early as March 2015.  [Consol. Compl. ¶ 76].  The Amended Complaint further states that Franke returned his car to the dealership after the fourth battery failure, but that the dealership refused to replace the battery.  [*Id.* at 77–78].  The Amended Complaint does not identify dates for these subsequent failures or Franke's trip to the dealership.  Plaintiffs argue that Franke's claim should be tolled because he "began suffering battery problems soon after his purchase, acted diligently by bringing in his Class Vehicle to a Subaru dealership, which refused repair and never informed him of a defect."  [Dkt. 38 at 50].

The Court finds that Plaintiff Franke has not set forth facts to justify equitable tolling. The Consolidated Complaint and Plaintiffs' own arguments show that Plaintiff Franke immediately and repeatedly suffered battery failures as early as March 2015, and was refused service by a Subaru dealership.  The Consolidated Complaint does not specify that any of these failures or his visit to the dealership occurred within the statute of limitations.  Thus, according

to the Consolidated Complaint, Franke had the same "vital information bearing on the existence of his claim" in 2015 as he did when this lawsuit was filed in 2020. *Rosal*, 671 F. Supp. 2d at 1123. Plaintiffs' argument that the statute of limitations should be tolled because the dealership "never informed [Franke] of a defect" is futile considering Plaintiffs' claims in this lawsuit. None of the Plaintiffs have alleged that Defendants or Subaru retailers "informed" them of the Battery defect, and yet, Plaintiffs initiated this lawsuit. Without the benefit of equitable tolling, Plaintiff Franke's implied warranty claim does not meet the four-year statute of limitations and is therefore dismissed.

In sum, the Consolidated Complaint adequately pleads facts to show that Plaintiff George is entitled to equitable tolling on his implied warranty claim, but fails to do so for Plaintiff Franke's implied warranty claim. Accordingly, Defendants' motion to dismiss implied warranty claims as untimely is granted as to Plaintiff Franke, but denied as to Plaintiff George.

### v. Magnuson-Moss Warranty Act Claims, 15 U.S.C. § 2310(d)(1) ("MMWA") (Count III)

Defendants move to dismiss Plaintiff's MMWA claims on two grounds. First, they argue that the Court lacks subject-matter jurisdiction over the MMWA claims because Plaintiffs failed to name one hundred plaintiffs in the complaint as the statute expressly requires. [Dkt. 34-1 at 30]. Second, Defendants argue that, even if the Court finds that it has jurisdiction, the MMWA claims are meritless for the same reasons as Plaintiffs' warranty claims. The Court agrees that it lacks jurisdiction over Plaintiffs' MMWA claims and declines to review Defendants' argument as to the merits of Plaintiffs' MMWA claims.

Under 15 U.S.C. §2310(d)(1), the MMWA vests jurisdiction "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." Paragraph (3) requires

plaintiffs to satisfy three elements: (1) the amount in controversy for each plaintiff exceeds $25; (2) the total amount in controversy exceeds $50,000; and (3) "the number of named plaintiffs is at least 100."  15 U.S.C. § 2310(d)(1)(B).

The parties offer competing interpretations of the MMWA's jurisdictional provisions. Defendants argue that, because there are fewer than 100 named plaintiffs in this case, Plaintiffs cannot meet element (3) and therefore failed to plead jurisdiction.  [Dkt. 34-1 at 30].  Plaintiffs argue that the Court may nevertheless exercise jurisdiction over their MMWA claims because 15 U.S.C. § 2310(d)(1)(A) permits MMWA cases in "any court of competent jurisdiction," and because the court already has jurisdiction over the case under the Class Action Fairness Act ("CAFA").  [Dkt. 38 at 35–36].

The parties' dispute reflects a disagreement in this district as to whether courts may exercise jurisdiction over MMWA claims where, as here, a complaint fails to name 100 plaintiffs but where the court otherwise has jurisdiction to hear the case.  *Compare, e.g., Powell*, 2020 WL 6886242, at *18 (finding no jurisdiction under the MMWA) *with Payne v. Fujifilm U.S.A., Inc.*, No. CIV.A. 07-385 (JAG), 2007 WL 4591281, at *6 (D.N.J. Dec. 28, 2007) (finding jurisdiction under the MMWA).  In finding a lack of jurisdiction in *Powell*, Judge Hillman held that plaintiffs "may not use CAFA as a means to evade the explicit jurisdictional requirements of the MMWA."  *Powell*, 2020 WL 6886242, at *19.  Judge Hillman noted that finding jurisdiction despite a plaintiff's "failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMWA" without Congress's authorization or intent.  *Id.* (quoting *Floyd v. American Honda Motor Co., Inc.*, 966 F.3d 1027, 1035 (9th Cir. 2020)).  Judge Hillman also interpreted the statute to find that 15 U.S.C. § 2310(d)(1)(A) applies only to cases brought in state courts.  *Id.* at *18.  *See also* 15 U.S.C. §

41

2310(d)(1)(A) (permitting suit in "any court of competent jurisdiction in any State or the District of Columbia.").

Having reviewed the conflicting case law in this district and elsewhere, the Court agrees with Judge Hillman's reasoning and conclusion in *Powell*, which mirrors the Ninth Circuit's opinion in *Floyd*. 966 F.3d at 1035. The Court therefore finds that it lacks jurisdiction over Plaintiffs' MMWA claims and will grant Defendants' motion to dismiss these claims. The Court will not consider Defendants' alternative MMWA arguments.

### vi. Song Beverly Act, Cal. Civ. Code § 1790-1795.8 (Deering) ("SBA") (Counts IV and V)

Plaintiffs claim that Plaintiffs Franke and Miller are entitled to relief for Defendants' violations of the SBA's express (Count IV) and implied (Count V) warranty protections. Defendants challenge these claims in three ways. First, Defendants argue that the SBA's damages provisions conflict with damages available to Plaintiffs under New Jersey law. [Dkt. 34-1 at 19–20]. Second, Defendants argue that Plaintiffs Miller and Franke's express warranty claims under the SBA fail as a matter of law. [*Id.* at 33–34]. Finally, Defendants argue that Plaintiff Miller's SBA claim is untimely. [*Id.* at 34].

### 1. Choice of Law

Defendants argue that New Jersey law, which only permits actual damages plus consequential damages for express warranty claims, conflicts with the SBA, which permits "actual damages and, for willful violations, a civil penalty of up to two times actual damages." [Dkt. 34-1 at 19–20 (comparing N.J.S.A. 12A:2-714 with Cal. Civ. Code § 1794(b), (c) (Deering))]. Defendants also point out that "Song-Beverly … allows recovery of costs and expenses, including attorneys' fees, unlike New Jersey. [*Id.* (citing Cal. Civ. Code § 1794(d) (Deering))]. However, Defendants do not argue for a choice-of-law analysis that would require

42

the Court to apply New Jersey law to Plaintiffs' SBA claims. In fact, they seem to argue the opposite. [*See id.* at 20 "Plaintiffs' home states have the most significant relationship."]. Moreover, Defendants have not offered any authority to show that New Jersey law can or should override damages which a California statute makes available to California plaintiffs. Defendants' claims regarding these differences in statutory remedies will not affect the Court's analysis of Plaintiffs' SBA claims.

### 2.   SBA Express Warranty Claims (Count IV)

Defendants argue that Plaintiffs Miller and Franke's SBA claims fail as a matter of law because Plaintiffs have failed to plead facts necessary to state an express-warranty SBA claim.

In order to state a claim for breach of express warranty under the SBA, a plaintiff must show "(1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repairs." *Gonzalez v. Ford Motor Co.*, No. CV 19-652 PA (ASX), 2019 WL 1364976, at *5 (C.D. Cal. Mar. 22, 2019) (quoting *Arteaga v. Carmax Auto Superstores W. Coast, Inc.*, No. CV-14-1888 RSWL (CWx), 2014 WL 3505527, at *3 (C.D. Cal. July 11, 2014). Defendants argue that Plaintiffs Miller and Franke fail to meet element (1) because the Limited Warranty does not cover the complained-of defect for the same reasons discussed above. [Dkt. 34-1 at 34]. Defendants also argue that Defendant Miller fails element (3) because he only presented his car for repair once before filing this lawsuit. [*Id.*].

As noted above, Plaintiffs concede that Plaintiff Miller cannot sustain his Song-Beverly Act claim. [Dkt. 38 at 17 n.1]. Plaintiff Franke meets element (1) because, as discussed above,

he adequately pleads a defect which the Limited Warranty covers.  The Court therefore denies Defendants' motion to dismiss Plaintiff Franke's SBA claim.

### 3.  SBA Implied Warranty Claims (Count V)

Defendants allege that Plaintiff Miller's breach of implied warranty claim under the SBA fails because his alleged breach did not occur within one year of when he purchased his car, and the statute imposes a one-year warranty period.  [Dkt. 34-1 at 34] (citing Cal. Civ. Code § 1791.1(c) ("[I]n no event shall such implied warranty have a duration of less than 60 days nor more than one year following the sale of new consumer goods to a retail buyer.")).  However, the California Court of Appeals has held that this one-year-from-purchase period does not apply to products with latent defects.  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 95 Cal. Rptr. 3d 285, 295 (2009).  *See also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) (adopting *Mexia*'s holding).  This latent-defect exception applies in this case because Plaintiffs have alleged that the Battery Defect is a latent defect.  [Consol. Compl. ¶ 300].  While the Court agrees with Defendants that the statute does not contain a carveout for latent defects, [Dkt. 39 at 9–10], the Court is bound by the decision of intermediate state appellate courts.  *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018).  Thus, Defendants' motion is denied with respect to Defendant Miller's breach of implied warranty claim under the SBA.

### vii.  Fraud and Consumer Protection Claims

Plaintiffs have alleged fraud and/or unfair business practices under seven state consumer-protection statutes: the New Jersey Consumer Fraud Act N.J. Stat. Ann. § 56:8-1 et seq. ("NJCFA") (Count VI); the California Consumers Legal Remedies Act Cal. Civ. Code §§ 1750–1785 ("CLRA") (Count VII); California Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200–17210 ("UCL") (Count VIII); the Florida Deceptive and Unfair Trade Practices Act Fla.

Stat. § 501.201 et seq. ("FDUTPA") (Count IX); Illinois Consumer Fraud and Deceptive

Business Practices Act 815 Ill. Comp. Stat. § 505/1 et seq. ("ICFA") (Count X); the Michigan

Consumer Protection Act Mich. Comp. Laws § 445.901, et seq. ("MCPA") (Count XI);[9] and

New York General Business Law §§ 349, 350 ("NYGBL").  Plaintiffs also allege common law

fraudulent concealment (Count XV).  These claims generally assert that Defendants knew of the

Battery Defect but concealed information about the Battery Defect despite having a duty to

disclose this information.  [*See e.g.*, Consol. Compl. ¶¶ 266–68].  Plaintiffs all claim that they

spoke to Subaru representatives and reviewed the Class Vehicles' Monroney stickers before

purchasing their Class Vehicles.  Some claim that they also reviewed Subaru advertisements and

marketing materials before purchasing their vehicles.  According to Plaintiffs, none of these

sources of information disclosed the battery defect.

Defendants challenge Plaintiffs fraud claims—collectively and individually—on

numerous grounds.  The Court will discuss each of Defendants' arguments in the order

Defendant has presented them.

### 1.   The Sufficiency of Plaintiffs' Pleadings Under Federal Rule of Civil Procedure 9(b)

Defendants first argue that Federal Rule of Civil Procedure 9(b)'s heightened pleading

standard applies to Plaintiffs' statutory fraud and common-law fraudulent concealment claims.

[Dkt. 34-1 at 35].  Defendants are correct to the extent that their challenge applies only to

statutory claims that sound in fraud or deception.[10]  *Naporano Iron & Metal Co. v. Am. Crane*

---

[9] As mentioned above, Plaintiffs have asked the court to dismiss the Michigan Plaintiff Beck's MCPA claim.

[10] The Court notes that Plaintiffs have alleged unfair and unlawful conduct as well as fraudulent conduct under the UCL [Consol. Compl. ¶¶ 292–295]; unfair and deceptive conduct under the CLRA [Consol Compl. ¶ 280; and unfair conduct under the FDUTPA [Consol. Compl. ¶ 311].

*Corp.*, 79 F. Supp. 2d 494, 510–11 (D.N.J. 1999) (NJCFA); *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 336 (D.N.J. 2014) (CLRA); *Sauer*, 2020 WL 1527779, at *8 (UCL); *Morano v. BMW of N. Am., LLC*, 928 F. Supp. 2d 826, 833 (D.N.J. 2013) (citing *Blair v. Wachovia Mortg. Corp.*, 11–cv–566–OC–37, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012)) (FDUTPA); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011)) (ICFA); *Weske v. Samsung Elecs., Am.*, Inc., 934 F. Supp. 2d 698, 703 (D.N.J. 2013) (fraudulent concealment).

Rule 9(b) requires Plaintiffs alleging fraud claims to plead the "circumstances" of the alleged fraud with specificity sufficient to "place defendants on notice of the precise misconduct with which they are charged." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). To that end, "[a]lthough the rule states that [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally, and does not require the plaintiff to plead every material detail of the fraud, the plaintiff must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Argabright*, 201 F. Supp. 3d at 590–91 (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (internal quotations and citations omitted)). "'Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'" *Powell*, 2020 WL 6886242, at *20 (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d at 216).

---

Rule 9(b)'s heightened pleading standard does not apply to these claims. *See Morano v. BMW of N. Am.*, LLC, 928 F. Supp. 2d 826, 833 (D.N.J. 2013) ("It follows, then, that '[t]he requirements of Rule 9(b) do not apply' merely because a claim is brought under FDUTPA." (citing *Guerrero v. Target Corp.*, 889 F. Supp.2d 1348 (S.D. Fla. 2012)).

As a preliminary matter, Defendants argue that Plaintiffs have failed to satisfy Rule 9(b) because their pleadings improperly lump-together SOA and SBR without specifying which entity committed which fraudulent conduct.  [Dkt. 34-1 at 35].  Generally, "[w]hen multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant."  *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) (citing *Cinalli v. Kane*, 191 F. Supp. 2d 601, 609 (E.D. Pa. 2002)).  However, because this case involves "'an alleged fraudulent concealment perpetrated by sophisticated corporate entities that are related to each other, [Plaintiff] need not distinguish the specific roles that each entity played in the fraudulent concealment in order to meet the Rule 9(b) standard."  *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 226 (D.N.J. 2020) (quoting *Gray v. BMW of N. Am., LLC*, 2014 WL 4723161, at *2 (D.N.J. Sept. 23, 2014)).

Defendants next argue—and Plaintiffs concede—that Defendants did not make actionable affirmative fraudulent misrepresentations to Plaintiffs.  [Dkt. 34-1 at 36; Dkt. 38 at 39].[11]  Plaintiffs clarify that they argue only that Defendants fraudulently omitted or concealed known information about the Battery Defect.  [Dkt. 38 at 38].  On that point, Defendants argue primarily—and categorically, without analyzing the elements of each statutory claim—that Plaintiffs' fraudulent concealment claims should be dismissed because the Consolidated

---

[11] Plaintiffs argue that "Subaru's argument wrongly assumes that Plaintiffs base their consumer fraud claims on affirmative misrepresentations.  Plaintiffs bring omissions-based claims arising from Subaru's failure to disclose material information that would have made its partial representations about the Vehicles not misleading."  [Dkt. 38 at 39].  This argument is at odds with some the legal claims alleged in the Consolidated Complaint.  [*See, e.g.*, Consol. Compl. ¶ 279.a ("Subaru represented that the Class Vehicles have characteristics, uses, or benefits that they do not have.")].  Nevertheless, based on Plaintiffs' representation, the Court grants Defendants' motion to dismiss as it applies to all fraud claims based on affirmative misrepresentations.

Complaint fails to allege facts showing that Defendants knew of the Battery Defect.  [Dkt. 34-1 at 38].[12]

Naturally, Plaintiffs disagree.  As evidence of Defendants' knowledge, Plaintiffs cite to several Technical Support Bulletins ("TSB") which Subaru filed with the National Highway Traffic Safety Administration ("NHTSA") between June 2014 and October 2019 which addressed battery-life issues for various models and years of Subaru vehicles.  [Consol Compl. ¶¶ 153–59].  Plaintiffs also point to "consumer complaints submitted to NHTSA and Subaru, internal pre-release testing data, warranty data from its dealers, replacement-parts sales data, … reimbursement claims paid to Subaru dealers for work performed in response to warranty claims," and consumer posts to third-party websites such as the NHTSA website and Facebook. [Dkt. 38 at 43; Consol. Compl. ¶¶ 146–51; 161–62].

Taken together and construed in favor of Plaintiffs, the facts and evidence which Plaintiffs cite in the Consolidated Complaint permit a plausible inference that Defendants knew of the Battery Defect when they sold vehicles to Plaintiffs.  Several of the TSBs address battery failures in Subaru vehicles, and others address programming errors related to battery failures. For example, the June 9, 2014 TSB addresses "Parasitic Battery Draw" for "All Models" of Subaru vehicles.  [Consol. Compl. ¶ 153].  Several 2017 TSBs concern computer programming

---

[12] Plaintiffs do not dispute that knowledge is a common element of state consumer protection statutes for omission, concealment, or deception, or for common-law fraudulent concealment. *See, e.g.*, *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, No. CV153103KMJBC, 2020 WL 5743072, at *17 (D.N.J. Sept. 25, 2020) ("The NJCFA requires a plaintiff to prove three elements:  (1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss…  Under the NJCFA, 'unlawful conduct' falls within three general categories: affirmative acts, knowing omissions, and violation of regulations promulgated under N.J. Stat. Ann. §§ 56:8-2, 56:8-4.") (citations and quotations omitted).

to address "potential battery discharge (dead battery) after repeated periods of short trip driving." [Consol. Compl ¶ 156–58]. Even though the 2017 TSBs do not all involve vehicles of the same year and model as the Class Vehicles, Plaintiffs have alleged that the defective CAN system "has been implemented in all Subaru models." [Consol. Compl. ¶ 219]. Assuming that this claim is true, Subaru's knowledge of software-related battery problems in non-Class Vehicles could show that Defendants knew that the same problems affected Class Vehicles that contained the same CAN system. Construed in favor of Defendants, these TSBs suggest that Defendants were aware of a battery-related defect across Subaru vehicles of numerous models and years which electronic reprogramming could alleviate.

Defendants argue that any TSBs which post-date Plaintiffs' Class Vehicle purchases cannot show that Defendants had pre-sale knowledge of the Battery Defect. [Dkt. 34-1 at 40]. However, the earliest TSB which Plaintiffs cite was issued in June 2014, before any Class Plaintiffs purchased their Class Vehicles. Moreover, most of the cited TSBs were issued within one to two years of the earliest Class Vehicle purchases and therefore "permit plausible inferences that [Defendants] were aware of the defect at the time they sold the vehicles." *Falco v. Nissan N. Am. Inc.*, No. CV 13-00686 DDP MANX, 2013 WL 5575065, at *6 (C.D. Cal. Oct. 10, 2013); [*compare* Dkt. 34-1 at 14 (listing purchase dates of Class Vehicles) *with* Dkt. 38 at 40–41 (listing TSB publication dates)].

The facts pled also support a finding that Defendants learned of the Battery Defect through warranty claims. Plaintiffs state that they sought replacement batteries while their Class Vehicles were under warranty. [*E.g.* ¶ 91]. Further, some customer complaints to NHTSA

"specifically state that the [battery] issues were reported to Subaru by way of warranty claims."[13] *Powell*, 2020 WL 6886242, at *22. [*See* Consol. Compl. at 52–52]. The Consolidated Complaint explains that Subaru's Quality Assurance Division would have gained knowledge of the Battery Defect through these warranty claims.[14] The Consolidated Complaint also explains that Subaru dealership service centers provide "detailed documentation … for repairs made pursuant to warranties." [*Id.* ¶ 150].[15] Construed in favor of Plaintiffs, these customer complaints suggest that Defendants would have learned of battery-related issues when customers sought repairs under their warranties. *See id.*[16]

Defendants further argue that, to the extent TSB's do provide evidence of Defendants' knowledge of the Battery Defect, Defendants did not "conceal" this information because they filed the information publicly with the NHTSA. [*Id.* at 41]. This might be a compelling argument if Defendants established that the state laws and consumer fraud statutes at issue here imposed on Plaintiffs some duty to research or investigate their Class Vehicles before purchasing

---

[13] Plaintiffs allege that Defendants "actively monitor[]" the NHTSA website and other third-party websites for customer complaints. [Consol. Compl. ¶ 162].

[14] "Subaru's Quality Assurance Division … collects and analyzes data from dealership service centers, parts sales reports, warranty claim data, and technical reports from Subaru engineers who examine vehicles brought in for warranty repairs." [Consol. Compl. ¶ 149].

[15] This explanation of how Subaru gained knowledge of the Battery Defect distinguishes this case from *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, upon which Defendants rely to argue that Plaintiffs' pleadings are insufficient. [Dkt. 34-1 at 38–39]. *Cf. Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 104 (3d Cir. 2013) (finding that the plaintiff inadequately pled knowledge because he failed to "provide any facts relating to the alleged books of knowledge, internal testing, or dealership repair orders.").

[16] To be sure, other courts in this district have found that similar evidence suffices to show that defendants had knowledge of vehicle defects for fraudulent omission claims at the pleading stage. *See Powell*, 2020 WL 6886242, at *22 (collecting cases).

them, and that such an investigation would have included a review of TSBs filed with NHTSA.[17] But because Defendants have not established such a duty, the Court rejects this argument.

Next, Defendants argue on several grounds that SBR specifically cannot be held liable for fraud. [Dkt. 34-1 at 41]. First, Defendants argue that the Complaint fails to establish that SBR was responsible for any of the alleged misrepresentations. But the Consolidated Complaint alleges that SBR and SOA "jointly develop sales and marketing materials" and "jointly design, determine the substance of, and affix to Subaru vehicles" the Monroney stickers. [Consol. Compl. ¶¶ 28–29]. Relatedly, Defendants claim that "SBR does not sell, distribute, market, warrant, or service Subaru vehicles in the United States." [Dkt. 34-1 at 41]. This is a factual dispute that the Court cannot resolve at this juncture. Defendants also argue that SBR cannot be liable for omissions from Monroney stickers because "the categories of information to be included on that label are prescribed by law and do not include information about potential vehicle defects." [Dkt. 34-1 at 42 (citing 15 U.S.C. § 1232)]. Defendants offer no authority for their claim that 15 U.S.C. § 1232 exclusively lists the information that an automobile manufacturer may include on its vehicles' Monroney stickers.

Finally, Defendants argue that Plaintiffs have not established that SBR owed a duty to disclose information regarding the Battery Defect.[18] [Dkt. 34-1 at 41]. Plaintiffs allege

---

[17] *Cf. Darne v. Ford Motor Co.*, No. 13 C 03594, 2015 WL 9259455, at *11 (N.D. Ill. Dec. 18, 2015) ("That Ford publicly issued a number of TSBs related to the 6.4L engine is incompatible with allegations that it attempted to conceal these facts. Moreover, Ford had no duty to disclose information about any alleged defects in the engine because consumers, like Darne, could have discovered that information with the exercise of reasonable diligence. Darne states that, 'unless the consumer is knowledgeable about the NHTSA database," he or she never sees or hears of the TSBs Ford issued. **Although the NCUDTPA does not require a consumer to be 'knowledgeable,' it does require a consumer to use reasonable diligence to investigate before imposing a duty on the seller to affirmatively disclose a defect**.") (emphasis added).

[18] Defendants have argued lack of duty only as to SBR.

throughout their Consolidated Complaint that SBR had a duty to disclose information concerning

the Battery Defect due to its superior knowledge of the Battery Defect through the sources

discussed above.  [*See, e.g.*, Consol. Compl. ¶¶ 146, 180].  And, as discussed above, the

Consolidated Complaint plausibly alleges that SBR knew of the Battery Defect and participated

in creating marketing materials and Monroney stickers for the Class Vehicles.  However, not all

states recognize a duty to disclose based merely on superior knowledge in an arm's-length

transaction at common law or for statutory fraud claims.  Indeed, courts interpreting fraud claims

under New Jersey, Michigan, Illinois, and Florida common law, and under the NJCFA and

ICFA, have not recognized such a duty.  *See New Jersey Econ. Dev. Auth. v. Pavonia Rest., Inc.*,

319 N.J. Super. 435, 446, 725 A.2d 1133, 1139 (App. Div. 1998) ("[A] party has no duty to

disclose information to another party in a business transaction unless a fiduciary relationship

exists between them, unless the transaction itself is fiduciary in nature, or unless one party

'expressly reposes a trust and confidence in the other.'" (quoting *Berman v. Gurwicz*, 189 N.J.

Super. 89, 93, 458 A.2d 1311 (Ch. Div. 1981))) (New Jersey common law); *Mickens v. Ford*

*Motor Co.*, 900 F. Supp. 2d 427, 441 (D.N.J. 2012) (citing *Arcand v. Brother Int'l Corp.*, 673 F.

Supp. 2d 282, 296 (D.N.J. 2009)) (NJCFA); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 218 (S.D.

Ill. 2018) (ICFA and Illinois common law) (same*);  Matanky v. Gen. Motors LLC*, 370 F. Supp.

3d 772, 794 (E.D. Mich. 2019) ("[A] legal duty to make a disclosure will arise … where

inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are

truthful in themselves but omit material information." (quoting *MacDonald v. Thomas M. Cooley*

*Law Sch.*, 880 F. Supp.2d 785, 798-99 (W.D. Mich. 2012), *aff'd*, 724 F.3d 654, 666 (6th Cir.

2013))) (Michigan common law)[19]; *Taylor v. Am. Honda Motor Co.*, 555 F. Supp. 59, 64 (M.D.

_____

[19] The Court will discuss Michigan Plaintiff's MCPA claim separately below.

Fla. 1982) ("[A]llegations of superior actual knowledge are not sufficient to state a claim of fraudulent concealment.") (Florida common law).  *Cf. Ponzio*, 447 F. Supp. 3d at 246 (quoting *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1063 (C.D. Cal. 2015) (acknowledging duty based on superior knowledge under the UCL); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337, 60 Cal. Rptr. 2d 539 (1997)) (CLRA); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1105 (S.D. Fla. 2019) (FDUTPA); *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013) (California common law); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (New York common law); *Short v. Hyundai Motor Co*., 444 F. Supp. 3d 1267, 1280 (W.D. Wash. 2020) (Washington common law).[20]   Plaintiffs have not argued that any other duty attaches to SBR's statutory fraud, omission, or deception claims, or Plaintiffs' common-law fraudulent concealment claim.[21]  Plaintiffs' NJCFA and ICFA claims, and common-law fraud claims under New Jersey, Michigan, Illinois, and Florida law against against SBR are therefore dismissed.

## 2.  New York General Business Law §§ 349, 350 ("NYGBL") (Counts XII and XIII)

Defendants argue that Plaintiffs' New York statutory false advertising claims must fail because Plaintiffs have failed to allege that any deceptive conduct occurred in New York.  [Dkt.

---

[20] The Court will discuss Plaintiffs' fraudulent concealment claim under Texas common law separately below.

[21] The Consolidated Complaint claims that Defendants also owed a duty to Plaintiffs based on partial disclosure of information.  [Consol. Compl. ¶ 34-1 ¶¶ 268, 323, 370].  However, Plaintiffs have not identified specific statements or representations which Defendants made that were mere "partial disclosures."  To the extent that Plaintiffs rely on marketing materials generally touting the "quality, durability and reliability" of Subaru vehicles [*e.g.*, Consol. Compl. ¶ 166], such advertising "amounts to 'mere' puffery [and] is not actionable because no reasonable consumer relies on puffery."  *Ponzio*, 447 F. Supp. 3d at 234 (quoting *In re Toshiba America HD DVD Marketing and Sales Practices Litigation*, 2009 WL 2940081, at *10 (D.N.J. 2009)).

34-1 at 43–44]. "The New York Court of Appeals in *Goshen v. Mutual Life Insurance Company of New York* appears to have interpreted the limiting phrase 'in this state' in sections 349(a) and 350 [of NYGBL] to require that 'the transaction in which the consumer is deceived ... occur in New York.'" *Devane v. L'Oreal USA, Inc.*, No. 19 CIV. 4362 (GBD), 2020 WL 5518484, at *6 (S.D.N.Y. Sept. 14, 2020) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013) and *Goshen v. Mutual Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002)). As Plaintiffs point out, they have alleged that Plaintiffs Baladi and O'Shaughnessy purchased their Class Vehicles in New York, where the alleged omissions occurred. [Consol. Compl. at ¶¶ 60, 68, 347]. Although Plaintiff McCartney is a New York resident, he purchased his Class Vehicle in New Jersey, and does not allege that any deceptive conduct occurred in New York. [*See* Compl. ¶ 55]. The Court therefore rejects Defendants' argument as applied to Plaintiffs Baladi and O'Shaughnessy, but grants Defendants' motion as to Plaintiff McCartney.

Defendants also argue that Plaintiffs Baladi and O'Shaughnessy's claims under § 350 of the NYGBL fail because these Plaintiffs failed to allege that they relied on Defendants' misleading advertisements. [Dkt. 34-1 at 42–43]. However, "[t]he New York Court of Appeals has squarely held … that '[j]ustifiable reliance by the plaintiff is not an element of [a] statutory claim' brought pursuant to Section 349 or 350." *Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 88 (S.D.N.Y. 2020) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 N.Y.S.2d 452, 967 N.E.2d 675 (N.Y. 2012)). *See also Devane v. L'Oreal USA, Inc.*, No. 19 CIV. 4362 (GBD), 2020 WL 5518484, at *3 (S.D.N.Y. Sept. 14, 2020) (listing elements of § 350 claim without mention of reliance); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 239 (S.D.N.Y. 2020) (same). Defendants' motion on this claim is therefore denied.

### 3. Plaintiff Bulgatz's Claim Under the Illinois Consumer Fraud and Deceptive Business Practices Act Claim, 815 Ill. Comp.

**Stat. § 505/1 et seq. ("ICFA") (Count X)**

Plaintiff Bulgatz's ICFA claim alleges that Defendants' conduct was both "unfair and deceptive." [Consol. Compl. ¶¶ 323–24]. Defendants argue that Plaintiff Bulgatz's "unfair" practices claim cannot survive because Plaintiff Bulgatz improperly relies on the same factual predicates to state both his "unfair practices" and "deceptive conduct" theories of liability. [Dkt. 34-1 at 44]. Plaintiffs counter that Bulgatz's complaint should survive because they have specifically alleged in the Consolidated Complaint that Defendants' conduct is both deceptive and unfair. [Dkt. 38 at 37–38]. But Plaintiffs rely entirely on claims that Defendants misled them by failing to disclose material information. The problem then "is not that the alleged conduct is not unfair; it is that the alleged unfair conduct completely overlaps with the deceptive conduct." *In re VTech Data Breach Litig.*, No. 15 CV 10889, 2018 WL 1863953, at *7 (N.D. Ill. Apr. 18, 2018). "Simply adding language of 'unfairness' instead of 'misrepresentation' does not alter the fact that [plaintiffs'] allegations are entirely grounded in fraud under the ICFA." *Id.* (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014)). Thus, Plaintiff Bulgatz's ICFA claim is dismissed to the extent it alleges unfair conduct.

### 4. Plaintiff Beck's Claim Under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, et seq. ("MCPA") (Count XI)

Defendants argue that Plaintiff Beck's claim under the MCPA should be dismissed because automotive sales are exempt from the MCPA. [Dkt. 34-1 at 44]. As mentioned above, Plaintiffs concede Defendants' position. [Dkt. 38 at 17 n.1]. Plaintiffs' MCPA claim is therefore dismissed.

### 5. Restitution for Plaintiffs Miller and Franke Under the California Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200–17210 ("UCL") (Count VIII)

Defendants raise three arguments against Plaintiffs Miller and Franke's UCL claims. First, Defendants argue that the only remedies available to Plaintiffs Miller and Franke under the UCL are restitution or injunctive relief.  [Dkt. 34-1 at 45].  Second, Defendants argue that Plaintiffs cannot recover restitution under the UCL because Plaintiffs purchased their cars from third-party dealerships and, therefore, that Defendants did not obtain "money or property" from Plaintiffs.  [*Id.*].  Third, Defendants argue that, even if Plaintiffs could recover from Defendants, Plaintiffs failed to plead facts showing that Plaintiffs' payments to the third-party dealerships are traceable to defendants.  [*Id.*].  Plaintiffs do not dispute that they may only obtain restitution and injunctive relief under the UCL.  However, they contend that the UCL does not require them to allege direct payment to Defendants, and that they have adequately pled that the monies payed to third-party vendors are traceable to Defendants.  [Dkt. 38 at 32].

"The UCL only provides for restitution or injunctive relief."  *Cabebe v. Nissan of N. Am., Inc.*, No. 18-CV-00144-WHO, 2018 WL 5617732, at *5 (N.D. Cal. Oct. 26, 2018) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003)); *accord Saitsky v. DirecTV, Inc.*, No. CV 08-7918 AHM (CWX), 2009 WL 10670629, at *2 (C.D. Cal. Sept. 22, 2009) ("Remedies for private individuals bringing suit under the UCL are limited to restitution and injunctive relief." (citing *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 452 (2005))).  Courts have reached "divergent conclusions" as to whether plaintiffs can seek restitution from a manufacturer defendant where plaintiffs purchased a car from a third-party dealer.  *Cabebe*, 2018 WL 5617732, at *5 (citing *Asghari v. Volkswagen Grp. of Am.*, Inc., 42 F. Supp. 3d 1306, 1324 (C.D. Cal. 2013) and *Aberin v. Am. Honda Motor Co.*, 2018 WL 1473085, at *8 (N.D. Cal. March 26, 2018)).  Courts in this District have found previously that the UCL permits plaintiffs to seek restitution from remote manufacturers, *see Powell*, 2020 WL 6886242,

at *28, and the weight of authority supports that same conclusion here.  *See Cabebe*, No. 18-CV-00144-WHO, 2018 WL 5617732, at *5 (discussing cases).

The Court agrees with Defendants that, to survive a motion to dismiss, plaintiffs suing a remote manufacturer must plead facts showing that payments to third-party distributors are traceable to the manufacturer defendants.  *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1105 (N.D. Cal. 2007). ("[T]he Court concludes that as long as Indirect Purchaser Plaintiffs are ultimately able to prove traceability, California law authorizes this Court to award them restitution under the UCL.").  However, the Court finds that Plaintiffs' have adequately pled traceability because they claim that Defendants profited from the sale of defective cars. [Consol. Compl. at ¶¶ 377–78].  *See Powell*, 2020 WL 6886242, at *28 (denying motion to dismiss after finding that similar pleadings satisfied the traceability requirement).

The Court therefore grants Defendants' motion to limit remedies available under the UCL to injunctive relief and restitution, but denies Defendants' motion to the extent it asserts that Plaintiffs failed to plead traceability.

### 6.  Timeliness of Plaintiff Franke's Claim Under the California Consumers Legal Remedies Act Cal. Civ. Code §§ 1750–1785 ("CLRA") (Count VII)

Defendants next argue that Plaintiff Franke's CLRA claim is untimely because he filed his complaint more than three years after he purchased his car.  [Dkt. 34-1 at 46].  Plaintiffs do not dispute that a three-year statute of limitations applies to CLRA claims under Cal. Civ. Code § 1783, but argue that the limitations clock starts when a latent defect is discovered under the delayed discovery rule.  [Dkt. 38 at 50].  In reply, Defendants argue that Plaintiffs failed to plead facts necessary to toll the statute of limitations.  [Dkt. 39 at 10 n.2].

"The delayed discovery rule tolls the statute of limitations on CLRA claims…. To invoke the delayed discovery rule, a plaintiff must plead facts that show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Asghari*, 42 F. Supp. 3d at 1320 (citations and quotations omitted).

For the same reasons discussed above with respect to Franke's implied warranty claim, the Court finds that Plaintiffs have failed to plead facts showing that Franke's CLRA claim was timely. Plaintiff Franke's CLRA claim is therefore dismissed.

### 7.  Plaintiffs Franke and Miller's CLRA and UCL Claims for Equitable Relief (Counts VII and VIII)

Next, Defendants argue that Plaintiffs Franke[22] and Miller's CLRA and UCL claims for equitable relief should be dismissed because they have adequate remedies at law. [Dkt. 34-1 at 46]. Plaintiffs argue that these statutory and legal claims are not mutually exclusive, at least at the pleading stage. [Dkt. 38 at 48–49]. Alternatively, Plaintiffs argue that their legal claims are not sufficient to "address Subaru's ongoing violations." [*Id.*].

In general, "'[t]here is no right to equitable relief or an equitable remedy when there is an adequate remedy at law." *Huu Nguyen v. Nissan N. Am., Inc.*, No. 16-CV-05591-LHK, 2017 WL 1330602, at *4 (N.D. Cal. Apr. 11, 2017) (*Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015)). However, both the UCL and CLRA state that the statutory remedies provided therein are "cumulative" to other legal remedies.[23] Because

---

[22] As discussed above, Plaintiff Franke's CLRA claim is dismissed as untimely.

[23] *See* Cal. Bus. & Prof. Code § 17205 (West) (UCL) ("Unless otherwise expressly provided, the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state."); Cal. Civ. Code § 1752 (West) (CLRA) ("The provisions of this title are not exclusive. The remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law.").

of this tension, there was until recently a "split of authority in the California district courts on the question of whether plaintiffs should be barred from pleading claims for equitable relief under the UCL and CLRA if they have alleged a claim that would provide an adequate remedy at law." *Luong v. Subaru of Am., Inc.*, No. 17-CV-03160-YGR, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018) (citations and quotations omitted).

The Ninth Circuit resolved this split in *Sonner v. Supreme Nutrition Corp.*, the. 971 F.3d 834, 844 (9th Cir. 2020). It held that, despite the UCL's and CLRA's cumulative remedies language, "traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action." *Id.*[24] Plaintiffs argue that *Sonner* is distinguishable because that case involved an amended complaint filed in the late stages of litigation. [Dkt. 38 at 49]. However, courts applying *Sonner* have rejected this same argument when dismissing complaints for cumulative pleading. *See, e.g.*, *Shay v. Apple Inc.*, No. 20CV1629-GPC(BLM), 2021 WL 75690, at *9 (S.D. Cal. Jan. 8, 2021). Plaintiffs also argue that the Court should not apply *Sonner* because it contradicts the Ninth Circuit's ruling in *Moore v. Mars Petcare US, Inc.* 966 F.3d 1007, 1021 (9th Cir. 2020). But *Moore* only held that the UCL and CLRA are cumulative with one another, not with separate legal remedies. *Id.* ("The UCL, FAL and CLRA explicitly provide that remedies under each act are cumulative to each other."). Thus, Plaintiffs cannot seek equitable remedies under the UCL and CLRA that are cumulative to their legal remedies.

---

[24] Because CAFA vests federal courts with diversity jurisdiction, *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007), and this Court has jurisdiction through CAFA, *Sonner*'s reasoning and holding apply here.

The question now is whether Plaintiffs have pled that they lack an adequate remedy at law. *Huu Nguyen*, 2017 WL 1330602, at *4.[25]  Under the UCL, Plaintiffs seek several forms of equitable relief, including an order "to enjoin Subaru from continuing its unlawful, unfair, and fraudulent acts or practices."  [*e.g.* Consol. Compl. ¶ 299].  These "fraudulent acts or practices" include "repairing defective parts with more defective parts and otherwise failing to adequately remedy;" and "[r]efusing to repair or replace the Class Vehicles when the known Defect manifested outside the warranty period," among others  [*Id.* ¶ 297.c,d].  Plaintiffs argue that Defendants must be enjoined from their current repair practices "because the battery itself is not the root cause of the failures.  Therefore, an injunction is required to prevent further harm, including by protecting the owners of Class Vehicles from post-judgment battery failures."  [Dkt. 38 at 48].

"It goes without saying that an injunction is an equitable remedy."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982).  The requested injunction, among other equitable remedies that Plaintiffs request, is distinct from the legal damages that Plaintiffs seek elsewhere, and the Court finds that Plaintiffs have adequately alleged that legal remedies are inadequate. Defendants' motion is therefore denied on this issue, and Plaintiffs may seek equitable remedies under the UCL.

Under the CLRA, Plaintiffs "seek injunctive relief for Subaru's violation of the CLRA." [Consol. Compl. ¶ 289].  The Complaint alleges that Defendants' CRLA violations result entirely from deceptive statements and "partial representations" made to Plaintiffs before they

---

[25] The cases upon which Plaintiffs rely do not support their argument.  *See, e.g.*, *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2018 WL 1473085, at *9 (N.D. Cal. Mar. 26, 2018) (a pre-*Sonner* case finding only that Plaintiffs could allege legal claims and equitable claims under the UCL and CLRA, and making no determination as to the sufficiency of legal remedies).

purchased their class vehicles.  [*Id.* ¶¶ 282, 283].  Plaintiffs have not explained how injunctive

relief would cure their CLRA injury as pled, or alleged facts showing that legal remedies are

inadequate.  As discussed below, and to the extent that Plaintiffs seek to enjoin Defendants from

falsely advertising their vehicles to Plaintiffs or other future customers, Plaintiffs lack standing to

obtain this relief.  Plaintiffs have therefore failed to plead that they are entitled to injunctive

relief under the CLRA.  Defendants' motion to dismiss Plaintiffs' CLRA claim for equitable

remedies is therefore dismissed.

### 8.   Economic Loss Rule (Count XV)

Defendants argue that the economic loss rule bars the fraudulent concealment claims

raised by New Jersey, California, Florida, and Illinois Plaintiffs under the laws of their respective

states.  [Dkt. 38-1 at 47].  Plaintiffs argue "fraudulent inducement is a well-established exception

to the economic loss rule" and that this exception applies to their fraudulent concealment claims.

[Dkt. 38 at 51–52].

New Jersey, California, Florida, and Illinois all recognize the economic loss rule, which

generally holds that "purely economic losses are not recoverable in tort."  *Ponzio*, 447 F. Supp.

3d at 236 (quoting *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal.

2013)).  The economic loss rule "preclude[s] plaintiffs from recovering under fraud and other

intentional tort theories of liability where the tort claims are based on the same facts as the

breach of contract claims."  *Id.* (citing *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-5304,

2014 WL 2621465, at *5 (N.D. Cal. June 12, 2014)) (discussing California law).  *See also id.* at

238 (quoting *Benkle v. Ford Motor Co.*, No. SACV161569, 2017 WL 9486154, at *9 (C.D. Cal.

Dec. 22, 2017) (Florida law); *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F.

Supp. 2d 557, 562 (D.N.J. 2002) (New Jersey law); *In re Rust-Oleum Restore Mktg., Sales*

*Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 824 (N.D. Ill. 2016) (Illinois law).  Each of

these states recognizes an exception to the economic loss rule for affirmative fraudulent

misrepresentations, but declines to apply the exception to claims of fraudulent concealment or

omission such as those advanced here.  *See Ponzio*, 447 F. Supp. 3d 236–37 (noting "[t]o benefit

from the [fraud exception under California law], the tortious claim must allege an affirmative

misrepresentation distinct from the contract breach, and the claim must allege damages beyond

what the contract breach caused." (quoting *Marshall v. Galvanoni*, No. 217CV00820KJMCKD,

2017 WL 5177764, at *6 (E.D. Cal. Nov. 8, 2017))); *In re Takata Airbag Prod. Liab. Litig.*, 193

F. Supp. 3d 1324, 1339 (S.D. Fla. 2016) (dismissing fraudulent concealment claims under the

economic loss rule); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 88, 435 N.E.2d 443, 452

(1982) ("This court has held that economic loss is recoverable where one intentionally makes

false representations."); *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449,

465 (D.N.J. 2020) (noting that the fraud exception to the economic loss rule applies to fraud in

the inducement).

Plaintiffs also do not argue that their fraud claims rely on facts distinct from their contract

claims.  *Ponzio*, 447 F. Supp. 3d at 236.  And, as stated above, Plaintiffs insist that they only

allege fraudulent concealment in this case.  [Dkt. 38 at 39].  Thus, the New Jersey, California,

Florida, and Illinois Plaintiffs' fraudulent concealment claims are dismissed under the economic

loss rule.

### 9.  Plaintiff Davis's Fraudulent Concealment under Texas Law (Count XV)

Defendants argue that Plaintiff Davis's claim for fraudulent concealment should be

dismissed because Texas law does not recognize an independent cause of action for fraudulent

concealment. [Dkt. 34-1 at 48]. Plaintiffs respond that Defendants' argument relies on a misreading of Texas law. [Dkt. 38 at 52].[26]

Based on the Court's review of Texas law, the weight of authority considers fraudulent concealment to be a tolling provision, and courts regularly dismiss fraudulent concealment claims pled as independent causes of action. *See, e.g.*, *Buraimoh v. BMW of N. Am.*, LLC, No. 1:20-CV-0019-RP, 2020 WL 7711823, at *6 (W.D. Tex. Dec. 29, 2020) (citing *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 n.21 (Tex. 2017); *Sweezey v. C.R. Bard Inc.*, No. 3:19-CV-2172-S, 2020 WL 1237394, at *1 (N.D. Tex. Mar. 12, 2020) (citing cases). Plaintiffs' Texas fraudulent concealment claim is therefore dismissed.

### viii.   Unjust Enrichment (Count XVI)

Defendants argue on several grounds that Plaintiffs' unjust enrichment claims must be dismissed. Among their arguments, Defendants claim that Plaintiffs did not have a direct relationship with Defendants because they purchased their Class Vehicles from third-party dealerships and, therefore, that Plaintiffs did not confer a benefit upon defendants. [Dkt. 34-1 at 49]. Plaintiffs respond that they have pled "unjust enrichment as an alternative route to recovery." [Dkt. 38 at 52]. Plaintiffs also argue that Defendants' argument fails because Defendants dispute that the Limited Warranty covers the Battery Defect, creating a "bona fide dispute" over Plaintiffs' breach of warranty claim. [*Id.*].

---

[26] The cases Plaintiffs upon which Plaintiffs rely do not support their argument. *See Ibe v. Jones*, 836 F.3d 516, 525-26 (5th Cir. 2016) (upholding dismissal of fraudulent concealment and negligent misrepresentation claims under economic loss rule); *N. Texas Opportunity Fund L.P. v. Hammerman & Gainer Int'l, Inc.*, 107 F. Supp. 3d 620, 636 (N.D. Tex. 2015) ("The discovery rule affords protection in only limited instances, applying in (1) cases of fraudulent concealment….").

Courts in this district have previously found that "'the majority of cases concerning claims similar to the ones asserted here—fraud and breach of warranty claims against a product manufacturer—a plaintiff may not maintain an unjust enrichment claim against the manufacturer if he did not purchase the product directly from the manufacturer." *Powell*, 2020 WL 6886242, at *29 (quoting *Defillippo v. Whirlpool Corp.*, No. 18-12523, 2019 WL 4127162, at *14 (D.N.J. Aug. 30, 2019)). *See also Schechter v. Hyundai Motor America*, No. 18-13634 (FLW), 2019 WL 3416902, at *11 (D.N.J. July 29, 2019) (citing cases). Courts summarily dismiss unjust enrichment claims where, as here, plaintiffs allege that they purchased products from third-party distributors. *See Powell*, 2020 WL 6886242, at *29.

Plaintiffs rely on *Kuzian v. Electrolux Home Products, Inc.* to argue that the parties' "bona fide dispute" regarding the Limited Warranty "precludes dismissal of Plaintiffs' unjust enrichment claims." 937 F. Supp. 2d 599, 618 (D.N.J. 2013). However, Judge Hillman applied New York law when deciding *Kuzian*, and more recently reached the opposite conclusion when applying New Jersey law. *Powell*, 2020 WL 6886242, at *29 (dismissing unjust enrichment claim where defendant argued that the complained-of defect was a design defect not covered by warranty).

Thus, the Court will grant Defendants' motion to dismiss Plaintiffs' unjust enrichment claims and declines to review Defendants' alternative arguments on this issue.

### ix.  Plaintiffs' Standing to Obtain Injunctive Relief as to False Advertising

As remedies for several of their statutory consumer-protection claims, Plaintiffs seek an order "enjoining Subaru from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint." [Consol. Compl. ¶¶ 305, 315, 343, 352, 363]. Defendants argue that, to the extent Plaintiffs seek to enjoin Defendants from falsely advertising their

vehicles, Plaintiffs lack standing to do so.  [Dkt. 34-1 at 51].  Plaintiffs respond that they have

standing because, as pled in the Consolidated Complaint, several of the named Plaintiffs "are

current Subaru customers, prefer the features and aesthetics of Subaru vehicles, and are thus

reasonably likely to purchase another Subaru in the future."  [Dkt. 38 at 55].

      A plaintiff does not have standing to bring a claim unless she can "establish that she is

'likely to suffer future injury' from the defendant's conduct."  *In re Johnson & Johnson Talcum*

*Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018) (quoting

*McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012).  "[T]he threat [of injury] must

be actual and imminent, not conjectural or hypothetical."  *Summers v. Earth Island Inst.*, 555

U.S. 488, 493, 129 S. Ct. 1142, 173 L.Ed.2d 1 (2009).  "The Supreme Court has repeatedly

reiterated that the threatened injury must be certainly impending to constitute injury in fact, and

that allegations of possible future injury are not sufficient."  *Hesse v. Godiva Chocolatier, Inc.*,

463 F. Supp. 3d 453, 465 (S.D.N.Y. 2020) (quoting *Am. Civil Liberties Union v. Clapper*, 785

F.3d 787, 800 (2d Cir. 2015)).

      Plaintiffs maintain that they have pled that they are likely to suffer repeat injuries in the

future due to their preferences for Subaru vehicles, which is sufficient to confer standing at the

pleading stage.  To support their argument, Plaintiffs cite *Davidson v. Kimberly-Clark Corp.*,

where the Ninth Circuit explicitly held

> that a previously deceived consumer may have standing to seek an
> injunction against false advertising or labeling, even though the
> consumer now knows or suspects that the advertising was false at
> the time of the original purchase, because the consumer may suffer
> an actual and imminent, not conjectural or hypothetical threat of
> future harm.

889 F.3d 956, 969 (9th Cir. 2018) (quoting *Summers* 555 U.S. at 493).  However, the Third

Circuit and other courts have squarely rejected *Davidson*'s reasoning and conclusion, finding the

threat of injury that repeat customers "might suffer as a result of the company's advertising practices [to be] 'wholly conjectural.'" *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d at 292 (quoting *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012)); *accord Lisowski v. Henry Thayer Co., Inc.*, No. CV 19-1339, 2020 WL 6743258, at *5 (W.D. Pa. Nov. 17, 2020); *Hesse*, 463 F. Supp. 3d at 465 ("Yet the injury alleged by Plaintiffs in this case is *hypothetical*—*if* they choose to purchase Godiva's products in the future, *then* they *may* be harmed. The conditionality of this alleged injury removes it from the harms that Article III authorizes federal courts to remedy.") (emphasis in original). In other words, the Third Circuit bluntly rejected "stop me before I buy again" standing arguments such as Plaintiffs' argument here. *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d at 293.

The Court will therefore grant Defendants' motion on this issue, and dismiss Plaintiffs' requests to enjoin Defendants from engaging in false advertising.

### x. Dismissal for Failure to Specify Applicable Defendant or, Alternatively, Request for More Definite Statement

Finally, Defendants argue that Plaintiffs' Consolidated Complaint fails to specify which Defendant—SBR or SOA—engaged in which wrongful conduct. [Dkt. 34-1 at 51–52]. Defendants argue that, due to this failure, Plaintiffs have failed to satisfy Federal Rule of Civil Procedure 8(a)(2), which warrants dismissal or a more definite statement under Federal Rule of Civil Procedure 12(e). [*Id.*]. The Court has already found that Plaintiffs stated their fraud claims—which are held to a heightened pleading standard—with enough specificity to notify both SBR and SOA of the claims pending against them. The Court does not find that the Consolidated Complaint is so vague as to the other claims alleged that it is "unintelligible" and

therefore declines to exercise its discretion to order a more definite statement. *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008).

## III.   Conclusion

For the reasons stated above, Defendants' Motion to Dismiss and for a More Definite Statement is granted in part and denied in part.  An appropriate order will follow.


March   31  , 2021                                   /s/ Joseph H. Rodriguez

                                                   Hon. Joseph H. Rodriguez, USDJ