**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE SUBARU BATTERY DRAIN PROD. LIAB. LITIG. | No. 1:20-cv-03095-JHR-MJS |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS,
AND TO DIRECT CLASS NOTICE**

---

Matthew R. Mendelsohn
**MAZIE SLATER KATZ
& FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-9898

Matthew D. Schelkopf
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
(610) 200-0581

Adam Polk
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
(866) 981-4800

*Plaintiffs' Interim Co-Lead Counsel*

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................2

        A.      Plaintiffs' Pre-Suit Investigation and Complaint Allegations ..................2

        B.      History of the Litigation..............................................................................3

        C.      The Parties' Settlement Negotiations..........................................................3

        D.      The Settlement Class...................................................................................4

        E.      Relief Benefiting the Class in the Proposed Settlement .............................5

                1.      Warranty Extension for Current Owners or Lessees ................5

                        (a)     First Battery Replacements ............................................5

                        (b)     Subsequent Battery Replacements .................................5

                        (c)     Extended Warranty Customer Reimbursement ..............6

                2.      Reimbursement for Out-of-Pocket Costs.................................6

                3.      Reimbursement for Extraordinary Circumstances...................7

                4.      Free Remedial Software Update ...............................................8

                5.      Costs of Notice and Settlement Administration........................8

                6.      Attorneys' Fees, Expenses and Service Awards......................8

        F.      Notice to Settlement Class Members...........................................................8

        G.      Release of Liability ...................................................................................10

III.    ARGUMENT ......................................................................................................11

        A.      The Settlement Should Be Preliminarily Approved ..................................12

        B.      The *Girsh* Factors Support Preliminary Approval...................................13

        C.      Certification of the Proposed Class for Purposes of Settlement Only Is Appropriate ...............................................................................................16

                1.      Numerosity Under Rule 23(a)(1)............................................16

                2.      Commonality Under Rule 23(a)(2).........................................17

                3.      Typicality Under Rule 23(a)(3) ..............................................18

                4.      Adequacy of Representation Under Rule 23(a)(4) .................18

                5.      The Requirements of Rule 23(b)(3) Are Met.........................19

        D.      The Court Should Approve the Notice Plan ..............................................20

        E.      A Final Approval Hearing Should Be Scheduled ......................................21

IV.     CONCLUSION...................................................................................................22

## TABLE OF AUTHORITIES

### Cases

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ....................................................16,19

*Augustin v. Jablonsky,* 461 F.3d 219 (2d Cir. 2006)......................................................20

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ............................................................18

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434 (3d Cir. 2017).................9

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ............................................11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).......................................................9

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94 (3d Cir. 2013) ...........................18

*Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553 (3d Cir. 1994).............................................10

*Haas v. Burlington Cnty.*, No. 08-1102-NHL-JS, 2019 WL 413530
(D.N.J. Jan. 31, 2019) ................................................................................ 15

*Hall v. AT&T Mobility LLC*, No. 07-5325, 2010 WL 4053547 (D.N.J. Oct. 13, 2010) .............. 12

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............................................16

*Hassine v. Jeffres*, 846 F.2d 169 (3d Cir. 1988) ........................................................ 18

*Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013 WL 1192479
(D.N.J. Mar. 22, 2013)........................................................................... passim

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................................8

*Huffman v. Prudential Ins. Co. of Am.*, 2:10-cv- 05135, 2019 WL 1499475
(E.D. Pa. Apr. 5, 2019) ............................................................................13

*Hunter v. M-B Cos., Inc.*, No. 19-CV-04838, 2020 WL 4059898 (E.D. Pa. July 20, 2020)........11

*In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244 (S.D. Tex. 1978)............................20

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-md-01998,
2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)..........................................................21

*In re GMC Truck Fuel Tank Prods. Litig.*, 55 F.3d 768 (3d Cir. 1995) ...................................14,16

*In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136 (D.N.J. 2013) ........................................11,18

*In re Nat'l Football League Players' Concussion Injury Litig. ("In re NFL")*, 301 F.R.D. 191 (E.D. Pa. 2014) ........................................................................................11,21

*In re: Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2016 WL 3015219 (M.D. Pa. May 26, 2016) ...........................................................................................................14

*In re ValeantPharms. Int'l, Inc. Sec. Litig.*, Master File No. 15-cv-07658 (MAS) (LHG) (D.N.J. Apr. 17, 2020) ....................................................................................................22

*In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ...... 12

*McCoy v. Health Net, Inc*., 569 F. Supp. 2d 448 (D.N.J. 2008) .................................................20

*Mehling v. New York Life Ins*., 246 F.R.D. 467 (E.D. Pa. 2007) ...............................................11

*Prudential Ins. Co. Sales Litig*., 148 F.3d 283 (3d Cir. 1998) ...................................................17

*Reyes v. Netdeposit, LLC*, 802 F.3d 359 (3d Cir. 2015) ............................................................17

*Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 WL 1117878 (E.D. Pa. Apr. 26, 2006) .....................18

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372 (3d Cir. 2013) ......................................................17

*Rudel Corp v. Heartland Payment Sys., Inc.*, No. 16-cv-2229, 2017 WL 4422416 (D.N.J. Oct. 4, 2017)) ..............................................................................................................11

*Shapiro v. All. MMA, Inc.*, No. 17- 2583(RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018) ...........................................................................................................12

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ....................................................................16

*Sullivan v. DB Invs., Inc*., 667 F.3d 273, 323 (3d Cir. 2011) ...............................................13,19,20

*Tardiff v. Knox County*, 365 F.3d 1 (1st Cir. 2004) ...................................................................20

*Udeen v. Subaru of Am., Inc.*, No. 18 17334(RBK/JS), 2019 WL 4894568 (D.N.J. Oct. 4, 2019) ................................................................................. passim

*Vaughn v. Am. Honda Motor Co*., 627 F. Supp. 2d 738 (E.D. Tex. 2007) .................................14

*Zimmerman v. Zwicker & Assocs., P.C.*, No. CIV. 09-3905 RMB JS, 2011 WL 65912 (D.N.J. Jan. 10, 2011) ..............................................................................................................12

**Rules/Other**

FED. R. CIV. P. 23(a) .......................................................................................... passim

FED. R. CIV. P. 23(b) .......................................................................................... passim

FED. R. CIV. P. 23(c) ................................................................................................25

FED. R. CIV. P. 23(e) ........................................................................................... passim

FED. R. CIV. P. 23(h) .................................................................................................8


Class Action Fairness Act, 28 U.S.C. § 1715 .............................................................10

Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.212 (2004)............................20

## I.   <u>INTRODUCTION</u>

Plaintiffs Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George ("Plaintiffs") brought this action on behalf of themselves and a putative class of all persons or entities in the United States, who currently own or lease, or previously owned or leased, a Class Vehicle.[1] Plaintiffs alleged that the 2.8 million Class Vehicles contain a defect that causes parasitic drain of battery power (the "Battery Drain Defect" or "Defect"). Plaintiffs further alleged that the resulting drain causes premature battery failure, which can leave drivers and their passengers stranded. Defendants Subaru of America, Inc. and Subaru Corporation (together, "Subaru") deny Plaintiffs' allegations and maintain that the Class Vehicles function properly, are not defective and that no warranties or statutes have been breached.

Plaintiffs have reached a settlement with Subaru that squarely addresses their concerns and provides significant remedies to Settlement Class Members[2] without the delay, uncertainty, and risks associated with trial and the appellate process. With the assistance of the Hon. Joel Schneider, U.S.M.J. (ret.), the parties negotiated and executed a Settlement Agreement ("Settlement") that provides Class Members with a range of benefits, including cash reimbursement for out-of-pocket repairs and other costs, a warranty extension, and a free upgrade to the Class Vehicle software, among other valuable relief. Because the Settlement provides substantial benefits to Class

---

[1] The Class Vehicles include model years ("MY") 2015-2020 Subaru Outback, MY 2015-2020 Forester, MY 2015-2020 Legacy, MY 2015-2020 WRX, and MY 2019-2020 Ascent (the "Vehicles" or "Class Vehicles").

[2] Unless otherwise indicated, capitalized terms have the meaning defined in the Settlement Agreement (cited as "SA") attached as Exhibit 1 to the Certification of Matthew Mendelsohn ("Mendelsohn Cert.").

Members, Plaintiffs' respectfully request the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement.

Granting this motion will allow the parties to proceed with the notice plan provided for in the Settlement, which will allow Settlement Class Members—including drivers who may experience the alleged defect in the future—to benefit from the Settlement even before the Court's final fairness hearing. For all the reasons set forth below, the parties' Settlement should be preliminarily approved.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs' Pre-Suit Investigation and Complaint Allegations

Before filing this action, Class Counsel conducted an extensive investigation into the alleged Battery Drain Defect. The investigation included interviewing hundreds of prospective class members; studying various forms of consumer reporting and the National Highway Traffic Safety Administration ("NHTSA") website, on which consumers had complained about the alleged defect; reviewing Subaru manuals and technical service bulletins that discuss the alleged defect; reviewing federal motor vehicle regulations regarding safety standards; identifying potential defendants; researching causes of action and other cases involving similar defects; and consulting with automotive engineering experts. (Mendelsohn Cert. ¶5.)

The named Plaintiffs are residents of New Jersey, New York, California, Florida, Illinois, Michigan, Texas and Washington. (Consolidated Class Action Complaint, ECF No. 18 ("Complaint") at ¶¶ 10-22.) Between 2015 and 2019, the Plaintiffs purchased Class Vehicles. (*Id.* at ¶¶ 30, 40, 47, 54, 60, 68, 75, 82, 89, 97, 102, 109, 115.) Each Plaintiff alleged that his or her Class Vehicle manifested the Battery Drain Defect. (*Id.* at ¶¶ 30-122.) The Complaint sought certification of a Nationwide Class and subclasses of vehicle purchasers and lessees in the Plaintiffs' home states. (*Id.* at ¶¶ 182-183.) Plaintiffs asserted claims for violations of various state

consumer fraud statutes and the Magnuson-Moss Warranty Act, and also alleged claims for breach of express warranty, breach of the implied warranty of merchantability, common law fraud, and unjust enrichment. (*Id.* at ¶¶ 191-380.)

### B.      History of the Litigation

Certain of the Plaintiffs filed their initial complaint on March 20, 2020. (ECF No. 1.) After additional cases were filed, the Court consolidated all related cases and set a briefing schedule for the appointment of lead counsel. (ECF No. 9.) Counsel in the various related actions conferred and agreed to a stipulated leadership structure with the undersigned serving as Interim Co-Lead Counsel, supported by an experienced Executive Committee and Liaison Counsel. (ECF No. 15.)

On June 18, 2020, Plaintiffs filed their Consolidated Class Action Complaint. (ECF No. 18.) On August 3, Subaru filed a motion to dismiss, which the parties fully briefed over the following months. (ECF Nos. 34, 38, 39, 42.) On March 31, 2021, the Court issued a 67-page Opinion granting in part and denying in part the motion to dismiss. (ECF Nos. 46-47.) On April 28, Subaru filed an Answer to the Consolidated Class Action Complaint. (ECF No. 50.)

Since August 20, 2021, the Parties have engaged in informal, formal, and confirmatory discovery, which has included initial disclosures, propounding and responding to interrogatories and requests for production of documents, review of documents produced by Subaru, and the deposition of Subaru's Director of Field Quality, John Gray. (Mendelsohn Cert. ¶9.)

### C.      The Parties' Settlement Negotiations

On May 12, 2021, the Parties informed the Court of their intent to pursue mediation with the Judge Schneider. (ECF No. 52.) The parties participated in a full-day mediation with Judge Schneider on July 7, 2021, followed by several additional mediation sessions over the next five months. (Mendelsohn Cert. ¶10.) As part of the mediation, the Parties exchanged confirmatory discovery subject to Federal Rule of Evidence 408. The documents showed in part Subaru's

internal warranty claims analyses, sales figures, efficacy of proposed remedies, and other information relevant to the alleged Defect and its effects. (*Id*. at ¶11.) After extensive negotiations under Judge Schneider's supervision, on November 9, 2021, the Parties reached a settlement in principle to resolve Plaintiffs' class action claims. (*Id*. at ¶12.)

All of the terms of the Settlement Agreement are the result of arm's-length negotiations between experienced counsel for both sides. (*Id*. at ¶12.) The named Plaintiffs all approve of the Settlement, which provides substantial benefits to the proposed Settlement Class. Plaintiffs' counsel also independently analyzed the nature of the Battery Drain Defect and Subaru's contention that it had implemented measures to address it, consulting automotive engineering experts, studying government reports, and interviewing and collecting documents from hundreds of class members. (*Id*. at ¶13.) In addition, before the Settlement Agreement was executed, Plaintiffs' counsel deposed a Subaru 30(b)(6) designee, whose testimony confirmed the fairness and adequacy of the Settlement. (*Id*. at ¶14.) Mr. Gray's testimony confirmed the efficacy of the software update and increased capacity batteries in the Settlement Class Vehicles as remedies for the alleged defect. (*Id*.)

### D.    The Settlement Class

If approved, the Settlement will provide substantial benefits to the following Settlement Class: All natural persons, who are residents of the continental United States, including Hawaii or Alaska, who currently own or lease, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, including Alaska or Hawaii. Excluded from the Settlement Class are the employees, officers, or directors of Subaru, affiliated Subaru entities; or Subaru's authorized retailers; all entities claiming to be subrogated to the rights of Settlement Class Members, issuers of extended vehicle warranties, third party issuers, and any

Judge to whom the Litigation is assigned. (*See* SA at §III.1). The Settlement Class Vehicles are comprised of the Subaru vehicles listed in footnote 1, *infra*.

### E.      Relief Benefiting the Class in the Proposed Settlement

Subaru has agreed to provide several forms of valuable relief that address the issues raised by the litigation.

### 1.      Warranty Extension for Current Owners or Lessees

#### (a)      First Battery Replacements

First, Subaru has agreed to extend its existing express New Vehicle Limited Warranty applicable to the Settlement Class Vehicles, to cover a first battery replacement (parts and labor) for 100% of the Battery Replacement Costs up to a period of five (5) years or sixty thousand (60,000) miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle. For Settlement Class Vehicles that have exceeded five (5) years or sixty thousand (60,000) miles on the Notice Date, Subaru will extend its existing express New Vehicle Limited Warranty for a duration of three (3) months from the Notice Date without regard to mileage to cover 50% of the Battery Replacement Costs (parts and labor) for a first battery replacement. (SA at §V.A.1).

#### (b)      Subsequent Battery Replacements

In instances where even these replacement batteries fail, Subaru has also agreed to extend its existing express New Vehicle Limited Warranty to cover the costs of a replacement battery. The parameters of the Settlement Extended Warranty are to be the greater of Subaru's existing replacement-part warranty or:

> (i)      100% of the Battery Replacement Costs (including parts and labor) up to a period of five (5) years or sixty thousand (60,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle regardless of the number of battery replacements the Settlement Class Vehicle has already received;

(ii)   80% of the Battery Replacement Costs (including parts and labor) up to a period of seven (7) years or eighty-four thousand (84,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle; or

(iii)   60% of the Battery Replacement Costs (including parts and labor) up to a period of eight (8) years or one hundred thousand (100,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle.

(SA at §V.A.2).

### (c)   Extended Warranty Customer Reimbursement

Settlement Class Members who, prior to the Notice Date, purchased a Subaru extended service contract (known as Added Security), were not entitled to battery coverage through that program will, with the settlement, receive a settlement warranty extension consistent with the time and mileage limitations described above. (SA at §V.A.3).

### 2.   Reimbursement for Out-of-Pocket Costs

Importantly, any Settlement Class Member who has not already been fully reimbursed by Subaru or a third party, will be entitled to reimbursement of the costs of Owner Paid Repairs for a Qualified Battery Condition incurred prior to the Notice Date. As set forth in the chart provided below, depending on circumstances, Settlement Class Members will receive a premium, over and above the amounts they paid for expenses related to the alleged defect. Examples of expenses eligible for reimbursement under this provision include out-of-pocket expenses for any battery replacements and/or battery testing and diagnosis performed by an Authorized Subaru Retailer, and out-of-pocket expenses for towing services. Settlement Class Members who had their Class Vehicle serviced and/or repaired at a third-party repair facility will also be entitled to reimbursement of the money they paid for any battery replacements and/or battery testing and diagnosis performed by the third-party repair facility, as well as out-of-pocket expenses for towing services, if, prior to those repair-related services, the Class Member presented his or her vehicle to

an authorized Subaru dealership or contacted Subaru's customer service division regarding the battery-related issue. (SA at §V.B).

The Settlement Agreement provides that reimbursement for a Qualifying Reimbursable Repair will be at the following rates:

| # of Owner Paid Repairs | Within 3 years/ 36,000 miles | 5 years/ 60,000 miles | 7 years/ 84,000 miles | 8 years/ 100,000 miles |
|---|---|---|---|---|
| 1 | 120% | 100% | N/A | N/A |
| 2 | 140% | 125% | 100% | 55% |
| 3+ | 165% | 140% | 120% | 100% |

(SA at §V.B.6).

### 3.    Reimbursement for Extraordinary Circumstances

Settlement Class Members who experienced two (2) or more battery failures within five (5) years and sixty thousand (60,000) miles from the In-Service Date of the Settlement Class Vehicle are also eligible, subject to submission of a claim and appropriate documentation, to receive 140% of Reasonably Related Reimbursable Costs related to the Class Member being stranded as a result of a battery failure that occurred prior to the Notice Date. Recoverable expenses include, without limitation, hotel expenses, meals, and equipment purchased to sustain battery operation, and other expenses reasonably related to the battery failure. A Settlement Class Member who qualifies for the cash payments under this section will also be entitled to receive a $140 single-use Subaru service voucher, which will remain valid for one year from the date the claim is approved. (SA at §V.C).

### 4.        Free Remedial Software Update

The Settlement further entitles any Settlement Class Member who continues to experience the Battery Drain Defect to present his or her Class Vehicle to an Authorized Subaru Retailer and receive a free software update at the dealership. Settlement Class Members who already received and paid for the software update are entitled to submit a claim and receive 100% reimbursement for expenses incurred for that update. (SA at §V.D). As confirmed during the deposition of John Gray, the software update improves the engine control module ("ECM") charging logic of the batteries in the Settlement Class Vehicles.

### 5.        Costs of Notice and Settlement Administration

Subaru alone is responsible for the costs of Class Notice and settlement administration. (SA at §V.E).

### 6.        Attorneys' Fees, Expenses and Service Awards

Plaintiffs intend to seek (and Subaru has agreed to pay) Attorney Fees and Expenses, up to $4,100,000.00. *See* FED. R. CIV. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Subaru has also agreed to pay, subject to Court approval, Service Awards in the amount of $4,000 to each of the 13 named Plaintiffs. Attorneys' Fees and Expenses, as well as Service Awards, will be in addition to the benefits provided directly to the Settlement Class, and will not reduce or otherwise affect the benefits made available to Settlement Class Members. (SA at §X.II).

### F.        Notice to Settlement Class Members

The Settlement Agreement includes a comprehensive notice plan, to be paid for by Subaru and overseen by the experienced Settlement Administrator: JND Legal Administration. Class Counsel has the right to monitor and participate in the Notice and Administration process to ensure

that the Settlement Administrator is acting in accordance with the Settlement Agreement. (SA at §VII.B).

Settlement Class Members will be notified of the Settlement by direct mail, as Subaru's database both "allows for notice directly to potential class members and limits the universe of potential claimants." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Subaru will identify Settlement Class Members through its records; verify or update the contact information through Experian, a third party that maintains and collects the names and addresses of automobile owners; and send out the Notice to the members of the Settlement Class by postcard. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Prior to this mailing, an address search through the United States Postal Service's National Change of Address database will be conducted to ensure the latest address information for Settlement Class Vehicle owners and lessees. For each individual Notice returned as undeliverable, the Settlement Administrator will re-mail the Class Notice where a forwarding address has been provided. For remaining undeliverable Notices where no forwarding address has been provided, the Settlement Administrator will perform an advanced address search (e.g., a skip trace) and re-mail those undeliverable Notices to the extent any new and current addresses are located. (SA at §VII.B.1).

Subaru also will maintain a dedicated settlement website that will include the Notice, Claim Form, Settlement Agreement, and other relevant documents. The Settlement Administrator will also email a hyperlink to the Settlement Website and electronic versions of the Long Form Notice and Claim Form to Class Members for whom the Settlement Administrator may obtain an email address for. Likewise, Class Counsel will include a link to the Settlement Website on their respective law firm's websites. Subaru will pay the costs of Notice and Settlement Administration,

and will provide notice of the settlement to the appropriate state and federal officials, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (SA at §VII.B.1).

Notice will be sent within 90 days after entry of the Court's Order preliminarily approving the proposed Settlement. Settlement Class Members seeking reimbursement for Qualifying Repairs already undertaken must submit a Claim Form within 60 days of the Effective Date.

The Settlement Agreement clearly delineates the process and procedure in the event that the Settlement Administrator rejects a claim for reimbursement of out-of-pocket expenses. The Settlement Administrator will provide notice of its decision to any such claimant and provide him or her with 45 days to cure any deficiencies and/or request a Second Review. (SA at §VI).

Finally, the Settlement Agreement accounts for any Settlement Class Members who wish to object or exclude themselves from the settlement. Consistent with Rule 23(e)(5)(A), the Settlement Agreement requires that any objection or opt-out request contain sufficient information to reasonably demonstrate that the submission is made by a person who has standing as a Settlement Class Member. (SA at §VIII).

### G.     Release of Liability

In exchange for the foregoing – and subject to approval by the Court – Plaintiffs and Class Members who do not timely exclude themselves will be bound by a release of all claims arising out of or relating to the claims that were asserted in the Complaint ("the Released Claims"). *See Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1563 (3d Cir. 1994). The Released Claims will extend to Defendants and their related entities and persons. The Released Claims will not, however, apply to any claims for death, personal injury, property damage (other than damage to the Class Vehicle), or subrogation. The Settlement Agreement provides that upon finality, the case will be dismissed with prejudice. (SA at §§II.29 and XI).

III.    **ARGUMENT**

The Court's review of a class action settlement is a two-step process consisting of preliminary approval and final approval determinations. *Udeen v. Subaru of Am., Inc.*, No. 18 17334(RBK/JS), 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019). At this preliminary approval stage, "the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Injury Litig. ("In re NFL")*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting *Mehling v. New York Life Ins.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (citations omitted)). Under Rule 23, a settlement falls within the "'range of possible approval,' if there is a *conceivable basis* for presuming that the standard applied for final approval – fairness, adequacy, and reasonableness – will be satisfied." *In re NFL*, 301 F.R.D. at 198 (emphasis added) (citations omitted).

In addition, "a settlement agreement is entitled to a presumption of fairness when it resulted from arm's length negotiations between experienced counsel." *Hunter v. M-B Cos., Inc.*, No. 19-CV-04838, 2020 WL 4059898, at *3 (E.D. Pa. July 20, 2020); *see also Udeen*, 2019 WL 4894568, at *2 ("A settlement is presumed fair when it results from 'arm's-length negotiations between experienced, capable counsel after meaningful discovery.'") (quoting *Rudel Corp v. Heartland Payment Sys., Inc.*, No. 16-cv-2229, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017)). This presumption applies in furtherance of the public policy favoring settlement, *see Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010), and "settlement of litigation is especially favored by courts in the class action setting." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013). Moreover, "the participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without

collusion between the parties." *In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (quoting *Hall v. AT&T Mobility LLC*, No. 07-5325, 2010 WL 4053547, at *7 (D.N.J. Oct. 13, 2010)).

Because there are no "obvious deficiencies" in the parties' Settlement Agreement in this case, nor any "grounds to doubt its fairness," the standards for granting preliminary approval are satisfied. This Settlement is fair, adequate, and reasonable; it is more than conceivable that the requirements for final approval will be satisfied, and Class Members will be provided with notice in a manner that satisfies the requirements of due process and Federal Rule of Civil Procedure 23(e). Therefore, Plaintiffs respectfully ask the Court to enter the proposed order, which will: (i) grant preliminary approval of the proposed settlement; (ii) find that the Settlement Class is likely to be certified pursuant to Federal Rule of Civil Procedure 23(b)(3); (iii) schedule a final approval hearing to consider final approval of the Settlement; and (iv) direct adequate notice to Settlement Class Members of the Settlement and their rights.

### A.      The Settlement Should Be Preliminarily Approved

At the preliminary approval stage, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *Shapiro v. All. MMA, Inc.*, No. 17- 2583(RBK/AMD), 2018 WL 3158812, at *3 (D.N.J. June 28, 2018). Unlike final approval, "[p]reliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Zimmerman v. Zwicker & Assocs., P.C.*, No. CIV. 09-3905 RMB JS, 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011).

The settlement here is the result of extensive, arms'-length negotiations between experienced counsel, who believe the settlement is in the best interests of their respective clients.

Class Counsel verified the adequacy of the Settlement by reviewing thousands of pages of documents, deposing Subaru's Director of Field Quality, interviewing Class Members, and consulting extensively with their technical expert. The settlement is well supported and will eliminate the uncertainties and risks to the Parties from proceeding further in the litigation. Thus, preliminary approval should be granted.

## B.  The *Girsh* Factors Support Preliminary Approval

Although the foregoing analysis is sufficient for the Court to grant preliminary approval, a factor-by-factor analysis confirms this conclusion. *Udeen*, 2019 WL 4894568, at *3.[3] The following nine factors inform the analysis at the final approval stage:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

The court evaluates a class settlement "against the realistic, rather than theoretical potential for recovery after trial." *Sullivan v. DB Invs., Inc*., 667 F.3d 273, 323 (3d Cir. 2011) (en banc). In

---

[3] Rule 23(e) was amended in December 2018 to specify uniform standards for settlement approval. Courts in this district have continued to apply the same legal standards to preliminary approval after the 2018 amendments. *See, e.g.*, *Udeen*, 2019 WL 4894568; *Smith*, 2019 WL 3281609. Further, "[t]he 2018 Committee Notes to Rule 23 recognize that, prior to this amendment, each circuit had developed its own list of factors to be considered in determining whether a proposed class action was fair[.]" *Huffman v. Prudential Ins. Co. of Am*., 2:10-cv-05135, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019) (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes). "[T]he goal of the amendment is not to displace any such factors, but rather to focus the parties [on] the 'core concerns' that motivate the fairness determination." *Id.* As such, the traditional *Girsh* factors continue to apply.

conducting this analysis, the court also "guard[s] against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re GMC Truck Fuel Tank Prods. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995); *see also In re: Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2016 WL 3015219, at *2 (M.D. Pa. May 26, 2016) (noting that "a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted). All of the *Girsh* factors that the Court can analyze now support preliminary approval.[4]

This Settlement affords complete relief to the drivers most affected by the battery problems. It will result in substantial payments to numerous Class Members, who in many instances can recover not only their actual out-of-pocket losses for repairs and expenses traceable to the defect, but also an additional sum as damages, resulting in reimbursement well over 100% of their out-of-pockets. The warranty extension and free software update provide further benefits to all Class Members, and, because the Settlement is not a traditional common fund, the cash recoveries will not be reduced *pro rata* based on the number of claimants. *See, e.g.*, *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 746 (E.D. Tex. 2007) (valuation of settlement benefits included "warranty extensions").

The complexity, expense, and likely duration also support preliminary approval because, without the Settlement, the parties would be engaged in contested motion practice and adversarial litigation for years. The claims advanced on behalf of the Settlement Class Members involve numerous complex legal and technical issues. Continued litigation would be time consuming and expensive, with no certainty of a favorable outcome through a nationwide class action. The

---

[4] The reaction of the class cannot be evaluated until after notice is issued to the Class Members.

Settlement Agreement secures substantial benefits for the Class with none of the delay, risk and uncertainty of continued litigation.

The third factor, the stage of the proceedings and the amount of discovery completed, also supports preliminary approval. As noted above, the parties have exchanged formal, informal and confirmatory discovery, and deposed Subaru's Director of Field Quality. Plaintiffs' counsel also conducted their own independent investigation into the alleged defect. The Court's Opinion on the motion to dismiss provided guidance on the strengths and weaknesses of the claims, and the discovery taken has allowed Plaintiffs' counsel to carefully analyze the risk of future litigation in comparison to the relief offered by the Settlement. *See Udeen*, 2019 WL 4894568, at *3.

The fourth, fifth, and sixth factors consider the risk of continued litigation.[5] If the parties had been unable to resolve this case through the Settlement, the litigation would likely have been even more protracted and costly. Plaintiffs' counsel have prosecuted many automotive defect class actions which took several years to conclude; factoring in appeals, some lasted for over a decade. Before ever approaching a trial in this case, the parties likely would have conducted extensive fact and expert discovery and litigated class certification, a likely Rule 23(f) appeal, *Daubert* challenges, and summary judgment, requiring expenditure of considerable attorney time and resources as well as hard costs of additional expert witnesses, deposition practice, and e-discovery services. Trial and post-trial activity would last several more years, during which many more Class Members will have experienced the Battery Drain Defect without any assurance of the relief now provided by the Settlement. *See Haas v. Burlington Cnty.*, No. 08-1102-NHL-JS, 2019 WL

---

[5] Courts routinely find the seventh factor – the defendant's ability to withstand greater judgment – to be neutral, as here. That factor is typically only relevant when "the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 440 (3d Cir. 2016).

413530, at *6 (D.N.J. Jan. 31, 2019) (granting approval where plaintiffs estimated the time to judgment, including trial, would take another three years).

The *Girsh* factors, therefore, support granting preliminary approval of the Settlement.

## C. Certification of the Proposed Class for Purposes of Settlement Only Is Appropriate

The benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998); *Udeen*, 2019 WL 4894568, at *4.[6] "For the Court to certify a class for settlement, the "[s]ettlement [c]lass[] must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirement." *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995). Plaintiffs seek certification under Rule 23(b)(3), which provides for certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." FED. R. CIV. P. 23(b)(3). As discussed below, these requirements are met for purposes of settlement in this case.

### 1. Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "[G]enerally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the [numerosity requirement] of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001) (citation omitted). Numerosity

---

[6] Subaru has agreed to certification of the class for settlement purposes only.

is readily met here, as there are 2,846,483 Settlement Class Vehicles.

### 2.    Commonality Under Rule 23(a)(2).

The second prong of Rule 23(a) – commonality – requires "consideration of whether there are 'questions of law or fact common to the class[.]" *Reyes v. Netdeposit, LLC*, 802 F.3d 359, 482 (3d Cir. 2015) (citing FED. R. CIV. P. 23(a)(2)). "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id*. (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)). This "bar is not a high one." *Reyes*, 802 F.3d at 486 (quoting *Rodriguez*, 726 F.3d at 382). The Third Circuit has "acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims, and, most dramatically, when plaintiffs' claims may not have been legally viable[.]" *Id.*; *see also In re Prudential Ins. Co. Sales Litig*., 148 F.3d 283, 310 (3d Cir. 1998) ("A finding of commonality does not require that all class members share identical claims, and factual differences among the claims . . . do not defeat certification").

In this case, there are numerous common questions of law and fact, such as whether the Settlement Class Vehicles suffer from a uniform defect that causes them to experience battery failure; whether Subaru had a duty to disclose this alleged defect to consumers; whether Subaru's warranty limitations on Settlement Class Vehicles are unconscionable or otherwise unenforceable under the circumstances; whether the defect poses an unreasonable safety concern; whether Plaintiffs have actionable claims; and the amount of damage available. Commonality is, therefore, satisfied. *See Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013 WL 1192479, at *4 (D.N.J. Mar. 22, 2013) ("Several common questions of law and fact exist in this case, including whether the transmissions in the Class Vehicles suffered from a design defect, whether

Volvo had a duty to disclose the alleged defect, whether the warranty limitations on Class Vehicles are unconscionable or otherwise unenforceable, and whether Plaintiffs have actionable claims.").

### 3.    Typicality Under Rule 23(a)(3)

Rule 23(a)(3)'s typicality requirement is also  met because the claims of all Class Members arise out of the same alleged conduct by Subaru related to its design, manufacture and sale of the allegedly defective Class Vehicles, and its failure to disclose or adequately remedy the alleged defect. *See Henderson*, 2013 WL 1192479, at *5 (explaining "the claims made by the named Plaintiffs and those made on behalf of Settlement Class Members arise out of the same alleged conduct by Volvo – namely, Volvo's design, manufacture and sale of the allegedly defective Class Vehicles and Volvo's alleged failure to disclose the defect."); *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994); *In re Ins. Brokerage Antitrust Litig*., 297 F.R.D. at 149 (stating "low threshold"— "if the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established.'") (citation omitted).

### 4.    Adequacy of Representation Under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *see Gotthelf v. Toyota Motor Sales, U.S.A., Inc*., 525 F. App'x 94, 100-01 (3d Cir. 2013). In assessing the adequacy of a proposed class representative, courts consider whether he or she "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 WL 1117878, at *5 (E.D. Pa. Apr. 26, 2006) (quoting *Hassine v. Jeffres*, 846 F.2d 169, 179 (3d Cir. 1988)).

Here, all of the Class Representatives are adequate because they purchased one of the Class Vehicles subject to the Settlement Agreement and were allegedly injured in the same manner based

on the same alleged defect. Each Plaintiff recognizes and accepts their responsibilities as a class representative and has actively participated in the litigation of this case, and communicated regularly with their attorneys about the proceedings. Interim Class Counsel drew upon their experience with similar complex lawsuits (*see* firm resumes, Mendelsohn Cert., Exs. 2-4) to negotiate an excellent resolution for the Settlement Class. Based upon the substantial benefits offered through the settlement, Plaintiffs respectfully submit that the adequacy requirement is satisfied.

### 5.    The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. In making these assessments, the court may consider that the class will be certified for settlement purposes only, and there is no consideration of manageability for trial. *See Amchem*, 521 U.S. at 618 (citing FED. R. CIV. P. 23(b)(3)(D)).

The focus of the predominance "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. Here, there are several common questions of fact and law that predominate over any questions that may affect individual Settlement Class Members. If the case were to proceed, the ultimate issues would center on Subaru's common course of conduct – namely, whether it is liable for distributing Settlement Class Vehicles with the Battery Drain Defect, and for its failure to disclose the defect at the point of sale. These questions are shared among all Settlement Class Members and subject to "generalized proof." *Henderson,* 2013 WL 1192479, at *4. Accordingly, predominance is satisfied. *Udeen*, 2019 WL 4894568, at *5 (finding there were "numerous common questions regarding whether the class vehicles are defective, whether Defendants should have disclosed the alleged defect, whether the allegedly

concealed information was material to consumers, and whether class members were harmed by Defendant's actions").

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied. *See* FED. R. CIV. P. 23(b)(3). Superiority requires the Court to consider whether or not "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." *Sullivan*, 667 F.3d at 296 (citations omitted); *see McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 457 (D.N.J. 2008). Because litigating the relatively small claims of the Class Members on an individual basis against Subaru would not be economically feasible, "class status here is not only the superior means, but probably the only feasible [way] . . . to establish liability and perhaps damages." *Augustin v. Jablonsky,* 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)). Moreover, the parties' settlement will relieve the "needless duplication of effort," burdens, and other inefficiencies that would result from repeated adjudication of the same issues. *Henderson*, 2013 WL 1192479, at *6 (citing *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 252-53 (S.D. Tex. 1978)). The Settlement Agreement provides Class Members with prompt, certain, and adequate relief, and establishes clearly defined administrative procedures to ensure due process and preservation of rights. Thus, a class action for settlement purposes is a superior means of resolving this controversy.

Accordingly, Plaintiffs request the Court certify the Settlement Class. *See* FED. R. CIV. P. 23(e)(1)(B).

### D.    The Court Should Approve the Notice Plan

Under Federal Rule of Civil Procedure 23(e), class members who would be bound by a settlement are entitled to reasonable notice before the settlement is approved. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.212 (2004). Under Rule 23(b)(3), "the Court must direct

to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., No. 3:08-md-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (citing FED. R. CIV. P. 23(c)(2)(B)). To satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Id*. (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)).

The proposed Notice – Exhibit C to the Settlement Agreement – includes all legal requirements and explains the settlement concisely using clear, simple terms. *See* FED. R. CIV. P. 23(c)(2)(B). The notice plan described above and set forth in Section VII of the Settlement Agreement provides the best notice practicable under the circumstances. *See Henderson*, 2013 WL 1192479, at *12-13. An experienced vendor will oversee the process of compiling the addresses of owners and lessees, and will then use this information to prepare the Notice that will be sent via first-class mail – the gold standard – to all Settlement Class Members. In addition, email notice will be provided to all Class Members whose emails are in Subaru's database, covering dealership transactions. Notice of the settlement will also be available on a dedicated website created by Subaru.

Therefore, the Notice and notice plan should be approved.

### E.     A Final Approval Hearing Should Be Scheduled

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval to the settlement, consider Class Counsel's request for attorneys' fees, expenses, and service awards for the Class Representatives, consider any objections and exclusions, and determine whether to dismiss this action with prejudice. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.44 (2004); *In re Nat'l Football League Players Concussion Injury Litig*., 775 F.3d 570, 581-83 (3d Cir. 2014). In light of the conditions resulting from the COVID-19 pandemic,

the hearing may be conducted via video conference, telephonically or in-person, at the Court's discretion. *E.g.*, Letter Order, *In re ValeantPharms. Int'l, Inc. Sec. Litig.*, Master File No. 15-cv-07658 (MAS) (LHG) (D.N.J. Apr. 17, 2020), ECF No. 535 (ordering that final settlement hearing in securities class action would proceed at date and time scheduled in the notice, but would be conducted telephonically). If the Final Approval Hearing is held telephonically or via Zoom, instructions on how Settlement Class Members can participate will be posted on the Settlement website. Plaintiffs respectfully request that the final approval hearing be scheduled for at least 160 days from the date the preliminary approval order is entered.

## IV.   **CONCLUSION**

Plaintiffs respectfully request that this Court enter an Order: (1) finding that this case is likely to be certified as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) for the purpose of effectuating a class action settlement; (2) preliminarily approving the settlement; (3) directing notice to Settlement Class Members consistent with the notice plan; (4) appointing Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George as Class Representatives; (5) appointing Matthew Mendelsohn of Mazie Slater Katz & Freeman, LLC, Matthew Schelkopf of Sauder Schelkopf LLC, and Adam Polk of Girard Sharp LLP as Class Counsel; and (6) scheduling a final approval hearing. A proposed order granting this relief is submitted with this memorandum.

Dated: April 29, 2022                      By:   */s/ Matthew R. Mendelsohn*
                                                 Matthew R. Mendelsohn
                                                 **MAZIE SLATER KATZ & FREEMAN, LLC**
                                                 103 Eisenhower Parkway
                                                 Roseland, NJ 07068
                                                 Telephone: (973) 228-9898
                                                 mrm@mazieslater.com

By:     _/s/ Matthew D. Schelkopf_____
        Matthew D. Schelkopf
        **SAUDER SCHELKOPF LLC**
        1109 Lancaster Avenue
        Berwyn, Pennsylvania 19312
        Telephone: (610) 200-0581
        mds@sstriallawyers.com


By:     _/s/ Adam Polk_____
        Adam Polk
        **GIRARD SHARP LLP**
        601 California Street, Suite 1400
        San Francisco, CA 94108
        Telephone: (866) 981-4800
        apolk@girardsharp.com

        *Plaintiffs' Interim Co-Lead Counsel*