Matthew Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303
*Attorneys for Plaintiffs and Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE SUBARU BATTERY DRAIN PROD. LIAB. LITIG. | No. 1:20-cv-03095-JHR-MJS<br><br>**DECLARATION OF<br>MATTHEW R. MENDELSOHN** |

I, Matthew R. Mendelsohn, under penalty of perjury, declare as follows:

1.      I am a partner at Mazie Slater Katz & Freeman, LLC ("Mazie Slater") in Roseland, New Jersey. I respectfully submit this Declaration in support of Plaintiffs' Motion for: (1) Preliminary Approval of Proposed Class Action Settlement; (2) Conditional Certification of Settlement Class; and (3) Approval of Class Notice ("Motion"). My declaration is based on my personal knowledge of the facts set forth herein, and, if called to so, could and would testify competently thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the executed Settlement Agreement and its exhibits.

        a.   Attached to the Settlement Agreement as **Exhibit A** is a true and correct copy of the proposed Claim Form.

        b.   Attached to the Settlement Agreement as **Exhibit B** is a true and correct copy of the proposed First Class Notice.

        c.   Attached to the Settlement Agreement as **Exhibit C** is a true and correct

copy of the proposed Full Notice.

d. Attached to the Settlement Agreement as **Exhibit D** is a true and correct
   copy of the proposed Judgment.

e. Attached to the Settlement Agreement as **Exhibit E** is a true and correct
   copy of the proposed Preliminary Approval Order.

3.     This action was brought by Plaintiffs Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George ("Plaintiffs") on behalf of themselves and a putative class of all persons or entities in the United States, who currently own or lease, or previously owned or leased, a Class Vehicle.[1]

4.     Plaintiffs alleged that the 2.8 million Class Vehicles contain a defect that causes parasitic drain of battery power (the "Battery Drain Defect" or "Defect"). Plaintiffs further alleged that the resulting drain causes premature battery failure, which can leave drivers and their passengers stranded.

**A.     Plaintiffs' Pre-Suit Investigation and Complaint Allegations**

5.     Before filing this action, Class Counsel conducted an extensive investigation into the alleged Battery Drain Defect. The investigation included interviewing hundreds of prospective class members; studying various forms of consumer reporting and the National Highway Traffic Safety Administration ("NHTSA") website, on which consumers had complained about the alleged defect; reviewing Subaru manuals and technical service bulletins that discuss the alleged defect; reviewing federal motor vehicle regulations regarding safety standards; identifying

---

[1] The Class Vehicles include model years ("MY") 2015-2020 Subaru Outback, MY 2015-2020 Forester, MY 2015-2020 Legacy, MY 2015-2020 WRX, and MY 2019-2020 Ascent (the "Vehicles" or "Class Vehicles").

potential defendants; researching causes of action and other cases involving similar defects; and consulting with automotive engineering experts.

6.      The named Plaintiffs are residents of New Jersey, New York, California, Florida, Illinois, Michigan, Texas and Washington and each Plaintiff alleged that his or her Class Vehicle manifested the Battery Drain Defect. The Complaint sought certification of a Nationwide Class and subclasses of vehicle purchasers and lessees in the Plaintiffs' home states. Plaintiffs asserted claims for violations of various state consumer fraud statutes and the Magnuson-Moss Warranty Act, and also alleged claims for breach of express warranty, breach of the implied warranty of merchantability, common law fraud, and unjust enrichment.

**B.      History of the Litigation**

7.      Certain of the Plaintiffs filed their initial complaint on March 20, 2020. After additional cases were filed, the Court consolidated all related cases and set a briefing schedule for the appointment of lead counsel. Counsel in the various related actions conferred and agreed to a stipulated leadership structure with the undersigned serving as Interim Co-Lead Counsel, supported by an experienced Executive Committee and Liaison Counsel.

8.      On June 18, 2020, Plaintiffs filed their Consolidated Class Action Complaint. On August 3, Subaru filed a motion to dismiss, which the parties fully briefed over the following months. On March 31, 2021, the Court issued a 67-page Opinion granting in part and denying in part the motion to dismiss. On April 28, Subaru filed an Answer to the Consolidated Class Action Complaint.

9.      Since August 20, 2020, the Parties have engaged in informal, formal, and confirmatory discovery, which has included initial disclosures, propounding and responding to interrogatories and requests for production of documents, review of documents produced by Subaru, and the deposition of Subaru's Director of Field Quality, John Gray.

C.      **The Parties' Settlement Negotiations**

10.     On May 12, 2021, the Parties informed the Court of their intent to pursue mediation with the Hon. Joel Schneider, U.S.M.J. (ret.).  The parties participated in a full-day mediation with Judge Schneider on July 7, 2021, followed by several additional mediation sessions over the next five months.

11.     As part of the mediation, the Parties exchanged confirmatory discovery subject to Federal Rule of Evidence 408. The documents showed in part Subaru's internal warranty claims analyses, sales figures, efficacy of proposed remedies, and other information relevant to the alleged Defect and its effects.

12.     After extensive negotiations under Judge Schneider's supervision, on November 9, 2021, the Parties reached a settlement in principle to resolve Plaintiffs' class action claims. All of the terms of the Settlement Agreement are the result of arm's-length negotiations between experienced counsel for both sides.

13.     The named Plaintiffs all approve of the Settlement, which provides substantial benefits to the proposed Settlement Class. Plaintiffs' counsel also independently analyzed the nature of the Battery Drain Defect and Subaru's contention that it had implemented measures to address it, consulting automotive engineering experts, studying government reports, and interviewing and collecting documents from hundreds of class members.

14.     In addition, before the Settlement Agreement was executed, Plaintiffs' counsel deposed a Subaru 30(b)(6) designee, whose testimony confirmed the fairness and adequacy of the Settlement. Mr. Gray's testimony confirmed the efficacy of the software update and increased capacity batteries in the Settlement Class Vehicles as remedies for the alleged defect.

**D.      The Settlement**

15.     If approved, the Settlement will provide substantial benefits to the following Settlement Class: All natural persons, who are residents of the continental United States, including Hawaii or Alaska, who currently own or lease, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, including Alaska or Hawaii. Excluded from the Settlement Class are the employees, officers, or directors of Subaru, affiliated Subaru entities; or Subaru's authorized retailers; all entities claiming to be subrogated to the rights of Settlement Class Members, issuers of extended vehicle warranties, third party issuers, and any Judge to whom the Litigation is assigned.

16.     Subaru has agreed to provide several forms of valuable relief that address the issues raised by the litigation, including (a) a warranty extension for current owners and lessees, (b) reimbursements for out-of-pocket expenses, (c) compensation for extraordinary circumstances, (d) a free software update for qualifying Class Vehicles, (e) payment for class notice and claims administration, and (f) payment of attorneys fees, expenses and incentive awards.

**E.      Notice to Settlement Class Members**

17.     The Settlement Agreement includes a comprehensive notice plan, to be paid for by Subaru and overseen by the experienced Settlement Administrator: JND Legal Administration. Class Counsel has the right to monitor and participate in the Notice and Administration process to ensure that the Settlement Administrator is acting in accordance with the Settlement Agreement.

18.     Subaru will identify Settlement Class Members through its records; verify or update the contact information through R.L Polk, a third party that maintains and collects the names and addresses of automobile owners; and send out direct mail notice to the members of the Settlement Class.

19.     Prior to this mailing, an address search through the United States Postal Service's National Change of Address database will be conducted to ensure the latest address information for Settlement Class Vehicle owners and lessees. For each individual Notice returned as undeliverable, the Settlement Administrator will re-mail the Class Notice where a forwarding address has been provided. For remaining undeliverable Notices where no forwarding address has been provided, the Settlement Administrator will perform an advanced address search (e.g., a skip trace) and re-mail those undeliverable Notices to the extent any new and current addresses are located.

20.     Subaru will also email a hyperlink to the Settlement Website and electronic versions of the Long Form Notice and Claim Form to Class Members for whom Subaru maintains an email address.

21.     Subaru also will maintain a dedicated settlement website that will include the Notice, Claim Form, Settlement Agreement, and other relevant documents.

22.     Likewise, Class Counsel will include a link to the Settlement Website on their respective law firm's websites.

**F.      Fairness, Reasonableness, and Adequacy of the Settlement**

23.     I believe that under the circumstances, the proposed Settlement is fair, reasonable, and adequate and in the best interest of the Class Members.  Although I strongly believe in the merits of Plaintiffs' case, I also believe that continuing this Action poses significant risks.

24.     I am unaware of any competing litigation regarding the claims at issue in this case.

**G.      Adequacy of Counsel**

25.     This Court has already determined the adequacy of counsel when it appointed Matthew D. Schelkopf of Sauder Schelkopf LLC, Adam Polk of Girard Sharp LLP, and I as

Interim Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)(3) on May 5, 2020.  (ECF No. 15)

26.     Interim Class Counsel submits that they have further demonstrated their adequacy through their efforts in this case and the substantial relief provided in the proposed Settlement.

27.     Attached as **Exhibit 2** is a true and accurate copy of Mazie Slater's current Firm Resume.

28.     Attached as **Exhibit 3** is Girard Sharp's current firm resume.

29.     Attached as **Exhibit 4** is Sauder Schelkopf's current firm resume.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

                                        */s/Matthew R. Mendelsohn*
                                        MATTHEW R. MENDELSOHN

Dated:  April 29, 2022

EXHIBIT 1

Neal Walters (020901993)
BALLARD SPAHR LLP
700 East Gate Dr., Suite 330
Mount Laurel, NJ 08054
(856) 761-3400
(856) 761-1020 fax
waltersn@ballardspahr.com

Attorneys for Defendants Subaru Corporation
and Subaru of America, Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **In re Subaru Battery Drain Products Liability Litigation** | Case No. 1:20-cv-03095-JHR-MJS |

## SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Agreement" or "Settlement Agreement") is entered into between Plaintiffs Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George (collectively "Plaintiffs" or "Representative Plaintiffs"), individually and as representatives of the Class (as defined below), and Subaru of America, Inc. ("SOA") and Subaru Corporation ("SBR") (collectively, with SOA, "Defendants" or "Subaru"). Collectively, Plaintiffs and Defendants shall be referred to as the "Parties." The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the lawsuit captioned *In re Subaru Battery Drain Products Liability Litigation*, No. 1:20-cv-03095-JHR-MJS pending in the United States District Court for the District of New Jersey (the

"Action"), and all matters raised or that could have been raised therein, subject to the terms and conditions hereof and approval by the Court.

I.      **RECITALS**

1.      WHEREAS, Plaintiffs have filed the above referenced Action as a putative class action against Defendants, claiming that due to alleged defects, the Settlement Class Vehicles suffer from parasitic drain of battery power that causes the battery to prematurely fail;

2.      WHEREAS, Plaintiffs seek damages and injunctive relief, and assert that the litigation should proceed as a class action;

3.      WHEREAS, Defendants deny Plaintiffs' allegations and claims and maintain; that the Settlement Class Vehicles are not defective; that no applicable warranties were breached nor applicable statutes violated; that the Settlement Class Vehicles were properly designed, manufactured, distributed, marketed, advertised, warranted, and sold; and that Defendants have not engaged in any wrongdoing;

4.      WHEREAS, the Parties have conducted, and continue to conduct, extensive discovery, including:

     a.      Document production and review, including over 11,000 pages produced to date, with further productions pending, regarding:

         (1)      Vehicle service and warranty histories for each of the Plaintiffs;

         (2)      Original and revised Technical Service Bulletins;

         (3)      Settlement Class Vehicle owner's manuals and warranty and maintenance books;

         (4)      Settlement Class Vehicle warranty claims data; and

2

(5)         SOA and SBR's internal investigation, analysis and conclusions.

b.         Independent investigations and analyses by Plaintiffs and Defendants, including consultation with class members, and consultation and research by consultants retained for the purposes of the Litigation.

c.         Plaintiffs' confirmatory discovery requests, which included both Requests for Production and Interrogatories.

d.         The 30(b)(6) deposition of a John Gray, Subaru's Director of Field Quality.

5.         WHEREAS, the Parties, following discovery, investigation, and careful analysis of their respective claims and defenses, and with full understanding of the risks, expense, and uncertainty of continued litigation, desire to compromise and settle all issues and claims that were, or could have been, brought in the Action by, or on behalf of, Plaintiffs and Settlement Class Members with respect to any allegation of parasitic drain of the battery power in the Settlement Class Vehicles;

6.         WHEREAS, the Parties agree that neither this Settlement Agreement nor the underlying settlement shall constitute or be construed as any admission of liability or wrongdoing on the part of Defendants, which is expressly denied, or that the Plaintiffs' claims or similar claims are, or would be, suitable for class treatment if the Action proceeded through litigation and trial;

7.         WHEREAS, this Settlement Agreement is the result of arm's-length negotiations between the Parties and was reached with the assistance of five mediation sessions before the Honorable Joel Schneider, U.S.M.J. (ret.), and in the view of counsel for Parties, based upon the information exchanged to date, is fair, adequate, and reasonable;

3

8.      NOW, THEREFORE, in consideration of the mutual promises and agreements set forth below, the Parties hereby agree as follows:

II.    **DEFINITIONS**

Whenever the following capitalized terms are used in this Agreement and in the attached Exhibits (in addition to any definitions provided elsewhere in this Agreement), they shall have the following meanings:

1.      **"Action"** means the lawsuit captioned *In re Subaru Battery Drain Products Liability Litigation*, No. 1:20-cv-03095-JHR-MJS pending in the United States District Court for the District of New Jersey.

2.      **"Attorneys' Fees and Expenses"** means the amount awarded by the Court to Class Counsel to compensate them, and any other attorneys for Plaintiffs or the Settlement Class, and is inclusive of all attorneys' fees, costs, and expenses of any kind in connection with the Action.  Attorneys' Fees and Expenses shall not, under any circumstances, exceed the sum of $4,100,000.00 ("four million, one hundred thousand dollars").  Attorneys' Fees and Expenses shall be in addition to the benefits provided directly to the Settlement Class, and shall not reduce or otherwise have any effect on the benefits made available to the Settlement Class.  Attorneys' Fees and Expenses shall not include the payment of Service Awards to settlement class representatives by Defendants, as discussed below.

3.      **"Authorized Subaru Retailer"** means any authorized Subaru retailer in the continental United States, Hawaii or Alaska.

4.      **"Battery Replacement Costs"** means the costs (comprised of the retail charges for parts and labor) for an Authorized Subaru Retailer to replace a Class Vehicle's battery.

4

5.      **"Claim"** or **"Claim for Reimbursement"** shall mean the timely submission of the required Claim Form and proof by which a Settlement Class Member seeks to claim the reimbursement or compensation available under this Settlement Agreement.

6.      **"Claim Form"** means the forms attached hereto as Exhibit A, to be provided to the Settlement Class Members via the Settlement website.

7.      **"Class Counsel"** shall mean Matthew D. Schelkopf of Sauder Schelkopf, Matthew Mendelsohn of Mazie Slater Katz & Freeman, LLC, and Adam Polk of Girard Sharp LLP, who were appointed Interim Co-Lead Counsel by the Court on May 5, 2020 (ECF No. 15).

8.      **"First Class Notice"** means the postcard notice, substantially in the form attached hereto as Exhibit B, to be provided to Settlement Class Members in accordance with the Preliminary Approval Order issued by the Court.

9.      **"Court"** refers to the United States District Court for the District of New Jersey.

10.      **"Defendants' Counsel"** means Ballard Spahr LLP, 700 East Gate Drive, Mt. Laurel 08054, who are the attorneys of record representing Subaru of America, Inc. and Subaru Corporation.

11.      **"Effective Date"** means ten (10) business days after the later of (a) the date upon which the time for seeking appellate review of the Judgment (by appeal or otherwise) shall have expired; or (b) the date upon which the time for seeking appellate review of any appellate decision affirming the Judgment (by appeal or otherwise) shall have expired and all appellate challenges to the Judgment shall have been dismissed with prejudice without any person having further right to seek appellate review thereof (by appeal or otherwise).

12.     **"Fairness Hearing"** means the hearing at which the Court will consider whether to finally approve the Agreement as fair, reasonable, and adequate, certify the Class for settlement purposes, award Attorneys' Fees and Expenses, including settlement class representative Service Awards, enter the Final Judgment, and make such other final rulings as are contemplated by this Settlement Agreement.

13.     **"Final Approval Order"** – means the Court's order granting final approval to the class action settlement and dismissing the Action with prejudice.

14.     **"Full Notice"** means the notice substantially in the form attached hereto as Exhibit C, as approved by the Court, which will be provided to Settlement Class Members after the Effective Date via the Settlement website.

15.     **"In-Service Date"** shall mean the date on which a Settlement Class Vehicle was delivered to the first retail purchaser or lessee; or if the vehicle was first placed in service as a "demonstrator" or "company" car, then the date on which the vehicle was placed in such service.

16.     **"Judgment"** means the judgment, substantially in the form attached hereto as Exhibit D, to be entered by the Court in the Action finally approving this Agreement and dismissing the Action with prejudice.

17.     **"Lemon Law Action"** means any action asserting claims under any federal or state statute defining and allowing suit for defective automobiles and/or an action for the enforcement of express or implied warranties for the fitness of an automobile concerning a Qualifying Battery Failure or Qualifying Battery Condition.

18.     **"Notice Date"** means within three days of the date the Settlement Administrator provides the First Class Notice to the Settlement Class Members.  Subject to the

6

Court's approval, the Notice Date shall be within 90 (ninety) days after the Court enters a Preliminary Approval Order, substantially in the form attached hereto as Exhibit E.

19. **"Notice Completion Date"** means the date on which the Settlement Administrator completes the original mailing of the First Class Notice to Settlement Class Members.

20. "**Owner Paid Repair**" means monetary amounts actually paid by a Class Member prior to the Notice Date for a Qualifying Battery Condition.

21. **"Preliminary Approval Order"** means the Court's order preliminarily approving the terms of this Agreement as fair, adequate, and reasonable, including the Court's approval of the form and manner of giving notice to Settlement Class Members, substantially in the form attached hereto as Exhibit E.

22. **"Proof of Repair Expense"** means reasonable documentation (for example a repair order, receipt, credit card statement, bank statement, invoice, photograph, or historical accounting record, other similar documentation, as well as, any combination of the foregoing), for a Qualifying Repair incurred prior to the Notice Date, identifying (i) the date of repair; (ii) the make and model of the vehicle; (iii) the vehicle identification number; (iv) the mileage of the vehicle at the time of repair; (iv) the facility that performed the repair; (vi) a description of the work performed, including a breakdown of parts and labor costs; and (vii) proof of the sum of money paid by (or on behalf of) the Settlement Class Member, for a repair or replacement for which reimbursement is available under the terms of this Settlement Agreement. If, however, the Settlement Class Member is unable to obtain documents or records relating to the nature and timing of the repair despite a good faith effort to obtain them, the Settlement Class Member may check a box on the claim form stating: good faith efforts that were made to obtain

the records including the person(s) with whom he/she/it communicated in an effort to obtain the records but that they could not locate the records. Subaru of America agrees it will search the records presently in its possession in good faith and, if qualifying records exist to support both the qualifying nature and timing of the repair, and it is consistent with the timing of the payment documentation submitted by the claimant, the claim shall be honored. A class member who attests to an inability to obtain the records despite good faith efforts on the claim form must nevertheless provide proof of the qualifying out of pocket payment. The claim form will further indicate that if the Settlement Class Member elects to have Subaru of America search its records, it may cause a delay in the review or processing of the claim. If Subaru does not have records supporting the claim after it conducts its search, the claim shall be rejected.

23.    **"Proof of Repair-Related Expense"** means documentation (for example a repair order, receipt, credit card statement, bank statement, invoice, photograph, or historical accounting records, as well as, any combination of the foregoing) indicating that a Settlement Class Member paid for a rental car, towing service, rideshare, hotel room, meal, or other out-of-pocket expense directly related to obtaining a Qualifying Reimbursable Repair, which was incurred reasonably contemporaneous with the Qualifying Reimbursable Repair and prior to the Notice Date, and identifies the date the expense was incurred and the dollar amount paid.

24.    **"Qualifying Battery Failure"** means a Settlement Class Vehicle that does not adequately pass a Subaru retailer administered Midtronics battery test as set forth in the Agreement.

25.    **"Qualifying Battery Condition"** means a Settlement Class Vehicle in which the battery died (i.e., the battery was discharged beyond the ability to start the Class Vehicle).

8

26.     **"Qualifying Reimbursable Repair"** means any battery testing, diagnosis, or replacement performed by an Authorized Subaru Retailer or third-party repair center, so long as the Settlement Class Member either previously (1) presented the Settlement Class Vehicle to the Subaru dealership; or (2) contacted Subaru customer service division regarding the battery related issue he or she later paid to have fixed by an independent third party on a Settlement Class Vehicle in connection with a Qualifying Battery Condition prior to the Notice Date, including towing services associated with a Qualifying Battery Condition on a Settlement Class Vehicle prior to the Notice Date.

27.     **"Reasonably Related Reimbursable Costs"** means costs incurred by Settlement Class Members who experienced 2 or more Qualifying Battery Conditions within five (5) years and sixty thousand (60,000) miles from the In-Service Date of the Settlement Class Vehicle as per Section V.C., prior to the Notice Date and within 48 hours of such a Qualifying Battery Condition, for reasonably related reimbursable costs including, and without limitation, a hotel stay and related meals, equipment purchased to sustain battery operation, or other such reasonable and necessary expenses that would not have been incurred but for the Qualifying Battery Condition.

28.     **"Reflash"** means reprogramming software to optimize the Engine Control Module ("ECM") to improve battery performance.

29.     **"Released Claims"** or **"Settled Claims"** means any and all claims, causes of action, demands, debts, suits, liabilities, obligations, damages, actions, rights of action, remedies of any kind and/or causes of action of every nature and description, whether known or unknown, asserted or unasserted, foreseen or unforeseen, regardless of any legal theory, existing now or arising in the future, by Plaintiffs and any and all Settlement Class Members based on a

Qualifying Battery Failure or Qualifying Battery Condition of Settlement Class Vehicles including claims for reimbursement for amounts spent on parts or related labor, or diminution in value of the vehicle, that were or could have been raised in the Action related to Qualifying Battery Failure or Qualifying Battery Condition. This applies to claims arising under statute, including a state lemon law, rule, regulation, common law or equity, and including, but not limited to, any and all claims, causes of action, rights or entitlements under any federal, state, local or other statute, law, rule and/or regulation, any claims relating to violation of California Business and Professions Code Sections 17200-17209, California Business and Professions Code Section 17500, or the California Consumer Legal Remedies Act (California Civil Code Section 1750-1784), any consumer protection, consumer fraud, unfair business practices or deceptive trade practices laws, any legal or equitable theories, any claims or causes of action in tort, contract, products liability, negligence, fraud, misrepresentation, concealment, consumer protection, restitution, quasi contract, unjust enrichment, express warranty, implied warranty, secret warranty and/or any injuries, losses, damages or remedies of any kind, in law or in equity, under common law, statute, rule or regulation, including, but not limited to, compensatory damages, economic losses or damages, exemplary damages, punitive damages, statutory damages, restitution, recovery of attorneys' fees or litigation costs, or any other legal or equitable relief. This also includes any related claims or counter claims that Defendants may have against Plaintiffs, the Settlement Class, or Plaintiffs' counsel.  This release expressly exempts claims for death, personal injuries and property damage (other than damage to the Settlement Class Vehicle) that were not asserted in the Action.  Nothing in this Settlement shall be construed as a waiver, release and/or compromise of any Lemon Law Action pending as of the Notice Date pertaining to parasitic battery drain as alleged in the Action.  Settlement Class Members

expressly waive the provisions of Section 1542 of the California Civil Code and understand that such section provides:  "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

30. **"Released Parties"** shall mean Subaru of America, Inc., Subaru Corporation, Subaru Tecnica International, Inc., North American Subaru, Inc., Subaru Research & Development, Inc., Subaru of Indiana Automotive, Inc., all designers, manufacturers, assemblers, distributors, importers, marketers, advertisers, testers, inspectors, sellers, suppliers, component suppliers, lessors, warrantors,  repairers and servicers of Settlement Class Vehicles and each of their component parts and systems, all dealers, lessors and retailers of Settlement Class Vehicles, and all of the aforementioned persons' or entities' past and present directors, officers, shareholders, principals, partners, employees, agents, servants, members, assigns, representatives, attorneys, insurers, trustees, vendors, contractors, heirs, executors, administrators, successor companies, parent companies, subsidiary companies, affiliated companies, divisions, trustees, vendors and representatives.

31. "**Service Awards**" means the $4,000 (combined total of $52,000) that Defendants have agreed to pay to each of the thirteen named Plaintiffs Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George, who have served as putative class representatives in the Action, upon finalization of this Settlement Agreement and approval by the Court.

32. **"Settlement Administrator"** means JND Legal Administration, 1100 2nd Ave Suite 300, Seattle WA.

33.     **"Settlement Class Vehicle"** and **"Vehicles"** means model year 2015-2020 Outback, 2015-2020 Forester, 2015-2020 Legacy, 2015-2020 WRX, and 2019-2020 Ascent.

34.     **"Settlement Class Member"** means, subject to the exclusion in Section III.1, a natural person who is the current or former owner or lessee of a Settlement Class Vehicle, who purchased or leased in the continental United States, including Alaska or Hawaii, who purchased the vehicle for purposes other than for resale, who does not validly and timely opt out of the Settlement Class pursuant to the procedure set forth in the Court's Preliminary Approval Order.  This definition is not intended to exclude military personnel stationed overseas.

35.     **"Settlement Extended Warranty"** or **"Extended Warranty"** means the terms of extended warranty coverage as described in Section V.A.

36.     **"Technical Service Bulletin"** or **"TSB"** means the document(s) issued by Subaru, which provide Authorized Subaru Retailers with the recommended diagnostic and repair procedures for Settlement Class Vehicles. Any future issued or revised TSB shall not diminish the relief provided to Class Members under the Settlement.

37.     **"Unknown Claims"** means any Released Claim that any Plaintiff or Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release provided for herein, including without limitation those that, if known to him, her or it, might have affected his, her or its settlement and release pursuant to the terms of this Agreement, or might have affected his, her or its decision not to object to the settlement terms memorialized herein.  As more fully discussed in Section XI below, Settlement Class Members expressly waive all rights to pursue unknown claims and rights conferred upon them by the provisions of Section 1542 of the California Civil Code or any other law that arise from the same facts as were

alleged in the Action and that were or could have been raised in the Action related to Qualifying

Battery Failure or Qualifying Battery Condition.  As outlined above, and in furtherance of the

same, the definitions of "Released Claims" and "Unknown Claims" shall both expressly exempt

claims for death, personal injuries and property damage (other than damage to the Settlement

Class Vehicle) that were not asserted in the Action.

### III.   ESTABLISHMENT OF A SETTLEMENT CLASS

1.     The Parties stipulate to certification, for settlement purposes only, of a

**"Settlement Class"** defined as follows:

> All natural persons, who are residents of the continental United
> States, including Hawaii or Alaska, who currently own or lease, or
> previously owned or leased, a Settlement Class Vehicle originally
> purchased or leased in the continental United States, including
> Alaska or Hawaii.[1] Excluded from the Settlement Class are (a) those
> claims for personal injury and/or property damage (claims for a
> Qualifying Battery Condition or Qualifying Battery Failure in a
> Settlement Class Vehicle are included regardless of whether they
> additionally experienced personal injury or property damage for
> which they do not make a claim; however, those additional claims
> for personal injury and/or property damaged shall be deemed
> excluded from the Settlement Class) and/or subrogation; (b) all
> Judges who have presided over the Action and their spouses; (c) all
> current employees, officers, directors, agents and representatives of
> Defendants, and their family members; (d) any affiliate, parent or
> subsidiary of Defendants and any entity in which Defendants have
> a controlling interest; (e) anyone acting as a used car dealer; (f)
> anyone who purchased a Settlement Class Vehicle solely for the
> purpose of resale; (g) anyone who purchased a Settlement Class
> Vehicle with salvaged title and/or any insurance company who
> acquired a Settlement Class Vehicle as a result of a total loss; (h)
> any insurer of a Settlement Class Vehicle; (i) issuers of extended
> vehicle warranties and service contracts; (j) any Settlement Class
> Member who, prior to the date of the Settlement Agreement, settled
> with and released Defendants or any Released Parties from any
> Released Claims; (k) any Settlement Class Member that files a
> timely and proper Request for Exclusion from the Settlement Class;
> and (l) third party issuers.

---

[1] This is not intended to exclude military personnel stationed overseas.

2.      Solely for purposes of implementing this Settlement Agreement and effectuating the settlement, Defendants stipulate to the Court entering an order preliminarily certifying the Settlement Class, appointing named Plaintiffs Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George as representatives of the Settlement Class, and appointing Class Counsel to serve as counsel for the Settlement Class.

3.      Solely for the purposes of implementing this Settlement Agreement and effectuating the settlement, the Parties stipulate to propose that JND Legal Administration will be appointed as the Settlement Administrator, subject to the approval of the Court. Defendants will pay all costs of notice of the settlement and settlement administration.

4.      Solely for the purposes of implementing this Settlement Agreement and effectuating the settlement, Subaru stipulates that Named Plaintiffs Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George, and Class Counsel are adequate representatives of the Settlement Class.

## IV.    DISCLAIMER OF LIABILITY

1.      The Parties acknowledge that the Settlement Consideration represents a compromise and final settlement of disputed claims and that neither the fact of, nor any provision contained in this Agreement, nor any action taken hereunder, shall constitute, or be construed as, an admission of the validity of any claim or any fact alleged in the Action or of any wrongdoing, fault, violation of law or liability of any kind on the part of Defendants and the Released Parties, or any admissions by Defendants and the Released Parties of any claim or allegation made in any

14

action or proceeding against them.  The Parties understand and agree that neither this Agreement, nor the negotiations that preceded it, shall be offered or be admissible in evidence against Defendants, the Released Parties, the Plaintiffs, Plaintiffs' counsel, or the Settlement Class Members, or cited or referred to in the Action or any action or proceeding, except in an action or proceeding brought to enforce the terms of this Agreement, or to raise the release provisions of this Agreement as a defense.

## V.      SETTLEMENT CONSIDERATION

In consideration of the full and complete Release of all Released Claims against all Released Parties, and the dismissal of the Action with prejudice, Defendants agree to provide the following consideration to the Settlement Class.  The availability of settlement consideration upon the Notice Date, is a bargained-for term of the settlement, negotiated by Class Counsel as a direct result of the Class Action Settlement. In the event that a final Judgment is not entered on this Settlement, Subaru reserves the right to revert all warranties back to the limits set forth in the New Vehicle Limited Warranty.

### A.      Settlement Warranty Extension for Current Owners or Lessees

#### 1.      First Battery Replacements

a.      Effective on the Notice Date, Subaru will extend its existing express New Vehicle Limited Warranty, as referenced in the owners manual, applicable to the Settlement Class Vehicles, to cover a first battery replacement (parts and labor) for 100% of the Battery Replacement Costs up to a period of five (5) years or sixty thousand (60,000) miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle.

b.      Effective on the Notice Date, Subaru will extend its existing express New Vehicle Limited Warranty, applicable to the Settlement Class Vehicles, to cover a

first battery replacement (parts and labor) for 50% of the Battery Replacement Costs for Settlement Class Vehicles that have exceeded five (5) years or sixty thousand (60,000) miles on the Notice Date, for a duration of three (3) months from the Notice Date without regard to mileage.

2. **Subsequent Battery Replacements**

a.     Effective on the Notice Date, Subaru will extend its existing express New Vehicle Limited Warranty, applicable to the Settlement Class Vehicle, to cover the replacement of a replacement battery and the parameters of the Settlement Extended Warranty (parts and labor) are to be the greater of Subaru's replacement part warranty or:

(1)     100% of the Battery Replacement Costs up to a period of five (5) years or sixty thousand (60,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle regardless of the number of battery replacements the Settlement Class Vehicle has already received; or

(2)     80% of the Battery Replacement Costs up to a period of seven (7) years or eighty-four thousand (84,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle; or

(3)     60% of the Battery Replacement Costs up to a period of eight (8) years or one hundred thousand (100,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle.

16

       3.      **Extended Warranty Customer Reimbursement (Silver Program).**

Class Members who prior to the Notice Date have purchased a Subaru extended service contract (Added Security), who were never entitled to battery coverage through said program, will receive a settlement warranty extension consistent with the time and mileage limitations set forth in Sections V.a.1 & 2 above.

       4.      **Qualification for Settlement Extended Warranty Repair**

       a.      Effective on the Notice Date, a Settlement Class Member qualifies to present his or her Class Vehicle to an Authorized Subaru Retailer for diagnosis of whether the battery condition qualifies for Settlement Extended Warranty service if prior to presentment for diagnostic testing, the Settlement Class Member experienced a Qualifying Battery Condition (as defined in Section II.25), as confirmed by visiting http://www.SubaruBatterySettlement.com and completing the "Request for Settlement Extended Warranty Battery Service Form," the terms of which are to be simple, and designed to allow Subaru to immediately assess whether a Class Member has experienced a Qualifying Battery Condition and to assign an appropriate retailer for service.  For an owner who is unable to use the website, Subaru shall provide a toll free telephone number that is displayed in the First Class Notice.  Subaru shall exercise due diligence to attempt to determine Class Members' qualifications as soon as practicable, but not to exceed 48 hours from the call or electronic submission. Settlement Class Members shall not be required to visit the Settlement Website or complete the "Request for Settlement Extended Warranty Battery Service Form" after one year from the entry of the Preliminary Approval Order. A list of the questions for the Request for Settlement Extended Warranty Battery Service Form is attached as Exhibit F.

    b. If a Settlement Class Member qualifies to present his or her Class Vehicle to an Authorized Subaru Retailer pursuant to Section 4(a), then the diagnostic services are free. A Settlement Class Member's qualification for a Settlement Extended Warranty battery replacement will be determined by the results of the Authorized Subaru Retailer's administration of the test in the "Battery Extended Warranty – Midtronics Protocol," attached as Exhibit G.

    5. **Related Settlement Extended Warranty Terms**

    a. As will be fully set forth in the Notice, any repairs performed pursuant to the Settlement Extended Warranty during the notice period shall preclude the Settlement Class Member who received such repairs from opting out of the Settlement Class.

    b. The Settlement Extended Warranty is otherwise subject to the same terms and conditions set forth in the Settlement Class Vehicle's New Vehicle Limited Warranty and Warranty and Maintenance Booklet, except as specifically modified herein.

    c. Additionally, in accordance with the existing terms of the New Vehicle Limited Warranty, vehicles are ineligible for warranty coverage if the vehicle has been declared a total loss or sold for salvage purposes; if the vehicle has been dismantled, destroyed, or changed in such a manner that constitutes a material alteration of its original construction; or if the odometer mileage has been changed so that mileage cannot be readily determined.

    d. A Class Vehicle found to have after-modified electronic components, agreed to impair the electronics or battery performance on the list at Exhibit H, shall be precluded from the benefits of this Settlement Agreement.

    e. Nothing in this Settlement Agreement will be construed as adding to, diminishing, or otherwise affecting any express or implied warranty, duty, or contractual

obligation of SOA in connection with the Settlement Class Vehicles, except as it relates to a

Qualifying Battery Failure or Qualifying Battery Condition as set forth herein.

              f.        Reimbursements and extensions of the warranties as described

above are contingent upon the Court's final approval of this Settlement Agreement.

              g.        SOA and its Authorized Retailers may continue to implement any

customer satisfaction or goodwill policy, program, or procedure at their discretion, and may

extend goodwill consideration to individual Settlement Class Members on a case-by-case basis,

without regard to their entitlement to relief under the Settlement Agreement, except that in no

case shall a Settlement Class Member obtain more than one recovery (*i.e.*, any goodwill or other

payment will reduce or eliminate the right to recover for the same benefit previously provided)

for any Qualifying Battery Failure or Qualifying Battery Condition during the Settlement

Extended Warranty for any Settlement Class Vehicle.

       **B.**      **Pre-Notice Qualifying Reimbursable Expenses**

              1.        Subject to the proof and conditions required in Section V.B.7 below, a

Settlement Class Member who has not already been fully reimbursed by Subaru or a third party,

will be entitled to reimbursement of a certain percentage of Owner Paid Repairs incurred prior to

the Notice Date.

              2.        This section applies to out-of-pocket expenses for any battery

replacements, battery testing and diagnosis performed by an Authorized Subaru Retailer, on a

Settlement Class Vehicle in connection with a Qualifying Battery Condition prior to the Notice

Date. This section does not apply to out-of-pocket expenses for equipment purchased to sustain

battery operation (i.e. a portable battery charger and jumper cables as provided for in section C.

titled "Reimbursements for Extraordinary Circumstances").

19

3.      This section additionally applies to out-of-pocket expenses for towing services in connection with a Qualifying Battery Condition on a Settlement Class Vehicle prior to the Notice Date.  If a Class Member establishes a Qualifying Battery Condition, that Class Member may also recover, upon Proof of Repair Related Expense, the costs incurred in towing the vehicle to the Authorized Subaru Retailer performing the subject battery repair.

4.      Reimbursements are contingent upon the Court's final approval of this Settlement Agreement.

5.      Reimbursements awarded under this Section are limited to Owner Paid Repairs paid by the same owner or lessee. For example, a subsequent owner may not avail his or herself of repairs paid by the previous owner.

6.      The reimbursement for a Qualifying Reimbursable Repair under this section, shall be at the following rates:

| # of Owner Paid Repairs | Within 3/36 | 5/60 | 7/84 | 8/100 |
|---|---|---|---|---|
| 1 | 120% | 100% | N/A | N/A |
| 2 | 140% | 125% | 100% | 55% |
| 3+ | 165% | 140% | 120% | 100% |

a.      For one (1) Owner Paid Repair, a Settlement Class Member is entitled to:

(1)      120% reimbursement when the Owner Paid Repair occurred within three (3) years and thirty-six thousand (36,000) miles from the In-Service Date of the Settlement Class Vehicle; or

20

(2)     100% reimbursement when the Owner Paid Repair

occurred within five (5) years and sixty thousand (60,000)

miles from the In-Service Date of the Settlement Class

Vehicle.

b.      For two (2) Owner Paid Repairs, a Settlement Class Member is

entitled to:

(1)     140% reimbursement when all Owner Paid Repairs

occurred within three (3) years and thirty-six thousand

(36,000) miles from the In-Service Date of the Settlement

Class Vehicle; or

(2)     125% reimbursement when all Owner Paid Repairs

occurred within five (5) years and sixty thousand (60,000)

miles from the In-Service Date of the Settlement Class

Vehicle; or

(3)     100% reimbursement when all Owner Paid Repairs

occurred within seven (7) years and eighty-four thousand

(84,000) miles from the In-Service Date of the Settlement

Class Vehicle; or

(4)     55% reimbursement when all Owner Paid Repairs occurred

within eight (8) years and one hundred thousand (100,000)

miles from the In-Service Date of the Settlement Class

Vehicle.

      c.      For three (3) or more Owner Paid Repairs, a Settlement Class Member is entitled to:

      (1)      165% reimbursement when all Owner Paid Repairs occurred within three (3) years and thirty-six thousand (36,000) miles from the In-Service Date of the Settlement Class Vehicle; or

      (2)      140% reimbursement when all Owner Paid Repairs occurred within five (5) years and sixty thousand (60,000) miles from the In-Service Date of the Settlement Class Vehicle; or

      (3)      120% reimbursement when all Owner Paid Repairs occurred within seven (7) years and eighty-four thousand (84,000) miles from the In-Service Date of the Settlement Class Vehicle; or

      (4)      100% reimbursement when all Owner Paid Repairs occurred within eight (8) years and one hundred thousand (100,000) miles from the In-Service Date of the Settlement Class Vehicle.

7.      The following proof must be submitted, and conditions satisfied, in order for a Settlement Class Member to be eligible for a reimbursement under Sections V.B-D of this Agreement:

      a.      A Claim is mailed, emailed, or submitted by electronic submission via the Settlement website, as described in the Full Notice, to Subaru no later than sixty (60)

days after the Effective Date. For claims submitted via regular mail, the mail must be postmarked no later than sixty (60) days after the Effective Date;

        b.      The Claim contains a properly completed Claim Form.

        c.      If the claimant is not a person to whom the Claim Form was addressed, and/or the vehicle with respect to which a Claim is made is not the vehicle identified by VIN number on the mailed Claim Form, the Claim contains proof that the claimant is in fact a Settlement Class Member.

        d.      The Claim contains Proof of Repair Expense and Proof of Repair-Related Expenses demonstrating the Settlement Class Member's right to receive reimbursement under the terms of this Settlement Agreement.

        e.      The Settlement Class Member has not previously been fully reimbursed by Subaru, an Authorized Subaru Retailer, or any third party, by any means, including but not limited to Subaru Added Security or other extended warranty provider, for expenses provided by the Settlement.

        f.      If a Settlement Class Member has previously received partial reimbursement for such expenses, then a claim may be made pursuant to this Settlement for only the unreimbursed portion of those expenses.

        8.      Reimbursements are contingent upon the Court's final approval of this Settlement Agreement.

        9.      **Reimbursement for Third-Party Repairs.** If a Settlement Class Member previously presented his or her vehicle to an authorized Subaru dealership or contacted Subaru's customer service division regarding the battery related issue he or she later paid to have fixed by an independent third party, then the Settlement Class Member, subject to the proof and

23

conditions required in Section V.B.7, is entitled to reimbursements for payments the Settlement

Class Member made to independent third parties for (1) battery testing, diagnosis, and

replacements on a Settlement Class Vehicle in connection with a Qualifying Battery Condition

prior to the Notice Date; and (2) towing services in connection with a Qualifying Battery

Condition on a Settlement Class Vehicle prior to the Notice Date.  A claimant seeking third-party

repair reimbursement pursuant to this section shall not be entitled to submit a Declaration and

shall not be excused from providing full documentary support for the prior presentment, repair

and out of pocket cost requirements. Third-party repairs, which qualify under this section, shall

be counted for purposes of calculating the total paid-for repairs in Section V.B.6.

       **C.**       **Reimbursements for Extraordinary Circumstances**

       1.       Subject to the proof requirements of Section V.B.7,  Subaru will reimburse

Settlement Class Members who experienced two (2) or more battery failures within five (5) years

and sixty thousand (60,000) miles from the In-Service Date of the Settlement Class Vehicle, for

140% of certain Reasonably Related Reimbursable Costs related to the Class Member being

stranded as a result of a battery failure incurred prior to the Notice Date.

       2.       To recover under this section, a Class Vehicle must have been rendered

undrivable as a result of a battery failure and the expenses must have been incurred within 48

hours of the repair for such failure.

       3.       Qualifying expenses under this section may only be recovered up to and

including the day on which the vehicle was returned to the Class Member by the service center.

Recoverable expenses include, without limitation, hotel expenses, meals, and equipment

purchased to sustain battery operation, and other expenses reasonably related to the battery

failure. Expenses for hotel stays and meals are eligible for reimbursement under this section if they were incurred not less than 50 miles from the vehicle's state registered address.

4.      A Settlement Class Member qualifying under this section shall also be entitled to receive a single-use Subaru service voucher with a face value of $140, which will remain valid for one year from the date the Settlement Class Member's claim is approved. The date of expiration shall be printed on the voucher.

5.      Reimbursements for Extraordinary Circumstances under this section shall be available to Settlement Class Members only to the extent Subaru did not previously provide good will for the same Reasonably Related Reimbursable Costs, i.e. Subaru will receive an offset for prior good will provided but Class Members can submit the remaining unreimbursed amount under this section for reimbursement.

6.      Reimbursements are contingent upon the Court's final approval of this Settlement Agreement.

D.      **Free Reflash if Certain Conditions are Satisfied**

1.      Effective on the Notice Date, any class member presenting a class vehicle to an Authorized Subaru Retailer in satisfaction of the Qualification for Settlement Extended Warranty Repair conditions set forth in Section ___, who has not previously received the Reflash, is entitled to receive the Reflash during the Retailer visit, at no cost through the duration of the Settlement Extended Warranty.

2.      Subject to Proof of Repair Expense, Settlement Class Members who already received and paid for the Reflash are entitled to 100% reimbursement for expenses incurred for the Reflash.

E.      **Costs of Administration and Notice**

1.      The Parties agree that Defendants shall be responsible for the costs of First Class Notice and settlement administration.  The Plaintiffs retain the right to audit and review the First Class Notice and claims administration processes in accordance with paragraph VI.B.6, below

VI.      **CLAIMS ADMINISTRATION**

A.      **Administration**

1.      Settlement Administrator shall mail to the Settlement Class Member, at the address listed on the Claim Form or at an address later updated by the Settlement Class Member, the Administrator's decision on the Claim, to be sent within ninety (90) days after receipt of the Claim, or within ninety (90) days of the Effective Date, whichever is later.  For each approved Claim for Reimbursement, the Settlement Administrator shall within this time period mail to the Settlement Class Member a reimbursement check for the unreimbursed permissible expenses to which the Settlement Class Member is entitled For any Claim for Reimbursement that qualifies for less than the full amount of the reimbursement sought by the Settlement Class Member (e.g., the Settlement Class Member sought 120% reimbursement for an Owner Paid Repair that occurred within three (3) years and thirty-six thousand (36,000) miles from the In-Service Date of the Settlement Class Vehicle, but only received 100% reimbursement), Settlement Administrator shall, within the period set forth in Section VI.A.1 above, mail to the Settlement Class Member, at the address listed on the Claim Form, a "Claim Decision and Option Letter" (substantially in the form attached hereto as Exhibit I) stating:

a.      That a partial reimbursement has been awarded and/or that the claim has been rejected;

b.      The amount of the proposed reimbursement;

26

       c.       Whether rejection of the reimbursement sought was based on:

            (1)     Lack of or insufficient Proof of Repair Expense, Proof of Repair-Related Expense, and/or other required proof;

            (2)     Error in the Claim Form; or

            (3)     Any other applicable reason impacting payment of the full amount of the reimbursement sought by the Settlement Class Member.

       d.       The Settlement Class Member's right to a Second Review of the Settlement Administrator's decision, as described in SectionVI.B; and

     2.      Any Settlement Class Member who receives a Claim Decision and Option Letter under SectionVI.A.1, may:

       a.       Initiate a Second Review of the Settlement Administrator's decision by completing and mailing or emailing the Claim Decision and Option Letter along with any additional explanation and/or documents to cure any alleged deficiencies, postmarked within or emailed within forty-five (45) days of the mailing of the Claim Decision and Option Letter; or

       b.       Accept the reimbursement offered, which no response is required to accept.

     3.      If a Settlement Class Member accepts the reimbursement offer, Settlement Administrator shall mail the Settlement Class Member a reimbursement check within ninety (90) days of the Effective Date or within ninety (90) days of the mailing of the Claim Decision and Option Letter after receipt of said acceptance by Settlement Administrator (determined either by Settlement Administrator's receipt of the completed Claim Decision and Option Letter from the

Settlement Class Member accepting the reimbursement offered, or by the expiration of the above-referenced period of time in which acceptance will be presumed), whichever occurs later.

**B.  Second Review**

1.  A Settlement Class Member who initiates a Second Review may:

a.  rely solely on the documents submitted with the Claim; or

b.  also submit a written statement and/or additional documentation to cure any alleged deficiencies in advance of the Settlement Administrator's Second Review.

2.  In each Second Review, the Settlement Administrator shall review the decision with regard to the reimbursement, including the criteria required under this Settlement Agreement.

3.  The Second Review will be made by a senior level employee of Settlement Administrator who is a different employee from the one that made the initial determination.  His or her Second Review will be independent of the initial review, and will not involve consultation with the employee who made the initial determination.

4.  The reviewer will review the Settlement Administrator's initial determination and independently determine, based upon the claim and proof submitted by the Settlement Class Member, whether the initial determination should be adjusted.  The reviewer will have the authority to increase the reimbursement amount originally offered up to the fullamount of reimbursement sought, if the Settlement Class Member's Claim meets the requirements under this Agreement for justifying that amount.  Under no circumstance shall the second reviewer decrease the reimbursement amount previously offered.

5.  The Second Review determination, along with any applicable payment, will be mailed to the Settlement Class Member within forty-five (45) days of the date in which

the request for a Second review was received by the Settlement Administrator, or within sixty (60) days of the Effective Date, whichever is later, along with any supporting documentation. The Second Review determination will state the reason(s) why the initial determination was either modified or not changed.  The Settlement Administrator's decision shall be final and not appealable.

6.      Class Counsel will have the right to reasonably monitor the claims administration process and ensure that the Settlement Administrator is acting in accordance with the Settlement Agreement.

7.      Defendants shall bear all costs of the Second Review.

8.      As soon as reasonably possible after the claims deadline, after all Claims have been processed to determine their validity, the Settlement Administrator will provide Class Counsel and Defendants' Counsel with a list of Claimants with valid claims, including the settlement payment for each Claimant; and a list of all Claims it deems invalid or untimely.

9.      The Settlement Administrator will maintain a database of Claims, which will include all relevant information captured from Claimants' Claim Forms.

**VII.   <u>Class Notice and Publication</u>**

**A.      To Attorney General**

In compliance with the Attorney General notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants shall provide notice of this proposed Settlement to the Attorney General of the United States, and the Attorneys General of each state in which a Settlement Class Member resides. Defendants shall also provide contemporaneous notice to Class Counsel that notice to the Attorneys General was completed.

29

**B.      To Settlement Class**

1.      Settlement Administrator, as the settlement administrator, shall be responsible for the following Settlement Class Notice program:

a.      Within ninety (90) days after entry of the Preliminary Approval Order discussed in Section II.18 of this Agreement, Settlement Administrator shall cause individual notice, substantially in the form attached hereto as Exhibit B, to be mailed, by first class mail, to the current or last known addresses of all reasonably identifiable Settlement Class Members. Notice shall be in made in the form of a postcard, that shall: (1) advise the class member to access the settlement website; or (2) call a toll free number for the Full Notice; including instructions on seeking Extended Warranty Service; the Claim Form and the Request for Exclusion Form. The Parties may format the First Class Notice in such a way as to ensure legibility, and access to the Full Notice. The ability to receive a Full Notice via toll free number is to be prominently displayed. Settlement Administrator shall be responsible for dissemination of the First Class Notice.

b.      For purposes of identifying Settlement Class Members, the Settlement Administrator shall obtain from Subaru's records and verify with Experian (or a reasonable substitute agreed to by the Class Counsel) the names and current or last known addresses of Settlement Class Vehicle owners and lessees that can reasonably be obtained, and the Vehicle Identification Numbers (VINs) of Settlement Class Vehicles.

c.      Prior to mailing the First Class Notice, an address search through the United States Postal Service's National Change of Address database will be conducted to update the address information for Settlement Class Vehicle owners and lessees.  For each individual First Class Notice that is returned as undeliverable, Settlement Administrator shall re-

mail the First Class Notice where a forwarding address has been provided.  For the remaining undeliverable notice packets where no forwarding address is provided, Settlement Administrator shall perform an advanced address search (e.g. a skip trace) and re-mail any undeliverable notices to the extent any new and current addresses are located.

       d.     Settlement Administrator shall diligently, and/or as reasonably requested by Class Counsel, report to Class Counsel the number of individual First Class Notices originally mailed to Settlement Class Members, the number of individual First Class Notices initially returned as undeliverable, the number of additional individual First Class Notices mailed after receipt of a forwarding address, and the number of those additional individual First Class Notices returned as undeliverable.

       e.     Settlement Administrator shall, upon request, provide Class Counsel with the names and addresses of all Settlement Class Members to whom Subaru sent a First Class Notice pursuant to this section.

       f.     Consistent with Section V.A.3.a.2, defendants shall implement a Settlement website containing:

           (1)     a copy of the Claim Form, Full Notice, this Settlement Agreement, Court Orders regarding this Settlement, and other relevant Court documents, including Co-Lead Class Counsel's Motion for Approval of Attorneys' Fees, Costs, and Service Awards;

           (2)     instructions on how to request Extended Warranty Service;

           (3)     instructions on how to submit a Claim for reimbursement;

           (4)     information concerning deadlines for filing a Claim and the dates and locations of relevant Court proceedings, including the Final Fairness Hearing;

(5)     instructions on how to contact the Settlement
        Administrator, Defendants, and Class Counsel for
        assistance;

(6)     online submissions forms; and

(7)     any other relevant information agreed upon by counsel for
        the Parties.

g.     The Settlement Administrator will also email a hyperlink to the
Settlement Website and electronic versions of the Long Form Notice and Claim Form to Class
Members for whom the Settlement Administrator may obtain an email address for.

2.     No later than ten (10) days before the Fairness Hearing, Defendants and
the Settlement Administrator shall provide an affidavit(s) to Class Counsel, attesting that the
First Class Notice was disseminated in a manner consistent with the terms of this Agreement or
those required by the Court.

## VIII.   RESPONSE TO NOTICE

### A.     Objection to Settlement

1.     Any Settlement Class Member who intends to object to the fairness of this
Settlement Agreement must, by the date specified in the Preliminary Approval Order and recited
in the Full Notice, file any such objection via the Court's electronic filing system, and if not filed
via the Court's electronic system, must mail, postmarked by the date specified in the Preliminary
Approval Order, the objection to the Court and also serve by first-class mail copies of the
objection upon:

Clerk of the Court
United States District Court
District of New Jersey
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101

Matthew Mendelsohn
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068


Neal Walters
**Ballard Spahr, LLP**
700 East Gate Drive
Suite 300
Mount Laurel, NJ 08054

2.      Any objecting Settlement Class Member must include with his or her

objection:

a.      the objector's full name, current address, and telephone number,

b.      the model, model year, date of acquisition and vehicle identification

number of the Settlement Class Vehicle, along with proof that the objector has owned or leased

the Settlement Class Vehicle (i.e., a true copy of a vehicle title, registration, or license receipt);

c.      a written statement that the objector has reviewed the Settlement

Class definition and understands in good faith that he or she is a Settlement Class Member;

d.      a written statement of all grounds for the objection accompanied by

any legal support for such objection sufficient to enable the parties to respond to those specific

objections;

e.      copies of any papers, briefs, or other documents upon which the

objection is based and which are pertinent to the objection; and

f.      a statement whether the Settlement Class Member complained to

Defendants or an Authorized Subaru Retailer about a Qualifying Battery Failure or Qualifying

Battery Condition or has had any Qualifying Reimbursable Repairs and, if so, provide evidence

of any such complaint or repairs.

33

3.      In addition, any Settlement Class Member objecting to the settlement shall provide a list of all other objections submitted by the objector, and/or the objector's counsel, to any class action settlements submitted in any state or federal court in the United States in the previous five (5) years, including the full case name with jurisdiction in which it was filed and the docket number.  If the Settlement Class Member or his, her, or its counsel has not objected to any other class action settlement in the United States in the previous five (5) years, he or she shall affirmatively so state in the objection.

4.      Moreover, subject to the approval of the Court, any objecting Settlement Class Member may appear, in person or by counsel, at the Fairness Hearing to explain why the proposed settlement should not be approved as fair, reasonable, and adequate, or to object to any petitions for Class Counsel Fees and Expenses or Service Awards.  If the objecting Settlement Class Member intends to appear at the Fairness Hearing, the objecting Settlement Class Member must file with the Clerk of the Court and serve upon all counsel designated in the Notice a notice of intention to appear at the Fairness Hearing by the objection deadline as specified in the Preliminary Approval Order.  The notice of intention to appear must include copies of any papers, exhibits, or other evidence, and the identity of witnesses, that the objecting Settlement Class Member (or the objecting Settlement Class Member's counsel) will present to the Court in connection with the Fairness Hearing.  A Settlement Class Member who fails to adhere to the requirements of this section may be deemed to have waived any objections to the settlement, any adjudication or review of the Settlement Agreement, by appeal or otherwise, and/or any right to appear at the Fairness Hearing.

5.      Upon the filing of an objection, Class Counsel and Defendants' Counsel may take the deposition of the objecting Settlement Class Member pursuant to the Federal Rules

of Civil Procedure at an agreed-upon time and location, and to obtain any evidence relevant to the objection.  Failure by an objector to make himself of herself available for deposition or comply with expedited discovery may result in the Court striking the objection.  The Court may tax the costs of any such discovery to the objector or the objector's counsel if the Court determines that the objection is frivolous or is made for an improper purpose.

**B.    Request for Exclusion from the Settlement**

1.    Any Settlement Class Member who wishes to be excluded from the Settlement Class must submit a request for exclusion ("Request for Exclusion"), online at the settlement website, or mailed substantially in the form attached hereto as Exhibit J, to Settlement Administrator at the address specified in the Full Notice by the date specified in the Preliminary Approval Order and recited in the Full Notice.  To be effective, the Request for Exclusion must be submitted on the settlement website or sent to the specified address and:

a.    include the Settlement Class Member's full name, current address and telephone number;

b.    specifically and unambiguously state in writing his or her desire to be excluded from the Settlement Class and election to be excluded from any judgment entered pursuant to the settlement.

2.    Any Settlement Class Member who obtains relief pursuant to the terms of this Settlement Agreement after the receipt of the First Class Notice gives up the right to exclude him or herself from this settlement.

3.    Any request or exclusion must be submitted online or postmarked on or before the deadline set by the Court, which date shall be approximately forty-five (45) days after the date of the mailing of Notice to Settlement Class Members.  Any Settlement Class Member,

who fails to submit a timely and complete Request for Exclusion sent to the proper address, shall be subject to and bound by this Settlement Agreement, the Release and every order or judgment entered relating to this Settlement Agreement.

        4.      Settlement Administrator will receive Requests for Exclusion and will follow guidelines developed jointly by Class Counsel and Defendants' counsel for determining whether they meet the requirements of a Request for Exclusion.  Any communications from Settlement Class Members (whether styled as an exclusion request, an objection or a comment) as to which it is not readily apparent whether the Settlement Class Member meant to exclude himself or herself from the Settlement Class will be evaluated jointly by counsel for the Parties, who will make a good faith evaluation, if possible, and may contact the Settlement Class Member for clarification.  Any uncertainties about whether a Settlement Class Member is requesting exclusion from the Settlement Class will be submitted to the Court for resolution. Settlement Administrator will maintain a database of all Requests for Exclusion, and will send the original written communications memorializing those Requests for Exclusion to Class Counsel.  Settlement Administrator shall report the names and addresses of all such persons and entities requesting exclusion to the Court and Class Counsel within thirty  (30) days prior to the Final Hearing, and the list of persons and entities deemed by the Court to have excluded themselves from the Settlement Class will be attached as an exhibit to the Final Order and Judgment.

        5.      Objections and Requests for exclusions shall be permitted on an individual basis only.  Any purported "class-wide" objections or opt-outs will be construed as being submitted only on behalf of the person who actually submitted the exclusion.

IX.     **WITHDRAWAL FROM SETTLEMENT**

          1.      Plaintiffs or Defendants shall have the option to withdraw from this Settlement Agreement, and to render it null and void if any of the following occurs:

          a.      Any objection to the proposed settlement is sustained and such objection results in changes to this Agreement that the withdrawing party deems in good faith to be material (e.g., because it substantially increases the costs of the Settlement, or deprives the withdrawing party of a material benefit of the Settlement). A mere delay of the approval and/or implementation of the Settlement, including a delay due to an appeal procedure, if any, shall not be deemed material;

          b.      The preliminary or final approval of this Settlement Agreement is not obtained without material modification, and any modification required by the Court for approval is not agreed to by both Parties, and the withdrawing party deems any required modification in good faith to be material (e.g., because it increases the cost of the Settlement, or deprives the withdrawing party of a material benefit of the Settlement). A mere delay of the approval and/or implementation of the Settlement including a delay due to an appeal procedure, if any, shall not be deemed material);

          c.      Entry of the Final Order and Judgment described in this Agreement is vacated by the Court or reversed or substantially modified by an appellate court; or

          d.      If 10,000 or more Class Members properly and timely exercise their right to opt out of the settlement, Defendants or Plaintiffs shall have the right to terminate this Settlement Agreement without penalty or sanctions, without prejudice to its position on the issue of class certification and the amenability of the claims asserted in the Action to class treatment, and the Parties shall be restored to their litigation position existing immediately before the execution of this Settlement Agreement.

2.      To withdraw from this Settlement Agreement under this Section, the withdrawing party must provide written notice to the other party's counsel and to the Court within ten (10) business days of receipt of any order or notice of the Court modifying, adding or altering any of the material terms or conditions of this Agreement.  In the event either party withdraws from the Settlement, this Settlement Agreement shall be null and void, shall have no further force and effect with respect to any party in the Action, and shall not be offered into evidence or used in the Action or any other litigation for any purpose, including the existence, certification or maintenance of any purported class.  In the event of such withdrawal, this Settlement Agreement and all negotiations, proceedings, documents prepared and statements made in connection herewith shall be inadmissible as evidence and without prejudice to the Defendants and Plaintiffs, and shall not be deemed or construed to be an admission or confession by any party of any fact, matter or proposition of law, and shall not be used in any manner for any purpose, and all parties to the Action shall stand in the same position as if this Settlement Agreement had not been negotiated, made or filed with the Court.  Upon withdrawal, either party may elect to move the Court to vacate any and all orders entered pursuant to the provisions of this Settlement Agreement.

3.      A change in law, or change of interpretation of present law, that affects this Settlement shall not be grounds for withdrawal from the Settlement.

## X.      <u>ADMINISTRATIVE OBLIGATIONS</u>

### A.      **Preliminary Approval of Settlement**

1.      Promptly after the execution of this Agreement, Class Counsel shall present this Agreement to the Court, along with a motion requesting that the Court issue a Preliminary Approval Order substantially in the form attached as Exhibit E.

B.      **Final Approval of Settlement**

1.      If this Agreement is preliminarily approved by the Court, Class Counsel shall present a motion requesting that the Court issue a Final Order and Judgment directing the entry of judgment pursuant to Fed. R. Civ. P. 54(b) substantially in the form attached as Exhibit D.

XI.   **FORM AND SCOPE OF JUDGMENT**

1.      Upon the Effective Date, the Plaintiffs and each Settlement Class Member shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully and completely released, acquitted and discharged the Released Parties from all Released Claims.

1.      Upon the Effective Date, with respect to the Released Claims, the Plaintiffs and Settlement Class Members expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of §1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

2.      Upon the Effective Date, the Action will be deemed dismissed with prejudice.

XII.   **ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

1.      Class Counsel may apply to the Court for an award of reasonable attorneys' fees and expenses, inclusive of costs up to, but not to exceed, the total combined sum of $4,100,000 (four million one hundred thousand dollars).  Defendants will not oppose Class Counsel's application for Attorneys' Fees and Expenses up to and not exceeding the above amount, and Class Counsel may not be awarded, and shall not accept, any amount for attorneys' fees and expenses in excess of the above amount.  Each party shall have the right of appeal to the

extent the award is inconsistent with this Agreement. Attorneys' Fees and Expenses shall be in addition to the benefits provided directly to the Settlement Class (and shall be in addition to the Representative Plaintiffs' Service Awards), and shall not reduce or otherwise have any effect on the benefits made available to the Settlement Class.

2.      Upon finalization of this Settlement Agreement, the Parties have agreed that Defendants will not oppose Plaintiffs' request, made as part of the Fee and Expense Application, that Defendants separately pay Service Awards of $4,000.00 (combined total of $52,000) to each of the named Plaintiffs Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George, who have served as putative class representatives in the Action. If awarded by the Court, the fee, cost, and expense award shall be payable by Defendants within 30 days after the date of entry of the Final Approval Order, notwithstanding the existence of any Objections, pending or forthcoming appeals, or collateral attack on the Settlement, the fee, cost, and expense Award, or the Service Awards. At least 30 days prior to payment of the fee, cost, and expense Award, Class Counsel shall furnish Defendants' Counsel with all necessary payment and routing information to facilitate the transfer.

3.      If the Final Approval Order is vacated, overturned, reversed, or rendered void or unenforceable as a result of an appeal, or if the Settlement Agreement is voided, rescinded, or otherwise terminated, then Class Counsel shall, within 30 days, repay to Defendants the fee, cost, and expense award it received, plus interest Class Counsel earned on that amount, if any.

4.     If the fee, cost, and expense award is reduced on appeal, but all other terms of the Settlement Agreement remain in full effect, Class Counsel shall only repay the portion of the fee, cost, and expense award by which it is reduced.

5.     Payment to the Class Counsel payee shall fully satisfy and discharge all obligations of Subaru with respect to payment of the Attorneys' Fees and Expenses and settlement class representative Service Awards.

6.     The Class Counsel payee will be selected by Class Counsel within ten (10) days after the date the Final Approval Order is entered.  The Class Counsel payee shall distribute Attorneys' Fees and Expenses awarded by the Court between and among Class Counsel as Class Counsel mutually agree amongst themselves.

7.     The procedure for the grant, denial, allowance or disallowance by the Court of the Attorneys' Fee and Expenses application are not part of the Settlement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement.  Any order or proceedings relating solely to the Fee and Expense Application, or any appeal from any order related thereto or reversal or modification thereof, will not operate to terminate or cancel this Agreement, or affect or delay the Effective Date of this Agreement.  Payment of Attorneys' Fees and Expenses and Representative Plaintiffs' Service Awards will not reduce the benefit being made available to the Settlement Class Members, and the Settlement Class Members will not be required to pay any portion of the Representative Plaintiffs' Service Awards or Attorneys' Fees and Expenses.

8.     The Parties agree that Defendants are in no way liable for any taxes Class Counsel, Plaintiffs, Representative Plaintiffs, Settlement Class Members, or others may be required to pay as a result of the receipt of any settlement benefits.

## XIII.   MISCELLANEOUS PROVISIONS

### A.   Publicity

1.     The Parties agree that any statements made to the press shall be agreed upon by counsel for all parties.  In no event shall any reference be made to information designated as "Confidential."

### B.   Effect of Exhibits

1.     The exhibits to this Agreement are an integral part of the settlement and are expressly incorporated and made a part of this Agreement.

### C.   Entire Agreement

1.     This Agreement represents the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements and understandings relating to the subject matter of this Agreement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation or understanding concerning any part or all of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement.  No modification or waiver of any provisions of this Agreement shall in any event be effective unless the same shall be in writing and signed by the person or party against whom enforcement of the Agreement is sought.

### D.   Arm's-Length Negotiations and Good Faith

1.     The Parties have negotiated all of the terms and conditions of this Agreement at arm's length and as an extension of the mediation efforts conducted by the Honorable Joel Schneider (ret).  The Parties agree that during the course of this Litigation, the Parties and their respective counsel have acted in good faith.  All terms, conditions and exhibits in their exact form are material and necessary to this Agreement and have been relied upon by

the Parties in entering into this Agreement.  The Parties agree to act in good faith during the claims administration process.

       **E.**      **Continuing Jurisdiction**

       1.      The Parties agree that the Court may retain continuing and exclusive jurisdiction over them, including all Settlement Class Members, for the purpose of the administration and enforcement of this Agreement.

       **F.**      **Binding Effect of Settlement Agreement**

       1.      This Agreement shall be binding upon and inure to the benefit of the Parties and their representatives, attorneys, heirs, successors and assigns.

       **G.**      **Extensions of Time**

       1.      The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Agreement, without further notice (subject to Court approval as to Court dates).

       **H.**      **Authority to Execute Settlement Agreement**

       1.      Each counsel or other person executing this Agreement or any of its exhibits on behalf of any party hereto warrants that such person has the authority to do so.

       **I.**      **Return of Confidential Materials**

       1.      All documents and information designated as "confidential" and produced or exchanged in the Action, shall be returned or destroyed in accordance with the terms of the Discovery Confidentiality Order entered in the Action on October 5, 2020 (ECF No. 41).

       **J.**      **No Assignment**

       1.      The Parties represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion

thereof or interest therein, including, but not limited to, any interest in the litigation or any related action.

     **K.**    **No Third-Party Beneficiaries**

     1.    This Agreement shall not be construed to create rights in, or to grant remedies to, or delegate any duty, obligation or undertaking established herein to any third party (other than Settlement Class Members themselves) as a beneficiary of this Agreement.

     **L.**    **Construction**

     1.    The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each Party participated jointly in the drafting of this Agreement and, therefore, the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

     **M.**    **Choice of Law**

     1.    New Jersey law will apply to any disputes regarding the settlement agreement. Federal law shall govern approval of the settlement, preliminary and final certification of the Settlement Class, and all related issues, such as Plaintiffs' fee and expense petition.

     **N.**    **Captions**

     1.    The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**APPROVED AND AGREED TO BY AND ON BEHALF OF PLAINTIFFS**

Date: 4/29, 2022

SAUDER SCHELKOPF LLC

By: _____
     Matthew Schelkopf

MAZIE SLATER KATZ & FREEMAN, LLC

By: _____
     Matthew Mendelsohn

GIRARD SHARP, LLP

By: _____
     Adam Polk

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*

**APPROVED AND AGREED TO BY AND ON BEHALF OF DEFENDANT, SUBARU OF AMERICA, INC. AND SUBARU CORPORATION**

Dated: 4/27, 2022

By: _____
     Michael Campbell

Title:   Vice President of Service & Quality

# EXHIBIT A

# REIMBURSEMENT CLAIM FORM
# MUST BE SUBMITTED OR POSTMARKED BY [MONTH DAY], 2022

*In re: Subaru Battery Drain Products Liability Litigation*, No. 1:20-cv-03095-JHR-MJS (D.N.J.)

**Only submit this Claim Form if you are seeking reimbursement for prior out-of-pocket expenses. You do not need to submit this Claim Form to receive the Extended Warranty coverage. To receive future Extended Warranty coverage, you must submit the separate Request for Settlement Extended Warranty Battery Service Form.**

Submit your claim by email or through the Settlement Website by [**DATE**].  If you are submitting your claim by mail, send your completed Claim Form and all supporting documentation so it is postmarked by [**DATE**] to:

Subaru Battery Settlement
c/o JND Legal Administration
P.O. Box 91305
Seattle, WA 98111

*For more information, please consult the Class Notice, contact the Settlement Administrator at info@SubaruBatterySettlement.com or 1-855-606-2625, or visit www.SubaruBatterySettlement.com.*

Please review the instructions on page 6 before proceeding. If the pre-printed information below is incorrect or absent, please print, fill out, and submit copies of the pages containing Sections I and II with corrected or completed information.

# I. CLAIMANT CONTACT INFORMATION

Full Name

Mailing Address – Line 1

Mailing Address – Line 2 (If Applicable)

| City | State | Zip Code |
|------|-------|----------|
|      |       |          |

Telephone Number

Email Address

## II. <u>VEHICLE INFORMATION</u>

If you are seeking reimbursement for prior out-of-pocket expenses for more than one Vehicle, you must file a separate Claim Form for each Vehicle.

Vehicle Identification Number (VIN)

In-Service Date*

*The In-Service Date means the date on which a Settlement Class Vehicle was delivered to the first retail purchaser or lessee; or if the vehicle was first placed in service as a "demonstrator" or "company" car, then the date on which the vehicle was placed in such service.*

**Check the box for each cost you want reimbursed:**

☐ Repair costs at Subaru or third-party retailers related to battery failures (including towing expenses).

☐ Stranding expenses directly related to two or more battery failures within 5 years/60,000 miles (e.g., hotel expenses, meals, or equipment to sustain battery operation).

☐ Reflash.

Documentation is required for all claimed repair costs, reflash costs, and stranding expenses. Detailed information concerning the types of documentation required and what to do if you are unable to provide documentation of repair costs is included in the instructions at page 6 of this Claim Form.

## III. <u>REPAIR INFORMATION</u>

Before entering the amount sought for each repair, please refer to the chart below, which details the reimbursement rates for repairs, which depend on (1) the number of repairs, (2) the mileage at the time of the most recent repair, and (3) the passage of time between the In-Service Date and date of the most recent repair.

If you received a Reflash, enter the date of the service and the amount you paid in the Reflash section below. Do not enter a Reflash as a repair, and do not count it toward the number of Owner Paid Repairs when calculating the applicable reimbursement rate.

| # of Owner Paid Repairs | Within 3 years 36,000 miles | Within 5 years 60,000 miles | Within 7 years 84,000 miles | Within 8 years 100,000 miles |
|---|---|---|---|---|
| 1 | 120% | 100% | N/A | N/A |
| 2 | 140% | 125% | 100% | 55% |
| 3+ | 165% | 140% | 120% | 100% |

Please also refer to the following example, which further explains the above-referenced rates: for two (2) Owner Paid Repairs, a Settlement Class Member is entitled to 140% reimbursement when all Owner Paid Repairs occurred within three (3) years and thirty-six thousand (36,000) miles from the In-Service Date of the Settlement Class Vehicle.

Date of repair (MM/DD/YYYY)

Mileage at time of repair

Amount sought for this repair
$

Date of repair (MM/DD/YYYY)

Mileage at time of repair

Amount sought for this repair
$

Date of repair (MM/DD/YYYY)

Mileage at time of repair

Amount sought for this repair
$

Date of repair (MM/DD/YYYY)

Mileage at time of repair

Amount sought for this repair
$

Date of repair (MM/DD/YYYY)

Mileage at time of repair

Amount sought for this repair
$

## <u>Stranding Expenses</u>

Complete this section only if you are claiming stranding expenses (e.g., hotel stays, meals, equipment purchased to sustain battery operation, and other expenses reasonably related to the battery failure) incurred as a result of two or more battery failures within 5 years/60,000 miles of the In-Service Date.

Dates of related failures/repairs

Amount sought for reimbursement
$

## <u>Reflash</u>

Complete this section only if you are claiming reimbursement for expenses paid for a Reflash service.

Date of Reflash (MM/DD/YYYY)

Amount paid for Reflash
$

## IV.  <u>SIGN & DATE</u>

*By signing this form, you are certifying under oath that you **HAVE NOT** already been reimbursed for any of the above products and/or services except as reflected on the documents you have submitted.*

*If you are submitting a claim for reimbursement of third-party battery repairs, replacements, testing, diagnosis, or towing, by signing this form, you are certifying under oath that before [INSERT NOTICE DATE], you: (1) presented your vehicle to Subaru or an Authorized Subaru Retailer for repair; or (2) contacted Subaru customer service regarding your battery failure before you paid to have it fixed by an independent third party.*

_____          _____

Signature                                                                              Date

# <u>DECLARATION FORM</u>

### *MUST BE SUBMITTED BY* _____

*In re Subaru Battery Drain Products Liability Litigation,* No. 1:20-cv-03095-JHR-MJS (D.N.J.)

<u>ONLY SUBMIT THIS FORM IF YOU ARE SEEKING REIMBURSEMENT FOR PRIOR-OUT-OF-POCKET EXPENSES FOR REPAIRS PERFORMED AT AN AUTHORIZED SUBARU RETAILER AND DO NOT HAVE THE REQUIRED DOCUMENTATION REGARDING SUCH EXPENSES.  YOU DO NOT NEED TO SUBMIT THIS FORM TO RECEIVE THE WARRANTY EXTENSION</u>.

Submit your declaration <u>with</u> your Claim Form by mail, email, or through the Settlement Website by [DATE].  If you are submitting your declaration <u>with</u> your Claim Form by mail, send your completed Claim Form and all supporting documentation to:

Subaru Battery Settlement
c/o JND Legal Administration
P.O. Box 91305
Seattle, WA 98111

*For more information, please consult the Class Notice, contact the Settlement Administrator at 1-855-606-2625 or info@SubaruBatterySettlement.com, or visit www.SubaruBatterySettlement.com.*

## [1] Good Faith Effort

Please describe below the good faith effort you made to obtain the required documentation as described in the Claim Form, including who you communicated with to obtain such documentation:

_____

_____

_____

_____

_____

_____

_____

## [2] Required Enclosures

> ***Enclose*** *one or more documents to show:*
> - The timing of the out-of-pocket expense
> - The amount of the out-of-pocket expense

## [3] Sign & Date

*By signing this form, you are certifying under oath that you **HAVE** made a good faith effort to obtain the required documentation to support your claim request.*

_____          _____
Signature                                                                              Date

## <u>INSTRUCTIONS</u>

**Supporting documentation is required for ALL claims**.   Contact the Settlement Administrator at 1-855-606-2625 or info@SubaruBatterySettlement.com with any questions about completing this Claim Form.

**If you are claiming repair costs at Subaru or third-party retailers related to battery failures,** you must enclose an invoice or any other combination of document(s) for EACH battery repair, testing, diagnosis, or towing that shows:

- The VIN of the vehicle
- Date of the battery repair, replacement, test, diagnosis, and/or towing
- Vehicle mileage at the time of repair
- A description of the work performed (including, if available, a breakdown of parts and labor costs)
- Proof of total amount paid (for both parts and labor and/or towing costs)
- The facility that performed the repair, replacement, test, or diagnosis
- If the facility that performed the work to your vehicle was not an authorized Subaru retailer, proof that you first presented your vehicle to an authorized Subaru retailer or contacted Subaru's customer service division regarding the battery related issue within ten days of having the work performed
- If you paid to tow your vehicle to an authorized Subaru retailer due to a battery failure, the costs incurred in towing the vehicle to the authorized Subaru retailer

If you would like to claim reimbursement for any of the above costs, but you are unable to obtain the required documentation, you must complete and submit the Declaration Form included with this Claim Form.  Please identify the individual(s) you communicated with to obtain such documentation and provide proof of the qualifying out-of-pocket payment.  Subaru of America agrees to search their records and, if qualifying records exist to support both the qualifying nature and timing of the repair, and it is consistent with the timing of the payment documentation submitted by you, then the claim will be honored.  If Subaru of America does not have records supporting your claim after it conducts its search, your claim will be rejected.  By requesting Subaru of America to search its own records, the review or processing of your claim may be delayed.  A Declaration may not be submitted for a third-party facility; you must have documentation to support such a claim.

These requirements also apply for any reimbursement you may be seeking for a Reflash service.

**If you are claiming stranding expenses directly related to two or more battery failures within 5 years/60,000 miles** (e.g. hotel expenses, meals, or equipment to sustain battery operation), you must enclose a receipt or any other combination of document(s) that shows:

- The VIN of the vehicle
- Each battery failure, including date(s) and mileage of such failure(s) for the vehicle
- Evidence that the vehicle was rendered undriveable as a result of a battery failure
- Necessary expenses you paid within 48 hours of the repair related to a battery failure(s), which may include
    - Hotel stay and related meals if they happened at least 50 miles from the vehicle's registered address;
    - Equipment purchased to sustain battery operation, such as battery chargers and jumper cables; and
    - Other expenses reasonably related to the battery failure(s).
- Service facility name
- Date and time the expense(s) were incurred
- For hotel stays and meals, location where purchased and distance to vehicle's registered address
- Date the service center returned your vehicle to you

**Only if your name or VIN is <u>NOT</u> pre-printed correctly on the Claim Form, you must also include one or more documents to show:**

- You have owned or leased a class vehicle (e.g., copy of an insurance card or repair invoice)
- The VIN of your class vehicle

Questions? Contact the Settlement Administrator at 1-855-606-2625 or info@SubaruBatterySettlement.com
To view JND's privacy policy, please visit https://www.jndla.com/privacy-policy

# EXHIBIT B

Legal Notice

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**If you bought or leased certain Subaru vehicles, you may benefit from a class action settlement**

Questions?
Visit
www.SubaruBatterySettlement.com
or Call 1-855-606-2625

include Spanish language tag?

**Subaru Battery Settlement Administrator**
c/o JND Legal Administration
P.O. Box 91305
Seattle, WA 98111

FIRST CLASS
MAIL
US POSTAGE
PAID
Permit#__


Postal Service: Please do not mark barcode

Unique ID: «CF_PRINTED_ID»

«Full_Name»
«CF_CARE_OF_NAME»
«CF_ADDRESS_1»
«CF_ADDRESS_2»
«CF_CITY», «CF_STATE» «CF_ZIP»
«CF_COUNTRY»

A proposed settlement has been reached in a class action lawsuit titled *In re Subaru Battery Drain Products Liability Litigation,* No. 1:20-cv-03095-JHR-MJS (the "Settlement"). Records indicate that you may be a Settlement Class Member. This notice summarizes your rights and options. More details are available at www.SubaruBatterySettlement.com.

**What is this about?** Plaintiffs filed a class action lawsuit against Subaru of America, Inc. ("SOA") and Subaru Corporation ("SBR"), collectively the "Defendants" or "Subaru," alleging that Settlement Class Vehicles suffer from a design defect in some vehicles that can cause battery drain; and that Defendants violated certain consumer statutes and breached certain warranties. Defendants deny Plaintiffs' claims and maintain that the Settlement Class Vehicles are not defective and that they have not violated any warranties, statutes, or laws. The Court has not decided who is right or wrong. Instead, both sides agreed to a Settlement.

**Who is affected?** Settlement Class Members include residents of the continental United States, including Hawaii and Alaska, who currently own or lease, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, including Alaska and Hawaii. Settlement Class Vehicles include model year 2015-2020 Outback, 2015-2020 Forester, 2015-2020 Legacy, 2015-2020 WRX, and 2019-2020 Ascent. There are several exclusions to the Settlement Class. However, the Settlement Class is not intended to exclude military personnel stationed overseas. For more details about who is affected, visit www.SubaruBatterySettlement.com.

**What does the Settlement provide?** The Settlement provides extended warranty coverage for Qualifying Battery Failures experienced on or after the date of this Notice. The Settlement also provides, where applicable, a cash reimbursement for: (1) battery replacements and related battery testing and diagnosis performed by an Authorized Subaru Retailer, or in some situations an independent third party, for qualifying conditions on a Settlement Class Vehicle prior to the date of this Notice ("Pre-Notice"); (2) towing services in connection with a Pre-Notice Qualifying Battery Condition; and (3) Reasonably Reimbursable Costs related to a Settlement Class Member being stranded as a result of a Pre-Notice battery failure.

**How do I get the settlement benefits?** You may be entitled to automatically receive the extended warranty. However, you must submit a valid claim for cash reimbursement. Go to www.SubaruBatterySettlement.com to file or

download a Claim Form. You can also visit the Subaru Battery Settlement Administrator, c/o JND Legal Administration, P.O. Box 91305, Seattle, WA 98111, or email: info@SubaruBatterySettlement.com. Claim Forms and supporting documentation must be submitted online or postmarked **by [Month Day], 2022** or they will not be considered. Go to www.SubaruBatterySettlement.com to learn more.

**What are my other options?** You can do nothing, exclude yourself, or object to the Settlement. Do nothing. You will remain part of the Settlement Class and receive the right to extended warranty coverage, but you must file a claim to receive a cash payment. You will be bound by the Court's decision, and you will give up your right to sue or continue to sue Subaru for the claims in this case. Exclude yourself. You will not receive any cash reimbursements or extended warranty coverage. However, this is the only option that allows you to keep your right to sue Subaru at your own expense and with your own attorney about the legal claims in this case. Object. If you do not exclude yourself from the Settlement Class, you may object or tell the Court what you do not like about the Settlement. The deadline for exclusion requests and objections is **[MONTH, DAY], 2022**. For more details about your rights and options and how to exclude yourself or object, go to www.SubaruBatterySettlement.com.

**What happens next?** The Court will hold a Fairness Hearing on [MONTH, DAY] 2022 at [TIME] to consider whether to approve the Settlement; Class Counsel's attorneys' fees and expenses up to $4,100,000; and service awards of $4,000 for each of the thirteen named Plaintiffs (Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George). Class Counsel fees and expenses and Class Representative service awards will be paid by Defendants and will not reduce any settlement benefits. The Court has appointed the law firms of Sauder Schelkopf, Mazie Slater Katz & Freeman, LLC, and Girard Sharp LLP as Class Counsel. You or your attorney may ask to speak at the hearing at your own expense, but you do not have to.

**How do I get more information?** For more information, visit www.SubaruBatterySettlement.com, call toll-free 1-855-606-2625, write Subaru Battery Settlement Administrator, c/o JND Legal Administration, P.O. Box 91305, Seattle, WA 98111, or email info@SubaruBatterySettlement.com.

**Please do not contact the Court regarding this Notice.**

*Carefully separate this Address Change Form at the perforation*

Name: _____

Current Address: _____

_____

_____

**Address Change Form**
To make sure your information remains up-to-date in our
records, please confirm your address by filling in the
above information and depositing this postcard in the
U.S. Mail.

Place
Stamp
Here

JND Legal Administration
Attn: Subaru Battery Settlement Administrator
P.O. Box xxxxx
Seattle, WA 98111

# EXHIBIT C

## <u>NOTICE OF CLASS SETTLEMENT</u>

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

# If you bought or leased certain Subaru vehicles, you may benefit from a class action settlement

*A federal court authorized this notice. This is not a solicitation from a lawyer.*
<mark>include Spanish language tag?</mark>

- A proposed Settlement has been reached in a class action lawsuit called *In re Subaru Battery Drain Products Liability Litigation*, No. 1:20-cv-03095-JHR-MJS.

- The Settlement provides *extended warranty* service for Qualifying Battery Conditions experienced on or after the date of this Notice.

- The Settlement also provides, where applicable, a *cash reimbursement* for:

  o Battery replacements and related battery testing and diagnosis performed by an Authorized Subaru Retailer, or in some situations an independent third party, for qualifying conditions on a Settlement Class Vehicle prior to the date of this Notice ("Pre-Notice");

  o Towing services in connection with a Pre-Notice Qualifying Battery Failure; and/or

  o Reasonably Reimbursable Costs related to a Settlement Class Member being stranded as a result of a Pre-Notice Qualifying Battery Failure.

- To qualify for settlement benefits, you must have bought or leased a model year 2015–2020 Outback, model year 2015–2020 Forester, model year 2015–2020 Legacy, model year 2015–2020 WRX, or model year 2019–2020 Ascent.

- Please read this Notice carefully and in its entirety. Your legal rights are affected whether you act or do not act.

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **MAKE A CLAIM FOR CASH REIMBURSEMENT** | This is the only way to get a reimbursement. Claims must be submitted online or postmarked **by [Month Day], 2022.** |
| **GET AN EXTENDED WARRANTY** | You do not need to do anything right now to ensure coverage under an extended warranty. |
| **EXCLUDE YOURSELF** | Get no reimbursement or extended warranty coverage. This is the only option that allows you to be part of any other lawsuit against Subaru about the legal claims in this case. The deadline to exclude yourself is **[Month Day], 2022.** |
| **OBJECT** | Write to the Court about why you don't like the Settlement. The deadline to object is **[Month Day], 2022.** |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. Your notice of intention to appear must be postmarked **by [Month Day], 2022.** |
| **DO NOTHING** | Receive the right to an extended warranty but no right to seek a reimbursement payment. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice. The Court in charge of this case still must decide whether to approve the Settlement. Reimbursements will be made if the Court approves the Settlement and after appeals are resolved.

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

2

**What This Notice Contains**

[INSERT TOC]

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

3

## BASIC INFORMATION

| 1. Why did I receive a notice? |
| --- |

You received this Notice because Subaru of America, Inc.'s records indicate that you may be a current or past purchaser or lessee of a Settlement Class Vehicle.

This Notice will inform you of the terms of the proposed Settlement and of the hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement. This Notice also describes your rights in connection with the Settlement and what steps you may take in relation to the Settlement.

| 2. What is this lawsuit about? |
| --- |

A class action lawsuit was filed against Subaru of America, Inc. ("SOA") and Subaru Corporation ("SBR"), collectively the "Defendants" or "Subaru". The lawsuit alleges that the Settlement Class Vehicles suffer from a design defect in some vehicles that can cause battery drain; and that Defendants have violated certain consumer statutes and breached certain warranties. The lawsuit seeks certification of a nationwide class of present and former purchasers and lessees of Settlement Class Vehicles to pursue these claims.

Defendants deny the case claims. Defendants maintain that the Settlement Class Vehicles are not defective and that the Settlement Class Vehicles function(ed) in a proper manner, were properly designed, manufactured, distributed, marketed, advertised, warranted, and sold. Defendants claim that they did not violate any warranties, statutes, or laws. In the instances in which such repairs have been necessary, Defendants maintain that they have provided warranty coverage where appropriate.

| 3. Why is there a Settlement? |
| --- |

In a class action lawsuit, one or more persons, called class representatives, sue on behalf of other people who have similar claims. All of these people are considered to be part of a class, or class members. The class representatives and all class members are called the plaintiffs, and the companies they sued are called the defendants. One court resolves the issues for all class members, except for those who take the necessary steps to exclude themselves from the class.

The Court has not decided in favor of Plaintiffs or Defendants in this lawsuit. Instead, both sides agreed to a Settlement with no decision or admission of who is right or wrong. That way, all parties avoid the risks and cost of a trial, and the people affected (the "Settlement Class Members") will receive compensation more quickly.

Counsel for Plaintiffs and the Settlement Class Members have considered the substantial settlement benefits that will be given to the Settlement Class Members and balanced these benefits with the risk of continued litigation. They considered the value of the immediate benefit to Settlement Class Members versus the costs and delay of continued litigation through trial and appeals, and the risk that the Court might not certify the proposed class. Even if Plaintiffs were successful in litigation, Settlement Class Members might not have received any benefits for years.

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

4

The Court will be holding a hearing to approve or disapprove of the Settlement before it becomes final.

## WHO IS PART OF THE SETTLEMENT CLASS?

**4. Am I a Settlement Class Member?**

You are a Settlement Class Member if you are a resident of the continental United States, including Hawaii or Alaska, who currently owns or leases, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, including Alaska or Hawaii. The Settlement Class is not intended to exclude military personnel stationed overseas. Settlement Class Vehicles include model year 2015-2020 Outback, 2015-2020 Forester, 2015-2020 Legacy, 2015-2020 WRX, and 2019-2020 Ascent.

Excluded from the Settlement Class are (a) those claims for personal injury and/or property damage (claims for a Qualifying Battery Condition or Qualifying Battery Failure in a Settlement Class Vehicle are included regardless of whether they additionally experienced personal injury or property damage for which they do not make a claim; however, those additional claims for personal injury and/or property damaged shall be deemed excluded from the Settlement Class) and/or subrogation; (b) all Judges who have presided over the Action and their spouses; (c) all current employees, officers, directors, agents and representatives of Defendants, and their family members; (d) any affiliate, parent or subsidiary of Defendants and any entity in which Defendants have a controlling interest; (e) anyone acting as a used car dealer; (f) anyone who purchased a Settlement Class Vehicle solely for the purpose of resale; (g) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (h) any insurer of a Settlement Class Vehicle; (i) issuers of extended vehicle warranties and service contracts; (j) any Settlement Class Member who, prior to the date of the Settlement Agreement, settled with and released Defendants or any Released Parties from any Released Claims; (k) any Settlement Class Member that files a timely and proper Request for Exclusion from the Settlement Class; and (l) third party issuers.

If you received this Notice, Subaru's records indicate that you are or were a purchaser or lessee of one or more of the above-referenced Settlement Class Vehicles covered under this Settlement. You are not required to submit a Claim Form to qualify for Extended Warranty coverage, but you must submit a Claim Form **by Month x, 2022** to request reimbursements as part of the Settlement. If you experience a battery failure on or after the date of this Notice, go to www.SubaruBatterySettlement.com to learn more about Extended Warranty coverage.

## SETTLEMENT BENEFITS – WHAT YOU GET

**5. What does the Settlement provide?**

The Settlement provides (1) extended warranty coverage of Qualifying Battery Conditions; and (2) a possible cash reimbursement if a Settlement Class Member paid out-of-pocket costs in connection with a Pre-Notice Qualifying Battery Condition for: battery replacement(s) and related battery testing and diagnosis performed by an Authorized Subaru Retailer, or in some situations an independent third party; related towing service(s); or a Reflash; and (3) for certain class

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

5

members, cash reimbursements for recoverable expenses, including, without limitation, hotel expenses, meals, and equipment purchased to sustain battery operation.

**Extended Warranty Coverage:**  Subaru will extend its existing express New Vehicle Limited Warranty, applicable to the Settlement Class Vehicles. The duration and coverage will vary for first and subsequent battery replacements.

For first battery replacement, Subaru will cover:
- 100% of the Battery Replacement Costs up to a period of five (5) years or sixty thousand (60,000) miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle; or
- 50% of the Battery Replacement Costs for Settlement Class Vehicles that have *exceeded* five (5) years or sixty thousand (60,000) miles on the Notice Date, for a duration of three (3) months from the Notice Date without regard to mileage.

The warranty extension for first battery replacements is non-transferable and limited to the first-time owner/lessee of the Settlement Class Vehicle.

For subsequent battery replacements beyond the original, Subaru will cover:
- 100% of the Battery Replacement Costs up to a period of five (5) years or sixty thousand (60,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle, regardless of the number of battery replacements the Settlement Class Vehicle has already received;
- 80% of the Battery Replacement Costs up to a period of seven (7) years or eighty-four thousand (84,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle; or
- 60% of the Battery Replacement Costs up to a period of eight (8) years or one hundred thousand (100,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle.

The Extended Warranty battery recharge or replacement coverage will be based on the results of the Authorized Subaru Retailer's administration of the test in the "Battery Extended Warranty – Midtronics Protocol." Except as specifically modified in the Settlement Agreement, the Extended Warranty is subject to the same terms and conditions set forth in the New Vehicle Limited Warranty and Warranty and Maintenance Booklet originally provided with your vehicle.

If you have repairs performed on your Settlement Class Vehicle pursuant to the Extended Warranty, you cannot opt out of or exclude yourself from the Settlement Class. You cannot recover more than one benefit or reimbursement for the same repair.

**Pre-Notice Qualifying Reimbursable Expenses:**  Unless a Pre-Notice repair was previously reimbursed, a cash reimbursement may be available if you paid out-of-pocket costs for (1) Pre-Notice battery replacements and battery testing and diagnosis performed by an Authorized Subaru Retailer, on a Settlement Class Vehicle in connection with a Qualifying Battery Condition; and/or (2) Pre-Notice towing services in connection with a Qualifying Battery Condition on a Settlement Class Vehicle. Reimbursements for Pre-Notice Qualifying Reimbursable Repair(s) under this section will be at the following rates:

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

6

| # of Owner Paid Repairs | Within 3 years 36,000 miles | Within 5 years 60,000 miles | Within 7 years 84,000 miles | Within 8 years 100,000 miles |
|---|---|---|---|---|
| 1 | 120% | 100% | N/A | N/A |
| 2 | 140% | 125% | 100% | 55% |
| 3+ | 165% | 140% | 120% | 100% |

For one (1) Owner Paid Repair, a Settlement Class Member is entitled to:

- 120% reimbursement when the Owner Paid Repair occurred within three (3) years and thirty-six thousand (36,000) miles from the In-Service Date of the Settlement Class Vehicle; or
- 100% reimbursement when the Owner Paid Repair occurred within five (5) years and sixty thousand (60,000) miles from the In-Service Date of the Settlement Class Vehicle.

For two (2) Owner Paid Repairs, a Settlement Class Member is entitled to:

- 140% reimbursement when all Owner Paid Repairs occurred within three (3) years and thirty-six thousand (36,000) miles from the In-Service Date of the Settlement Class Vehicle;
- 125% reimbursement when all Owner Paid Repairs occurred within five (5) years and sixty thousand (60,000) miles from the In-Service Date of the Settlement Class Vehicle;
- 100% reimbursement when all Owner Paid Repairs occurred within seven (7) years and eighty-four thousand (84,000) miles from the In-Service Date of the Settlement Class Vehicle; or
- 55% reimbursement when all Owner Paid Repairs occurred within eight (8) years and one hundred thousand (100,000) miles from the In-Service Date of the Settlement Class Vehicle.

For three (3) or more Owner Paid Repairs, a Settlement Class Member is entitled to:

- 165% reimbursement when all Owner Paid Repairs occurred within three (3) years and thirty-six thousand (36,000) miles from the In-Service Date of the Settlement Class Vehicle;
- 140% reimbursement when all Owner Paid Repairs occurred within five (5) years and sixty thousand (60,000) miles from the In-Service Date of the Settlement Class Vehicle;
- 120% reimbursement when all Owner Paid Repairs occurred within seven (7) years and eighty-four thousand (84,000) miles from the In-Service Date of the Settlement Class Vehicle; or
- 100% reimbursement when all Owner Paid Repairs occurred within eight (8) years and one hundred thousand (100,000) miles from the In-Service Date of the Settlement Class Vehicle.

**Reimbursement of Pre-Notice Third-Party Repairs:** If a Settlement Class Member previously presented his or her vehicle to an Authorized Subaru Retailer or contacted Subaru's customers service division regarding the battery-related issue, the Settlement Class Member may be entitled to reimbursements for payments made to independent third parties for (1) Pre-Notice battery

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

7

testing, diagnosis, and replacements on a Settlement Class Vehicle in connection with a Qualifying Battery Condition; and/or (2) Pre-Notice towing services in connection with a Qualifying Battery Condition on a Settlement Class Vehicle.

**Free Reflash:** Any Settlement Class Member who experiences a Qualifying Battery Condition and has not already received the Reflash and completes the "Request for Extended Warranty Battery Service Form," available at http://www.SubaruBatterySettlement.com/ ExtendedWarrantyRequestForm, is entitled to receive the Reflash during the approved Retailer visit at no charge through the duration of the Extended Warranty period. Settlement Class Members may also call toll-free 1-855-606-2625 or email info@SubaryBatterySettlement.com to assess whether they experienced a Qualifying Battery Condition and if so, to be assigned an appropriate Retailer to receive the Reflash.

Settlement Class Members who already received and paid for the Reflash and were not previously reimbursed, are entitled to 100% reimbursement for expenses incurred for the Reflash.

**Reimbursements for Extraordinary Circumstances:** Unless you were previously provided good will by Subaru for the same costs, a cash reimbursement may be available if you previously paid out-of-pocket for two (2) or more battery failures within five (5) years and sixty thousand (60,000) miles from the In-Service Date of the Settlement Class Vehicle. This cash reimbursement may be for 140% of certain Reasonably Related Reimbursable Costs related to your being stranded as a result of a battery failure. To receive reimbursement under this section, the expenses must have been incurred within 48 hours of the repair for such failure. Qualifying expenses under this section may only be recovered up to and including the day on which the vehicle was returned to you by the service center. Recoverable expenses include hotel expenses, meals, equipment purchased to sustain battery operation, and other expenses reasonably related to the battery failure. To receive reimbursement under this section for hotel stays and meals, the expenses must have been incurred not less than 50 miles from the vehicle's state registered address. A Settlement Class Member qualifying under this section will also be entitled to receive as a single-use Subaru service coupon with a face value of $140, which will remain valid for one year from the Notice Date.

**After-modified exclusions:** A Class Vehicle found to have after-modified electronic components, agreed to impair the electronics or battery performance on the list at Exhibit H of the Settlement Agreement, shall be precluded from the benefits of the Settlement Agreement.

## 6.  How do I receive the benefits offered under the Extended Warranty?

To qualify for the Extended Warranty, you must (1) experience a Qualifying Battery Condition and (2) complete the "Request for Extended Warranty Battery Service Form," available at http://www.SubaruBatterySettlement.com/ExtendedWarrantyRequestForm. If you are unable to access the form at the website, you may call toll-free 1-855-606-2625 or email info@SubaruBatterySettlement.com to assess whether you experienced a Qualifying Battery Condition and if so, to be assigned an appropriate Retailer for service.

Once you have satisfied the two requirements above, you may present your Settlement Class Vehicle to an Authorized Subaru Retailer for a free diagnosis to determine whether the battery condition qualifies for Extended Warranty service.

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

8

If you have repairs performed on your vehicle pursuant to the Extended Warranty, you cannot opt out of or exclude yourself from the Settlement Class. You cannot recover more than one benefit or reimbursement for the same repair.

| 7. How do I submit a claim for cash reimbursement? |
|---|

To receive cash reimbursement, you must submit a Claim Form. You may file a claim electronically at https://secure.SubaruBatterySettlement.com/claim. You may also download a copy of the Claim Form from the Important Documents page at www.SubaruBatterySettlement.com. Complete, print, sign, and date the Claim Form. Keep a copy of the completed Claim Form for your own records. Mail or email the Claim Form with the required documentation to the Settlement Administrator at:

Subaru Battery Settlement Administrator
c/o JND Legal Administration
P.O. Box 91305
Seattle, WA 98111
info@SubaruBatterySettlement.com

Claim Forms and supporting documentation must be submitted online or postmarked **by [Month Day], 2022** or they will not be considered. If you fail to submit or mail the Claim Form and supporting documents by the required deadline, you will not get paid. Submitting a Claim Form late or without documentation will be the same as doing nothing. Cash reimbursements will be made only if the Court approves the Settlement.

| 8. What type of supporting documentation must I submit with my Claim Form in order to receive a cash reimbursement? |
|---|

The Claim Form, available at http://www.SubaruBatterySettlement.com/ClaimForm, describes in detail the documentation and information that must be submitted in support of your claim. The Settlement Administrator needs documentation showing the specific nature of your out-of-pocket expenses, proving that you are a Settlement Class Member and that your claim satisfies the requirements for a reimbursement. To prove out-of-pocket payment, you must submit genuine and legible copies of any of the following: receipts, credit card statements, bank statements, invoices, or historical accounting records receipts.

| 9. When will I receive my payment? |
|---|

The Court will hold a Fairness Hearing on _____ at _____, to decide whether to approve the Settlement. If the Court approves the Settlement, there may be appeals which may delay the conclusion of the case. It is always uncertain whether these appeals can be resolved, and resolving them can take time, so please be patient. Information about the progress of the case will be available at, http://www.SubaruBatterySettlement.com/CaseStatus.

| 10. What am I giving up by staying in the Settlement Class? |
|---|

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625
9

Unless you exclude yourself, you will be part of the Settlement Class. By staying in the Settlement Class, you will be allowed to participate in any and all settlement benefits to which you are entitled, and you will be releasing the Defendants and all Released Parties from any liability, cause of action, claim, right to damages or other relief, and any other legal rights to which you may otherwise be entitled under the law(s) of your state or any other applicable law, relating to a battery failure and related services in your Settlement Class Vehicle. By staying in the Settlement Class, you will give up your right to be a part of any lawsuit or arbitration, or pursue any claim, against Defendants and any Released Parties relating to the claims in this lawsuit. Staying in the Class also means that all of the Court's orders will apply to you and legally bind you.

This Settlement does not release any claims for personal injury or damage to property (other than damage to the Settlement Class Vehicle related to a Qualifying Battery Failure or Qualifying Battery Condition).

The scope of the claims and causes of action being released and the parties being released are outlined in Section ____ of the Settlement Agreement, a copy of which is available at http://www.SubaruBatterySettlement.com/x, should you wish to review it. You may also contact Class Counsel, listed below, with any questions you may have:

| Matthew Mendelsohn | Matthew D. Schelkopf | Adam Polk |
|---|---|---|
| **Mazie Slater Katz & Freeman, LLC** | **Sauder Schelkopf** | **Girard Sharp LLP** |
| 103 Eisenhower Parkway | 1109 Lancaster Avenue | 601 California Street |
| Roseland, NJ 07068 | Berwyn, PA 19312 | Suite 1400 |
| Email: | Email: | San Francisco, CA 94108 |
| mrm@mazieslater.com | mds@sstriallawyers.com | Email: |
| | | apolk@girardsharp.com |

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 11. How do I exclude myself from the Settlement?

To exclude yourself from the Settlement, you must complete and submit the Request for Exclusion Form available at http://www.SubaruBatterySettlement.com/RequestforExclusionForm no later than ____. You may also download and sign and return the Request for Exclusion Form by U.S. mail (or an express mail carrier) so that it is postmarked on or before _____ to:

Subaru Battery Settlement Administrator - Exclusions
c/o JND Legal Administration
P.O. Box 91305
Seattle, WA 98111

By submitting a timely and valid Request for Exclusion Form online or by U.S. mail or express mail, you will not be able to receive any benefits of the Settlement and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit.

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

**12. If I do not exclude myself, can I sue Subaru for the same thing later?**

No. If you do not timely exclude yourself from the Settlement, you cannot sue Subaru for any matters, legal claims or damages (other than for personal injury or damage to property) relating to a battery failure and related services in your Settlement Class Vehicle(s).

**13. If I exclude myself, can I get the benefits of this Settlement?**

No. If you exclude yourself from the Settlement Class you will not be able to take advantage of any benefits from this Settlement. If you exclude yourself, you should not submit a Claim Form to ask for money from the Settlement. You cannot do both.

**THE LAWYERS REPRESENTING YOU**

**14. Do I have a lawyer in this case?**

Yes. The Court has appointed Matthew D. Schelkopf of Sauder Schelkopf, Matthew Mendelsohn of Mazie Slater Katz & Freeman, LLC, and Adam Polk of Girard Sharp LLP to represent the Settlement Class which includes you and all other Settlement Class Members. Together these lawyers are called "Class Counsel." However, if you want your own lawyer, you may hire one at your own cost.

**15. How will the lawyers be paid?**

Class Counsel will apply to the Court for an award of reasonable attorney fees in an amount up to but not exceeding four million one hundred thousand dollars ($4,100,000), inclusive of expenses and costs (collectively referred to as "fees and expenses"), based upon factors that will be provided in Class Counsel's application for fees and expenses. Defendants have agreed not to oppose Class Counsel's application for fees and expenses not exceeding this amount, and Class Counsel have agreed not to accept any fees and expenses in excess of that amount. Class Counsel fees and expenses will be paid by Defendants and will not reduce any benefits available to Settlement Class Members.

Class Counsel's motion for fees and expenses will be made available for review at the Important Documents page of the Settlement Website, www.SubaruBatterySettlement.com, after it is filed with the Court.

**16. Will the Settlement Class Representatives receive service payments?**

Yes. Class Counsel will also apply to the Court for service awards of $4,000 for each of the thirteen named Plaintiffs who have conditionally been approved as Settlement Class Representatives (Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

11

Colin George), for their initiative and effort in pursuing this litigation for the benefit of the Settlement Class. Service awards to the named Class Representatives will be paid by Defendants, and will not reduce any benefits available to Settlement Class Members.

## OBJECTING TO THE SETTLEMENT

### 17. How do I tell the Court that I dislike the Settlement?

If you are a member of the Settlement Class and do not request to be excluded, you can object to the Settlement if you do not like all or any part of it. The Court will consider all comments from Settlement Class Members. As a Settlement Class Member, you will be bound by the Court's final decision regarding the approval of this Settlement.

To object, you must submit a letter to the Court, with copies to Class Counsel and defense counsel, at the addresses listed below. Your letter must include:

- Your full name, current address, and telephone number;
- The model, model year, date of acquisition, and VIN of your Settlement Class Vehicle and proof that you own(ed) or lease(d) it (i.e., a true copy of a vehicle title, registration, or license receipt);
- A written statement that you have reviewed the Settlement Class definition and understand in good faith that you are a Settlement Class Member;
- A written statement of all grounds for your objection and any legal support for your objection;
- Copies of any papers, briefs, or other documents upon which your objection is based and which are pertinent to the objection;
- A statement whether you complained to Defendants or an Authorized Subaru Retailer about a Qualifying Battery Failure or Qualifying Battery Condition or had any Qualifying Reimbursable Repairs and, if so, provide evidence of any such complaint or repairs
- A statement of whether you intend to appear at the Fairness Hearing;
- The identity of all attorneys representing you, if any, who will appear at the Fairness Hearing;
- A list of all other objections (if any) you, or your counsel, made within the past five (5) years to any class action settlement in any court in the United States, including, for each, the full case name, the court in which it was filed, and the docket number, OR if you have not made any such prior objection, an affirmative statement to that effect; and
- Your signature.

You must send your objection via the Court's electronic filing system, or by mail to the addresses below, postmarked by _____:

| The Court: | Class Counsel: | Defense Counsel: |
|---|---|---|
| Clerk, United States District Court | Matthew Mendelsohn | Neal Walters |
| Mitchell H. Cohen Building | Mazie Slater Katz & Freeman, LLC | Ballard Spahr, LLP |
| & U.S. Courthouse | 103 Eisenhower Parkway | 700 East Gate Drive |
| | | Suite 300 |

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

| 4th & Cooper Streets | Roseland, NJ 07068 | Mount Laurel, NJ 08054 |
|---|---|---|
| Camden, NJ 08101 | | |

**18. What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class, in which case you will be bound by the Court's final ruling. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and the Settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

## FAIRNESS HEARING

**19. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at _____ on _____, 2022, in Courtroom ____ of the United States District Court for the District of New Jersey, Camden Division, Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Camden, NJ 08101. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel and whether to approve service awards. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long it will take for the Court to make its decision.

**20. Do I have to come to the hearing?**

No. Class Counsel will answer questions the Court may have. However, you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as your written objection is timely, the Court will consider it. You may also attend or pay your own lawyer to attend, but it is not required.

**21. May I speak at the hearing?**

Yes. If you do not exclude yourself, you may ask the Court's permission to speak at the hearing. If you intend to appear at the Fairness Hearing personally or through counsel, you or your attorney must file with the Clerk of the Court and serve on all counsel designated in Question 17 a notice of intention to appear at the hearing. The notice of intention to appear must include copies of any papers, exhibits, or other evidence and identity of witnesses that will be presented at the hearing. Your notice of intention to appear must be postmarked by _____, or it will not be considered, and you will not be allowed to speak at the hearing.

## IF YOU DO NOTHING

**22. What happens if I do nothing at all?**

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

13

If you do nothing, you will be bound by the Settlement if the Court approves it, and release the claims described under Section ____ of the Settlement Agreement. You will also be entitled to Extended Warranty coverage. You must file a claim to seek a reimbursement payment .

**23. Will I receive further notices if the Settlement is approved?**

No. You will receive no further notice concerning approval of this proposed Settlement.

### ADDITIONAL INFORMATION

**24. How can I obtain more information?**

For more information, visit www.SubaruBatterySettlement.com, call toll-free 1-855-606-2625, write Subaru Battery Settlement Administrator, c/o JND Legal Administration, P.O. Box 91305, Seattle, WA 98111, or email info@SubaruBatterySettlement.com.

For definitions of any capitalized terms used in this Notice, please see the Settlement Agreement, available on the Important Documents page of the Settlement Website, www.SubaruBatterySettlement.com.

### DO NOT CONTACT THE COURT REGARDING THIS NOTICE.

Questions? Visit www.SubaruBatterySettlement.com or Call 1-855-606-2625

14

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE SUBARU BATTERY DRAIN PROD. LIAB. LITIG. | No. 1:20-cv-03095-JHR-MJS<br><br>**[PROPOSED]**<br>**FINAL ORDER AND JUDGMENT** |

This matter came before the Court for hearing pursuant to the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, dated _____, 2022 ("Preliminary Approval Order"), on the motion of Plaintiffs for approval of proposed class action settlement with Defendants Subaru of America, Inc. and Subaru Corporation (collectively, "Defendants") and approval of attorneys' fees and expenses and incentive awards. Due and adequate notice having been given of the Settlement as required by the Preliminary Approval Order, the Court having considered all papers filed and proceedings conducted herein, and good cause appearing therefor, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1.      This Final Order and Judgment incorporates by reference the definitions in the Settlement Agreement with Defendants dated _____, 2022 (the "Agreement"), and all defined terms used herein have the same meanings ascribed to them in the Agreement.

2.      This Court has jurisdiction over the subject matter of the Action and over all Parties thereto.

3.      The Court reaffirms and makes final its provisional findings, rendered in the Preliminary Approval Order, that, for purposes of the Settlement, all prerequisites for

maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b) are satisfied. The Court hereby makes final its appointments of Class Counsel and the Class Representatives and certifies the following Settlement Class:  All natural persons, who are residents of the continental United States, including Hawaii or Alaska, who currently own or lease, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, including Alaska or Hawaii.  Excluded from the Settlement Class are (a) those claims for personal injury and/or property damage (claims for a Qualifying Battery Condition or Qualifying Battery Failure in a Settlement Class Vehicle are included regardless of whether they additionally experienced personal injury or property damage for which they do not make a claim; however, those additional claims for personal injury and/or property damaged shall be deemed excluded from the Settlement Class) and/or subrogation; (b) all Judges who have presided over the Action and their spouses; (c) all current employees, officers, directors, agents and representatives of Defendants, and their family members; (d) any affiliate, parent or subsidiary of Defendants and any entity in which Defendants have a controlling interest; (e) anyone acting as a used car dealer; (f) anyone who purchased a Settlement Class Vehicle solely for the purpose of resale; (g) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (h) any insurer of a Settlement Class Vehicle; (i) issuers of extended vehicle warranties and service contracts; (j) any Settlement Class Member who, prior to the date of the Settlement Agreement, settled with and released Defendants or any Released Parties from any Released Claims; (k) any Settlement Class Member that files a timely and proper Request for Exclusion from the Settlement Class; and (l) third party issuers.

4.      For purposes of this Order and the Settlement, Settlement Class Vehicles mean model year 2015-2020 Outback, 2015-2020 Forester, 2015-2020 Legacy, 2015-2020 WRX, and 2019-2020 Ascent.

5.      Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby grants final approval of the Settlement and finds that it is, in all respects, fair, reasonable, and adequate and in the best interests of the Settlement Class. Specifically, the Court has analyzed each of the factors set forth in Fed. R. Civ. P. 23(e)(2), *Girsh v. Jepson*, 521 F.2 153, 157 (3d Cir. 1975) and *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998) and finds the factors support final approval of the settlement, including, including an assessment of the likelihood that the Class Representatives would prevail at trial; the range of possible recovery; the consideration provided to Settlement Class Members as compared to the range of possible recovery discounted for the inherent risks of litigation; the complexity, expense, and possible duration of litigation in the absence of a settlement; the nature and extent of any objections to the settlement; the stage of the proceedings and the amount of discovery requested; the risk of establishing liability and damages, the ability of the defendants to withstand a greater judgment, the range of reasonableness of the settlement; the underlying substantive issues in the case; the existence and probable outcome of claims by other classes; the results achieved; whether the class can opt-out of the settlement; whether the attorneys' fees are reasonable, and whether the procedure for processing claims is fair and reasonable.

6.      The Court finds the factors recently added to Fed. R. Civ. P. 23(e)(2) substantially overlap with the factors the Third Circuit has enumerated in *Girsh* and *In re Prudential*, and that each supports final approval of the settlement.

7.      The Court also "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, Settlement Class Members share a common legal grievance arising from Defendants' alleged failure to disclose or adequately disclose material facts about the Settlement Class Vehicles. Common legal and factual questions predominate over any individual questions that may exist for purposes of this settlement, and the fact that the Parties are able to resolve the case on terms applicable to all Settlement Class Members underscores the predominance of common legal and factual questions for purposes of this settlement. In concluding that the Settlement Class should be certified pursuant to Rule 23(b)(3) for settlement purposes, the Court further finds that a class action is superior for purposes of resolving these claims because individual class members have not shown any interest in individually controlling the prosecution of separate actions. Moreover, the cost of litigation likely outpaces the individual recovery available to any Settlement Class Members. *See* Fed. R. Civ. P. 23(b)(3)(A). Accordingly, the Court finds that, for purposes of this settlement, Rule 23(b)(3) has also been satisfied.

8.      The Court finds that notice of this Settlement was given to Settlement Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice, and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process.

9.      The Court directs the Parties and the Settlement Administrator to implement the Settlement according to its terms and conditions.

10.     Upon the Effective Date, the Settlement Class Members shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Parties from all Released Claims.

11.     The Persons identified in **Exhibit 1** hereto requested exclusion from the Settlement Class as of the Exclusion Deadline. These Persons shall not share in the benefits of the Settlement, and this Final Order and Judgment does not affect their legal rights to pursue any claims they may have against Defendants. All other members of the Settlement Class are hereinafter barred and permanently enjoined from prosecuting any Released Claims against the Released Parties in any court, administrative agency, arbitral forum, or other tribunal.

12.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement, is or may be deemed to be or may be used as an addition of, or evidence of, (a) the validity of any Released Claim, (b) any wrongdoing or liability of Defendants, or (c) any fault or omission of Defendants in any proceeding in any court, administrative agency, arbitral forum, or other tribunal.

13.     Without affecting the finality of this Judgment, this Court reserves exclusive jurisdiction over all matters related to administration, consummation, enforcement, and interpretation of the Settlement, and this Final Order and Judgment, including (a) distribution or disposition of the Settlement Fund; (b) further proceedings, if necessary, on the application for attorneys' fees, reimbursement of litigation expenses, and service awards for Plaintiffs; and (c) the Parties for the purpose of construing, enforcing, and administering the Settlement. If any Party fail(s) to fulfill its or their obligations under the Settlement, the Court retains authority to vacate the provisions of this Judgment releasing, relinquishing, discharging, barring and enjoining the

prosecution of, the Released Claims against the Released Parties, and to reinstate the Released Claims against the Released Parties.

14.     No Settlement Class Member or any other person will have any claim against Plaintiffs, Class Counsel, any person designated by Class Counsel, or the Settlement Administrator arising from or relating to the Settlement or actions, determinations or distributions made substantially in accordance with the Settlement or Orders of the Court.

15.     If the Settlement does not become effective, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

16.     The Court has considered each of the objections, and finds that they are unpersuasive and therefor overrules all of them.

17.      Neither Class Counsel's application for attorneys' fees, reimbursement of litigation expenses, and service awards for Plaintiffs, nor any order entered by this Court thereon, shall in any way disturb or affect this Judgment, and all such matters shall be treated as separate from this Judgment.

18.     The Court hereby enters a judgment of dismissal, pursuant to Fed. R. Civ. P. 54(b), of the claims by the Settlement Class Members, with prejudice and without costs, except as provided in the Court's order related to Plaintiffs' motion for attorneys' fees, expenses, and incentive awards.  The Clerk of the Court is directed to close this docket.

**IT IS SO ORDERED.**

DATED: _____        _____
                                  HON. JOSEPH H. RODRIGUEZ
                                  UNITED STATES DISTRICT JUDGE

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE SUBARU BATTERY DRAIN PROD.LIAB. LITIG. | No. 1:20-cv-03095-JHR-JS<br><br>**[PROPOSED]<br>ORDER GRANTING PLAINTIFFS' MOTION<br>FOR PRELIMINARY APPROVAL<br>OF CLASS ACTION SETTLEMENT** |

WHEREAS, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the parties seek entry of an order preliminarily approving the settlement of this action pursuant to the Settlement Agreement fully executed on _____, 2022 (the "Settlement Agreement" or "Agreement"), which, together with its attached exhibits, sets forth the terms and conditions for a proposed Settlement of the Action and dismissal of the Action with prejudice; and

WHEREAS, the Court having read and considered the Agreement and its exhibits, and Plaintiffs' Unopposed Motion for Preliminary Approval, Plaintiffs' motion is GRANTED.

IT IS HEREBY ORDERED as follows:

1.      This Order incorporates by reference the definitions in the Agreement, and all terms used in this Order shall have the same meanings as set forth in the Agreement.

2.      This Court has jurisdiction over this litigation, Plaintiffs, all Settlement Class Members, Defendants Subaru of America, Inc. and Subaru Corporation (together, "Subaru" or "Defendants"), and any party to any agreement that is part of or related to the Settlement.

3.      The Settlement is the product of non-collusive arm's-length negotiations between experienced counsel who were thoroughly informed of the strengths and weaknesses of the Action, including through discovery and motion practice, and whose negotiations were

1

supervised by an experienced mediator. The Settlement confers substantial benefits upon the

Settlement Class and avoids the costs, uncertainty, delays, and other risks associated with

continued litigation, trial, and/or appeal. The Settlement falls within the range of possible

recovery, compares favorably with the potential recovery when balanced against the risks of

continued litigation, does not grant preferential treatment to Plaintiffs, their counsel, or any

subgroup of the Settlement Class, and has no obvious deficiencies.

4.      The Court preliminarily approves the Settlement as being fair, reasonable, and

adequate, and finds that it otherwise meets the criteria for approval, subject to further

consideration at the Final Approval Hearing described below, and warrants issuance of notice to

the Settlement Class.

5.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court finds, upon

preliminary evaluation and for purposes of Settlement only, that it will likely be able to certify

the Settlement Class as follows:

All natural persons, who are residents of the continental United States, including Hawaii
or Alaska, who currently own or lease, or previously owned or leased, a Settlement Class
Vehicle originally purchased or leased in the continental United States, including Alaska
or Hawaii.

Excluded from the Settlement Class are (a) those claims for personal injury and/or

property damage (claims for a Qualifying Battery Condition or Qualifying Battery

Failure in a Settlement Class Vehicle are included regardless of whether they additionally

experienced personal injury or property damage for which they do not make a claim;

however, those additional claims for personal injury and/or property damaged shall be

deemed excluded from the Settlement Class) and/or subrogation; (b) all Judges who have

presided over the Action and their spouses; (c) all current employees, officers, directors,

agents and representatives of Defendants, and their family members; (d) any affiliate,

parent or subsidiary of Defendants and any entity in which Defendants have a controlling

interest; (e) anyone acting as a used car dealer; (f) anyone who purchased a Settlement

Class Vehicle solely for the purpose of resale; (g) anyone who purchased a Settlement

Class Vehicle with salvaged title and/or any insurance company who acquired a

Settlement Class Vehicle as a result of a total loss; (h) any insurer of a Settlement Class

Vehicle; (i) issuers of extended vehicle warranties and service contracts; (j) any

Settlement Class Member who, prior to the date of the Settlement Agreement, settled

with and released Defendants or any Released Parties from any Released Claims; (k) any

Settlement Class Member that files a timely and proper Request for Exclusion from the

Settlement Class; and (l) third party issuers.

      6.     For purposes of this Order and the Settlement, Settlement Class Vehicles mean

model year 2015-2020 Outback, 2015-2020 Forester, 2015-2020 Legacy, 2015-2020 WRX, and

2019-2020 Ascent.

      7.     The Court preliminarily finds that the settlement is likely to receive final approval

and the Settlement Class will likely be certified for settlement purposes only. The Court

concludes that the Settlement Class satisfies the requirements of Rule 23(a) and (b)(3): (a) the

Settlement Class is so numerous that joinder of all Settlement Class Members in the Action is

impracticable; (b) there are questions of law and fact common to the Settlement Class that

predominate over any individual questions; (c) the claims of the Plaintiffs are typical of the

claims of the Settlement Class; (d) Plaintiffs and Class Counsel have and will continue to fairly

and adequately represent and protect the interests of the Settlement Class; and (e) a class action

is superior to all other available methods for the fair and efficient adjudication of the

controversy.

8.     The Court appoints Matthew R. Mendelsohn of Mazie Slater Katz & Freeman, LLC, Matthew D. Schelkopf of Sauder Schelkopf LLC and Adam Polk of Girard Sharp, LLP, as Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are satisfied by this appointment.

9.     The Court hereby appoints Plaintiffs Amy Burd, Walter Gill, David Hansel, Glen McCartney, Roger Baladi, Tamara O'Shaughnessy, Anthony Franke, Matthew Miller, Steven Stone, Howard Bulgatz, Mary Beck, David Davis, and Colin George to serve as Class Representatives for settlement purposes only on behalf of the Settlement Class.

10.    The Court approves the form and content of the Class Notice. The Court finds that the mailing of the Class Notice substantially in the manner and form set forth in the Agreement satisfies due process. The foregoing is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Settlement Class Members entitled to such Class Notice.

a.     Within 90 days after entry of the Preliminary Approval Order, Subaru shall – at its expense – cause the First Class Notice to be disseminated to Settlement Class Members in the form and manner set forth in the Agreement. The Court authorizes the Parties to make non-material modifications to the Class Notice prior to publication if they jointly agree that any such changes are necessary under the circumstances.

b.     Subaru shall also provide through the Settlement Administrator—also at its expense—a toll-free number with live operators to field questions from Settlement Class Members; set up a dedicated website that will include the notice, claim form, Settlement Agreement and other relevant materials; and notify its dealers of the Settlement.

c.      No later than ten (10) days before the Fairness Hearing, Subaru shall file with the Court an affidavit setting forth the details of the notice provided pursuant to this Order and the Settlement Agreement.

11.      The Claim Form is approved for dissemination to the Settlement Class Members, subject to any non-material changes to which the parties may agree.

12.      The Court hereby appoints JND Legal Administration to serve as the Settlement Administrator to supervise and administer the notice procedures, administer the claims processes, distribute payments according to the processes and criteria set forth in the Settlement Agreement, and perform any other duties of the Settlement Administrator that are reasonably necessary or provided for in the Settlement Agreement.

13.      If Settlement Class Members do not wish to participate in the Settlement Class, Settlement Class Members may exclude themselves by filling out and returning the Request for Exclusion Form.  All requests by Settlement Class Members to be excluded from the Settlement Class must be in writing and postmarked on or before forty-five (45) days after the date of the mailing of Notice to Settlement Class Members.  The Settlement Administrator shall report the names and addresses of all such persons and entities requesting exclusion to the Court and Class Counsel within thirty (30) days prior to the Final Hearing, and the list of persons and entities deemed by the Court to have excluded themselves from the Settlement Class will be attached as an exhibit to the Final Order and Judgment.

14.      If a Settlement Class Member wishes to be excluded from the Settlement Class, the Settlement Class Member's written Request for Exclusion shall state in writing (a) the Settlement Class Member's full name, current address and telephone number; and (b) specifically and unambiguously state in writing his or her desire to be excluded from the

Settlement Class and election to be excluded from any judgment entered pursuant to the settlement.  No Request for Exclusion will be valid unless all of the information described above is included.  All Settlement Class Members who exclude themselves from the Settlement Class will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against Defendants.

15.    Any Settlement Class Member who has not previously submitted a Request for Exclusion in accordance with the terms of this Agreement may appear at the Final Approval Hearing to argue that the proposed Settlement should not be approved.  However, in order to be heard at the Final Approval Hearing, the Settlement Class Member must make an objection in writing and file it, along with a notice of intention to appear at the Fairness Hearing ("Notice of Intention to Appear"), with the Court within forty-five (45) days after the date of the mailing of Notice to Settlement Class Members.

1.    To state a valid objection to the Settlement, an objecting Settlement Class Member must: (a) set forth the objector's full name, current address, and telephone number; (b) the model, model year, date of acquisition and vehicle identification number of the Settlement Class Vehicle, along with proof that the objector has owned or leased the Settlement Class Vehicle (i.e., a true copy of a vehicle title, registration, or license receipt); (c) state that the objector has reviewed the Settlement Class definition and understands in good faith that he or she is a Settlement Class Member; (d) a written statement of all grounds for the objection accompanied by any legal support for such objection sufficient to enable the parties to respond to those specific objections; (e) copies of any papers, briefs, or other documents upon which the objection is based and are pertinent to the objection; (f) state whether the Settlement Class

6

Member complained to Defendants or an Authorized Subaru Retailer about a Qualifying Battery

Failure or Qualifying Battery Condition or has had any Qualifying Reimbursable Repairs and, if

so, provide evidence of any such complaint or repairs; and (g) shall provide a list of all other

objections submitted by the objector, and/or the objector's counsel, to any class action

settlements submitted in any state or federal court in the United States in the previous five (5)

years, including the full case name with jurisdiction in which it was filed and the docket number

(If the Settlement Class Member or his, her, or its counsel has not objected to any other class

action settlement in the United States in the previous five (5) years, he or she shall affirmatively

so state in the objection). Objections shall be filed via the Court's electronic filing system, and if

not filed via the Court's electronic system, must mail, postmarked by the date specified in the

Preliminary Approval Order, the objection to the Court and also serve by first-class mail copies

of the objection upon:

> Clerk of the Court
> United States District Court
> District of New Jersey
> Mitchell H. Cohen Building
> & U.S. Courthouse
> 4th & Cooper Streets
> Camden, New Jersey 08101
>
>
> Matthew Mendelsohn
> Mazie Slater Katz & Freeman, LLC
> 103 Eisenhower Parkway
> Roseland, NJ 07068
>
> Neal Walters
> Ballard Spahr, LLP
> 700 East Gate Drive, Suite 300
> Mount Laurel, NJ 08054.

16.     Any Settlement Class Member who does not make his or her objections in the

manner provided herein shall be deemed to have waived such objections and shall forever be

foreclosed from making any objections to the fairness, reasonableness, or adequacy of the proposed Settlement and the judgment approving the Settlement.

17.   The Final Fairness Hearing shall be held on or immediately after _____ days following this Order Preliminarily Approving Settlement.  The Court hereby schedules the Final Approval Hearing for_____, at _____ a.m./p.m. in Courtroom 5D of the United States District Court for the District of New Jersey, Camden Division, Mitchell H. Cohen Building & U.S. Courthouse, 4th & Cooper Streets, Camden, NJ 08101, to determine whether the proposed Settlement should be approved as fair, reasonable and adequate, whether a judgment should be entered approving such Settlement, and whether Class Counsel's application for attorneys' fees and for service awards to the class representatives should be approved.  The Court may adjourn the Final Approval Hearing without further notice to Settlement Class Members.

18.   Class Counsel's application for an award of attorneys' fees, expenses, and costs and for service awards will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.  Any appeal from any order relating solely to Class Counsel's application for an award of attorneys' fees, costs, and expenses, and/or to Class Counsel's application for service awards, or any reversal or modification of any such order, shall not operate to terminate or cancel the Settlement or to affect or delay the finality of a judgment approving the Settlement.

19.   Papers in support of final approval of the Settlement and Class Counsel's application for attorneys' fees, expenses and costs and for service awards shall be filed no later than __ days prior to the Final Fairness Hearing and __ days prior to the objection and exclusion deadline, respectively.

20.     Settlement Class Members shall have until sixty (60) days after the Effective Date to submit claim forms.  Claim forms must be postmarked by that date to be considered timely.

21.     If the Settlement fails to become effective in accordance with its terms, or if the Final Order and Judgment is not entered or is reversed or vacated on appeal, this Order shall be null and void, the Settlement Agreement shall be deemed terminated, and the Parties shall return to their positions without any prejudice, as provided for in the Settlement Agreement.

22.     The fact and terms of this Order or the Settlement, all negotiations, discussions, drafts and proceedings in connection with this Order or the Settlement, and any act performed or document signed in connection with this Order or the Settlement, shall not, in this or any other Court, administrative agency, arbitration forum, or other tribunal, constitute an admission, or evidence, or be deemed to create any inference (i) of any acts of wrongdoing or lack of wrongdoing, (ii) of any liability on the part of Defendant to Plaintiffs, the Settlement Class, or anyone else, (iii) of any deficiency of any claim or defense that has been or could have been asserted in this Action, (iv) of any damages or absence of damages suffered by Plaintiffs, the Settlement Class, or anyone else, or (v) that any benefits obtained by the Settlement Class under the Settlement represent the amount that could or would have been recovered from Defendant in this Action if it were not settled at this time.  The fact and terms of this Order or the Settlement, and all negotiations, discussions, drafts, and proceedings associated with this Order or the Settlement, including the judgment and the release of the Released Claims provided for in the Settlement Agreement, shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration forum, or other tribunal, except as necessary to enforce the terms of this Order, the Final Order and Judgment, and/or the Settlement.

9

23.    The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement.

24.    Pending further order of the Court, all litigation activity and events, except those contemplated by this Order or in the Settlement Agreement, are hereby STAYED, and all hearings, deadlines, and other proceedings in the Litigation, except the Final Fairness Hearing and the matters set forth in this Order, are VACATED.

**IT IS SO ORDERED on this _____ day of _____, 2022.**

_____
HONORABLE JOSEPH H. RODRIGUEZ
UNITED STATES DISTRICT JUDGE

# EXHIBIT F

# SUBARU BATTERY SETTLEMENT

### Request for Settlement Extended Warranty Battery Service Form

If your Settlement Class Vehicle suffered from a dead battery (i.e., the Vehicle's battery has been discharged beyond the ability to start the Class Vehicle) in the last six (6) months, you may be entitled to free battery diagnostics at a pre-designated Authorized Subaru Retailer (the "Retailer").

Please enter the Unique ID and PIN from the Notice packet you received to file a Request for Settlement Extended Warranty Battery Service Form. If you do not have your Unique ID and PIN, enter the VIN of your Settlement Class Vehicle.

Unique ID:

PIN:

*The Unique ID and/or PIN you entered is not valid. Please try again.*

VIN:

*The VIN you entered does not belong to a Settlement Class Vehicle. Please try again.*

*The VIN provided is Not Eligible: Exceeded Limits of Extended Warranty Coverage.*

File an Extended Warranty Form

**SECTION I: CLAIMANT CONTACT INFORMATION**

Please review the information below and confirm that it is accurate. If the name and/or VIN listed is not correct, please return here and enter the VIN of your Settlement Class Vehicle to continue.

Full Name:

> *Pre-populated*

VIN:

> *Pre-populated*

In-Service Date

> *Pre-populated*

Mailing Address – Line 1:

> *Pre-populated*

Mailing Address – Line 2:

> *Pre-populated*

City:

> *Pre-populated*

State:

> *Pre-populated* ▼

Zip Code:

> *Pre-populated*

Next

**SECTION I: CLAIMANT CONTACT INFORMATION**

Please provide your name, address, and contact information below.

VIN:

> *Pre-populated*

In-Service Date

> *Pre-populated*

Full Name: *This is required.*

Mailing Address – Line 1: *This is required.*

Mailing Address – Line 2:

City: *This is required.*

State: *This is required.*

Zip Code: *This is required.*

Next

**SECTION II: VEHICLE INFORMATION**

Has your Class Vehicle suffered from a dead battery (i.e., the Vehicle's battery has been discharged beyond the ability to start the Class Vehicle) in the last six (6) months?

○ Yes     ○ No     ○ I don't know

*Not Eligible: Settlement Class Vehicle not in need of battery repair/replacement. If your vehicle suffers from a dead battery in the future, please return to this page and submit another form.*

What date did your battery fail? If Class Vehicle's battery had subsequent failures, please add the dates of failure using the Add Date button.

```
04/22/2022              [📅]
```

[ Add Date ]

How was the issue addressed?

```
                                          [▼]
```

What is the actual or estimated mileage currently on the Class Vehicle's odometer?

```

```

*Not Eligible: Exceeded Limits of Extended Warranty Coverage.*

Will this be the first time that the battery on your Class Vehicle has been serviced?

○ Yes     ○ No     ○ I don't know

How many service events has your battery undergone?

```

```

[ Back ]                          [ Submit ]

## SUCCESS

Your Request for Settlement Extended Warranty Battery Service Form has been submitted with Extended Warranty Number: PFWX2-4JFN4. Please print out a copy of this form and take it with you to an Authorized Subaru Dealership.

**Based on the information provided, your vehicle may be:**

Eligible for 100% coverage of Battery Replacement Costs./
Eligible for 50% coverage of Battery Replacement Costs./
Eligible for 80% coverage of Battery Replacement Costs./
Eligible for 60% coverage of Battery Replacement Costs.

### SUMMARY

Full Name:

VIN:

Mailing Address – Line 1:

Mailing Address – Line 2:

City:

State:

Zip:

Email Address:

Phone:

Has your Class Vehicle suffered from a dead battery?:

Date(s) of battery failure:

How was the issue addressed?:

Current mileage:

Will this be your first time servicing?:

Number of previous service events:

[ Print ]

# EXHIBIT G

## Battery Extended Warranty – Midtronics Protocol

1.      A customer who qualifies for extended battery warranty services under the Settlement shall be entitled to free battery diagnostics at a pre-designated Authorized Subaru Retailer (the "Retailer").

## Battery Testing for Class Vehicles without EFBs

2.      For Class Vehicles with a battery other than an Enhanced Flooded Battery ("EFB"), the Retailer shall first administer the Midtronics DSS-5000 battery test to assess the condition of the battery.

3.      Retailers will manually input into the Midtronics DSS-5000 the agreed upon maximum Cold Cranking Amps (CCA) from the battery label for the model of Class Vehicle being tested:

| Model Year | Carline | Original Equipment Battery Designation | Original Equipment Battery CCA Rating | Genuine Subaru Replacement Battery Part Number | Genuine Subaru Replacement Battery CCA Rating | Optional Genuine Subaru Replacement Battery Part Number | Optional Genuine Subaru Replacement Battery CCA Rating |
|---|---|---|---|---|---|---|---|
| 2015 | Legacy 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2015 | Legacy 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2016 | Legacy 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2016 | Legacy 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2017 | Legacy 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2017 | Legacy 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2018 | Legacy | 75D23R | 490 | SOA821B400 | 550 | | |
| 2019 | Legacy | 75D23R | 490 | SOA821B400 | 550 | | |
| 2020 | Legacy | LN2 | 620 | SOA821B700 | 640 | | |
| 2015 | Outback 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2015 | Outback 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2016 | Outback 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2016 | Outback 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2017 | Outback 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2017 | Outback 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2018 | Outback | 75D23R | 490 | SOA821B400 | 550 | | |
| 2019 | Outback | 75D23R | 490 | SOA821B400 | 550 | | |
| 2020 | Outback | LN2 | 620 | SOA821B700 | 640 | | |
| 2015 | WRX | 55D23L | 390 | SOA821B200 | 550 | | |
| 2016 | WRX | 55D23L | 390 | SOA821B200 | 550 | | |
| 2017 | WRX | 55D23L | 390 | SOA821B200 | 550 | | |
| 2018 | WRX | 75D23L | 470 | SOA821B200 | 550 | | |
| 2019 | WRX | 75D23L | 470 | SOA821B200 | 550 | | |
| 2020 | WRX | 75D23L | 470 | SOA821B200 | 550 | | |
| 2015 | Forester | 55D23L | 390 | SOA821B200 | 550 | | |
| 2016 | Forester | 55D23L | 390 | SOA821B200 | 550 | | |
| 2017 | Forester | 55D23L | 490 | SOA821B200 | 550 | | |
| 2018 | Forester | 75D23L | 470 | SOA821B200 | 550 | | |
| 2019 | Forester | Q-85 | 620 | SOA821B600 | 620 | | |
| 2020 | Forester | Q-85 | 620 | SOA821B600 | 620 | | |
| 2019 | Ascent | 75D23L | 530 | SOA821B200 | 550 | SOA821B600 | 620 |
| 2020 | Ascent | 75D23L | 530 | SOA821B200 | 550 | SOA821B600 | 620 |

4.      The Midtronics DSS-5000 battery test module is designed to generate 1 of 5 different results that will determine the customer's entitlement to an extended warranty service ("the Midtronics DSS-5000 Result(s)").  The five options are as follows:

| Number | Overall/Cranking |
|--------|------------------|
| 1 | Good Battery |
| 2 | Good Recharge |
| 3 | Charge & Retest |
| 4 | Replace Battery |
| 5 | Bad-cell Replace |

5.      A Midtronics DSS-5000 Result of "4. Replace Battery" or "5. Bad-cell Replace" reflects an issue detected with the battery, and shall entitle the customer to a replacement battery, the percentage warranty coverage for which is addressed in Sections V.A.1-2 of the Settlement Agreement.

6.      A Midtronics DSS-5000 Result of "1. Good Battery" reflects that the battery is operating properly for its rated size and electrical capacity and there shall be no entitlement to extended warranty relief, for which the customer will not be charged for diagnostic services.

7.      In the event of a Midtronics DSS-5000 Result of "2. Good Recharge," the Retailer shall charge the battery with the Midtronics DCA-8000—at no cost to class member.

8.      In the event of a Midtronics DSS-5000 Result of "3. Charge & Retest," the Retailer shall charge the battery and administer a separate test with the Midtronics DCA-8000 outlined in steps 10-15 of this Protocol.

## Battery Testing for Class Vehicles with EFBs

9.      For Class Vehicles with an Enhanced Flooded Battery ("EFB"), the

Retailer shall first administer the Midtronics DCA-8000 battery test to assess the condition of the

battery.

10.      Retailers will manually input into the Midtronics DCA-8000 the agreed

upon maximum Cold Cranking Amps (CCA) from the battery label for the model of Class

Vehicle being tested:

| Model Year | Carline | Original Equipment Battery Designation | Original Equipment Battery CCA Rating | Genuine Subaru Replacement Battery Part Number | Genuine Subaru Replacement Battery CCA Rating | Optional Genuine Subaru Replacement Battery Part Number | Optional Genuine Subaru Replacement Battery CCA Rating |
|---|---|---|---|---|---|---|---|
| 2015 | Legacy 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2015 | Legacy 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2016 | Legacy 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2016 | Legacy 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2017 | Legacy 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2017 | Legacy 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2018 | Legacy | 75D23R | 490 | SOA821B400 | 550 | | |
| 2019 | Legacy | 75D23R | 490 | SOA821B400 | 550 | | |
| 2020 | Legacy | LN2 | 620 | SOA821B700 | 640 | | |
| 2015 | Outback 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2015 | Outback 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2016 | Outback 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2016 | Outback 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2017 | Outback 2.5 | 55D23R | 356 | SOA821B400 | 550 | | |
| 2017 | Outback 3.6 | 75D23R | 490 | SOA821B400 | 550 | | |
| 2018 | Outback | 75D23R | 490 | SOA821B400 | 550 | | |
| 2019 | Outback | 75D23R | 490 | SOA821B400 | 550 | | |
| 2020 | Outback | LN2 | 620 | SOA821B700 | 640 | | |
| 2015 | WRX | 55D23L | 390 | SOA821B200 | 550 | | |
| 2016 | WRX | 55D23L | 390 | SOA821B200 | 550 | | |
| 2017 | WRX | 55D23L | 390 | SOA821B200 | 550 | | |
| 2018 | WRX | 75D23L | 470 | SOA821B200 | 550 | | |
| 2019 | WRX | 75D23L | 470 | SOA821B200 | 550 | | |
| 2020 | WRX | 75D23L | 470 | SOA821B200 | 550 | | |
| 2015 | Forester | 55D23L | 390 | SOA821B200 | 550 | | |
| 2016 | Forester | 55D23L | 390 | SOA821B200 | 550 | | |
| 2017 | Forester | 55D23L | 490 | SOA821B200 | 550 | | |
| 2018 | Forester | 75D23L | 470 | SOA821B200 | 550 | | |
| 2019 | Forester | Q-85 | 620 | SOA821B600 | 620 | | |
| 2020 | Forester | Q-85 | 620 | SOA821B600 | 620 | | |
| 2019 | Ascent | 75D23L | 530 | SOA821B200 | 550 | SOA821B600 | 620 |
| 2020 | Ascent | 75D23L | 530 | SOA821B200 | 550 | SOA821B600 | 620 |

11.      The Midtronics DCA-8000 battery test module is also designed to

generate 1 of 5 different results that will determine the customer's entitlement to extended

warranty service ("the Midtronics DCA-8000 Result(s)").  The five options are as follows:

| Number | Overall/Cranking |
|---|---|

| 1 | Good Battery |
|---|---|
| 2 | Good Recharge |
| 3 | Charge & Retest |
| 4 | Replace Battery |
| 5 | Bad-cell Replace |

12.     A Midtronics DCA-8000 Result of "4. Replace Battery" or "5. Bad-cell Replace" reflects an issue detected with the battery, and shall entitle the customer to a replacement battery, for which the percentage warranty coverage is addressed in Sections V.A.1-2 of the Settlement Agreement.

13.     A Midtronics DCA-8000 Result of "1. Good Battery" or "2. Good Recharge" reflects that the battery is operating properly for its rated size and electrical capacity and there shall be no entitlement to extended warranty relief, for which the customer will not be charged for diagnostic services.

14.     In the event of a Midtronics DCA-8000 Result of "2. Good Recharge" the Retailer shall charge the battery with the Midtronics DCA-8000—at no cost to class member.

15.     In the event of a Midtronics DCA-8000 Result of "3. Charge & Retest," the Retailer shall charge the battery using the DCA-8000 Diagnostic Charger for a final decision. In the event of a second Midtronics DCA-8000 Result of "3. Charge & Retest," the Retailer shall replace the battery and the class member shall be entitled to the percentage warranty coverage addressed in Sections V.A.1-2 of the Settlement Agreement.

16.     For Class Vehicles with an EFB, the Retailer shall only administer the Midtronics DCA-8000 battery test to assess the condition of the battery. In administering the test, the Retailer shall follow the procedures identified in Nos. 9-15 of this Protocol.

17.     In light of the current global microchip shortage, the Parties hereby agree to meet and confer in good faith to identify such a shortage if it occurs, and about the suitability of such alternative tests and their administration.

# EXHIBIT H

## **Exclusions for Certain After-Modified Electronic**
## **Components and Owner Caused Failures**

The parties agree that a Class Vehicle with any of the following after-modified electronic components shall be precluded from the benefits of the Settlement Agreement:

1.      Aftermarket audio components including audio systems, equalizers, amplifiers, and subwoofers

2.      Aftermarket remote engine starter or remote keyless entry

3.      Aftermarket security or immobilizer devices

4.      Aftermarket air suspension systems

5.      Aftermarket video entertainment systems

For purposes of the Settlement Agreement and this exhibit, the term "Aftermarket" shall mean items not installed at a Subaru retailer. If the component or item was installed at a Subaru retailer then it cannot be used as an exclusion under the settlement.

The parties further agree that Class Vehicles shall be precluded from the benefits of the Settlement Agreement where the service records provide evidence that the Settlement Class Member caused the battery issue by (1) leaving vehicle exterior/interior lights on overnight; and or (2) leaving powered devices connected to any vehicle power outlet overnight while the vehicle is not operated.

# EXHIBIT I

Subaru Battery Settlement
c/o JND Legal Administration
PO Box 91305
Seattle, WA 98111
www.SubaruBatterySettlement.com
info@SubaruBatterySettlement.com
Toll-free: 1-855-606-2625

Claim Number: XXXXX-XXXXX                                      [Month Day], 2022
VIN: XXXXXXXXXXXXXXXX

**<u>Claim Decision and Option Letter</u>**

Your claim in the Subaru Battery Settlement for the vehicle identified above was reviewed and [approved for reimbursement in the amount of $_____/rejected].  [The reasons for this rejection are detailed below.]

- Not a Class Vehicle
- Insufficient Proof of Claimed Expenses
- Missing Proof of Ownership or Lease [only if required for claims where owner name/VIN not pre-populated]
- Missing Signature

You have a right to a Second Review of this decision if you disagree with it.  To exercise this option and initiate a Second Review, you must return a copy of this letter by mail or email, along with any additional explanation and/or documents [to support your claim for reimbursement/to cure the deficiencies detailed above], postmarked or emailed by [Month Day], 2022.

Subaru Battery Settlement
c/o JND Legal Administration
PO Box 91305
Seattle, WA 98111
info@SubaruBatterySettlement.com

This decision will become final if you do not timely respond to initiate a Second Review.  You do not need to respond if you accept this determination.  [A check will be issued to you in the amount specified above.]

If you have any questions about this decision, please contact the Settlement Administrator by calling toll-free 1-855-606-2625 or emailing info@SubaruBatterySettlement.com.

# EXHIBIT J

# SUBARU BATTERY SETTLEMENT

## <u>REQUEST FOR EXCLUSION FORM</u>

Please enter the Unique ID and PIN from the Notice packet you received to file a Request for Exclusion Form. If you do not have your Unique ID and PIN, enter the VIN of your Class Vehicle.

Unique ID:                                  PIN:

*The Unique ID and/or PIN you entered is not valid. Please try again.*

VIN:

*The VIN you entered does not belong to a Settlement Class Vehicle. Please try again.*

File a Request for Exclusion Form

**SECTION I: CLAIMANT CONTACT INFORMATION**

Please review the information below and confirm that it is accurate. If the name and/or VIN listed is not correct, please return here and enter the VIN of your Settlement Class Vehicle to continue.

Full Name:

> *Pre-populated*

VIN:

> *Pre-populated*

In-Service Date

> *Pre-populated*

Mailing Address – Line 1:

> *Pre-populated*

Mailing Address – Line 2:

> *Pre-populated*

City:

> *Pre-populated*

State:

> *Pre-populated* ▼

Zip Code:

> *Pre-populated*

Phone Number: *This is required.*

By signing below, I affirm my desire to be excluded from the Settlement Class and from any judgement entered pursuant to the settlement.

Signature: *This is required.*

4/22/2022

Submit

**SECTION I: CLAIMANT CONTACT INFORMATION**

Please provide your name, address, and contact information below.

VIN:

*Pre-populated*

In-Service Date

*Pre-populated*

Full Name: *This is required.*

Mailing Address – Line 1:*This is required.*

Mailing Address – Line 2:

City: *This is required.*

State: *This is required.*

Zip Code: *This is required.*

Phone Number: *This is required.*

By signing below, I affirm my desire to be excluded from the Settlement Class and from any judgement entered pursuant to the settlement.

Signature: *This is required.*

*4/22/2022*

Submit

## SUCCESS

Your Request for Exclusion Form has been submitted. Your Exclusion Number is: PFWX2-4JFN4. Please save your Exclusion Number for recordkeeping purposes.

### SUMMARY

Full Name:

VIN:

Mailing Address – Line 1:

Mailing Address – Line 2:

City:

State:

Zip:

Phone:

Print

# EXHIBIT 2



FIRM RESUME 2022

# THE FIRM

Mazie Slater is one of the most highly regarded trial law firms in New Jersey, based on the results achieved and the diverse scope of cases that we handle. Unlike most trial firms, our practice is not limited to a particular niche or subset of civil litigation, and this versatility sharply increases our capabilities. Our practice spans the fields of class action and mass tort litigation, commercial litigation, insurance coverage litigation, professional malpractice, product liability, and personal injury. Perhaps most important, we have earned a reputation as trial lawyers who will take complex, expensive cases to trial and achieve large verdicts. The following are some of the settlements and verdicts we achieved:

In re Benicar (Olmesarten) Products Liability Litigation: $300 million settlement for individuals who sustained alleged gastrointestinal injuries caused by the blood pressure drug Benicar, manufactured by Daiichi Sankyo, Inc. and Forest Laboratories, Inc.

Escobar v. DYFS: $166 million verdict for negligence against New Jersey child protection agency. This is the largest personal injury jury verdict in New Jersey history. The Appellate Division subsequently reversed the verdict.

Verni v. Aramark: $135 million liquor liability verdict against Aramark, which is the second largest personal injury verdict in New Jersey history. The Appellate Division subsequently reversed the verdict and the case was thereafter settled for $26 million.

Meister v. Verizon: $125 million settlement for a woman who was crushed by a Verizon utility pole. This is the largest single personal injury recovery in New Jersey history. In fact, no single personal injury settlement has ever come close to this amount.

Dewey v. Volkswagen of America, Inc.: $69 million class action settlement relating to water ingress caused by defects in in over 3 million Volkswagen and Audi vehicles.

McGinnis v. C.R. Bard: $68 million jury verdict. This was a first bellwether case to proceed to verdict against Bard in the New Jersey MCL.

Alin v. American Honda Motor Co., Inc.: $40 million recovery on behalf of Honda and Acura vehicle owners regarding air conditioning system defects.

Sutter v. Horizon Blue Cross Blue Shield of New Jersey: $36 million to $55 million class action settlement on behalf of more than 20,000 New Jersey Physicians relating to improper claims handling practices by Horizon.

<u>Confidential</u>: $33.9 million product liability settlement on behalf of worker injured by a defective product in the workplace.  This is the largest product liability settlement in New Jersey history.

<u>Henderson v. Elizabethtown Gas</u>: $19.2 million settlement resulting from a natural gas explosion in a home that caused severe burn injuries to several of our clients, three of whom died from their burn injuries.

<u>Morgan v. Newark Beth Israel Hospital</u>: $18.5 million verdict for birth injuries.

<u>Confidential:</u> $15.75 million audit malpractice settlement.  This case involved allegations that malpractice by an accounting firm resulted in erroneous financial statements, which allegedly allowed an insolvent company to continue in business. The case settled for $15.75 million, which brought the total recovery by our law firm in litigation relating to the insolvent company to $25 million.

<u>New Jersey Eye Center Coverage Litigation</u>: $15.3 million verdict against insurance company. This was a case in which an insurance carrier declined to pay multiple settlements against a single eye surgeon. Following a two week trial, the trial judge ruled that the insurance carrier, Princeton Insurance Company, had to pay the settlements.

<u>Hrymoc v. Ethicon, Inc.</u>: $15 million jury verdict.  The verdict, for $5 million in compensatory damages to and $10 million in punitives, was awarded after a three-week trial.  The jury found that the pelvic mesh products sued were defectively designed and failed to contain adequate warnings.

<u>Cohen v. Benzel-Busch Motor Car Corp.</u>: $14.7 million settlement in a case where the plaintiff suffered Complex Regional Pain Syndrome (sometimes referred to as RSD).

<u>Hammons v. Ethicon, Inc.</u>: $12.5 million jury verdict. This case is one of more than 40,000 pending against Johnson & Johnson and Ethicon around the country, for injuries suffered by victims of the Prolift and the other similar pelvic mesh devices sold by Johnson & Johnson and Ethicon.  After a three week trial the jury awarded $12.5 million, consisting of $5.5 million in compensatory and $7 million in punitive damages.

<u>Keller v. Flugrad</u>: $12 million jury verdict for dental malpractice and wrongful death.  This case involved medical malpractice committed by an oral surgeon whose negligence resulted in the death of a 21-year old man within 12 hours after having his wisdom teeth removed. It is believed that this is the largest oral surgery malpractice verdict in New Jersey and one of the largest in the U.S. history.

<u>Confidential:</u> $11.24 million settlement for a client that suffered quadriplegia in an accident involving the product.

<u>Gross v. Ethicon, Inc.</u>: $11.1 million jury verdict against Johnson & Johnson in the first pelvic mesh trial in the United States. On February 25, 2013, a New Jersey jury awarded

our client, a 47-year old nurse, $3.35 million in damages against Johnson & Johnson in the first of 1800 mesh lawsuits to go to trial in New Jersey. On February 27, 2013, the jury awarded an additional $7.75 million in punitive damages, bringing the total verdict to $11.1 million.

Blake v. City of New York: $10 million jury verdict for failure to provide police protection. Action brought on behalf of a young child who was severely burned by a Molotov Cocktail explosive device that was thrown into the bedroom of his family's apartment by an unapprehended perpetrator. The jury awarded $10 million in compensatory and punitive damages, which award was reduced by the trial judge to $2.4 million and affirmed on appeal.

Furey v. Jennis: $9.7 million verdict for medical malpractice. This was a case on behalf of a man who suffered a severe pelvic injury while donating bone marrow. The verdict was later reduced by the trial judge to $1.4 million, based on the judge's finding that the jury award was so high that it shocked the judicial conscience. The case then settled for an undisclosed amount.

Confidential: $9 million settlement for a client involving a defective product which caused severe injuries.

Confidential: $7.8 million settlement of a product liability lawsuit involving a defective ride at an amusement park which resulted in the deaths of two persons. The case involved claims that the ride was improperly designed and manufactured, which resulted in our two clients being ejected from it. The case settled for the sum of $7.8 million

J.V. v. Newark Beth Israel Med. Ctr.: $7.4 million settlement.  This was a case involving failure of doctors and nurses to identify and report child abuse involving an infant.

Homestate v. Milliman: $7.25 million settlement for professional malpractice involving claims against actuaries of an insolvent insurance company. The case involved claims brought by the New Jersey Banking & Insurance Department on behalf of an insolvent New Jersey insurance company against the company's outside actuaries.

Wisniewski v. Hazekamp Construction, Inc.: $7 million settlement on behalf of a construction worker injured when a scaffold plank he was standing on broke causing him to fall and suffer spinal injuries rendering him a paraplegic.

Floyd & Zapata v. City of Newark: $6.28 million in settlements resulting from the death of two individuals who drowned when their vehicles entered the Passaic River due to a dangerous road condition.

Poplawski v. Phipps: $6 million settlement for woman struck by school bus.  As a result of her injuries she must use a cane to walk any significant distance.

L.A. v. D.Y.F.S.: $5.3 million settlement after verdict in favor of a minor child who suffered extensive physical and psychological abuse while in DYFS's custody.

In 2021 The National Law Journal named Mazie Slater an **"Elite Trial Lawyers"** in the medical malpractice category.  Likewise, in 2018 The National Law Journal named Mazie Slater an **"Elite Trial Lawyer Finalist"** in the categories of medical malpractice and product liability. In 2018 Mazie Slater was also named **"Product Liability Litigation Department of the Year"** by the New Jersey Law Journal.  In 2014 Mazie Slater Katz & Freeman, LLC was one of twelve firms in the nation named to the "**Plaintiffs' Hot List**" by The National Law Journal, one of fifty firms recognized as "**America's Elite Trial Lawyers**" by The National Law Journal, and in 2013 Mazie Slater was named "**Litigation Department of the Year**" by the New Jersey Law Journal. Our lawyers have also been listed in "Best Lawyers in America," "New Jersey Superlawyers," and "Lawdragon 500."

In addition, Mazie Slater and/or its attorneys has been appointed Class Counsel, Lead Counsel and Liaison Counsel in various matters, including, but not limited to: In re Allergan Biocell Textured Breast Implant Products Liability Litigation, (Sup. Ct. N.J. MCL No. 634)(appointed Liaison Counsel in ongoing "mass tort" involving injuries to women that have had certain Allergan breast implants implanted); In re Valsartan Products Liability Litigation, (D.N.J. 1:19-md-02875)(appointed Co-Lead Counsel, Co-Liaison Counsel, and Executive Committee member in ongoing MDL involving drugs contaminated with cancer-causing agents); In re Benicar (Olmesarten) Products Liability Litigation, (D.N.J. 15-cv-2606-RBK-JS)(appointed Co-Lead Counsel in ongoing MDL involving gastrointestinal injuries due to hypertension medication, resulting in $300+ million settlement); In re Pelvic Mesh Litigation (Gynercare & Bard) (Sup. Ct. N.J. MCL No. 291) (appointed Co-Liaison Counsel in ongoing "mass tort" involving injuries to women that have had pelvic mesh medical devices surgically implanted); Dewey v. Volkswagen, (D.N.J. 2:07-CV-2249-FSH-PS); (Co-Class Counsel in $69

million nationwide class action settlement involving 3 million vehicles owned or leased by approximately 5.5 million Class Members over the course of 12 years, providing a unique set of monetary and non-monetary benefits); Alin v. American Honda Motor Co., Inc., (D.N.J. 2:08-cv-04825)( Co-Class Counsel in $40 million nationwide class action settlement on behalf of hundreds of thousands of Honda vehicle owners alleging defects in their vehicles air-conditioning systems); In re Nissan Radiator/Transmission Cooler Litigation, (S.D.N.Y. 10-cv-7493-VLB) (Co-Class Counsel in $20+ million nationwide class action settlement on behalf of more than 800,000 class members relating to defects in the radiator which caused catastrophic transmission failure); Aarons v. BMW of North America, LLC, (C.D. Cal. 2:11-cv-7667-PSG-CW)( Co-Class Counsel in nationwide class action settlement involving transmission failure in certain Mini Cooper vehicles); Keegan v. American Honda Motor Co., (C.D. Cal. 2:10-cv-09508-MMM-AJW)( Co-Class Counsel in nationwide class action settlement involving suspension defect in certain Honda Vehicles); Zakskorn v. American Honda Motor Co., Inc., (E.D. Cal. 2:11-cv-2610-KJM-KJN)(appointed Co-Lead class counsel in nationwide class action settlement on behalf of 1.68 million class members involving alleged brake defects in certain Honda Civic vehicles); Kirsch, D.D.S. v. Horizon, (Docket No. ESX-L-4216-05) (16,000 dental provider class); Jungels v. Delta Dental of New Jersey (District of New Jersey Civil Action No. 07-186) (160,000 dental provider national class); Sutter, M.D. v. Oxford Health Plans (American Arbitration Association Case No. 18 193 20593 02) (20,000 physician class).

# MSKF ATTORNEYS

## PARTNERS

**David A. Mazie** graduated from Rutgers University in 1983, and George Washington University School of Law in 1986. He was admitted to the bars of State of New Jersey and District of New Jersey in 1986. Mr. Mazie focuses his practice on complex civil litigation, including personal injury, medical malpractice, product liability, commercial litigation, and class actions. He has been a certified civil trial attorney since 1996, and has obtained approximately 40 jury verdicts and settlements exceeding $1 million, including the landmark $166 million verdict against the NJDYFS, which is the largest personal injury verdict in New Jersey history. The Appellate Division reversed this verdict. Mr. Mazie also obtained a $135 million liquor liability verdict against Aramark, the second largest personal injury verdict in New Jersey history. The Appellate Division subsequently reversed the jury's verdict and the case was thereafter settled for $26 million. In 2020 Mr. Mazie secured a $125 million settlement for a woman crushed by utility pole which is the largest personal injury settlement in New Jersey history. In recent years, Mr. Mazie has obtained an $33.9 million product liability settlement, a $18.5 million wrongful birth jury verdict, a $15.75 million audit malpractice settlement, a $12 million wrongful death jury verdict, a $11.1 million "mass tort" verdict, a $7.25 million actuarial malpractice settlement, and a multi-million dollar Lasik malpractice settlement which is believed to be the largest Lasik malpractice recovery in New Jersey history. He also tried -- and successfully settled -- the case of Ravin Sarasohn v. Lowenstein Sandler involving unfair competition between competing law firms. In addition to the representation of private clients, over the past twenty-four years he has represented the New Jersey Commissioner of Banking and Insurance as liquidator of several failed insurance companies, handling numerous multi-million dollar commercial litigations on the Commissioner's

behalf.  He also has numerous reported decisions, many of which have changed the law:  Ravin, Sarasohn v. Lowenstein Sandler, 365 N.J. Super. 241 (App. Div. 2003); Taglieri v. Moss, 367 N.J. Super. 184 (App. Div. 2004); Reynolds v. Guard Dogs Unlimited, Inc. 325 N.J. Super. 298 (App. Div. 1999); Nubenco Enterprises, Inc. v. Inversiones Barberena, S.A., 963 F.Supp. 353 (D.N.J. 1997); Integrity Insurance Co. v. Teitelbaum, 245 N.J. Super. 133 (Law Div. 1990); In re Integrity Insurance Company, 193 N.J. 86 (2007); Resolution Trust Corp. v. Edie, 1994 WL 744672 (D.N.J. Oct. 4, 1994); Ladner v. Mercedes-Benz of North America, Inc. 266 N.J. Super. 481 (App. Div. 1993); Home State Insurance Co. v. Continental Insurance Co., 313 N.J. Super. 584 (App. Div. 1998); Home State Insurance Co. v. Continental Insurance Co., 158 N.J. 104 (1999); In re Phenylpropanolamine (PPA), 2003 WL 22417238 (N.J. Super., July. 21, 2003); Fillebrown v. Steelcase, Inc., 63 Fed Appx. 54, 2003 WL 1191162 (3d Cir. 2003); Verni v. Harry M. Stevens, et al, 387 N.J. Super. 160 (App. Div. 2006); Liss v. Federal Insurance Co., 2006 WL 2844468 (App. Div. 2006); Clark v. University Hospital/UMDNJ 390 N.J. Super 108 (App. Div. 2006); New Jersey Eye Center v. Princeton Ins. Co., 394 N.J. Super. 557 (App. Div. 2007); Verni v. Lanzaro, 404 N.J. Super. 16 (App. Div. 2008); Liss v. Federal Ins. Co., 2009 WL 231992 (App. Div. 2009); Beye v. Horizon Blue Cross Blue Shield, 2008 WL 3064757 (D.N.J. 2008); Beye v. Horizon Blue Cross Blue Shield, 558 F. Supp. 2d 556 (D.N.J. 2008); Alin v. American Honda Motor Co., Inc., 2010 WL 1372308 (D.N.J. March 31, 2010).  Mr. Mazie has been named to the Best Lawyers in America numerous times, and one of the top 500 lawyers in America by Law Dragon.  Mr. Mazie has personally received the most votes of any New Jersey trial attorney in the 2005, 2006 and 2007 Super Lawyers rankings, and has been ranked in the top ten every year since 2009.  In 2005, the New Jersey Law Journal named Mr. Mazie "Lawyer of the Year," and in 2014 he was inducted into the "Personal Injury Hall of Fame."

**Adam M. Slater** is a partner and senior trial lawyer at Mazie Slater.  Mr. Slater's practice is focused on complex civil litigation, product liability, medical malpractice, personal injury, consumer litigation, and class action law.  Mr. Slater is a 1989 graduate of Tulane University and a 1993 graduate of Boston University School of Law.  Mr. Slater was admitted to the bars of the State of New Jersey and District of New Jersey in 1994.  He is also admitted in the State of New York, the District of Columbia, the State of Colorado, and the Third Circuit Court of Appeals.  Mr. Slater was certified as a civil trial attorney by the New Jersey Supreme Court in 2000, only six years after admission to the bar, and has been recertified.  Mr. Slater lectures frequently on trial practice for New Jersey ICLE including seminars titled: Trying Cases: Proven Tactics & New Strategies for Success, Trying the Breast Cancer Case, Winning the Big Verdict, Trying Your Case the Right Way, and Not Just Another Discovery Seminar.  He has been named to the Best Lawyers in America and as a Top 100 "Super Lawyer" in the State of New Jersey.  He also has numerous published opinions, including but not limited to Liguori v. Elmann, 191 N.J. 527 (2007); New Jersey Eye Center, P.A. v. Princeton Ins. Co., 394 N.J. Super. 557 (App. Div. 2007); Baldassano v. High Point Insurance Company, 396 N.J. Super. 448 (App. Div. 2007); La v. Hayducka, 269 F.Supp. 2d 566 (D.N.J. 2003); In re Glatstian, 215 B.R. 495 (Bankr. D.N.J. 1997); Meth v. Gorfine, 34 A.D. 3d 267 (N.Y.A.D. 1st Dept. 2006), Dewey v. Volkswagen, AG., 558 F.Supp. 2d 505 (D.N.J. 2008); Dewey v. Volkswagen, AG., --- F.Supp. 2d --- (D.N.J. 2010).  Over his career, Mr. Slater has obtained numerous verdicts and settlements in excess of one million dollars, with many in the multi-millions, including a $69 Million class action settlement in Dewey v. Volkswagen.  In addition, Mr. Slater has also appointed as Liaison Counsel in In re Allergan Biocell Textured Breast Implant Products Liability Litigation, (Sup. Ct. N.J. MCL No. 634); Co-Liaison Counsel in In re Pelvic Mesh Litigation – J&J/Bard; Co-Lead Counsel in In re: Benicar (Olmesartan) Products

Liability Litigation; and Co-Lead Counsel in In re Valsartan Products Liability Litigation, (D.N.J. 1:19-md-02875).

Eric D. Katz is a partner at Mazie Slater. Mr. Katz is a 1988 graduate of Polytechnic University of New York (now Polytechnic Institute of NYU) and a 1991 graduate of Pace Law School, where he was an editor on the law review, and was admitted to the bar of the State of New Jersey and the District of New Jersey in 1991. Mr. Katz is a certified civil trial attorney, and concentrates his practice in managed care, class action, product liability, ERISA, and medical provider law. In 2013, Mr. Katz successfully argued on behalf of the Respondent, John Ivan Sutter, M.D. in the Supreme Court of the United States in the matter of Oxford Health Plans v. Sutter, 133 S. Ct. 2064 (2013), in which the Supreme Court in an unanimous decision affirmed the Third Circuit upholding an arbitrator's award that 20,000 New Jersey physicians may arbitrate their claims payment disputes on a class-wide basis against Oxford Health Plans. Mr. Katz has been appointed class counsel in several class actions, and has been selected a New Jersey Super Lawyer annually since 2007 in the area of class action law, as well as selected to The Best Lawyers in America annually since 2012. In addition to his complex litigation and class action experience, Mr. Katz is a recognized published authority in this state on the subjects of product liability and toxic tort law, having co-written with Hon. William A. Dreier, P.J.A.D. (Ret.) and Hon. John E. Keefe, P.J.A.D. (Ret.), the most-widely cited treatise on these areas of the law entitled New Jersey Products Liability and Toxic Tort Law (published annually by Gann Law Books). Since its initial printing, the treatise was adopted by the Administrative Office of the Courts as a bench book on product liability and, for a number of years, was distributed to the entire state judiciary on an annual basis. To date, the treatise has been cited on twenty (20) or more occasions in published opinions. In addition to his Supreme Court decision, Mr. Katz has several other reported decisions, for example Sutter v. Oxford Health Plans, 675 F.3d 215 (3d Cir. 2013, aff'd 133 S. Ct. 2064

(2013); Kaufman v. Allstate Ins. Co., 561 F.3d 144 (3d Cir. 2009); Sutter v. Horizon Blue Cross Blue Shield, 406 N.J. Super. 86 (App. Div. 2009); and Kirsch v. Delta Dental of New Jersey, 2008 WL 441860 (D.N.J. 2008).  Mr. Katz has multiple seven-figure settlements, including the landmark $39 million Sutter v. Horizon class action settlement.

David M. Freeman is a partner at Mazie Slater and a 1985 graduate of Lehigh University and a 1988 graduate of University of Pennsylvania Law School. Mr. Freeman was admitted to the bar of the State of New Jersey and the District of New Jersey in 1988.  Mr. Freeman concentrates his practice in the area of complex litigation, including commercial litigation, product liability, professional malpractice, insurance insolvency, and personal injury.  Mr. Freeman has several reported and unreported decisions, for example Liss v. Federal Ins. Co., 2009 WL 231992 (App. Div. 2009); In re Integrity Insurance Company, 193 N.J. 86 (2007); Liss v. Federal Insurance Co., 2006 WL 2844468 (App. Div. 2006); Klein v. Autek, 147 Fed.Appx. 270 (3d. Cir 2005); Ravin Sarasohn v. Lowenstein Sandler, 365 N.J.Super. 241, (App. Div. 2003); Lascurain v. City of Newark, 349 N.J.Super. 251, 793 A.2d 731, (App. Div. 2002); RFE Industries v. SPM Corp., 103 F.3d 923 (4th Cir. 1997); National Property Investors VIII v. Shell Oil Co., 950 F.Supp 710 (E.D.N.C. 1996); National Property Investors VIII v. Shell Oil Co., 917 F.Supp 324 (D.N.J. 1995); and S&R Associates v. Shell Oil Co., 725 A.2d 431 (Del. Supr. 1998); Matter of Integrity Ins. Co., 1991 WL 213899 (D.N.J. 1991).

Beth G. Baldinger is an experienced trial attorney for over 20 years and has extensive experience in complex civil litigation.  Ms. Baldinger numerous settlements and verdicts in excess of $1 million, including the infamous Adam Katz case against the New Jersey Sports and Exposition Authority for Mr. Katz's wrongful death and a $10 million verdict for negligent security.  Ms. Baldinger has the following reported opinions to her credit:  Beye v. Horizon, 568

F.Supp. 566 (D.N.J. 2008); Brennan v. Orban, 145 N.J. 282 (1996); Aldrich v. Schwartz, 258 N.J. Super. 300 (App. Div. 1992); Blake v. City of New York, 157 A.D.2d 482 (1st Dep't 1990).

**Matthew R. Mendelsohn** is a partner with Mazie Slater and concentrates his practice in complex civil litigation, specializing in class action and personal injury litigation. Mr. Mendelsohn is a 2002 graduate of Rutgers University and a 2005 graduate of Seton Hall School of Law. He has been admitted to practice in New Jersey, New York, U.S. District Court, District of New Jersey, Southern District of New York, and the Third and Ninth Circuit Court of Appeals. Mr. Mendelsohn has been Certified by the Supreme Court of New Jersey as a Civil Trial Attorney, a distinction held by less than 3% of practicing attorneys in NJ. Mr. Mendelsohn has litigated numerous cases resulting in multi-million dollar verdicts and settlements including, but not limited to, the $69 Million class action settlement in Dewey v. Volkswagen, a $40 million class action settlement in Alin v. Honda, a $20+ million class action settlement in In re Nissan Radiator/Oil Cooler Litigation; a $19.2 million settlement for injuries sustained as a result of a gas explosion; a $7 million settlement on behalf of an injured construction worker; a $6 million settlement in a bus accident case, $5 million settlement in a truck accident case, $4.7 million settlement in product liability case, and a $4.5 million settlement in a medical malpractice action. In recognition of his accomplishments, Mr. Mendelsohn was selected as a "New Leader of the Bar" (formerly known as "40 under 40") by the New Jersey Law Journal in 2012, selected as a member of "The Top 40 under 40" by The National Trial Lawyers in 2012, selected as a "Top 100 Trial Lawyer" by The National Trial Lawyers in 2015-2019 and selected as a New Jersey "Super Lawyer" every year since 2015. Mr. Mendelsohn has also personally been appointed Class Counsel in many nationwide consumer class actions. Mr. Mendelsohn has several reported decisions to his credit, including; Haghayeghi V. Guess?, Inc., 168 F. Supp. 3d 1277 (S.D. Cal. 2016); Neale v. Volvo Cars Of North America, LLC; 794 F.3d 353 (3d Cir. 2015); Gray v. BMW of North America,

LLC, *22 F.Supp.3d 373*, (D.N.J. 2014); <u>Dewey v. Volkswagen Aktiengesellschaft</u>, 558 Fed.Appx. 191 (3d Cir. 2014); <u>Dewey v. Volkswagen of America</u>, 909 F.Supp.2d 373 (D.N.J. 2012); <u>Keegan v. American Honda</u>, 284 F.R.D. 504 (C.D. Cal 2012); <u>Keegan v. American Honda</u>, 838 F.Supp.2d 929 (C.D. Cal. 2012); <u>Cholakyan v. Mercedes-Benz USA, LLC</u>, 796 F.Supp.2d 1220 (C.D.Cal. 2011); <u>Sutter v. Horizon Blue Cross Blue Shield</u>, 406 N.J. Super. 86 (App. Div. 2009); and <u>Dewey v. Volkswagen, AG</u>, 558 F.Supp. 2d 505 (D.N.J. 2008).

**David M. Estes** is an associate at Mazie Slater.  Mr. Estes graduated Nyack College in 2000, and Rutgers University School of Law in 2011.  While in law school Mr. Estes served as the Lead Editor of the Rutgers Journal of Law and Religion, and was a Finalist of the Willem C. Vis International Commercial Arbitration Moot.  Mr. Estes concentrates his practice in class action, product liability, and personal injury litigation.  Prior to joining the firm, Mr. Estes served as law clerk to the Honorable Victor Ashrafi of the New Jersey Superior Court, Appellate Division.  He also served as summer clerk to the Honorable Jerome Simandle of the U.S. District Court of New Jersey, and judicial intern to the Honorable Theodore McKee of the U.S. Court of Appeals for the Third Circuit.  Mr. Estes is admitted to practice law in New Jersey.

**Adam M. Epstein** is n partner at Mazie Slater.  Mr. Epstein graduated from Pennsylvania State University in 2006 and Brooklyn Law School in 2010.  concentrates his practice in personal injury, medical malpractice and class action litigation.  Mr. Epstein is known for his aggressive yet tactical pursuit of justice on behalf of his clients who have been harmed as a result of the negligence of others. He has helped recover millions of dollars for his clients in numerous complex and high-profile matters. Some examples of the cases he has worked on include: $125 Million Settlement for Woman Crushed by Utility Pole, $12.75 Million Settlement For A Man Hit By A Bus Which Caused A Brain Injury, $4.5 Million Settlement For Failure To Diagnose Malaria and

$4 Million Settlement For Medical Malpractice Death.  Because of his many successes, Mr. Epstein has been named a Super Lawyers Rising Star every year since 2018 (2018 – 2022).  His clients have written extensive positive reviews regarding his work ethic, guidance, empathy and results. Prior to joining the firm, Mr. Epstein worked at a prominent defense litigation firm, defending the very type of cases that he now pursues.  Mr. Epstein is admitted to law in both New and New York.

## ASSOCIATES

**Karen G. Kelsen** is an associate at Mazie Slater.  Ms. Kelsen graduated from Queens College in 2005 and Hofstra University School of Law in 2008.  Ms. Kelsen concentrates her practice in complex civil litigation, including class action, products liability, personal injury, and medical malpractice.  She has been admitted to practice in the State of New Jersey and the U.S. District Court, District of New Jersey since 2008.  Ms. Kelsen is also admitted in the State of New York.  Ms. Kelsen was heavily involved in the discovery phase in Dewey v. Volkswagen, and currently is a member of the team handling In re Gynecare/Ethicon Pelvic Mesh Litigation.

**Cory J. Rothbort** is an associate at Mazie Slater.  Mr. Rothbort is admitted to practice in New Jersey and New York, and before the United States District Court for the District of New Jersey. He is an active member of the Essex County and New Jersey State Bar Associations and Brennan-Vanderbilt American Inn of Court. Mr. Rothbort presently serves as Secretary of the Executive Committee of the NJ State Bar Young Lawyers Division.  In 2019, Mr. Rothbort was recognized as the Outstanding Young Lawyer of the Year by the Essex County Bar Association. Mr. Rothbort is an active speaker, participating on various panels discussing issues related to his practice such as Practical Evidence, Ethical Considerations for the Young Lawyer & Small Practitioner and Using Depositions & Discovery for Killer Cross-Examinations.  Prior to entering

private practice, Mr. Rothbort completed a judicial clerkship with The Honorable Heidi Willis Currier, J.S.C. in Middlesex Vicinage in New Brunswick, NJ. Before his clerkship, Mr. Rothbort attended the Boston University School of Law, graduating with a Concentration in Litigation and Dispute Resolution. Prior to attending Law School, Mr. Rothbort graduated cum laude from Rutgers University. He was also a four-year member of the Rutgers University Mock Trial Association.

**Michael R. Griffith** is an associate at Mazie Slater. Mr. Griffith graduated from The College of New Jersey in 2013 and Rutgers University School of Law in 2016. Mr. Griffith concentrates his practice in mass torts, products liability, personal injury and commercial litigation. Prior to joining the firm, Mr. Griffith was a Law Clerk to the Honorable Robert P. Contillo, P.J.Ch. and the Honorable Menelaos W. Toskos, J.S.C. Mr. Griffith is admitted to practice in New Jersey.

**Christopher J. Geddis** is an associate at Mazie Slater. He graduated from William & Mary Law School and received a Bachelor of Arts in philosophy from Dartmouth College. Prior to joining Fogarty & Hara, he served a clerkship for the Honorable Richard S. Hoffman of the Superior Court of New Jersey, Appellate Division. During law school, he worked for the College of William & Mary's Office of University Counsel and served as a Senior Articles Editor of the William & Mary Bill of Rights Journal. He also interned for the Honorable Marie E. Lihotz of the Superior Court of New Jersey, Appellate Division, and the Honorable Lynn N. Hughes of the United States District Court. He is admitted to practice law in New Jersey and Pennsylvania.

**Samuel D. Wildman** is an associate at Mazie Slater. He is admitted to practice in New Jersey. Before joining the firm, he served as a law clerk to the Honorable Robert J. Gilson, J.A.D. of the Appellate Division of the Superior Court of New Jersey. Mr. Wildman attended Cornell Law School, where he graduated with honors and a concentration in general practice. Mr.

Wildman was an acquisitions editor on Journal of Law and Public Policy and a member of the Cornell Law School Securities Law Clinic.  Mr. Wildman also completed an externship and internship with the U.S. Department of Justice, where he gained valuable experience in administrative and constitutional law and multibillion-dollar affirmative False Claims Act litigation.  During his 1L summer, he also worked as a judicial intern for the Honorable John M. Leventhal of the Appellate Division, Second Department of New York.  Mr. Wildman graduated magna cum laude from Boston University with a B.A. in philosophy and psychology and minors in both history and political science.  Mr. Wildman concentrated his studies on applied and medical ethics, statistics, and experimental design.  Mr. Wildman continues to pursue these interests as a volunteer with the Center for Mind and Culture.  During his junior year, he served as an intern for Ian Lucas, M.P., the Brittish Labour Party's shadow secretary for Africa and the Middle East.

**Julia S. Slater** is an associate at Mazie Slater.  Prior to joining Mazie Slater Katz & Freeman, Ms. Slater was an associate at a personal injury law firm in Manhattan, where she focused on representing and advocating for her clients who had been injured due to another's fault. Ms. Slater received her Juris Doctor from Benjamin N. Cardozo School of Law in 2019.  Prior to that, she graduated from Syracuse University in 2016 with a Bachelor of Arts in Political Science. While in law school, Ms. Slater participated in the Trial Advocacy Program, served as a mediator in the Divorce Mediation Clinic, helping people to resolve difficult familial issues, and she was also a member of the Cardozo Arts & Entertainment Law Journal.

EXHIBIT 3



## Firm Resume

Girard Sharp is a national litigation firm representing plaintiffs in class and collective actions in federal and state courts. The firm serves individuals, institutions and business clients in cases involving consumer protection, securities, antitrust, privacy, and whistleblower laws.

Our clients range from individual consumers and small businesses to Fortune 100 corporations and public pension funds. We have recovered over a billion dollars on behalf of our clients in class actions and non-class cases. In addition to litigation, our firm also provides consulting and strategic counseling services to institutional clients and professionals in securities litigation and corporate governance. We are committed to achieving favorable results for all of our clients in the most expeditious and economical manner possible.

Girard Sharp is distinguished as a Tier 1 law firm for plaintiffs' mass tort and class action litigation by *U.S. News & World Report* and has been included on its list of "Best Law Firms" from 2013 to 2022. *The National Law Journal (NLJ)* named Girard Sharp to its elite "Plaintiffs' Hot List," a selection of top U.S. plaintiffs' firms recognized for wins in high-profile cases. In 2020, Girard Sharp was honored with the *Daily Journal*'s "Top Boutiques in California" award. Girard Sharp also was honored as the 2019 Elite Trial Lawyers winner in the category of Insurance Litigation, and was recognized by Law360 in 2022 as a Practice Group of the Year in Product Liability Litigation. In 2021, the *Daily Journal* awarded Girard Sharp attorneys the "Top Plaintiff Verdicts: Impact" award.

Nine of the firm's attorneys have been recognized as Northern California Super Lawyers and Rising Stars. Name partners Daniel Girard and Dena Sharp have been selected by their peers as among the *Best Lawyers in America.* Daniel Girard has been recognized as among the "Top 100 Super Lawyers" in Northern California, and Dena Sharp as one of the Top 50 Women Attorneys in Northern California. *Best Lawyers* also designated Mr. Girard as the 2013 "Lawyer of the Year" in San Francisco for class action litigation. Mr. Girard has earned an *AV–Preeminent* rating from Martindale-Hubbell, placing him in the highest class of attorneys for professional ethics and legal skills.

### ATTORNEYS

**Partners**

| | |
|---|---|
| Daniel Girard | p. 2 |
| Dena Sharp | p. 3 |
| Adam Polk | p. 4 |
| Jordan Elias | p. 5 |
| Scott Grzenczyk | p. 6 |
| Simon Grille | p. 7 |

**Associates**

| | |
|---|---|
| Makenna Cox | p. 7 |
| Mani Goehring | p. 7 |
| Trevor Tan | p. 8 |
| Peter Touschner | p. 8 |
| Tom Watts | p. 8 |
| Erika Garcia | p. 9 |
| Nina Gliozzo | p. 9 |
| Mikaela Bock | p. 9 |
| Sean Greene | p. 10 |
| Kyle Quackenbush | p. 10 |
| Jessica Cook | p. 11 |
| Jordan Isern | p. 11 |
| Kimberly Macey | p. 11 |

**Of Counsel**

| | |
|---|---|
| Michael Danko | p. 12 |
| Kristine Meredith | p. 13 |

### SIGNIFICANT RECOVERIES

| | |
|---|---|
| Sexual Abuse & Women's Advocacy | p. 13 |
| Antitrust | p. 14 |
| Securities & Financial Fraud | p. 15 |
| Deceptive Trade Practices | p. 18 |
| Defective Products | p. 19 |
| Privacy Violations | p. 21 |
| Other Consumer Matters | p. 23 |
| Mass Tort | p. 26 |
| Government Reform | p. 26 |

## ATTORNEYS

# Partners

**Daniel Girard** founded Girard Sharp in 1995 to offer dedicated, professional representation to everyday Americans. Dan believes that individuals who work hard and play by the rules deserve the same focused, dedicated representation enjoyed by corporations, banks, and insurance companies. Under Dan's leadership, Girard Sharp has become one of the most respected and experienced class action law firms in the United States.



Dan has been appointed by federal courts to lead class actions brought under a range of federal and state laws, often involving investments and consumer financial services matters. Most recently, he served as counsel for investors in the Woodbridge Investments, Jay Peak EB-5 Investments, Peregrine Financial Group and Provident Royalties cases, all of which involved parallel bankruptcy and criminal or regulatory proceedings against investment promoters. He has led successful class actions in such areas as securities, corporate governance, telecommunications, unfair competition, federal statutory rights, predatory lending, sexual abuse, product liability, and constitutional law.

In addition to individuals, Dan's past and present clients include municipal and state employee retirement systems, public employee unions, financial institutions, property and casualty insurers, and NYSE companies.

Dan has been privileged to serve the federal court system through his work on federal rule-making committees. He was appointed by Chief Justice William H. Rehnquist to the United States Judicial Conference Advisory Committee on Civil Rules in 2004 and served on the Civil Rules Committee through 2010. Chief Justice John G. Roberts appointed Dan to the Standing Committee on Rules of Practice and Procedure in 2015 and reappointed him to a second term in 2018. Dan's article, "Limiting Evasive Discovery: A Proposal for Three Cost-Saving Amendments to the Federal Rules," 87 Denver University Law Review 473 (2010), proposed several rule amendments that were ultimately adopted in Federal Rule of Civil Procedure 34(b)(2).

Dan also serves as a member of the Council of the American Law Institute, where he chairs the Audit Committee, and serves on the Membership and Development Committees.

He is a long-standing member of the American Bar Association, Section on Business Law, Corporate and Business Litigation Committee.

**Dena Sharp** is a problem-solver who gets results for her clients in even the most complex litigation. She currently serves as co-lead counsel in the *In re Juul Labs Inc.* multidistrict litigation, *In re Xyrem Antitrust Litigation*, and *In re California Gasoline Spot Market Antitrust Litigation*. She is co-lead counsel for a certified class of end-payers in the *In re Restasis Antitrust Litigation*, and a member of the End-Payer Steering Committee in *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, a massive case alleging that the world's largest makers of generic drugs conspired to raise prices and prevent price competition for years. Dena is also privileged to represent clients of a fertility center whose eggs and embryos were compromised by a freezer tank malfunction. In June 2021, Dena and her team tried the first *In re Pacific Fertility Center Litigation* case in federal court in San Francisco, and won a groundbreaking $15 million jury verdict for the loss of four families' eggs and embryos.



As co-lead counsel in *In re Lidoderm Antitrust Litigation*, a "pay-for delay" antitrust case that settled for $104.75 million on the eve of trial, Dena worked with her team to win class certification, defeat summary judgment, and obtain the largest recovery for a class of end-payers in similar federal litigation in more than a decade. She has also played a key role in a variety of other high-profile cases, including work on behalf of the direct purchasers in the *In re Capacitors Antitrust Litigation,* and representing investors in litigation arising from Lehman Brothers' bankruptcy and in matters involving Ponzi schemes and accounting fraud.

Outside the courtroom, Dena is the current co-chair of the Lawyer Representatives to the Ninth Circuit Judicial Conference for the Northern District of California, and was elected to the American Law Institute in 2018. She sits on the board of directors of the Impact Fund, a public interest nonprofit, and has served as co-chair and faculty member of the annual Judicial Training Symposium for Federal Judges, hosted by the Federal Judicial Center and the Electronic Discovery Institute. She also sits on the board of advisors for the Center for Litigation and the Courts at UC Hastings. Dena co-authored a chapter in the ABA's "Class Action Strategy and Practice Guide," and the widely-cited Sedona Principles: Best Practices and Principles for Electronic Document Production (Third Edition).

The *National Law Journal* has recognized Dena as an "Elite Woman of the Plaintiffs' Bar" for two consecutive years, honoring her as one of only a handful of lawyers nationwide who has "consistently excelled in high-stakes matters on behalf of plaintiffs" over the course of her career. Dena was named one of the "Best Lawyers in America" for both 2021 and 2022, one of the "Top 50 Women Attorneys in Northern California" by *San Francisco* magazine in 2021, and one of the *Daily Journal*'s "Top Women Lawyers" in 2021. In 2022, the *Daily Journal* recognized Dena and her colleagues for their work on *In re Pacific Fertility Center Litigation* with the award for "Top Plaintiffs Verdicts" in the "Impact" category. Dena has also been recognized as a Northern California Super Lawyer or Rising Star every year since 2009.

Dena is a graduate, *cum laude*, of the University of California, Hastings College of Law, where she was a member of the Thurston Society and received the Best Oral Advocate and Witkin awards. She graduated magna cum laude from Brown University. During law school, Dena externed for the Honorable Phyllis J. Hamilton of the Northern District of California, and the Honorable John E. Munter of the San Francisco Superior Court. A first-generation American, Dena is fluent in Spanish and German.



**Adam Polk** is a partner at Girard Sharp who takes a client-focused approach to each matter he handles. A devoted and experienced advocate, Adam concentrates his practice on complex consumer, securities, and antitrust class actions. Adam's experience covers all aspects of civil litigation, from initial case investigation and complaint preparation through settlement or trial.

Adam currently serves as co-lead counsel in *In re Subaru Battery Drain Litigation* (an ongoing consumer protection action concerning defective batteries in Subaru vehicles); and *In re Maxar Technologies Inc. Shareholder Litigation* (an action alleging violations of the Securities Act of 1933). He also serves as part of the co-lead counsel teams in *In re California Gasoline Spot Market Antitrust Litigation* (an antitrust class action alleging manipulation of the spot market for gasoline in California); *In re Pacific Fertility Center Litigation* (a product defect related to the alleged failure of an IVF tank holding human eggs and embryos); and *In re PFA Insurance Marketing Litigation* (a consumer protection class action alleging the unfair and deceptive sale of life insurance). Adam also serves as a court-appointed executive committee member in *In re Allergan Biocell Textured Breast Implant Products Liability Litigation* (a multidistrict litigation centering on allegedly defective breast implants and pending in the District of New Jersey).

Recently, Adam served as part of the trial team in the first *In re Pacific Fertility Center Litigation* trial. In a landmark result, the jury awarded approximately $15 million for the loss of four families' eggs and embryos. Adam also served on the lead counsel teams in several recent cases that resolved favorably for his clients, including *Bentley v. LG Electronics U.S.A., Inc.* and *Sosenko v. LG Electronics U.S.A., Inc.* (class actions alleging that LG's refrigerators are defective and prone to premature failure); and *In re Nexus 6P Products Liability Litigation* and *Weeks v. Google LLC* (two consumer class actions against Google relating to defective mobile phones, which resolved for a combined $17 million). Adam was also instrumental in achieving substantial settlements for his clients in *In re Sears Holdings Corporation Stockholder and Derivative Litigation* ($40 million settlement) and *Daccache v. Raymond James Financial, Inc.* ($150 million partial settlement).

Before joining the firm, Adam externed for the Honorable Sandra Brown Armstrong and the Honorable Claudia Wilken, of the U.S. District Court for the Northern District of California.

Adam is chair of the American Bar Association's Class Action and Derivative Suits committee, for which he is a frequent contributor of content regarding emerging issues in class action litigation. As of 2021 he is a member of the Fellows of the American Bar Foundation. His articles include: *Ninth Circuit: Central District of California's 90-Day Deadline to Move for Class Certification Incompatible with Rule 23*, ABA Practice Points, October 2018, *Fourth Circuit, No Presumption of Timeliness Where One Class Action Plaintiff Moves to Intervene in Another Class Action Prior to the Opt-Out Deadline*, ABA Practice Points, July 2018, *California Supreme Court: Unnamed Class Members Must Intervene or Move to Vacate to Gain Right to Appeal Class Settlements*, ABA Practice Points, May 2018, *Tilting at Windmills: Nationwide Class Settlements After In re Hyundai and Kia Fuel Economy Litigation*, ABA Section of Litigation, Class Actions & Derivative Suits, February 2018 (co-author), *"Ninth Circuit." Survey of Federal Class Action Law*, ABA 2018 (co-author), *Ninth Circuit: No Formal Motion for Reconsideration Needed to Toll 23(f) Deadline*, ABA Practice Points, September 2017, *Eighth Circuit Clarifies CAFA's Local-Controversy Exception Applies to Local Citizens*,

*Not Mere Residents*, ABA Practice Points, May 2017, *Shrink-Wrap Arbitration Clauses Must Be Conspicuously Displayed: Ninth Circuit*, ABA Practice Points, April 2017, *Predispute Arbitration Clauses Targeting Public Injunctive Relief Are Unenforceable: CA Supreme Court*, ABA Practice Points, April 2017, *Ninth Circuit: Cy Pres Awards Must be Tailored to Plaintiffs' Claims to Justify a Class Action Release*, ABA Practice Points, February 2017, *Rule 23 Does Not Include an 'Administrative Feasibility Requirement: Ninth Circuit*, ABA Practice Points, January 2017.

Adam was elected in 2021 as a Fellow of the American Bar Foundation. He has been selected by his peers as a Northern California Super Lawyer, Rising Star every year since 2013. Adam has been named to the National Trial Lawyers' "Top 40 Under 40" for three consecutive years. He was named to *Best Lawyers*' "Ones to Watch" list in 2021 and 2022.

**Jordan Elias**, a partner in the firm, represents consumers and small businesses harmed by corporate violations. He has pursued civil claims against monopolists, price-fixing cartels, oil and tobacco companies, and the nation's largest banks. Over the past decade, Jordan has also taken on pharmaceutical companies for collusion leading to inflated prescription drug prices.



Jordan argued the first substantive motion in the digital advertising monopoly litigation against Google. He previously served as head writer for the plaintiffs in the wrongful death cases arising from sudden unintended acceleration of Toyota vehicles. He was the primary author of the plaintiffs' briefs in the California Supreme Court in the landmark Cipro "pay-for-delay" antitrust case, and gained a reversal for the plaintiff in *Pavoni v. Chrysler Group, LLC*, 789 F.3d 1095 (9th Cir. 2015). Jordan also led the appeal in *In re U.S. Office of Personnel Management Data Security Breach Litigation*, 928 F.3d 42 (D.C. Cir. 2019), where the court reversed the dismissal of a case brought on behalf of 21.5 million federal government employees whose sensitive private information was hacked. More recently, Jordan represented the League of Women Voters in an amicus brief urging the Ninth Circuit to preserve an extension of the State of Arizona's voter registration deadline in light of the Covid-19 pandemic and the remote location of many Native American voters. He also argued the successful appeal in *Velasquez-Reyes v. Samsung Electronics America, Inc.*, No. 17-56556 (9th Cir. Sept. 17, 2019), where the Ninth Circuit held that Samsung could not compel individual arbitration of fraud claims even though its smartphone packaging had an arbitration clause. Federal judges have described his advocacy as "very thorough" and "clearly in the public interest."

Jordan received a California Lawyer Attorney of the Year (CLAY) award in 2016. He has been recognized as a Northern California Super Lawyer, Appellate, since 2014. A former chief arbitrator for the San Francisco Bar Association's attorney-client fee disputes program, Jordan now serves as the program's vice-chair.

In 2017, Jordan was elected to the American Law Institute. He is also a Fellow of the American Bar Foundation. He authored the Supreme Court chapter, and co-authored the Ninth Circuit chapter, in the American Bar Association's *Survey of Federal Class Action Law*. He also co-authored the chapter on antitrust standing, causation and remedies in *California State Antitrust and Unfair Competition Law* (Matthew Bender 2019), the chapter on CAFA exceptions in *The Class Action Fairness Act: Law and Strategy* (ABA 2d ed. 2021), and the chapter on jurisdiction and preemption in *California Class Actions and*

*Coordinated Proceedings* (Matthew Bender 2015). Jordan wrote the law review articles "*More Than Tangential": When Does the Public Have a Right to Access Judicial Records?*, 29 J. Law & Pol'y 367 (2021); *Course Correction—Data Breach as Invasion of Privacy*, 69 Baylor L. Rev. 574 (2018), *Cooperative Federalism in Class Actions*, 86 Tenn. L. Rev. 1 (2019), and *The Ascertainability Landscape and the Modern Affidavit*, 84 Tenn. L. Rev. 1 (2017). His bar journal articles include "Putting *Cipro* Meat on *Actavis* Bones," 24 No. 2 Competition 1, *State Bar of California* (2015), "Does *Bristol-Myers Squibb Co. v. Superior Court* Apply to Class Actions?" *ABA Section of Litigation, Class Actions & Derivative Suits* (Feb. 25, 2020) (co-author), and "Tilting at Windmills: Nationwide Class Settlements After *In re Hyundai and Kia Fuel Economy Litigation*," *ABA Section of Litigation, Class Actions & Derivative Suits* (Feb. 28, 2018) (co-author).

Jordan was awarded the Field Prize in the humanities at Yale College, where he was an all-Ivy League sprinter. While attending Stanford Law School, he served on the law review and externed for the Honorable Charles R. Breyer of the Northern District of California. After law school, Jordan clerked for the late Judge Cynthia Holcomb Hall of the Ninth Circuit Court of Appeals. He then defended technology companies in securities and intellectual property cases at Wilson Sonsini Goodrich & Rosati, which honored him with the John Wilson Award for winning asylum for refugees from Haiti and Indonesia. Before joining Girard Sharp in 2015, Jordan practiced for seven years at Lieff Cabraser Heimann & Bernstein.

**Scott Grzenczyk** dedicates his practice to representing plaintiffs in antitrust and consumer protection matters. He has wide-ranging experience in all aspects of complex litigation and has served as a member of leadership teams that have recovered hundreds of millions of dollars for the firm's clients. Scott brings a tireless work ethic and a practical, results-oriented approach to his cases.



For several years, Scott has represented union health and welfare funds in cases alleging that large, multinational drug companies illegally inflated the price of prescription drugs. Scott has helped achieve precedent-setting recoveries, including a $104.75 million settlement shortly before trial in a case concerning the prescription drug Lidoderm. He also plays a key role in the firm's work in the *In re Restasis Antitrust Litigation* and *In re Generic Pharmaceuticals Antitrust Litigation* matters.

Scott led the firm's litigation efforts in a class action filed by native inhabitants of Guam bringing due process and equal protection claims against the government of Guam. He also has a track record of successfully representing consumers, including car and cell phone purchasers, in cases involving fraud and unfair business practices. During law school, Scott successfully argued a precedent-setting immigration case before the U.S. Court of Appeals for the Ninth Circuit. He has been honored as a Rising Star by Northern California Super Lawyers every year since 2013. In 2020, Scott was honored as a recipient of the American Antitrust Institute's "Outstanding Antitrust Litigation Achievement by a Young Lawyer" award. Scott was named to *Best Lawyers*' "Ones to Watch" list in 2022.

**Simon Grille**, a partner in the firm, is committed to seeking justice for individuals harmed by corporate wrongdoing. He represents plaintiffs in class and complex litigation concerning consumers' rights and financial fraud. He has taken a lead role in consumer class actions against some of the largest technology companies in the world. Simon has been named a Rising Star by Super Lawyers since 2017, and was named to *Best Lawyers*' "Ones to Watch" list in 2021 and 2022.



Simon approaches each case with an unwavering commitment to obtaining the best possible outcome for his clients. A creative problem-solver, Simon welcomes challenges and has substantial experience in all aspects of civil litigation—from case intake through trial or settlement.

Before joining Girard Sharp, Simon worked at a prominent Bay Area law firm, where he represented victims of toxic exposure in complex civil litigation. He also has experience working in-house at a multinational company and as an extern for the Honorable Arthur S. Weissbrodt of the United States Bankruptcy Court for the Northern District of California.

## Associates

**Makenna Cox** handles all aspects of complex class action litigation, including securities and consumer protection cases against some of the nation's largest corporations. She was the primary associate responsible for handling the *Woodbridge Investments Litigation*, involving Comerica Bank's alleged abetting of a large Ponzi scheme. The court approved a $54.2 million settlement with Comerica benefiting the defrauded investors.



Before joining Girard Sharp, Makenna advocated for musicians' rights and co-authored comments filed with the FCC. She worked during law school at an appellate firm in Los Angeles.

Makenna served as Senior Production Editor on the *Loyola of Los Angeles Entertainment Law Review*. She received her B.A. with honors from the University of San Francisco.



**Mani Goehring** strives to provide clients with prompt attention, reliable guidance, and excellent outcomes. She represents consumers in class action and other complex litigation seeking to hold companies and institutions accountable for misconduct. From intake to resolution, Mani knows that responsiveness and tenacity are key to obtaining favorable results.

Mani previously worked on criminal matters at the Antitrust Division of the U.S. Department of Justice. She also interned for the U.S. Attorney's Office, the San Francisco District Attorney's Office, and the American Civil Liberties Union of Northern California.

**Trevor Tan** focuses on consumer protection class actions and other complex civil litigation, specializing in legal research and writing. He was honored as a Rising Star by Super Lawyers beginning in 2019 and was named to *Best Lawyers*' "Ones to Watch" list in 2022.

Trevor has considerable experience working in judicial chambers. Before joining Girard Sharp, he clerked for the Honorable Fernando M. Olguin of the U.S. District Court for the Central District of California. Trevor also clerked for Judges of the Los Angeles County Superior Court and the court's Appellate Division.

Trevor received his J.D. from the University of Chicago Law School in 2011. During law school, he was an extern for the Honorable George H. Wu in the Central District of California and a law clerk with the Illinois Attorney General. In addition, he served as a child advocate with the school's immigrant child advocacy clinic and worked on behalf of immigrant children from China. After law school, Trevor represented unaccompanied minors in removal proceedings as a fellow at the Young Center for Immigrant Children's Rights.

Trevor received his undergraduate degree with honors in political science from the University of California, Irvine in 2006.

**Peter Touschner** handles complex class action e-discovery matters for the firm. Before joining Girard Sharp, Peter represented class members harmed by Volkswagen's emissions-related fraud, as well as insureds who were charged inflated premiums due to the anticompetitive practices of a hospital conglomerate.



Peter previously worked as a Research Attorney at the Center for Democracy and Technology, where he investigated deceptive online advertising practices and evaluated proposed cybersecurity legislation. During law school, Peter externed for U.S. District Judge Charles R. Breyer and served as Senior Articles Editor for the Hastings Science and Technology Law Journal.

**Tom Watts** focuses his practice on complex antitrust litigation against monopolists and other wrongdoers. Before joining the firm, Tom clerked for the Honorable Jane Roth on the Third Circuit and the Honorable Robert McDonald of the Maryland Court of Appeals, assisting in a wide variety of appellate and state supreme court matters.



Tom earned a J.D. and master's in public policy *magna cum laude* from Harvard Law School and Harvard Kennedy School. During law school, he gained experience in litigation, appeals, and policy advocacy by interning with the U.S. Department of Justice's Civil Appellate Section, Santa Clara County's Impact Litigation and Social Justice Section, and Public Advocates.

Tom received his B.A. from the University of California, Berkeley, with High Distinction in General Scholarship. He double majored in Classical Languages, in which he received High Honors, and Astrophysics, for which he was the undergraduate commencement speaker.

**Erika Garcia** handles complex e-discovery matters for the firm. She is admitted to practice in California and New York.



Before joining Girard Sharp, Erika worked at a large international law firm with a focus on class action and commercial litigation as well as regulatory investigations. She has negotiated and drafted numerous confidentiality agreements in the mergers and acquisitions setting.

Erika is fluent in Spanish and previously served as a volunteer advocate in Ecuador for refugees from other Latin American countries.

**Nina Gliozzo** works to seek justice for plaintiffs in complex litigation nationwide. Before joining Girard Sharp, Nina clerked for the Honorable Marsha S. Berzon of the U.S. Court of Appeals for the Ninth Circuit.



Nina earned her J.D., *magna cum laude*, from the University of California, Hastings College of Law. During law school she externed for the Honorable Charles R. Breyer, U.S. District Judge for the Northern District of California. She also served as Executive Symposium Editor for the *Hastings Law Journal,* organizing a symposium featuring a conversation with former Supreme Court Justice Anthony M. Kennedy.

**Mikaela Bock** advocates for injured consumers and other purchasers in complex civil litigation.



During law school, Mikaela externed in the Northern District of California and was the national champion of the Evan A. Evans Constitutional Law Moot Court Competition. She previously worked for Teach for America, teaching 7th graders in East Palo Alto, California.

**Sean Greene** advocates for injured consumers and policyholders. He brings a unique perspective to his work, as he defended insurance companies before joining Girard Sharp.

During law school, Sean earned Moot Court Honorable Mention in Oral Advocacy and was an Officer of the Hastings Health Law Organization. Before law school, he gained extensive knowledge of insurance from working on public health initiatives to provide health care to underprivileged schoolchildren in Northeast Pennsylvania.



**Kyle Quackenbush** prosecutes class actions and other complex civil litigation, with a focus on antitrust. He has participated in all stages of litigation, including drafting pleadings, coordinating document discovery, taking depositions, preparing dispositive motions, and trial. Among other work, Kyle has contributed his skills to several antitrust cases involving the pharmaceutical industry, focusing on the interplay between antitrust and intellectual property law as well as market concentration within payor and provider networks. He was named a Northern California Super Lawyers "Rising Star" in 2020 and 2021.



Kyle also volunteers with the Federal Pro Bono Project of the Bar Association of San Francisco. In one case, he represented a plaintiff who alleged employees at Salinas Valley State Prison were deliberately indifferent to the plaintiff's serious medical needs, in violation of the Eighth Amendment. In another case, he represented a homeowner plaintiff in settlement negotiations with Wells Fargo.

During law school, Kyle was a Summer Honors Legal Intern at the Federal Trade Commission's San Francisco office, and a Legal Extern at the Washington State Attorney General's Office. While at the FTC, he co-authored *The Efficiencies Defenestration, Are Regulators Throwing Valid Healthcare Efficiencies Out The Window?*, published in the winter 2017 issue of the Journal of the Antitrust and Unfair Competition Law Section of the California Lawyers Association.

In addition to his membership in the American Bar Association and the Bar Association of San Francisco, Kyle participates in the Barristers Association of San Francisco, working to provide information and resources to lawyers in their first ten years of practice.

**Jessica Cook** focuses on a variety of class actions and other complex litigation matters. Jessica is a graduate of Golden Gate University School of Law. She attended the law school evening program while working full-time at Girard Sharp.

During law school Jessica competed on multiple moot court teams and in her last year she was co-chair of the Moot Court Board. She also served as an elected representative on the Student Bar Association.



**Jordan Isern** advocates for plaintiffs in class actions and other complex litigation, with a focus on antitrust. Jordan is a graduate of Harvard Law School. There, she served as Executive Technical Editor of the Civil Rights–Civil Liberties Law Review and published several articles for the Covid-19 and the Law Series Blog.

Before joining Girard Sharp, Jordan worked for the Department of Justice, Antitrust Division, and externed for the Honorable Michael Baylson of the Eastern District of Pennsylvania. She also interned at several nonprofit legal organizations, including the Asian American Legal Defense and Education Fund and the Pennsylvania Innocence Project.

Outside of the courtroom, Jordan is an avid outdoor enthusiast. She enjoys rock climbing and has backpacked parts of the Appalachian, Continental Divide, and Pacific Crest trails.



**Kimberly Macey** advocates for clients in consumer, antitrust, and other complex civil cases.

Kimberly graduated from the University of California, Hastings in 2021. During law school, she competed on and coached multiple Moot Court teams, and during her third year, she served as Co-Chair for the UC Hastings Moot Court team.

Before law school, Kimberly worked as a legal assistant at a full-service law firm. She received her B.S. in Criminal Justice from Northern Arizona University in 2016.



**Of Counsel**

**Michael S. Danko** is a renowned trial lawyer with more than 25 years of legal experience. Mike represents individuals who have suffered catastrophic personal injuries, as well as families of wrongful death victims in cases involving product defects, defective medications and medical devices, airplane and helicopter accidents, and dangerous structures. He has tried cases in state and federal courts throughout the country and has won numerous eight-figure verdicts on behalf of his clients.



Mike represents dozens of victims of a Pacific Gas & Electric gas line explosion and serves on the Plaintiffs' Steering Committee in a California state coordinated proceeding *San Bruno Fire Cases,* JCCP No. 4648. He also serves on the Science Committee for Plaintiffs in *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2100.

In 2009, Mike won a $15 million jury verdict for a client injured by a defective aircraft part, which earned him a nomination for 2009 California Trial Lawyer of the Year by the Consumer Attorneys of California.

Mike's trial advocacy has helped bring about significant reforms and changes to corporate policies. As lead counsel in *In re Deep Vein Thrombosis Litigation,* MDL No. 1606 (N.D. Cal.), he represented more than one hundred air travelers who suffered strokes, pulmonary emboli, or heart attacks as a result of airline-induced blood clots. He developed theories of liability and proof regarding the cause of his clients' injuries that led to virtually every major air carrier advising air travelers of the risks of deep vein thrombosis and measures to mitigate those risks. Mike also represented parents of children who were injured or killed by a popular candy made by a foreign manufacturer. His work in proving that the candy's unusual ingredients and consistency made it a choking hazard resulted in the candy being removed from Costco and Albertson's stores nationwide, and helped persuade the FDA to ban the candy from further import into the United States.

Mike has been named a Northern California Super Lawyer each year since the award's inception in 2004. He is a *Lawdragon 500* finalist. In 2010, Mike was named one of the Best Lawyers in America. He is a member of the American Association for Justice, the Lawyer Pilots Bar Association and the Consumer Attorneys of California, where he serves on the board of governors. Mike received his A.B. degree from Dartmouth College, *magna cum laude*, in 1980, and earned his J.D. from the University of Virginia School of Law in 1983.



**Kristine Keala Meredith** is a trial attorney specializing in product liability litigation. Kristine served as co-lead counsel with Michael Danko representing more than one hundred air travelers who suffered strokes, pulmonary emboli, or heart attacks as a result of airline-induced blood clots in *In re Deep Vein Thrombosis Litigation*, MDL No. 1606.

Kristine served on the Law and Motion committee in *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2100, where she assisted in the successful opposition to 15 *Daubert* motions in fewer than three weeks. Before she began representing plaintiffs, Kristine worked on the national defense counsel teams for medical device manufacturers in multi-district litigation including *In re Silicone Gel Breast Implants Product Liability Litigation*, MDL No. 926, and *In re Orthopedic Bone Screw Product Liability Litigation*, MDL No. 1014. She also represented doctors and hospitals in defense of medical malpractice actions, where she worked with some of the world's leading medical experts.

In 2010, Kristine was named a Northern California Super Lawyer. She is currently an officer of the American Association for Justice and the San Mateo County Trial Lawyers Association. She is also a member of the San Francisco Trial Lawyers Association and the Consumer Attorneys of California. She is a former chair of the Minority Issues Committee of the San Francisco Bar Association Barrister Club.

Kristine obtained her B.S. with honors from the University of California at Davis and was awarded a scholarship to attend Brigham Young University's J. Reuben Clark Law School. While in law school, she was awarded the Distinguished Student Service Award and spent a semester at Howard University Law School in Washington, D.C., as a member of the faculty/student diversity exchange.

## Favorable Outcomes and Significant Recoveries

### Sexual Abuse & Women's Advocacy

*In re Pacific Fertility Center Litigation*, No. 3:18-cv-01586-JSC (N.D. Cal.). Girard Sharp represented IVF patients of Pacific Fertility Center whose eggs and embryos were damaged or destroyed in a cryopreservation tank failure. On June 11, 2021, after a three-week trial, a jury found the tank manufacturer, Chart Industries Inc., liable for a defect in the tank and for its negligent failure to recall a part that malfunctioned—a "controller" meant to monitor liquid nitrogen levels. The jury awarded more than $14 million in damages to three women who lost eggs and a married couple who lost embryos in the catastrophic March 2018 tank failure. The three women were each awarded between $2 million and $3 million, and the couple was awarded $7.2 million. Girard Sharp represents over 80 families who lost reproductive material in the tank failure.

*In re USC Student Health Center Litigation*, No. 2:18-cv-06115 (C. D. Cal.). Girard Sharp served as co-lead counsel in a class action against the University of Southern California and campus gynecologist Dr. George Tyndall on behalf of women who were sexually abused by

Tyndall during his long tenure at USC. A federal judge approved a class action settlement with USC that establishes a $215 million fund and gives every survivor a choice in how to participate. The claims process received wholehearted praise from class members for the compassionate and generous approach. The settlement also requires USC to adopt and implement procedures for identification, prevention and reporting of sexual and racial misconduct, as well as to recognize the harm done to all of Tyndall's patients.

*A.B. v. The Regents of the University of California*, No. 2:20-cv-09555-RGK-E (C.D. Cal.). Girard Sharp lawyers filed and successfully resolved a class action lawsuit against UCLA on behalf of women treated by UCLA gynecologist Dr. James Heaps. Heaps was charged with sexual battery and exploitation of patients while working as a staff gynecologist at UCLA—a position he held for almost 30 years. The UC Regents agreed to resolve the claims for $73,000,000, plus substantial injunctive-relief measures, and the District Court granted final approval of the settlement.

## Antitrust

*In re Restasis Antitrust Litigation,* No. 1:18-md-02819 (E.D.N.Y.). Girard Sharp serves as co-lead counsel in this indirect purchaser class action alleging suppression of generic competition to the dry-eye prescription drug Restasis. The plaintiffs alleged that Allergan fended off more affordable generic alternatives through a multi-faceted scheme; among other conduct, Allergan sold Restasis patent rights to the St. Regis Mohawk Tribe, which licensed them back to Allergan, which then invoked tribal sovereign immunity in response to a patent challenge. After certifying both third-party payer and consumer classes against headwinds stirred up by the First Circuit's *Asacol* decision, Girard Sharp helped secure a $30 million settlement, which is pending final approval, for the end-payer class. U.S. District Judge Nina Gershon found that Girard Sharp and its co-counsel were "extremely qualified and able to represent the certified class."

*In re Lidoderm Antitrust Litigation*, No. 14-md-02521 (N.D. Cal.). Girard Sharp lawyers were appointed co-lead counsel in a class action on behalf of end-purchasers of the prescription drug Lidoderm who alleged that two drug companies, Endo Pharmaceuticals and Teikoku Pharma, unlawfully paid a third, Watson Pharmaceuticals, to delay the launch of more affordable generic Lidocaine patches. The firm secured a $104.75 million settlement on the eve of trial.

*In re Capacitors Antitrust Litigation,* No. 3:17-md-02801-JD (N.D. Cal.). Girard Sharp serves on the plaintiffs' executive committee for the certified direct purchaser class in this MDL against a large group of defendant manufacturers that allegedly conspired to raise, fix, maintain and stabilize prices of aluminum, tantalum and film capacitors—products commonly found in computers, vehicles, smart devices and other electronics. The defendants' global conspiracy was centered in East Asia. Girard Sharp was responsible for developing the case against U.S. defendant KEMET, which ultimately agreed to pay $62 million—over 12% of non-trebled damages.

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, MDL No. 1827 (N.D. Cal.). The firm served as liaison counsel for the direct purchaser plaintiffs and certified direct purchaser class in this multidistrict antitrust litigation against makers of LCD screens alleging a far-reaching conspiracy to raise, fix, maintain and stabilize prices. The direct purchasers achieved settlements of more than

$400 million.

*In re Aggrenox Antitrust Litigation*, No. 14-md-2516 (D. Conn.). Girard Sharp served on the Plaintiffs' Executive Committee in this "pay-for-delay" litigation accusing Teva Pharmaceuticals USA, Inc. and Boehringer Ingelheim Pharmaceuticals, Inc. of illegally agreeing to keep generic Aggrenox off the market. The case settled for $54 million.

*In re Solodyn Antitrust Litigation*, No. 14-md-2503 (D. Mass.). The firm served on the Plaintiffs' Executive Committee in this action alleging that Medicis Pharmaceuticals and several generic drug manufacturers conspired to monopolize the market for the acne drug Solodyn. The case settled for over $40 million in cash.

*In re Natural Gas Antitrust Cases I, II, III and IV*, J.C.C.P. No. 4221 (Cal. Super. Ct. San Diego Cty.). Girard Sharp served on the leadership team in coordinated antitrust litigation against numerous natural gas companies for manipulating the California natural gas market. The firm helped achieve settlements of nearly $160 million.

## Securities and Financial Fraud

*In re Woodbridge Investments*, No. 2:18-cv-00103 (C.D. Cal.). Girard Sharp served as lead counsel representing investors in securities issued by the Woodbridge Group of Companies. Woodbridge and its founder Robert Shapiro operated a massive Ponzi scheme from 2012 through 2017; Shapiro is currently serving a 25-year sentence at Lompoc federal prison. Plaintiffs alleged that Comerica Bank, which serviced all the Woodbridge accounts, knew of and substantially assisted the fraud. Acting as lead counsel, Girard Sharp worked closely with the Woodbridge bankruptcy trustee and prevailed in large part against Comerica's motion to dismiss. After substantial discovery, and with class certification fully briefed, the parties (including the trustee) negotiated a $54.2 million settlement, which U.S. District Judge Dolly M. Gee approved in 2021.

*Magowski v. The Parking REIT, Inc.*, No. 24-C-19-003125; *Barene v. The Parking REIT, Inc.*, No. 24-C-19-003527 (Circuit Court for Baltimore City). Girard Sharp and co-counsel sued The Parking REIT's CEO and Chairman, Michael Shustek, along with the REIT's directors, on behalf of investors who faced a complete loss on their investments after Shustek carried out a series of alleged self-dealing transactions in connection with internalizing the company's external manager. After deposing whistleblowers, Girard Sharp coordinated negotiations among The Parking REIT, the individual defendants, plaintiffs in a separate suit in federal court in Nevada, and a potential acquirer to arrive at a settlement that provided for cash payments to the stockholders, an injection of new capital into the company, and forfeiture of Shustek's right to receive additional shares. The court described this result as "well more than adequate" as it delivered more than half the maximum potential recovery in the case.

*Daccache v. Raymond James Financial, Inc.*, No. 1:16-cb-21575-FAM (S.D. Fla.). Girard Sharp served as a member of the leadership team representing investors in various Jay Peak EB-5 Immigrant Investor Program project offerings. The investors' funds were diverted and misappropriated instead of being applied to the intended project to develop the area surrounding the Jay Peak Ski Resort. In June 2017, the court approved a settlement of $150 million for the investors.

*In re Oppenheimer Rochester Funds Group Securities Litigation*, No. 09-md-02063-JLK (D. Colo). Girard Sharp represented investors who were misled by the Oppenheimer California Municipal Bond Fund about the investment risks associated with the fund's holdings. On November 6, 2017, the Honorable John L. Kane approved a $50.75 million settlement for the investors.

*In re Sears Holdings Corporation Stockholder and Derivative Litigation*, Consolidated C.A. No. 11081-VCL (Del. Ch.). Girard Sharp served as co-lead counsel on behalf of the company in this derivative suit charging CEO and majority owner Edward S. Lampert and other directors with depriving stockholders of the full value of 266 of Sears Holdings' most valuable properties. Girard Sharp obtained a $40 million settlement for Sears Holdings Corporation in the Court of Chancery.

*In re Digex, Inc. Shareholder Litigation*, Consol. No. 18336 (Del. Ch.). Girard Sharp represented the Kansas Public Employees Retirement System, one of two institutional lead plaintiffs in this lawsuit; minority stockholders of Digex, Inc. sued to enjoin MCI WorldCom's planned acquisition of a controlling interest in Digex via a merger with Intermedia Communications, Inc. A settlement approved by the Delaware Chancery Court secured $165 million in MCI WorldCom stock and $15 million in cash for Digex shareholders, as well as non-cash benefits valued at $450 million.

*Billitteri v. Securities America, Inc.*, No. 3:09-cv-01568-F (N.D. Tex.). Girard Sharp served as lead counsel in an action against broker-dealer Securities America, Inc. and its corporate parent, Ameriprise, Inc. in connection with sales of investments in the Provident Royalties and Medical Capital investment schemes. Daniel Girard coordinated negotiations resulting in a $150 million settlement, with $80 million allocated to class plaintiffs represented by Girard Sharp and $70 million allocated to individual investors who had initiated arbitration proceedings. The settlements returned over 40% of investment losses. In approving the settlement, the court found that Girard Sharp attorneys "possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of Class Counsel throughout this litigation."

*In re Lehman Brothers Equity/Debt Securities Litigation*, No. 08-Civ-5523 (S.D.N.Y.). Girard Sharp was appointed class counsel for a certified class of retail investors in structured products sold by UBS Financial Services, Inc., following the collapse of Lehman Brothers Holdings, Inc. in the largest bankruptcy in American history. The plaintiffs alleged that UBS misrepresented Lehman's financial condition and failed to disclose that the "principal protection" feature of many of the notes depended upon Lehman's solvency. Girard Sharp negotiated a settlement that established a $120 million fund to resolve these claims.

*In re Prison Realty Securities Litigation*, No. 3:99-0452 (M.D. Tenn.). Girard Sharp served as co- lead counsel in this securities class action brought against a real estate investment trust and its officers and directors relating to a merger between Corrections Corporation of America and CCA Prison Realty Trust. The court approved a settlement for over $120 million in cash and stock.

*In re American Express Financial Advisors Securities Litigation*, No. 04-cv-01773-DAB (S.D.N.Y.). Girard Sharp served as co-lead counsel in this class action on behalf of individuals who bought financial plans and invested in mutual funds from American Express Financial Advisors. The case alleged that American Express steered its clients into underperforming "shelf

space funds" to reap kickbacks and other financial benefits. The court granted final approval of a settlement providing $100 million in cash and other relief.

*Scheiner v. i2 Technologies, Inc.*, No. 3:01-CV-418-H (N.D. Tex.). Girard Sharp represented the lead plaintiff—the Kansas Public Employees Retirement System—and served as co-lead counsel on behalf of investors in i2 Technologies. The Honorable Barefoot Sanders approved cash settlements for $88 million from the company, its officers, and its former auditor Arthur Andersen. As part of the settlement, i2 agreed to significant corporate governance reforms.

*In re Peregrine Financial Group Customer Litigation*, No. 1:12-cv-5546 (N.D. Ill.). As one of two co-lead counsel, Girard Sharp prosecuted this litigation under the Commodities Exchange Act and state law on behalf of investors who lost millions in the collapse of a commodities futures merchant. The litigation generated recoveries of more than $75 million. The court wrote that counsel "conferred an impressive monetary benefit on the Settlement Class: the funds recovered from U.S. Bank are substantial—both in absolute terms and when assessed in light of the risks of establishing liability and damages" [ECF No. 441].

*CalSTRS v. Qwest Communications*, No. 415546 (Cal. Super. Ct. S.F. Cty.). Girard Sharp represented the California State Teachers Retirement System in this opt-out securities fraud case against Qwest Communications, Inc. and certain of its officers and directors, as well as its outside auditor Arthur Andersen. The case resulted in a precedent-setting $45 million settlement for California schoolteachers.

*In re SLM Corp. Securities Litigation*, No. 08-Civ-1029-WHP (S.D.N.Y). Girard Sharp served as lead counsel representing investors of SLM Corporation who alleged Sallie Mae, the leading provider of student loans in the United States, misled the public about its financial performance in order to inflate the company's stock price. After achieving nationwide class certification, Girard Sharp negotiated a settlement that established a $35 million fund to resolve the investors' claims.

*In re Winstar Communications Securities Litigation*, No. 01 Civ. 11522 (S.D.N.Y.). Girard Sharp represented Allianz of America, Inc., Fireman's Fund and other large private institutional investors against Grant Thornton and other defendants on claims arising out of plaintiffs' investments in Winstar Communications, Inc. The firm achieved a settlement on the eve of trial that provided a recovery rate over 30 times higher than what class members received in a related class action. After deduction of attorneys' fees, the fund returned 78.5% of potentially recoverable losses.

*In re Oxford Tax Exempt Fund Securities Litigation*, No. WMN-95-3643 (D. Md.). Girard Sharp served as co-lead counsel in class and derivative litigation brought on behalf of a real estate limited partnership with assets of over $200 million. The parties reached a settlement providing for exempt issuance of securities under section 3(a)(10) of the Securities Act of 1933, public listing of units, and additional benefits valued at over $10 million.

*Calliott v. HFS, Inc.*, No. 3:97-CV-0924-L (N.D. Tex.). Girard Sharp intervened on behalf of an institutional client in this securities class action arising out of the bankruptcy of Amre, Inc., a seller of home remodeling and repair services. After being designated lead counsel under the Private Securities Litigation Reform Act, Girard Sharp negotiated and obtained court approval of

settlements totaling $7.3 million.

*In re Towers Financial Corporation Noteholders Litigation*, MDL No. 994 (S.D.N.Y.). This class action was brought against promoters and professionals linked to a failed investment scheme that the SEC described at the time as being the "largest Ponzi scheme in U.S. history." The case resulted in $6 million in partial settlements and a $250 million judgment entered against four senior Towers executives. Girard Sharp served as liaison counsel and as a Plaintiffs' Executive Committee member. The court stated that "class counsel—particularly plaintiffs' liaison counsel, Daniel Girard—has represented the plaintiffs diligently and ably in the several years that this litigation has been before me." 177 F.R.D. 167, 171 (S.D.N.Y. 1997).

## Deceptive Trade Practices

*In re Hyundai and Kia Horsepower Litigation*, No. 02CC00287 (Cal. Super. Ct. Orange Cty.). Girard Sharp served as lead counsel in this coordinated nationwide class action against Hyundai for falsely advertising the horsepower ratings of more than 1 million vehicles over a ten-year period. The case was aggressively litigated on both sides over several years. In all, over 850,000 Hyundai vehicle owners received notice of the settlement, which was valued at $125 million and which provided cash and other benefits to class members.

*In re Chase Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09-2032 (N.D. Cal.). Girard Sharp and several other firms led this nationwide class action alleging deceptive marketing and loan practices by Chase Bank USA, N.A. After certifying a nationwide class, the Honorable Maxine M. Chesney granted final approval of a $100 million settlement benefiting Chase cardholders.

*In re Hyundai and Kia Fuel Economy Litigation*, No. 2:13-ml-2424 (C.D. Cal.). In a lawsuit alleging false advertising in connection with the fuel efficiency of various Hyundai and Kia models, the firm served as liaison counsel and in that capacity regularly reported to the court and coordinated a wide-ranging discovery process. The case resulted in a nationwide class action settlement with an estimated value of up to $120 million.

*In re Providian Credit Card Cases*, J.C.C.P. No. 4085 (Cal. Super. Ct. San Francisco Cty.). Girard Sharp served as court-appointed co-lead counsel in this nationwide class action brought on behalf of Providian credit-card holders. The suit alleged that Providian engaged in unlawful, unfair and fraudulent business practices in connection with marketing and assessing fees for its credit cards. The Honorable Stuart Pollack approved a $105 million settlement, plus injunctive relief—one of the largest class action recoveries in consumer credit-card litigation.

*In re MCI Non-Subscriber Telephone Rates Litigation*, MDL No. 1275 (S.D. Ill.). Girard Sharp served as co-lead counsel and recovered an $88 million settlement for MCI telephone subscribers who were charged rates and surcharges applicable to non-subscribers instead of the lower advertised rates. In approving the settlement, the Honorable David Herndon highlighted "the complexity of the issues involved; the vigorous opposition Plaintiffs' counsel faced from sophisticated and well-funded Defendants represented by skilled counsel; the achievement of a very large cash settlement fund under these conditions"; and the "design and implementation of a computerized claims process,

which appears to have been highly successful." Daniel Girard argued the key motions in the case and designed the claim procedure.

*Skold v. Intel Corp.*, No. 1-05-CV-039231 (Cal. Super. Ct., Santa Clara Cty.). Girard Sharp represented Intel consumers through a decade of hard-fought litigation, ultimately certifying a nationwide class under an innovative "price inflation" theory and negotiating a settlement that provided refunds and $4 million in cy pres donations. In approving the settlement, Judge Peter Kirwan wrote: "It is abundantly clear that Class Counsel invested an incredible amount of time and costs in a case which lasted approximately 10 years with no guarantee that they would prevail. . . . Simply put, Class Counsel earned their fees in this case."

*Steff v. United Online, Inc.*, No. BC265953, (Los Angeles Super. Ct.). This nationwide class action was brought against NetZero, Inc. and its parent, United Online, Inc. by former NetZero customers. Plaintiffs alleged that defendants falsely advertised their internet service as unlimited and guaranteed for a specific period of time. The Honorable Victoria G. Chaney of Los Angeles Superior Court granted final approval of a settlement that provided full refunds to customers whose services were cancelled, and which also placed restrictions on Defendants' advertising.

*Stoddard v. Advanta Corp.*, No. 97C-08-206-VAB (Del. Super. Ct.). This nationwide class action was brought on behalf of cardholders who were promised a fixed APR for life in connection with balance transfers, but whose APR was then raised pursuant to a notice of change in terms. The Honorable Vincent A. Bifferato appointed the firm as co-lead counsel and approved a $7.25 million settlement.

*Khaliki v. Helzberg's Diamond Shops, Inc.*, No. 11-0010-CV-W-NKL (W.D. Mo.). Girard Sharp and co-counsel represented consumers who alleged deceptive marketing in connection with the sale of princess-cut diamonds. The court approved a favorable settlement, recognizing "that Class Counsel provided excellent representation" and obtained "a favorable result relatively early in the case, which benefits the Class while preserving judicial resources." The court further recognized that "Class Counsel faced considerable risk in pursuing this litigation on a contingent basis, and obtained a favorable result for the class given the legal and factual complexities and challenges presented."

*In re Tyson Foods Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. RDB- 08-1982 (D. Md.). Girard Sharp served as Class Counsel on behalf of consumers who purchased chicken products misleadingly labeled as having been "raised without antibiotics." After discovery, counsel negotiated a cash settlement that required Tyson Foods to pay class members and make substantial cy pres contributions to food banks.

## Defective Products

*Bentley v. LG Electronics U.S.A., Inc.*, No. 2:19-cv-13554-MCA-MAH (D.N.J.). Girard Sharp served as co-lead counsel representing consumers who paid premium prices for LG refrigerators prone to stop cooling, resulting in spoiled food and medicine, due to a malfunctioning linear compressor part. The plaintiffs reached a settlement under which every refrigerator owner could receive several thousand dollars in compensation, and those without documentation could recover

up to $450. The class members also received a five-year extended warranty covering the full cost of repairs for cooling failures. In approving the settlement, U.S. District Judge Madeline Cox Arleo noted that "the settlement is available to over a million and a half Americans who purchased allegedly defective refrigerators; there is absolutely no -- there is no cap on the award that a claimant can get. Claimants will be made whole, plus the additional warranty."

*Weeks v. Google LLC*, No. 18-cv-00801-NC (N.D. Cal.). Girard Sharp served as co-lead counsel representing owners of Google Pixel and Pixel XL smartphones. The lawsuit alleged that a defect in the Google phones caused the microphones to fail; as a result, users were unable to make calls, dictate texts, record audio, search the web with voice command, or use the advertised Google Assistant feature. On December 6, 2019, the court approved a $7.25 million settlement for the class that it deemed "excellent."

*In re Nexus 6P Products Liability Litigation*, No. 5:17-cv-02185-BLF (N.D. Cal). Girard Sharp was appointed as co-lead counsel in a class action alleging that Nexus 6P smartphones suffer from a defect that renders the phones inoperable through an endless boot-loop cycle and an accelerated battery drain that causes the phones to shut off prematurely. On November 11, 2019, the Honorable Beth L. Freeman approved a $9.75 million class settlement, stating in part that "Class counsel has extensive experience representing plaintiffs and classes in complex litigation and consumer class actions.… [T]he quality of their work is reflected in the results achieved for the class." 2019 WL 6622842, at *10, *12 (N.D. Cal. Nov. 12, 2019).

*In re iPod Cases*, JCCP No. 4355 (Cal. Super. Ct. San Mateo Cty.). Girard Sharp, as court-appointed co-lead counsel, negotiated a settlement that provided warranty extensions, battery replacements, cash payments, and store credits for class members who experienced battery failure. In approving the settlement, the Honorable Beth L. Freeman wrote that Girard Sharp attorneys are "extremely well qualified" and negotiated a "significant and substantial benefit" for the class.

*Sugarman v. Ducati North America, Inc.*, No. 5:10-cv-05246-JF (N.D. Cal.). The firm served as class counsel on behalf of owners of Ducati motorcycles whose fuel tanks degraded and deformed due to incompatibility with the motorcycles' fuel. In January 2012, the Honorable Jeremy D. Fogel approved a settlement that provided an extended warranty and repairs, commenting: "The Court recognizes that class counsel assumed substantial risks and burdens in this litigation. Representation was professional and competent; in the Court's opinion, counsel obtained an excellent result for the class." 2012 WL 113361, at *6 (N.D. Cal. Jan. 12, 2012).

*Parkinson v. Hyundai Motor America*, No. CV 8:06-0345 (C.D. Cal.). Girard Sharp served as class counsel in this class action involving allegations that the flywheel and clutch system in certain Hyundai vehicles was defective. After achieving nationwide class certification, Girard Sharp negotiated a settlement that provided from 50% to 100% in reimbursement to class members for their repairs, depending on their vehicle's mileage at the time of repair. The settlement also provided full reimbursement for rental car expenses for class members who rented a vehicle while flywheel or clutch repairs were being performed. After approving the settlement, the court wrote, "Perhaps the best barometer of . . . the benefit obtained for the class . . . is the perception of class members themselves. Counsel submitted dozens of letters from class members sharing their joy, appreciation, and relief that someone finally did something to help them." 796 F. Supp. 2d 1160, 1175 (C.D. Cal. 2010).

*In re Medtronic, Inc. Implantable Defibrillators Products Liability Litigation*, MDL No. 1726 (D. Minn.). Girard Sharp served on the discovery and law committees and performed briefing, discovery, and investigative work in this lawsuit that followed a February 2005 recall of certain models of Medtronic implantable cardioverter defibrillator devices. The controversy was resolved for $75 million.

*Browne v. American Honda Motor Co., Inc.*, No. CV 09-06750 (C.D. Cal.). Girard Sharp served as co-lead counsel representing plaintiffs who alleged that about 750,000 Honda Accord and Acura TSX vehicles had brake pads that wore out prematurely. Girard Sharp negotiated, and the court approved, a settlement valued at $25 million that provided reimbursements to class members and made improved brake pads available.

*In re General Motors Dex-Cool Cases*, No. HG03093843 (Cal. Super Ct. Alameda Cty.). These class actions alleged that General Motors' Dex-Cool engine coolant damaged certain vehicles' engines and formed a rusty sludge that caused vehicles to overheat. After consumer classes were certified in both Missouri and California, General Motors agreed to pay cash to class members nationwide. On October 27, 2008, the California court granted final approval of the settlement.

*Roy v. Hyundai Motor America*, No. SACV 05-483-AHS (C.D. Cal.). Girard Sharp served as court-appointed co-lead counsel in this nationwide class action alleging a defect in the air-bag system in Hyundai Elantra vehicles. Girard Sharp helped negotiate a settlement under which Hyundai agreed to repair the air-bag systems in the vehicles it sold and leased to class members. Hyundai also agreed to reimburse class members for transportation expenses and administer an alternative dispute resolution program for trade-ins and buy-backs. In approving the settlement, the Honorable Alicemarie H. Stotler described the settlement as "pragmatic" and a "win-win" for all concerned.

## Privacy Violations

*In re Lenovo Adware Litigation*, MDL No. 2624 (N.D. Cal.). Girard Sharp is co-lead counsel for a class of computer purchasers whose online activities were surreptitiously monitored by pre-installed software. The undisclosed spyware degraded the computers' performance, operating continuously in the background as it analyzed browsing activity and injected ads into visited webpages. The Honorable Ronald M. Whyte certified a nationwide indirect purchaser class for trial. 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016). After the defendants agreed to a non-reversionary cash settlement, Girard Sharp helped design a claims process that allowed each participating class member to choose between (1) completing a short online claim form to receive an estimated $40 cash payment for every purchased computer, or (2) submitting receipts or other documentation to recover sums actually expended as a result of the spyware being on the computer, up to $750. The Honorable Haywood S. Gilliam granted final approval of the settlement, *see* 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019), and Girard Sharp continues to supervise distribution of the fund.

*Corona v. Sony Pictures Entertainment*, No. 2:14-cv-09600-RGK-SH (C.D. Cal.). Girard Sharp served as co-lead counsel in a class action brought on behalf of 15,000 current and former employees of Sony Pictures Entertainment following a cyberattack attributed to North Korean

intelligence as retaliation for release of the film *The Interview*. In April 2016, the court approved a class settlement that reimbursed actual losses in full and provided extended credit monitoring—a structure adopted in many subsequent data breach settlements.

*In re Yahoo Mail Litigation*, No. 5:13-cv-04980-LHK (N.D. Cal.). Girard Sharp represented non-Yahoo email subscribers whose emails with Yahoo email subscribers were illegally intercepted and scanned by Yahoo. The court, in a widely-cited opinion, certified a nationwide class for injunctive-relief purposes. 308 F.R.D. 577 (N.D. Cal. 2015). With cross-motions for summary judgment fully briefed, the parties settled. Yahoo agreed to restructure its email delivery architecture to ensure that incoming and outgoing email would no longer be intercepted while in transit—bringing its email scanning practices into compliance with applicable law—and to disclose its email scanning practices on its website. The court noted that "Class Counsel achieved these benefits only after several years of litigation," which was conducted "in an effective and cost-efficient manner." 2016 WL 4474612, at *10 (N.D. Cal. Aug. 25, 2016).

*In re The Home Depot, Inc. Customer Data Security Breach Litigation*, MDL No. 2583 (N.D. Ga.). The Honorable Thomas W. Thrash, Jr. appointed Girard Sharp to the Plaintiffs' Executive Committee in this MDL arising from a breach of Home Depot customers' credit and debit card information. Under the court-approved settlement, class members with documented claims could receive up to $10,000, and the defendant paid an additional $6.5 million to provide 18 months of identity monitoring services for the benefit of class members. 2016 WL 6902351, at *4 (N.D. Ga. Aug. 23, 2016). Judge Thrash described the settlement as "an outstanding result for the Class in a case with a high level of risk," *id*. at *5, and further noted that "Class Counsel obtained an exceptional result . . . ." 2017 WL 9605208, at *1 (N.D. Ga. Aug. 1, 2017).

*In re Target Corp. Customer Data Security Breach Litigation*, MDL No. 2522 (D. Minn.). Girard Sharp served on the Plaintiffs' Steering Committee representing consumers whose personal and financial information was compromised in a breach of Target's point-of-sale systems. After plaintiffs defeated Target's motion to dismiss, *see* 66 F. Supp. 3d 1154 (D. Minn. 2014), the parties agreed to a class settlement that was approved by the MDL court and upheld on appeal, *see* 892 F.3d 968 (8th Cir. 2018). The settlement requires changes to Target's information security practices and delivered cash recoveries to class members under a simplified claim procedure.

*In re Experian Data Breach Litigation*, No. 15-01592 (C.D. Cal.). Girard Sharp served on the Plaintiffs' Steering Committee in this litigation arising out of a breach of Experian's electronic systems than compromised names, addresses, and social security numbers of T-Mobile subscribers. The Honorable Andrew J. Guilford in 2019 granted final approval of a settlement that established a $22 million fund and provided identity theft protection services for the benefit of class members, commenting in part: "You folks have truly done a great job, both sides. I commend you."

*In re Adobe Systems, Inc. Privacy Litigation*, No. 5:13-cv-05226-LHK (N.D. Cal.). Girard Sharp was appointed as lead counsel in this consolidated litigation on behalf of consumers asserting privacy and consumer fraud claims arising from a 2013 data breach. Girard Sharp obtained a pivotal ruling when the court denied Adobe's motion to dismiss for lack of standing, ruling that the Supreme Court's decision in *Clapper v. Amnesty International USA*, 133 S. Ct. 1138 (2013), did not change existing standing jurisprudence. 66 F. Supp. 3d 1197 (N.D. Cal. 2014). Before this ruling, many data breach defendants had obtained dismissals for lack of standing based on *Clapper*. The *Adobe* ruling has been followed by a number of courts, including the Seventh Circuit Court of

Appeals in *Remijas v. Neiman Marcus Group, LLC*. 794 F.3d 688, 693–94 (7th Cir. 2015).

***Prather v. Wells Fargo Bank, N.A.***, No. 17-cv-00481 (N.D. Ill.). Girard Sharp served as co-lead counsel in an action alleging that Wells Fargo used an automatic telephone dialing system to repeatedly call the cellular phone numbers of persons with no prior affiliation with Wells Fargo. On December 10, 2019, the Honorable Manish S. Shah of the Northern District of Illinois granted final approval of a settlement that established a fund of $17,850,000 for class members.

***Whitaker v. Health Net of California, Inc.***, No. 2:11-cv-00910-KJM-DAD (E.D. Cal.); ***Shurtleff v. Health Net of California, Inc.***, No. 34-2012-00121600-CU-CL (Cal. Super Ct. Sacramento Cty.). Girard Sharp served as co-lead counsel in this patient privacy action. On June 24, 2014, the court granted final approval of a settlement that provided class members with credit monitoring, established a $2 million fund to reimburse consumers for related identity theft incidents, and required material upgrades to and monitoring of Health Net's information security protocols.

***In re Sony BMG CD Technologies Litigation***, No.1:05-cv-09575-NRB (S.D.N.Y.). Girard Sharp served as co-lead counsel for a class of consumers who alleged that Sony BMG incorporated "Digital Rights Management" software into its music CDs, violating the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and rendering the consumers' computers vulnerable to viruses and spyware. The firm negotiated a settlement that required Sony BMG to promptly recall all affected CDs and provide "clean" CDs and cash to class members.

***In re Countrywide Financial Corp. Customer Data Security Breach Litigation***, MDL No. 1988 (W.D. Ky.). Girard Sharp served on the Plaintiffs' Executive Committee representing a class of millions of actual and potential customers of Countrywide whose personal information was stolen by a former Countrywide employee and then sold to other mortgage lenders. The class settlement approved by the court provided for free credit monitoring, reimbursement of out-of-pocket expenses incurred as a result of the theft, and reimbursement of up to $50,000 per class member for identity theft losses.

***Smith v. Regents of the University of California, San Francisco***, No. RG-08-410004 (Cal. Super Ct. Alameda Cty.). Girard Sharp represented a patient who alleged that UCSF's disclosure of its patients' medical data to outside vendors violated California's medical privacy law. The firm succeeded in negotiating improvements to UCSF's privacy procedures on behalf of a certified class of patients of UCSF Medical Center. In approving the stipulated permanent injunction, the Honorable Stephen Brick found that "Smith has achieved a substantial benefit to the entire class and the public at large."

## Other Consumer Protection Matters

***Spegele v. USAA Life Insurance Co.***, No. 5:17-cv-967-OLG (W.D. Tex.). After obtaining nationwide class certification under Texas law, Girard Sharp and co-counsel reached a $90 million settlement of claims that USAA Life Insurance systematically overcharged policyholders under their policies' "cost of insurance" terms. The settlement was approved as fair, reasonable, and adequate in 2021 and benefited owners of 122,000 universal life insurance policies in effect since March 1, 1999.

*Larson v. John Hancock Life Insurance Company (U.S.A.)*, No. RG16813803 (Cal. Super. Ct. Alameda Cty.). Girard Sharp served as liaison counsel in this certified class action on behalf of universal life insurance policyholders alleging John Hancock overcharged more than 100,000 of its insureds, depriving them of the full value of the premiums they paid over time. On May 8, 2018, the Honorable Brad Seligman granted final approval of a $59 million settlement.

*In re America Online Spin-Off Accounts Litigation*, MDL No. 1581 (C.D. Cal.). Girard Sharp served as court-appointed co-lead counsel in this nationwide class action on behalf of America Online subscribers who were billed for a second account without their knowledge or consent. The litigation settled for $25 million and changes in AOL's billing and account practices.

*Mitchell v. American Fair Credit Association*, No. 785811-2 (Cal. Super. Ct. Alameda Cty.); *Mitchell v. Bankfirst, N.A.*, No. C-97-1421-MMC (N.D. Cal.). This class action was brought on behalf of California members of the American Fair Credit Association (AFCA). Plaintiffs alleged that AFCA operated an illegal credit repair scheme. The Honorable James Richman certified the class and appointed the firm as class counsel. In February 2003, the Honorable Ronald Sabraw of Alameda County Superior Court and the Honorable Maxine Chesney of the Northern District of California granted final approval of settlements valued at over $40 million.

*In re Mercedes-Benz Tele Aid Contract Litigation*, MDL No. 1914, CV No. 07-2720-DRD (D.N.J.). Girard Sharp served as co-lead class counsel on behalf of consumers whose vehicles' navigation systems were on the verge of becoming obsolete. Counsel obtained nationwide class certification before negotiating a settlement valued at up to $50 million. In approving the settlement, the court acknowledged that the case "involved years of difficult and hard-fought litigation by able counsel on both sides" and that "the attorneys who handled the case were particularly skilled by virtue of their ability and experience." 2011 WL 4020862, at *4, *8 (D.N.J. Sept. 9, 2011).

*In re LookSmart Litigation*, No. 02-407778 (Cal. Super. Ct. San Francisco Cty.). This nationwide class action was brought against LookSmart, Ltd. on behalf of consumers who paid an advertised "one time payment" to have their websites listed in LookSmart's directory, only to be charged additional fees to continue service. The court granted final approval of a class settlement valued at approximately $20 million that provided cash and other benefits.

*In re America Online, Inc. Version 5.0 Software Litigation*, MDL No. 1341 (S.D. Fla.). Girard Sharp served as co-lead counsel in this MDL involving 45 centralized actions. The case alleged violations of state consumer protection statutes, the Computer Fraud and Abuse Act, and federal antitrust laws arising from AOL's distribution of its Version 5.0 software upgrade. The Honorable Alan S. Gold granted final approval of a $15.5 million settlement.

*In re PayPal Litigation*, No. C-02-1227-JF (PVT) (N.D. Cal.). Girard Sharp served as co-lead counsel in this nationwide class action alleging violations of California consumer protection statutes and the Electronic Funds Transfer Act (EFTA). Plaintiffs alleged that PayPal unlawfully restricted access to consumers' PayPal accounts. On September 24, 2004, Judge Fogel granted final approval of a settlement valued at $14.35 million in cash and returned funds, plus injunctive relief to ensure compliance with the EFTA.

*Powers Law Offices, P.C. v. Cable & Wireless USA, Inc.*, No. 99-CV-12007-EFH (D. Mass). Girard Sharp prosecuted this class action on behalf of cable and wireless subscribers who were overcharged for recurring fees. The court granted final approval of an $8 million settlement, and the bankruptcy court approved a 30% distribution from the unsecured creditors' fund of bankruptcy liquidation proceeds.

*Lehman v. Blue Shield of California*, No. CGC-03-419349 (Cal. Super. Ct. San Francisco Cty.). In this class action charging Blue Shield with having illegally modified the risk-tier structure of its individual and family health care plans, Girard Sharp negotiated a $6.5 million settlement on behalf of current and former Blue Shield subscribers in California. The Honorable James L. Warren granted final approval of the settlement in March 2006.

*Telestar v. MCI, Inc.*, No. C-05-Civ-10672-JGK (S.D.N.Y). This class action was brought on behalf of MCI commercial subscribers who were charged both interstate and intrastate fees for the same frame relay on prorate line service during the same billing period. On April 17, 2008, the Honorable John G. Koeltl approved a favorable cash settlement.

*Wixon v. Wyndham Resort Development Corp.*, No. C-07-02361 JSW (BZ) (N.D. Cal.). Girard Sharp served as class and derivative counsel in this litigation against a timeshare developer and the directors of a timeshare corporation for violations of California law. Plaintiffs alleged that the defendants violated their fiduciary duties by taking actions for the financial benefit of the timeshare developer to the detriment of the owners of timeshare interests. On September 14, 2010, the district court approved a settlement of the derivative claims.

*Berrien v. New Raintree Resorts, LLC*, No. CV-10-03125 CW (N.D. Cal.); *Benedict v. Diamond Resorts Corporation*, No. CV 12-00183-DAE (D. Hawaii). Girard Sharp pursued these actions on behalf of timeshare owners, challenging the imposition of unauthorized "special assessment" fees. The court in each case approved a favorable settlement of the claims asserted on behalf of class members who were charged the fee.

*Allen Lund Co., Inc. v. AT&T Corporation*, No. C 98-1500-DDP (C.D. Cal.). This class action was brought on behalf of small businesses whose long-distance service was switched to Business Discount Plan, Inc. The Honorable Dean D. Pregerson appointed Girard Sharp as class counsel, and thereafter approved a settlement providing full cash refunds and free long-distance telephone service.

*Mackouse v. The Good Guys – California, Inc.*, No. 2002-049656 (Cal. Super Ct. Alameda Cty.). This nationwide class action against The Good Guys and its affiliates alleged violations of the Song-Beverly Consumer Warranty Act and other California consumer protection laws. Plaintiff alleged that The Good Guys failed to honor contracts that it offered for sale to customers in exchange for protection of a purchase after the manufacturer's warranty expired. On May 9, 2003, the Honorable Ronald M. Sabraw granted final approval of a settlement providing cash refunds or services at a class member's election.

*In re H&R Block Express IRA Litigation*, MDL No. 1786 (W.D. Mo.). Girard Sharp served as co-lead counsel in this MDL involving H&R Block's marketing and sale of its "Express IRA" investment products. The firms negotiated a settlement in coordination with the New York Attorney General that delivered more than $19 million in cash to class members—resulting in a full

recovery for consumers—as well as non-cash benefits entitling Express IRA holders to convert their investments to alternative IRAs with lower fees.

## Mass Tort

*In re USC Student Health Center Litigation*, No. 2:18-cv-04258-SVW-GJS (C.D. Cal.). Girard Sharp served as co-lead counsel for a class of women who alleged they were sexually assaulted or molested by a USC gynecologist. The court in February 2020 approved a settlement for $215 million that also secured comprehensive injunctive relief at the university.

*In re Actos (Pioglitazone) Products Liability Litigation*, MDL No. 2299 (W.D. La.). Girard Sharp lawyers were appointed to the Plaintiffs' Steering Committee and served on the *Daubert* and Legal Briefing Committees in this MDL. A $2.37 billion global settlement was achieved.

*In re Yasmin and Yaz (Drospirenone) Marketing, Sales, Practices and Products Liability Litigation*, MDL No. 2385 (S.D. Ill.). Girard Sharp lawyers were appointed to the Plaintiffs' Steering Committee and served as Co-Chair of the Plaintiffs' Law and Briefing Committee in this MDL that produced settlements worth approximately $1.6 billion.

*In re Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL No. 2385 (S.D. Ill.). Girard Sharp lawyers were appointed to the Plaintiffs' Steering Committee in mass tort litigation that culminated in settlements worth approximately $650 million.

## Government Reform

*Paeste v. Government of Guam*, No. 11-cv-0008 (D. Guam) (Marshall, J.). Girard Sharp and co-counsel served as class counsel in litigation against the Government of Guam on behalf of Guam taxpayers for chronic late payment of income tax refunds. After obtaining certification of a litigation class, the plaintiffs prevailed at summary judgment and obtained a permanent injunction reforming Guam's administration of tax refunds. The Ninth Circuit affirmed the injunction. 798 F.3d 1228 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2508 (2016).

*Ho v. San Francisco Unified School District*, No. C-94-2418-WHO (N.D. Cal.). This civil rights action was brought on behalf of a certified class of San Francisco public school students of Chinese descent to terminate racial and ethnic quotas imposed under a 1983 desegregation consent decree. *See Ho v. San Francisco Unified Sch. Dist.*, 965 F. Supp. 1316 (N.D. Cal. 1997), *aff'd*, 147 F.3d 854 (9th Cir. 1998); *see also* 143 Cong. Rec. S6097, 6099 (1997) (statement of Senator Hatch noting testimony of a class representative before the Senate Judiciary Committee).

# EXHIBIT 4

# SAUDER | SCHELKOPF
## Attorneys at Law

Telephone: 888.711.9975
Facsimile: 610.421.1326
1109 Lancaster Avenue
Berwyn, PA 19312
www.sauderschelkopf.com

## Attorneys

Joseph G. Sauder

Matthew D. Schelkopf

Lori G. Kier

Joseph B. Kenney

Alice M. Elmer

## Practice Areas

Automobile Defects and False Advertising

Consumer Fraud Class Actions

Sexual Misconduct and Gender Discrimination

Employee Rights Class Actions

General Complex Litigation

## Case Highlights

# Joseph G. Sauder, Partner



Joseph G. Sauder handles complex cases on behalf of individuals, sexual misconduct victims, consumers, small businesses and employees. Mr. Sauder currently serves as court appointed lead counsel in state and federal courts across the country. He has successfully litigated cases against some of the largest companies in the world.

*The Legal Intelligencer* named Mr. Sauder in its [2020 Pennsylvania Trailblazers](#) list recognizing 31 lawyers who "have taken extra measures to contribute to positive outcomes . . . and who are truly agents of change." *The Legal* highlights Joe's innovative work on advocacy as class counsel in large institutional sex abuse cover-ups, women's, and children's rights. Since 2012, Mr. Sauder has been selected by the National Trial Lawyers Association as one of the Top 100 Trial Lawyers in Pennsylvania. Since 2011, Mr. Sauder has been selected as a Pennsylvania SuperLawyer, a distinction held by the top 5% of attorneys in PA, as chosen by their peers and through the independent research of Law & Politics. The American Lawyer Media, publisher of The Legal Intelligencer and the Pennsylvania Law Weekly, named Mr. Sauder as one of the "Lawyers on the Fast Track" a distinction that recognized thirty-five Pennsylvania attorneys under the age of 40 who show outstanding promise in the legal profession and make a significant commitment to their community.

From 1998 to 2003, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he tried hundreds of criminal cases to verdict. Mr. Sauder received his Bachelor of Science, magna cum laude in Finance from Temple University in 1995. He graduated from Temple University School of Law in 1998, where he was a member of Temple Law Review.

Mr. Sauder is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the District of New Jersey and the District of Colorado. Mr. Sauder currently serves as a lead counsel in numerous class actions related to product, construction and automotive defect cases pending throughout the country.

# Matthew D. Schelkopf, Partner

Matthew D. Schelkopf has extensive trial and courtroom experience throughout the United States, with an emphasis on class actions involving automotive defects, consumer protection, defective products and mass torts litigation.

*The Legal Intelligencer* named Mr. Schelkopf in its 2020 Pennsylvania Trailblazers list recognizing 31 lawyers who "have taken extra measures to contribute to positive outcomes . . . and who are truly agents of change." *The Legal* highlights Matthew's work on behalf of clients who have been victimized by corporations. Since 2010, Mr. Schelkopf has been selected by Pennsylvania Super Lawyers as a Rising Star (a distinction held by the top 2.5% of attorneys in PA) and then a Pennsylvania Super Lawyer, as chosen by their peers and through the independent research of Law & Politics. In 2012, The American Lawyer Media, publisher of The Legal Intelligencer and the Pennsylvania Law Weekly, named Mr. Schelkopf as one of the "Lawyers on the Fast Track" a distinction that recognized thirty-five Pennsylvania attorneys under the age of 40 who show outstanding promise in the legal profession and make a significant commitment to their community. Mr. Schelkopf was also selected as a Top 40 under 40 by the National Trial Lawyers in 2012-2015.

Mr. Schelkopf began his legal profession as a criminal prosecutor with the District Attorney's Office of York County. He quickly progressed to Senior Deputy Prosecutor where he headed a trial team responsible for approximately 300 felony and misdemeanor cases each quarterly trial term.

In 2004, Mr. Schelkopf then associated with a suburban Philadelphia area law firm, litigating civil matters throughout Pennsylvania and New Jersey. In 2006, he was co-counsel in a Philadelphia County trial resulting in a $30,000,000.00 jury verdict in favor of his clients – the largest state verdict recorded for that year. Mr. Schelkopf currently serves as a lead and co-lead counsel in numerous class actions related to product and automotive defect cases pending throughout the country.

Outside of the office, Mr. Schelkopf enjoys spending time with his family, mountain and road biking, skiing and restoring classic automobiles. Three of his auto restorations have been featured in nationally circulated automotive publications.

# Lori Kier, Counsel



With a broad litigation background, Lori G. Kier serves as Of Counsel to the firm. For nearly 25 years, Ms. Kier served as senior attorney at the U.S. Environmental Protection Agency in Philadelphia. Prior to her time at EPA, Ms. Kier was a staff attorney at the U.S. Court of Appeals for the Third Circuit and a Law Clerk to U.S. District Judge Fred I. Parker (D. Vt.).

At EPA, Ms. Kier developed and prosecuted enforcement cases (administrative and judicial) under multiple state and federal environmental statutes, and participated in all aspects of litigation, both as primary counsel and in support of the U.S. Department of Justice. She led various teams in developing enforcement initiatives, most prominently in the areas of municipal and industrial stormwater. Other statutory areas covered included: Clean Water Act, Emergency Planning and Community Right-to-Know Act, Federal Insecticide, Fungicide, and Rodenticide Act National Historic Preservation Act, Resource Conservation and Recovery Act, Safe Drinking Water Act, and Toxic Substances Control Act.

As an active participant in her local community, Ms. Kier is currently a member of the East Goshen Township Zoning Hearing Board and previously served on the Township's Planning Commission. She serves as a Democratic Committee Person and has also been a mock trial coach for two local high schools as well as a judge for high school, college, and law school mock trial and moot court competitions

# Joseph B. Kenney, Associate



Joseph B. Kenney has experience representing consumers in class actions involving defective products, automotive defects, false and misleading advertising, and other consumer protection litigation.

Joe received his J.D., *cum laude*, from Villanova University School of Law in 2013. He was elected as a Managing Editor of Student Works for the Jeffrey S. Moorad Journal of Sports Law for his third year of law school. As a staff writer, his comment was selected for publication in the Spring 2012 Volume of the Journal. Prior to law school, Joe attended Ursinus College where he was a member of the men's varsity soccer team.

Joe is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey. In 2017 and 2018, Joe was distinguished as a Pennsylvania SuperLawyer Rising Star.

# Alice M. Elmer,
## Associate



Alice is a graduate of Temple University James E. Beasley School of Law, with a Certificate in Business Law. She was a Law & Public Policy Scholar and a Weisman Fellow. Prior to working at Sauder Schelkopf, Alice interned with the Office of Attorney General in Pennsylvania, and with the U.S. Attorney's Office in Washington, D.C. She has studied economics through the lens of law, written on the topics of Federal student loan debt and elder abuse financial frauds, and completed projects analyzing housing issues local to Philadelphia with the support of City Council and the Sheller Center for Social Justice. Valuing Temple's vibrant scholarly community, she held leadership positions with Outlaw, the Asian Pacific American Law Student Association, and the Women's Law Caucus. Out of a commitment to service, she participated in the Employment Advocacy Project, the Name Change Project, and the Pro Se Asylum Clinic—all experiences where she helped clients.

Alice holds a B.A. degree in Art and Gender Studies from the Johnston Center for Integrative Studies at the University of Redlands. As an undergraduate student, she studied in Prague and in Paris, where she focused on photography and European culture. Prior to law school, Alice worked in book publishing for five years. She learned the value of good design and cultivated an editor's attention to detail. Driven to create great change in people's lives, she has since harnessed her experiences in writing and storytelling for the study of law.

Outside of work, Alice enjoys cooking, the outdoors, and traveling as often as possible.

# Practice Area: Consumer Fraud Class Actions

The attorneys at Sauder Schelkopf have prosecuted and resolved numerous consumer fraud class actions on behalf of millions of consumers against nationally known corporations for deceptive and unfair business practices. Sauder Schelkopf's experience includes the following types of consumer fraud class action cases:

**_Automotive Defects_ –** Automobiles are a major expense and consumers expect them to provide safe and reliable transportation for themselves and their family and friends. Some vehicles, however, may contain manufacturing or design defects that can pose a danger to our families and others on the road. Even if these defects do not create a potential safety issue, they might result in costly repairs to consumers.

**_Construction Defects_ –** When consumers purchase a home, they expect the plumbing and other basic functions of the home to work without fail. Certain companies, however, are known to cut corners when designing and manufacturing their products. When an essential component of the home fails, it can lead to costly repair bills, damage to the surrounding property in the home, and high homeowner's deductibles.

**_Consumer Electronics Defects_ –** As technology continues to evolve, more and more consumers purchase and depend upon electronic devices in their daily routines. From smartphones to state-of-the art drones, many manufacturers rush products to sale to take advantage of high consumer demand. As these products are rushed to market, consumers often are left between the difficult choice of paying expensive repair bills or placing their expensive product on the shelf to gather dust.

**_Medical Device Defects_ –** Manufacturers of medical devices are held to high standards in the design, manufacturing, and marketing of their products. When a manufacturer learns of a defect in their medical device that could cause bodily harm to the end-user, the law imposes a strict duty on them to institute a recall immediately. Many times, however, manufacturers seek to place profits above the safety of their customers

## Practice Area: Sexual Misconduct and Gender Discrimination

Sauder Schelkopf has a nationally recognized sexual misconduct practice with significant experience fighting for victims. Our former prosecutors have extensive experience investigating and trying cases. Sauder Schelkopf currently represents victims of clergy sexual abuse in dioceses throughout the country. We have numerous class action lawsuits pending throughout the country on behalf of sexual abuse survivors.

# Practice Area: Employee Rights Class Actions

The attorneys at Sauder Schelkopf have protected workers' rights. Employees are given numerous protections under state and federal law. The attorneys at Sauder Schelkopf has held employers accountable to their obligations under the law when hiring, employing, and firing their workers.

If employees face discrimination based on their race, color, country of origin, religion, gender, sexual orientation, the employer is violating the law. In addition, many employees do not receive their due compensation as numerous employers engage in wage and hour violations. Whether you are a potential whistleblower, or your case is associated with any technical or creative legal matter, the attorneys at Sauder Schelkopf are available to discuss your potential case.

# Case Highlights

The attorneys at Sauder Schelkopf have played a lead role in cases throughout the country including:

- *In re Checking Account Overdraft Litig.,* **(S.D. Fla.)** (class action resulting in a $55 million settlement with US Bank; $14.5 million settlement with Comerica);

- *Afzal v. BMW of North America, LLC,* **(D.N.J.)** (class action on behalf of purchasers and lessees of BMW M3 vehicles with S65 engines containing an alleged rotating assembly defect resulting in engine failure);

- *Ajose v. Interline Brands, Inc.,* **(M.D. Tenn.)** ($16.5 million nationwide class action settlement on behalf of purchasers of defective toilet connectors);

- *Rangel v. Cardell Cabinetry, LLC,* **(W.D. Tex.)** ($800,000 settlement on behalf of hundreds of former employees of a Texas cabinetry maker for Worker Adjustment and Retraining Notification (WARN) violations when they were fired without notice);

- *In re: Outer Banks Power Outage Litigation (E.D.N.C.)* ($10.3 million settlement on behalf of businesses impacted by massive power outage and evacuation cause by a bridge builder);

- *Guill, Jr. v. Alliance Resource Partners, L.P. et al* **(S.D. Ill)** (WARN Act class action on behalf of 200 coal miners);

- *Bang v. BMW of North America, LLC,* **(D.N.J.)** (nationwide class action settlement on behalf of hundreds of thousands of purchasers and lessees of certain BMW vehicles with N63 engines containing alleged oil consumption defect);

- *Traxler v. PPG Industries, Inc.* **(N.D. Ohio)** ($6.5 million class action settlement on behalf of homeowners who purchased and used defective deck stain);

- *Physicians of Winter Haven v. Steris Corp.,* **(N.D. Ohio)** ($20 million class action settlement on behalf of surgical centers to recoup out-of-pocket expenses related to recalled medical device);

- *In re Stericycle Inc., Sterisafe Contract Litigation,* **(N.D. Ill.)** ($295 million class action settlement on behalf of medical waste disposal customers of Stericycle regarding alleged automated price increases in violation of contractual terms);

- *Desio et al. v. Insinkerator et al.* **(E.D. WA)** ($3.8 million class action settlement on behalf of homeowners who purchased defective water filters);

- *Davitt v. Honda North America, Inc.,* **(D.N.J.)** (class action nationwide settlement on behalf of hundreds of thousands of purchasers and lessees of Honda CR-V vehicles with alleged defective door lock actuators);

- *McCoy v. North State Aviation,* **(M.D.NC)** ($1.5 million settlement on behalf of hundreds of former employees for Worker Adjustment and Retraining Notification **(WARN)** violations when they were fired without notice);

- *Henderson v. Volvo Cars of North America LLC,* **(D.N.J.)** (class action nationwide settlement on behalf of 90,000 purchasers and lessees of Volvo vehicles with defective GM4T65 automatic transmissions);

- *Klug v. Watts Regulatory Co.,* and *Ponzo v. Watts Regulatory Co* **(D. Neb.)** ($14 million settlement on behalf of homeowners with defective toilet connectors and water heater connectors manufactured by Watts);

- *Lax v. Toyota Motor Corporation* **(N.D. Cal.)** (class action on behalf of hundreds of thousands of purchasers and lessees of certain Toyota vehicles with alleged oil consumption defect);

- *Mendoza v. Hyundai Motor America, Inc.,* **(N.D. Cal.)** (class action on behalf of hundreds of thousands of purchasers and lessees of certain Hyundai Sonata vehicles with alleged connecting rod bearing defect resulting in engine failure);

- *Neale v. Volvo Cars of North America LLC,* **(D.N.J.)** (certified class action on behalf of hundreds of thousands of purchasers and lessees of certain Volvo vehicles with alleged defective sunroof water drainage systems);

- *Rivera v. Ford Motor Company,* **(E.D. Mich.)** (class action on behalf of hundreds of thousands of purchasers and lessees of certain Ford Focus vehicles with alleged defective Evaporative Emission Control **(EVAP)** systems causing sudden and unexpected engine stalling);

- *Wallis v. Kia Motors America, Inc.,* **(N.D. Cal.)** (class action on behalf of hundreds of thousands of purchasers and lessees of certain Kia vehicles with alleged connecting rod bearing defect resulting in engine failure);

- *Whalen v. Ford Motor Co.,* **(N.D. Cal.)** (class action on behalf of hundreds of thousands of purchasers and lessees of certain Ford and Lincoln vehicles with alleged defective MyFord Touch infotainment systems);

- *Tolmasoff v. General Motors,* **(E.D. MI.)** ($6 million nationwide class action settlement on behalf of purchasers and lessees alleging overstated MPG);

- *Yaeger v. Subaru of America, Inc.,* **(D.N.J.)** (class action on behalf of hundreds of thousands of purchasers and lessees of certain Subaru vehicles with alleged oil consumption defect);

- *Smith v. Gaiam,* **(D. Colo.)** ($10 million consumer class action settlement, which provided full relief to the class).

- *International Brotherhood of Electrical Workers Local 98 Pension Fund v Encore,* **(San Diego, CA)** (shareholder derivative settlement implemented industry-leading reforms to its risk management and corporate governance practices, including creating Chief Risk Officer and Chief Compliance Officer positions, various compliance committees, and procedures for consumer complaint monitoring)