# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE SUBARU BATTERY DRAIN PROD. LIAB. LITIG. | No. 1:20-CV-03095-JHR-JS<br><br>HON. JOSEPH H. RODRIGUEZ |

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

Matthew D. Schelkopf
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
(610) 200-0581

Matthew R. Mendelsohn
**MAZIE SLATER KATZ**
 **& FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-9898

Adam E. Polk
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
(415) 981-4800

*Class Counsel*

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................1

II.   FACTUAL BACKGROUND.................................................................2

   A.   Plaintiffs' Allegations and Pre-Litigation Investigation ....................2

   B.   History of the Litigation ................................................................4

   C.   Settlement Negotiations ................................................................5

   D.   The Settlement Class .....................................................................7

   E.   Settlement Relief for Class Members .............................................7

        1.   Warranty Extension for Current Owners or Lessees ................8

        2.   Reimbursement for Out-of-Pocket Costs................................9

        3.   Reimbursement for Extraordinary Circumstances..................11

        4.   Reprogramming ("Reflash") and Equivalent Relief...............11

        5.   Costs of Notice and Settlement Administration ....................13

        6.   Attorneys' Fees, Expenses, and Service Awards....................13

   F.   Notice to Settlement Class Members .............................................13

   G.   Release of Liability ......................................................................15

III.  ARGUMENT......................................................................................17

   A.   The Settlement Is Fair, Reasonable, and Adequate .........................17

        1.   Presumption of fairness............................................................17

        2.   The Girsh factors.....................................................................20

        3.   The Prudential factors .............................................................25

   B.   The Objections Should Be Overruled ..............................................28

   C.   The Notice Satisfied Due Process and Rule 23................................36

   D.   The Court Should Reaffirm Certification of the Settlement
        Class ...........................................................................................38

IV.   CONCLUSION...................................................................................38

## I.    INTRODUCTION

Plaintiffs respectfully request the Court grant final approval of the parties' Settlement Agreement ("Settlement" or "SA"), certify the class for settlement purposes, and enter a final judgment dismissing this case with prejudice.[1] The Court preliminarily approved the Settlement on June 23, 2022. The response by the Settlement Class Members has been overwhelmingly positive, Subaru has already devoted substantial resources to implementing the claim process and the agreed-upon extended warranty service, and the settlement otherwise demonstrates that final approval is warranted. The claims period remains open until two months after the Effective Date and Settlement Class Members have already submitted more than 30,000 claims worth more than $10 million in repair reimbursements. Out of hundreds of thousands of Settlement Class Members, just 23 objections to the Settlement were lodged.[2] None of the objections have merit, for the reasons discussed in Section III.B below.

---

[1] The SA is available at ECF No. 72-2. Unless otherwise noted, capitalized terms used in this Memorandum are defined in Section II of the SA.

[2] While Class Counsel received 23 objections, only 17 appear to be validly submitted. Under the Court's Preliminary Approval Order, any Class Member who wished to object was required to serve the Court, Class Counsel and Defense Counsel with their objection. (ECF No. 75, ¶¶ 15-16.) Marvin Spatz, Sue and Randall Wimmer, Martha Verbonitz, Anne Parsons, and Elizabeth Essex did not serve their objections in the required manner. Richard Benka's objection (ECF No. 105) was served well after the objection deadline and therefore is also invalid. Thus, although Plaintiffs address the substance of these objections in Section III.B

The parties negotiated their agreement at arm's length, including in several mediation sessions with Hon. Joel Schneider, U.S.M.J. (ret.) over the course of many months. The Settlement provides substantial benefits, including generous cash reimbursements, an extended warranty and other protections, for more than 3.7 million current and former owners and lessees of approximately 2.8 million Settlement Class Vehicles. The Settlement meets all of the final approval criteria under Fed. R. Civ. P. 23(e): it is fair, reasonable and adequate and a "win" for the class. As such, Plaintiffs respectfully request that the Court grant their motion for final approval. A proposed order granting final approval is submitted herewith,[3] accompanied by a list of individuals who timely opted out of the Settlement.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' Allegations and Pre-Litigation Investigation

Plaintiffs sued to obtain relief for themselves and similarly situated individuals who purchased or leased Subaru vehicles that Plaintiffs allege suffer from a uniform defect that can cause a parasitic drain of the vehicle's battery

---

of this brief, the Court need not consider them. (SA at § VIII.A.1.) Patrick and Lynn Borden also objected to the Settlement but simultaneously asked to be excluded from the class, which eliminates their standing to object. (ECF No. 84.) *See In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, at *5 (D.D.C. Mar. 31, 2000).)

[3] Plaintiffs' Counsel previously filed their Unopposed Motion for Attorneys' Fees, Expenses, and Service Awards, and accompanying proposed order, on October 24, 2022. (ECF No. 91.)

power ("Defect"). This drain causes the batteries to fail prematurely, leaving consumers with inoperable vehicles and potentially leaving them stranded. Plaintiffs alleged Subaru knew that the Class Vehicles contained the Defect: large numbers of customers presented their Vehicles to Subaru dealerships for repair, and Subaru issued a series of technical service bulletins attempting to address the battery problems.

Class Counsel filed the action after investigating the alleged Defect in Subaru vehicles dating back to model year 2015. This investigation included interviewing and reviewing documents from hundreds of prospective class members; reviewing various forms of consumer reporting and complaints submitted to the National Highway Traffic Safety Administration ("NHTSA"); reviewing Subaru manuals and technical service bulletins that discuss the alleged Defect; assessing federal motor vehicle regulations regarding safety standards; analyzing Subaru electrical system and battery designs, assisted by experts in the automotive field; supervising those experts' performance of several diagnostic electrical and battery tests; and investigating potential claims for relief. (Joint Certification of Matthew D. Schelkopf, Matthew R. Mendelsohn, and Adam E. Polk ("Joint Cert."), ¶ 15.)

The named Plaintiffs are residents of California, Florida, Illinois, Michigan, New Jersey, New York, Texas, and Washington who purchased Class Vehicles.

(Consolidated Class Action Complaint, ECF No. 18 ("Complaint"), ¶¶ 10-22, 30, 40, 47, 54, 60, 68, 75, 82, 89, 97, 102, 109, 115.) Plaintiffs sought to represent a Nationwide Class and state subclasses of Class Vehicle purchasers and lessees in the Plaintiffs' home states, and asserted claims for breach of express warranty, breach of the implied warranty of merchantability, fraudulent concealment, violations of various state consumer fraud statutes and the federal Magnuson-Moss Warranty Act, and unjust enrichment. (*Id.*, ¶¶ 182-183, 191-380.)

### B.    History of the Litigation

Between March 2, 2020 and April 23, 2020, five related cases were filed against Subaru, which the Court consolidated. (ECF No. 9.) Counsel in the related actions conferred over several months and agreed to a stipulated leadership structure with the undersigned serving as Interim Co-Lead Counsel, supported by an experienced Executive Committee and Liaison Counsel. (ECF No. 15.)

On June 18, 2020, Plaintiffs filed their Consolidated Class Action Complaint. (ECF No. 18.) On August 3, 2020, Subaru moved to dismiss, and the Parties fully briefed that motion. (ECF Nos. 34, 38, 39, 42.) While the motion to dismiss was pending, Class Counsel served document requests and interrogatories, and the Parties negotiated a Stipulation Regarding Discovery that outlined the core issues as to which discovery would proceed prior to the Court's ruling on the

motion. (ECF No. 31.) The Parties also negotiated and filed a Discovery

Confidentiality Order. (ECF No. 41.)

On March 31, 2021, this Court issued a 67-page Opinion granting in part and

denying in part the motion to dismiss. (ECF Nos. 46-47.) On April 28, Subaru filed

an Answer to the Consolidated Class Action Complaint. (ECF No. 50.) Following

the Court's ruling on the motion to dismiss, the Parties negotiated and filed a Joint

Discovery Plan. (ECF No. 63.)

Starting on May 28, 2020, the Parties engaged in informal, formal, and

eventually confirmatory discovery. Plaintiffs' discovery efforts included preparing

initial disclosures, propounding and responding to interrogatories and requests for

production of documents, reviewing numerous documents produced by Subaru,

and deposing Subaru's Director of Field Quality, John Gray. (Joint Cert., ¶ 19.)

### C.   Settlement Negotiations

On May 12, 2021, the Parties advised the Court of their intent to pursue

mediation with Judge Schneider. (ECF No. 52.) The Parties participated in a day-

long mediation on July 7, 2021, followed by several additional mediation sessions

over the next four months. (Joint Cert., ¶ 20.) In conjunction with the mediation,

the Parties exchanged documents subject to Federal Rule of Evidence 408. The

documents showed in part Subaru's internal warranty claims analyses, sales

figures, efficacy of proposed remedies, and other information relevant to the

alleged Defect and its effects. (*Id.*, ¶ 21.) The negotiations extended through the summer of 2021 and into the fall; at times the Parties appeared to have reached an impasse. (*Id.*, ¶ 20.) But with Judge Schneider's assistance, on November 9, 2021, the Parties reached an agreement in principle to resolve Plaintiffs' class action claims. (*Id.*, ¶ 22.)

The terms of the Settlement are the product of intensive, arm's length negotiations between experienced counsel. (*Id.*, ¶ 6.) Before entering into the Settlement, Class Counsel independently analyzed the nature of the Defect and Subaru's contention that it had implemented measures to address it. (*Id.*, ¶ 7.) Class Counsel consulted automotive engineering experts, studied government reports, interviewed and collected documents from hundreds of class members, and surveyed those consumers regarding the efficacy of the remedial measures discussed below. (*Id.*) Class Counsel also engaged in confirmatory discovery to assess Subaru's contention that it had resolved the Defect, including by deposing Subaru's 30(b)(6) designee, John Gray. (*Id.*)

Mr. Gray testified that from 2015 through 2020, Subaru implemented a variety of countermeasures to mitigate battery drain in Class Vehicles. Subaru equipped certain models with a larger capacity battery, increased charging standards, developed new hardware to prevent battery drain when the power rear gate is left open, and standardized battery testing protocols for its dealerships.

(Joint Cert., Ex. A, Gray Dep. at 163:11-164:5, 117:2-17, 138:14-139:3, 157:11-19, 140:17-142:12.) Mr. Gray also testified, and Subaru's internal documents show, that these measures, coupled with the updated charging logic software—i.e., Engine Control Module ("ECM") reprogramming—being made available to Class Members through the Settlement significantly decrease the chances of the Defect manifesting in Class Vehicles. (*E.g.*, *id.* at 157:11-19.)

**D.    The Settlement Class**

Upon final approval, the Settlement will provide substantial benefits to the following Settlement Class: All natural persons, who are residents of the continental United States, including Hawaii or Alaska, who currently own or lease, or previously owned or leased, a Settlement Class Vehicle originally purchased or leased in the continental United States, including Alaska or Hawaii.[4]

**E.    Settlement Relief for Class Members**

Subaru has agreed to provide several forms of relief that address the Battery Drain Defect and its consequences. To date, Settlement Class Members have made claims for reimbursement under the Settlement in excess of $10 million. (Joint Cert., ¶ 38.)

---

[4] Excluded from the Settlement Class are the employees, officers, or directors of Subaru, affiliated Subaru entities, or Subaru's authorized retailers; all entities claiming to be subrogated to the rights of Settlement Class Members; issuers of extended vehicle warranties; third party issuers; and any Judge to whom the Litigation is assigned. (SA at § III.1.)

### 1.    *Warranty Extension for Current Owners or Lessees*

#### (a)    *First Battery Replacements*

The Settlement provides enhanced warranty protections to Settlement Class members. Subaru has agreed to extend its existing three year/36,000 mile New Vehicle Limited Warranty for the Settlement Class Vehicles, to cover 100% of the cost for a first battery replacement for a period of five years or 60,000 miles, whichever occurs first. For Settlement Class Vehicles that exceeded five years or 60,000 miles as of the Settlement Notice Date, Subaru extended its New Vehicle Limited Warranty for three months, without regard to mileage, to cover 50% of the Battery Replacement Costs for a first battery replacement. (SA at § V.A.1.)

#### (b)    *Subsequent Battery Replacements*

If the replacement batteries fail, Subaru has agreed to extend its three year/36,000 mile New Vehicle Limited Warranty to cover the costs of a replacement battery. The parameters of the Settlement Extended Warranty for class members will be the greater of Subaru's existing replacement-part warranty or:

(i)    100% of the Battery Replacement Costs (including parts and labor) up to a period of five (5) years or sixty thousand (60,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle regardless of the number of battery replacements the Settlement Class Vehicle has already received;

(ii)    80% of the Battery Replacement Costs (including parts and labor) up to a period of seven (7) years or eighty-four thousand (84,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle; or

8

(iii)   60% of the Battery Replacement Costs (including parts and labor) up to a period of eight (8) years or one hundred thousand (100,000) miles (whichever comes first) from the In-Service Date of the Settlement Class Vehicle.

(SA at § V.A.2.)

(c)   *Extended Warranty Customer Reimbursement*

Settlement Class Members who, prior to the Notice Date, purchased a Subaru extended service contract (known as "Added Security") and were not entitled to battery coverage through that program, will receive a warranty extension based on the time and mileage limitations noted above. (SA at § V.A.3.)

## 2.   *Reimbursement for Out-of-Pocket Costs*

Importantly, any Settlement Class Member who has not already been fully reimbursed by Subaru or a third party, will be entitled to reimbursement of their out-of-pocket repair costs for a Qualifying Battery Condition[5] incurred prior to the Notice Date. Additionally, as set forth in the chart provided below, depending on circumstances, Settlement Class Members will receive an additional payment over and above the amounts they paid for expenses related to the alleged defect. Examples of expenses eligible for reimbursement under this provision include, without limitation, out-of-pocket expenses for any battery replacements and/or

---

[5] The SA defines "Qualifying Battery Condition" as characterizing a "Settlement Class Vehicle in which the battery died (i.e., the battery was discharged beyond the ability to start the Class Vehicle)." (ECF No. 72-2 at p. 16 of 178.)

battery testing and diagnosis performed by an Authorized Subaru Retailer, and out-of-pocket expenses for towing services. Settlement Class Members who had their Class Vehicle serviced and/or repaired at a third-party repair facility also will be entitled to reimbursement of the money they paid for any battery replacements and/or battery testing and diagnosis performed by the third-party repair facility, as well as out-of-pocket expenses for towing services if, prior to those repair-related services, the Class Member presented his or her Vehicle to an authorized Subaru dealership or contacted Subaru's customer service division regarding the battery-related issue. (SA at § V.B.)

The Settlement Agreement provides that reimbursement for a Qualifying Reimbursable Repair will be at the following percentages, with Class Members eligible for greater than 100% reimbursement in some instances:

| # of Owner Paid Repairs | Within 3 years/ 36,000 miles | 5 years/ 60,000 miles | 7 years/ 84,000 miles | 8 years/ 100,000 miles |
|---|---|---|---|---|
| 1 | 120% | 100% | N/A | N/A |
| 2 | 140% | 125% | 100% | 55% |
| 3+ | 165% | 140% | 120% | 100% |

(SA at § V.B.6.)

10

### 3.    *Reimbursement for Extraordinary Circumstances*

In addition to the above-described relief, Settlement Class Members who experienced two or more battery failures within five years and 60,000 miles from the In-Service Date of the Settlement Class Vehicle are also eligible, subject to submission of a claim and appropriate documentation, to receive 140% of Reasonably Related Reimbursable Costs incurred because the Class Member was stranded as a result of a battery failure that occurred prior to the Notice Date. Recoverable expenses include the costs of hotel stays, meals, equipment purchased to sustain battery operation, and other expenses reasonably related to the battery failure. A Class Member who qualifies for payment under this provision will also be entitled to receive a $140 single-use Subaru service voucher, which will remain valid for one year from the date the claim is approved. (SA at § V.C.)

### 4.    *Reprogramming ("Reflash") and Equivalent Relief*

The Settlement also grants Settlement Class Members who continue to experience the Defect the opportunity to present his or her Class Vehicle to an Authorized Subaru Retailer and receive a free Reflash at the dealership. For all Class Vehicles other than 2015 and 2016 Foresters, the Reflash enhances the ECM charging logic of the batteries in the Settlement Class Vehicles, allowing the Vehicles' alternators to provide additional charge to the batteries. (Joint Cert., Ex. A, Gray Dep. at 61:9-62:23.) Settlement Class Members who already received and

11

paid for this Reflash are entitled to submit a claim and receive a 100% reimbursement of expenses incurred for the update. (SA at § V.D.)

During the administration of this Settlement, counsel and the parties learned that the Reflash could not be provided to the 2015 and 2016 Foresters because those vehicles do not contain the software that contributes to the battery drain in all other Class Vehicles. (Joint Cert., ¶ 33.) As a result, battery drain in the 2015 and 2016 Foresters is the result of other factors, similar to other Class Vehicles, but without direct relation to the software contained in other Class Vehicles. With the benefit of additional time permitted by the Court, however, Class Counsel and Defense Counsel were able to arrange substitute, equivalent protections for owners and lessees of these vehicles. (ECF Nos. 87, 102; Joint Cert., ¶¶ 34, 35.) First, Subaru agreed to provide an ECM-related service for those vehicles that will remediate any diagnostic trouble codes ("DTCs") stored in the ECM. Second, Subaru also agreed to provide repairs free of charge to address certain DTCs related to battery drain that are found during the ECM-related service. Like the Reflash charging logic, this ECM-related service and associated free repairs of the 2015 and 2016 Foresters directly remediate battery issues, and the owners and lessees of these vehicles also can avail themselves of all other Settlement benefits. (Joint Cert., ¶¶ 34, 35.)

### 5.    *Costs of Notice and Settlement Administration*

Subaru is responsible for the costs of Class Notice and Settlement

Administration. (SA at § V.E.)

### 6.    *Attorneys' Fees, Expenses, and Service Awards*

On October 24, 2022, Plaintiffs' Counsel submitted their Unopposed Motion

for Attorneys' Fees, Expenses, and Service Awards, seeking, subject to the Court's

approval, Attorneys' Fees and Expenses of up to $4,100,000. (ECF No. 91.)

Subaru has also agreed to pay, subject to Court approval, Service Awards in the

amount of $4,000 to each of the 13 named Plaintiffs. (*Id.*) Attorneys' Fees and

Expenses, as well as Service Awards, will be in addition to the benefits provided

directly to the Settlement Class, and will not reduce or otherwise affect those

benefits. (SA at § X.II.)

### F.    **Notice to Settlement Class Members**

The Settlement Agreement includes a comprehensive notice plan that was

funded by Subaru and overseen by the experienced Settlement Administrator, JND

Legal Administration ("JND"). After the Court granted preliminary approval and

directed the provision of notice to the Settlement Class, Class Counsel monitored

and participated in the Notice and Administration process to ensure that the

Settlement Administrator fulfilled the Settlement Agreement in all respects, and we

will continue these monitoring efforts after final approval. (SA at § VII.B; Joint Cert., ¶ 27.)

Settlement Class Members have been notified of the Settlement by direct mail. Subaru identified Settlement Class Members through its records and provided that information to JND, which verified or updated Class Members' contact information through Experian, a third party that maintains and collects the names and addresses of automobile owners. JND then sent the Notice to the members of the Settlement Class by postcard. In addition, before undertaking these individual mailings, JND conducted an address search through the United States Postal Service's National Change of Address database to ensure the latest address information for Settlement Class Vehicle owners and lessees was used. For each individual Notice returned as undeliverable, JND re-mailed the Notice where a forwarding address was provided. For the remaining undeliverable Notices where no forwarding address was provided, JND performed an advanced address search (e.g., a skip trace) and re-mailed those undeliverable Notices to the extent any new and current addresses were located. (SA at § VII.B.1.)

For the approximately 2.6 million Class Members for whom JND had email addresses, they also received email notice about the Settlement; the email included a hyperlink to the Settlement Website where Class Members could review electronic versions of the Long Form Notice and Claim Form. JND established and

14

maintains that website, www.subarubatterysettlement.com, which posts the Notice, Claim Form, Settlement Agreement and other relevant documents. Class Counsel have also included a link to the Settlement Website on their law firm's websites.

Subaru has paid, and will continue to pay, the costs of Notice and Settlement Administration, and also directed notice of the settlement to the appropriate state and federal officials under the Class Action Fairness Act, 28 U.S.C. § 1715. (SA at § VII.B.1.)

Notice was sent on September 21, 2022. (*See* ECF No. 75.) Settlement Class Members seeking reimbursement for Qualifying Repairs previously undertaken must submit a Claim Form within 60 days of the Effective Date. The Settlement Agreement also delineates the procedure in the event the Settlement Administrator rejects a claim for reimbursement of out-of-pocket expenses. The Settlement Administrator will provide notice of its decision to any such claimant and provide him or her with 45 days to cure any deficiencies and/or request a Second Review. (SA at § VI.)

### G.     Release of Liability

In exchange for the foregoing, Settlement Class Members who do not timely exclude themselves will be bound by a release of all claims arising out of or relating to the claims that were asserted in the Complaint ("the Released Claims"). *See Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1563 (3d Cir. 1994). The

Released Claims will extend to Defendants and their related entities and persons. The Released Claims will not, however, apply to any claims for death, personal injury, property damage (other than damage to Class Vehicles), or subrogation. The Settlement Agreement provides that upon finality, the case will be dismissed with prejudice. (SA at §§ II.29 and XI.)

### H.   The Preliminary Approval Order and Response by Settlement Class Members

On June 23, 2022, the Court granted preliminary approval of the Parties' Settlement Agreement, directed the Parties to submit a final approval motion of the Settlement by October 21, 2022, and set a Final Fairness Hearing for November 29, 2022, at 11:00 a.m. (ECF No. 75.) At the request of counsel, the Court extended the period for submitting a final approval motion to January 10, 2023 and reset the Final Fairness Hearing for January 24, 2023. (ECF No. 103.) Settlement Class Members had until November 5, 2022 to object to the Settlement or to request exclusion from the Settlement Class. (Joint Cert., ¶ 32.) Settlement Class Members who did not opt out have until 60 days after the Settlement becomes effective to submit a claim form. (*Id.*) Class Counsel is aware of 23 Settlement Class Members who objected to the Settlement, and there have been 320 requests for exclusion. (*Id.*)

## III.   ARGUMENT

### A.   The Settlement Is Fair, Reasonable, and Adequate

Court approval is required for the settlement of class actions. Fed. R. Civ. P. 23(e). In order to grant final approval to the proposed class action Settlement, the Court must hold a hearing and find the settlement "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). This determination is guided by a "strong judicial policy in favor of class action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). By entering into a voluntary settlement, the parties can benefit substantially by avoiding "costs and risks of a lengthy and complex trial." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). This is particularly true with class action trials. *Id*.

### 1.   *Presumption of fairness*

This Settlement meets the criteria for a presumption of fairness, which include: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re National Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (citing and quoting in part *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

The Settlement is the product of arm's length negotiations that lasted approximately six months under the supervision of the Hon. Joel Schneider,

U.S.M.J. (Ret.), of Montgomery McCracken Walker & Rhoads LLP. During this period of intensive negotiation, Judge Schneider assisted the Parties in five mediation sessions. (*See* Joint Cert., ¶ 20.) "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Shapiro v. All. MMA, Inc.*, No. 17-2583 (RBK/AMD), 2018 U.S. Dist. LEXIS 108132, at *6 (D.N.J. June 28, 2018) (citation and internal marks omitted); *see also Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's length negotiations and highlighting that the negotiations included "two full days of mediation").

Before reaching the Settlement, Class Counsel independently analyzed the nature of the Defect, assessed the Reflash being provided through the Settlement and Subaru's previous countermeasures to address the Defect, consulted with automotive engineering experts, studied government reports, and interviewed and collected documents from hundreds of class members. (Joint Cert., ¶ 23.) Class Counsel also engaged in confirmatory discovery to assess Subaru's contention that the Reflash and other countermeasures substantially resolve the Defect, including by taking the deposition of Subaru's 30(b)(6) designee, John Gray. The discovery conducted, and Class Counsel's own independent investigation into the alleged Defect, enabled Plaintiffs to gain "a clear understanding of the strengths and

weaknesses of their case," *Udeen v. Subaru of Am., Inc.*, No. 18-17334 (RBK/JS), 2019 U.S. Dist. LEXIS 172460, at *8 (D.N.J. Oct. 4, 2019), and confirm that the Settlement is fair, reasonable, and adequate for the Settlement Class.

Counsel for the Parties are experienced class action litigators and represented their clients vigorously throughout the litigation—in difficult and adversarial discovery as well as through the extended negotiations. Further, the Settlement has received overwhelming support from Settlement Class Members. Out of approximately 2,741,636 Settlement Class Vehicles, notices were mailed to 3,781,638 Settlement Class Members. The total value of claims made thus far exceeds $10 million (Joint Cert., ¶ 38), and substantial time remains to submit claims—Settlement Class Members may make claims until 60 days after the Effective Date (SA at § II.10, V.B.7.a). In addition, there have also been more than 30,000 class members that have requested the ECM reprogramming.  In contrast, Plaintiffs have only received 23 objection letters and 320 opt outs.[6] As compared to the number of individual notices, the objection percentage of 0.0006% and opt-out percentage of 0.008% represent a *de minimis* fraction of the Settlement Class.

---

[6] Not all of the purported requests for exclusion may be complete. The exclusion requests are being reviewed to determine whether they meet the criteria set forth in the Court's Preliminary Approval Order. Plaintiffs will provide the total number of valid opt-outs in a supplemental filing prior to the Final Fairness Hearing.

### 2.    *The* Girsh *factors*

The Third Circuit has enumerated the following factors for district courts to

consider when determining whether a proposed class action settlement merits final

approval as fair, adequate, and reasonable:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) stage of the proceedings and the amount of discovery completed;
> (4) risks of establishing liability;
> (5) risks of establishing damages;
> (6) risks of maintaining the class action through the trial;
> (7) ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best
> possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery
> in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).[7]

With respect to "the complexity, expense, and likely duration of the

litigation," the Parties would have engaged in adversarial discovery for many

months absent the Settlement. Moreover, the claims in this action involve

numerous complex legal and technical issues. Continued litigation would have

---

[7] The factors recently added to Fed. R. Civ. P. 23(e)(2) substantially overlap with the traditional *Girsh* factors. The new 23(e)(2) factors are: whether the class was adequately represented, whether the proposal was negotiated at arm's length, whether the class members are treated equitably relative to each other, and whether the relief provided for is adequate (based on the costs and delay of trial and appeal, the effectiveness of the claims process, the terms of attorneys' fees, and that any payments in exchange for the withdrawal of objections are disclosed). All of these factors are addressed by the *Girsh* and *Prudential* factors discussed in the main text above. There is no agreement to disclose under Rule 23(e)(3).

been complex, time consuming, and expensive, posing substantial risks to Plaintiffs and the Settlement Class Members. Conversely, if approved, the Settlement provides substantial benefits for the Settlement Class without the delay, risk and uncertainty of continued litigation. *See Yaeger v. Subaru of Am., Inc.*, No. 14-cv-4490(JBS)(KMW), 2016 WL 4541861, at *9 (D.N.J. Aug. 31, 2016) ("The longer the litigation extended, the more the owners of affected class vehicles would suffer. Where motor vehicles have a relatively short lifespan, there is a premium upon promptly finding a remedy for alleged defects to restore full enjoyment of the vehicle."); *Weiss v. Mercedes Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving settlement that was the "result of an arm's length negotiation between two very capable parties" and where "Mercedes was prepared to contest this class action vigorously."). Further, Plaintiffs maintain that the alleged Defect implicates safety concerns and can leave drivers stranded, adding to the value of the warranty extension for Settlement Class Members.

The second factor also supports approval because the reaction of the class, as measured by the number of objections and opt-outs, is overwhelmingly positive, as already discussed. In addition, as explained in Section III.B below, the objections lack merit. *See Oliver v. BMW of N. Am., LLC*, Civil Action No. 17-12979 (CCC), 2021 U.S. Dist. LEXIS 43290, at *11-12 (D.N.J. Mar. 8, 2021) (finding "the class reaction to the settlement appears to be extremely positive and favorable overall"

where more than 99% of class did not object or opt out); *see also In re Nissan Radiator*, No. 10 CV 7493 (VB), 2013 U.S. Dist. LEXIS 116720, at *17-18 (S.D.N.Y. May 30, 2013) (noting that "[t]he reaction of most of the class to the settlement has been positive and in favor of settlement" where the objection percentage was approximately 0.005%); *Weiss*, 899 F. Supp. at 1301 (presence of 100 objections out of 30,000 class members weighed in favor of settlement); *Yaeger*, 2016 WL 4541861 at *9 (in case involving 577,860 class vehicles, observing that "the overall reaction of the class has been strongly positive" when there were 34 objectors and 2,328 opt-outs).

The third factor, the stage of the proceedings and the amount of discovery completed, further supports approval. As described above, the parties engaged in both formal and confirmatory discovery. Subaru requested documents from the Plaintiffs, which they searched for and produced. Class Counsel deposed John Gray, Subaru's 30(b)(6) designee, in order to evaluate Subaru's contention that it has resolved the defect. Mr. Gray's testimony focused on the various countermeasures that Subaru has implemented to address the alleged defect, which includes a larger capacity battery in certain models, increased standards for charging prior to shipment, newly developed hardware to prevent battery drain when the power rear gate is left open, updates to the charging logic software and ECM reprogramming being provided through the Settlement, and standardized

battery testing protocols for dealerships. (Joint Cert., Ex. A, Gray Dep. at 163:11-164:5, 117:2-17, 138:14-139:3, 157:11-19, 140:17-142:12.) Class Counsel also conducted their own independent investigation into the Defect. (Joint Cert., ¶¶, 7, 23.) Taken together, the discovery completed gave Class Counsel a thorough understanding of the strengths and weaknesses of the case, enabling an accurate assessment of the risk of future litigation in comparison to the relief being furnished to Settlement Class Members. *See Yaeger*, 2016 WL 4541861, at *9-10.

The fourth, fifth, and sixth factors focus on the risk of continued litigation. As noted above, further litigation likely would have been protracted and costly. Class Counsel are experienced litigators of automotive defect class actions, and have pursued many cases that have taken several years to conclude, and some have lasted over a decade factoring in appeals. Before ever selecting a jury, the parties likely would have briefed and argued class certification, briefed a Rule 23(f) appeal, and litigated *Daubert* motions and summary judgment motions in addition to expending considerable resources on electronic discovery, depositions, and expert witnesses. Any successful order on Plaintiffs' motion for class certification likely would have been appealed and/or followed by a decertification motion by Subaru, which is represented by highly skilled counsel. It is therefore unlikely that the case would have reached trial before 2024. By that time, many Settlement Class Members likely would have experienced battery failures without the benefit

of the warranty extensions and reimbursements provided by the Settlement. *See Haas v. Burlington Cty.*, No. 08-1102 (NLH/JS), 2019 U.S. Dist. LEXIS 16071, at *13-14 (D.N.J. Jan. 31, 2019) (granting approval where plaintiffs estimate the time to judgment, including trial, would take another three years); *Yaeger*, 2016 WL 4541861, at *9 (holding that prospect of "protracted motion practice" involving the "nuances of various state laws" as well as "costly discovery" weighed in favor of settlement).

The seventh factor—the defendant's ability to withstand greater judgment—is neutral here. That factor typically only becomes relevant when "the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440.

The remaining *Girsh* factors—the range of reasonableness of the settlement, both independently and weighed against the risk of further litigation—confirm that final approval is appropriate. The settlement must be judged "against the realistic, rather than theoretical potential for recovery after trial," *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2011), and the Court must "guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise . . . ." *California v. Teva Pharm. Indus.*, No. 19-3281, 2020 U.S. Dist. LEXIS 102992, at *32-33 (E.D. Pa. June 10, 2020); *see also In re Shop-Vac Mktg. & Sales Practices Litig.*, No. MDL No. 2380, 2016 U.S. Dist.

LEXIS 69345, at \*11 (M.D. Pa. May 25, 2016) ("The proposed settlement amount does not have to be dollar-for-dollar the equivalent of the claim . . . . and a satisfactory settlement may only amount to a hundredth or even a thousandth part of a single percent of the potential recovery.") (internal citations and quotations omitted). The Settlement provides excellent relief to the Settlement Class in the form of full out-of-pocket reimbursements for expenses and a significant warranty extension. Moreover, because the Settlement does not provide for a common fund, the recovery of Settlement Class Members will not be reduced *pro rata* based on the number of claimants. Notably, the Settlement's structure approximates the individual claims process that would have followed a successful class trial—but with simplified proof requirements and immediate relief. *See Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (explaining that "a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members . . . will often be the sensible way to proceed.") (citations omitted).

### 3.  *The* Prudential *factors*

The Third Circuit also permits courts to consider additional factors when evaluating whether to approve a class action settlement. In *In re Prudential*, the Third Circuit identified these further factors that the Court may consider:

(1)     "the maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages";

(2)     the "existence and probable outcome of claims by other classes and subclasses";

(3)     "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants";

(4)     "whether class or subclass members are accorded the right to opt out of the settlement";

(5)     "whether any provisions for attorneys' fees are reasonable"; and

(6)     "whether the procedure for processing individual claims under the settlement is fair and reasonable."

*In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998). "Unlike the *Girsh* factors, each of which the district court must consider before approving a class settlement, the *Prudential* considerations are just that, prudential. They are permissive and non-exhaustive . . . ." *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 384 (E.D. Pa. 2019) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013)).

In this case, the first *Prudential* factor supports approval because both the formal discovery and the confirmatory discovery, together with Class Counsel's own independent investigation, have enabled the Parties to gain a strong grasp of the strengths and weaknesses of the case, and the risks of continued litigation. *See id.* ("Here, Class Counsel were able to make an informed decision about the

probable outcome of a trial."). As a result, the parties were able to make a fully informed decision as to these terms of Settlement.

"Factors two and three look at the outcomes of claims by other classes and other claimants." *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 U.S. Dist. LEXIS 69614, *67 (E.D. Pa. April 20, 2020). Class Counsel are unaware of other related class actions. Moreover, Class Counsel believe the Settlement is a highly desirable outcome for the members of the Settlement Class, affording them the relief sought in Plaintiffs' Consolidated Class Action Complaint. (*See* Joint Cert., ¶¶ 25, 26, 31.)

Settlement Class Members are free to opt out of the Settlement and pursue their own claims against Subaru if they wish, satisfying the fourth *Prudential* factor. Plaintiffs also respectfully submit that, for the reasons identified in their Unopposed Motion for Attorneys' Fees, Expenses, and Service Awards, the fees sought in this action are reasonable, satisfying the fifth *Prudential* factor.

Finally, under the sixth *Prudential* factor, the procedure for processing claims under the Settlement is fair and reasonable. The warranty extension is automatic for Settlement Class Members with Qualifying Conditions. With respect to claims for expense reimbursements, the claimant need only submit a claim form supported by the relevant documentation. Settlement Class Members have also been provided with Class Counsel's contact information if they have any questions regarding the relief or how to submit a claim. And numerous Class Members have

contacted Class Counsel, both to ask questions and to voice wholehearted approval of the Settlement. (Joint Cert., ¶ 31.)

**B.    The Objections Should Be Overruled**

Of the approximately 3,781,638 notices sent, only 23 objections have been received to date, representing 0.0006% of the Settlement Class. As explained below, the objections do not provide any basis to deny final approval.

**1.    To Be Reimbursed for Repairs Performed by Third-Party Repair Facilities, Class Members Must Have Notified Subaru or an Authorized Dealership**

The most prevalent objection lodged is to the requirement that, to be eligible for cost reimbursement, a Settlement Class Member must have presented their Settlement Class Vehicle to an authorized Subaru retailer.[8] But this provision requires no more than Subaru's written warranty, which identically requires customers invoking its protections to visit an authorized dealership for the repairs. *See* ECF No. 34-2, at 9 (stating, *inter alia*, that "[w]hen a warranty repair is needed, your vehicle *must* be brought to an Authorized SUBARU Retainer's place

---

[8] This objection was made by William Stutsman (ECF No. 79), Daniel Mullen (ECF No. 82), Kim Greene (ECF No. 83), Lynn and Patrick Borden (ECF No. 84), Joel Kessler (ECF No. 85), Michael Bishop (ECF No. 90), Ronald Kahn (ECF No. 93), Kyle Lundberg (ECF No. 94), Sanford Rabinowitch (ECF No. 95), Jerome Pfeffer (ECF No. 96), E. Scott Hansen (ECF No. 98), Muriel Saari (ECF No. 101), Richard Benka (ECF No. 105) Marvin Spatz (no ECF entry), Sue and Randall Wimmer (no ECF entry), Martha Verbonitz (no ECF entry), and Anne Parsons (no ECF entry). The objections with no ECF entries will be submitted to the Court prior to the Final Fairness Hearing in a supplemental filing.

of business during normal business hours."). Thus, the Settlement simply maintains this existing requirement—which would apply even if Plaintiffs were to prevail in full on their breach of express warranty claims.

Several of these Class Members also acknowledge that their Class Vehicle was out of warranty when the battery failed, so they had no reason to present the vehicle to Subaru in the first instance. (*See* ECF Nos. 82, 85, 90, 94-95.) But, because their vehicles were out of warranty when the battery failed, these objectors would not be eligible for any warranty relief in litigation. Therefore, the Settlement does not deprive them of any relief that otherwise would have been available to them. *See, e.g.*, *Alin v. Honda Motor Co., Ltd.*, 2012 WL 8751045, at *12 (D.N.J. Apr. 13, 2012) (finding that class settlement with auto manufacturer was reasonable where the "largest category of objections comes from customers whose cars were too old, or had too many miles to be eligible for recovery according to the lines drawn in the agreement"); *Skeen v. BMW of N. Am., LLC*, 2016 WL 4033969, at *9 (D.N.J. July 26, 2016) (stating that "the warranty on Ms. Williams's vehicle . . . has already expired even under the extended terms of the settlement. . . . The Court agrees with Plaintiffs, however, that the Court's job is 'not to determine whether the settlement is the fairest possible resolution.' . . . With regard to the amount of relief offered under the settlement and the Class members receiving that relief, 'lines must be drawn somewhere.'") (citations

omitted). In addition, requiring claimants seeking reimbursement for third-party

battery repairs to have first requested service from Subaru serves the purpose of

validating such claims; absent such a requirement, for example, any vehicle owner

who visited a Pep Boys or Auto Zone store could recover without indication that

the battery failed for reasons related to the alleged defect. Moreover, the

Settlement does not leave any Class Member empty-handed. Far from it: *all*

Settlement Class Members are eligible for the Reflash software update or

alternative ECM reprogramming, together with the valuable warranty extensions.

### 2.   Subaru Has Adequately Addressed the Defect with Its Technical Corrections

Jesse and Joan Trachtenberg (ECF Nos. 80, 100), Kenneth Jager (ECF No.

81), Allan Solomon (ECF No. 92), Cynthia Nunnemaker (ECF No. 97), and Muriel

Saari (ECF No. 101) all object to the settlement on the basis that Subaru should be

required to fix the Defect under the Settlement. Yet the Settlement provides

precisely this relief. As explained above, Subaru has implemented a number of

countermeasures that make it significantly less likely that the Defect will arise in

Class Vehicles. These remedial measures include a larger capacity battery in select

models, increased standards for charging prior to shipment, newly developed

hardware to prevent battery drain when the power rear gate is left open, updates to

the charging logic software, ECM reprogramming or equivalent relief, and

standardized battery testing protocols for dealerships. Further, it appears that

neither Mr. Jager, Mr. Solomon, nor Ms. Saari have received the updated charging logic. Class Counsel spoke with these objectors to explain the settlement benefits and encouraged them to schedule an appointment to bring their vehicle into an authorized Subaru dealership for the updates. Class Counsel similarly encouraged Jesse and Joan Trachtenberg to take action to obtain the updated charging logic—and based on their November 3, 2022 letter, they did so. Although the Trachtenbergs claim the Reflash was not effective, since that update they have not experienced a battery failure and the voltage of their battery has increased. (*See* ECF No. 100.)

### 3.    The Settlement Appropriately Requires That Claims Be Supported by Documentation.

Ms. Greene and Ms. Saari also object to the Settlement's documentation provisions. But the Settlement's requirement of reasonable documentation requires no more—and likely less—than what would be required of claimants on a post-trial posture. *See* Manual for Complex Litigation, Fourth, § 21.66 at p. 331 ("Verification of claims forms by oath or affirmation . . . may be required, and it may be appropriate to require substantiation of the claims (e.g., through invoices, confirmations, or brokers' records)."); *Jackson's Rocky Ridge Pharmacy, Inc. v. Argus Health Sys., Inc.*, No. 2:05-CV-0702-UWC, 2007 WL 9711416, at *2 (N.D. Ala. June 14, 2007) (overruling objections to substantiation "requirement [that] is no more onerous than that to which each of the class members would have been

subjected had they filed a separate lawsuit . . . and prevailed"). In fact, class action

settlements often require class members to submit records or other documentary

evidence to qualify for payment, particularly when, as here, the payments are

substantial. *See, e.g.*, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No.

1:17-MD-2800-TWT, 2020 WL 256132, at *30 (N.D. Ga. Mar. 17, 2020), *aff'd in

relevant part*, 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v.

Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector*, 142

S. Ct. 765 (2022) (rejecting objections to "completion and documentation of the

claim form," which "procedures are routinely required in other settlements.");

*Keegan v. Am. Honda Motor Co, Inc.*, No. 10-cv-09508 MMM (AJWx), 2014 WL

12551213, at *15 (C.D. Cal. Jan. 21, 2014) ("Courts frequently approve

settlements that require class members to submit receipts or other documentation"

and "find that such a requirement is reasonable and fair") (citing cases); *In re

Phenylpropanolamine (PPA) Prods. Liab.*, 227 F.R.D. 553 (W.D. Wash. 2004)

(incorporating extensive settlement claim questionnaires requiring supporting

documentation).

### 4. The Benefits Under the Settlement Are Sufficient to Make Settlement Class Members Whole

Several Class Members object to the Settlement because it does not provide

certain relief they would have liked to see included. For example, Rosemary

O'Toole-Hamman (ECF No. 89) complains there is no compensation for "time,

32

mileage, tolls and inconvenience." Martha Field (ECF No. 99) suggests the

settlement should have provided a replacement battery with "no less than 640

CCA," an indefinite extended warranty without time and mileage limitations,

"compensation for future batteries and for reduced resale value of the car," and

other relief. Sanford Rabinowitch (ECF No. 95) says additional Subaru vehicles

should have been part of this case and settlement. While all of the requests may be

understandable, none provides a valid basis to conclude the Settlement agreed to

by the parties does not provide reasonable and adequate relief. Indeed, to the extent

these objections suggest the warranty should be longer or the Settlement should

offer more relief, such objections are typically overruled because the Court is

called upon to evaluate whether the proposed settlement is adequate, not whether a

hypothetical settlement might be more valuable. *California v. Teva Pharm. Indus.*,

No. 19-3281, 2020 U.S. Dist. LEXIS 102992, at *32-33 (E.D. Pa. June 10, 2020)

("[S]ettlement represents a compromise in which the highest hopes for recovery

are yielded in exchange for certainty and resolution and [courts should] guard

against demanding too large a settlement based on the court's view of the merits of

the litigation.") (quoting *In re Aetna Sec. Litig.*, No. MDL 1219, 2001 U.S. Dist.

LEXIS 68, 2001 WL 20928, at *11 (E.D. Pa. Jan. 4, 2001)); *see also Yaeger*, 2016

WL 4541861, at *17 (noting that "for those in aggravated situations there was the

opportunity to opt out of this class and to pursue one's own remedies. That the

proposed settlement does not provide a second 100,000 mile warranty upon the
remedial parts is not reason for this Court to reject it."); *Skeen*, 2016 WL 4033969,
at *9 ("The limited warranty extension reflects the reality that cars decline in value
over time. . . . A warranty extension need not be indefinite to be reasonable.")
(citations omitted).

### 5.   Counsel's and the Parties' Response to the Bordens' Objections About the Reflash

Patrick and Lynn Borden's objection (ECF No. 84)[9] that the Reflash could
not be installed on their 2016 Forester and was the only objection on behalf of the
model 2015 and 2016 Foresters. After further investigation and negotiation, the
parties agreed to provide current owners of 2015 and 2016 Foresters a substantially
equivalent service. (*Id.*, ¶ 35.) Specifically, these Class Members can bring their
2015 and 2016 vehicles to an authorized Subaru service center and have their
vehicle's ECM checked for diagnostic trouble codes related to battery drain. (*Id.*)
If any such DTCs are found, they will be cleared and any repairs needed to address
failures related to the DTCs will be performed, free of charge. (*Id.*) Subaru reduced
this offer to writing and is bound by it to the same extent as the rest of the
Settlement provisions. (*Id.*) In short, while the technical remedy for 2015 and 2016

---

[9] The Bordens also asked to be excluded from the class, which eliminates their
standing to object. *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL
1737867, at *5 (D.D.C. Mar. 31, 2000). As a result, the Court need not consider
their objection.

Foresters differs slightly from the technical remedy that applies to other Class

Vehicles, those owners have older vehicles that do not have the problematic engine

control charging logic; even so, these Class Members are similarly entitled to free

services that will address battery drain issues and protect them going forward.

The Bordens also complain that the Defect has given them "unnecessary

anxiety and fear of being stranded beyond their control." (ECF No. 84 at p. 2 of

15.) Nonetheless, the Released Claims expressly exclude claims for "death,

personal injuries, and property damage[.]" (SA at § II.29.)[10]

### 6.    The Court Should Award the Requested Attorneys' Fees

Cynthia Nunnemaker (ECF No. 97) states that Class Counsel "DID NOT

earn" their fee and questions whether such reimbursement "was really a payoff

from Subaru." Other than making broad complaints about the Settlement, Ms.

Nunnemaker does not explain why Class Counsel should not be paid attorneys'

fees or reimbursed for the litigation expenses they advanced. In fact, Ms.

Nunnemaker is eligible to submit a reimbursement claim for her out-of-pocket

expenses under the Settlement. She also confirms that as a result of this

Settlement, she presented her vehicle to a Subaru dealer, which tested her battery

and replaced it free of charge when the battery failed the test. In addition, the

---

[10] As permitted by Section VIII.A.5 of the Settlement, the Bordens are scheduled to
be deposed January 13, 2023.

dealership performed the Reflash software update free of charge. Ms.

Nunnemaker does not claim she experienced a battery failure after these

Settlement repairs and acknowledges that as long as "this fixes the problem,

[she's] happy with that." (*Id.* at p. 7 of 13.) Accordingly, her objection should be

overruled.

### C.     The Notice Satisfied Due Process and Rule 23

Under Federal Rule of Civil Procedure 23(e), class members who would be

bound by a settlement are entitled to reasonable notice before the settlement may

be approved. *See* Manual for Complex Litigation, Fourth, § 30.212. The Court

must provide a class certified under Rule 23(b)(3) "the best notice that is

practicable under the circumstances, including individual notice to all members

who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To

satisfy this standard and due process requirements, such notice must be

"reasonably calculated, under all the circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their

objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice that the Court approved was provided to Settlement Class

Members. It includes all legal requirements and explains the settlement concisely

using clear, simple terms. The notice plan carried out by the Settlement

Administrator furnished the Settlement Class Members the best notice practicable

under the circumstances. *See Henderson*, 2013 WL 1192479, at *12-13.

An experienced vendor oversaw the process of compiling the addresses of owners and lessees, and used that information to prepare the Notice that was sent via first-class mail—"the gold standard"—to all Settlement Class Members. *See Good v. Am. Water Works Co., Inc.*, No. CV 2:14-01374, 2016 WL 5746347, at *7 (S.D.W. Va. Sept. 30, 2016) (referring to "direct mail notices" as "the gold standard for class notice"); *Boyd v. May Trucking Co.*, No. EDCV 17-2166 JGB (SHKx), 2019 WL 12763009, at *11 (C.D. Cal. July 1, 2019) (finding "direct mail notice is satisfactory."). In addition, email notice was provided to all Class Members whose emails were in Subaru's database, covering dealership transactions. *See, e.g.*, *Robinson v. Sailormen, Inc.*, No. 1:14CV44-MW/GRJ, 2016 WL 11528450, at *9 (N.D. Fla. Nov. 18, 2016) (approving notice to class members by both U.S. mail and email and stating that, "[i]ndeed, many courts have determined that it is appropriate to send notice to the class via email given that it is efficient and inexpensive."); *Harsh v. Kalida Mfg., Inc.*, No. 3:18-CV-2239, 2019 WL 5257051, at *3 (N.D. Ohio Oct. 17, 2019) (authorizing notice by U.S. mail and email because such dual notice may be "more efficient than waiting until certain mailings are returned as undeliverable"). Notice of the Settlement, and other

relevant documents, also are available on the dedicated Settlement website.[11]

### D.     The Court Should Reaffirm Certification of the Settlement Class

In the Preliminary Approval Order, the Court conditionally certified the Settlement Class, concluding that its certification meets the requirements of Rules 23(a) and 23(b)(3). (ECF No. 75, ¶¶ 5, 7.) Nothing relevant to this analysis has changed since the Preliminary Approval Order, and there has been no objection challenging the Court's provisional certification or underlying findings. Thus, Plaintiffs respectfully ask that the Court reaffirm those findings and certify the Settlement Class.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court finally approve the Settlement, certify the Settlement Class, and dismiss the action with prejudice.

Dated: January 10, 2023                 Respectfully submitted,

                            By:    _/s/ Matthew D. Schelkopf_____
                                   Matthew D. Schelkopf
                                   Joseph B. Kenney
                                   **SAUDER SCHELKOPF LLC**
                                   1109 Lancaster Avenue
                                   Berwyn, Pennsylvania 19312
                                   Telephone: (610) 200-0581

---

[11] Additional communications to Settlement Class Members are attached as Exhibits 1 and 2 to the proposed final approval order submitted herewith.

mds@sstriallawyers.com
jbk@sstriallawyers.com

By:     */s/ Matthew Mendelsohn*
Matthew Mendelsohn
**MAZIE SLATER KATZ**
 **& FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
mrm@mazieslater.com

By:     */s/ Adam Polk*
Adam Polk (*pro hac vice*)
Jordan Elias (*pro hac vice*)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (866) 981-4800
apolk@girardsharp.com

*Class Counsel*

Bruce D. Greenberg
**LITE DEPALMA GREENBERG, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

*Plaintiffs' Liaison Counsel*

Benjamin F. Johns
**SHUB LAW FIRM LLC**
**134 Kings Highway E, 2nd Floor,**
**Haddonfield, NJ 08033**
**Telephone: (856) 772-7200**
**bjohns@shublawyers.com**

*Chair of Plaintiffs' Executive Committee*

Todd Garber
**FINKELSTEIN, BLANKINSHIP,**
 **FREI-PEARSON & GARBER, LLP**
One North Broadway
Suite 900
White Plains, NY 10605
Telephone: (914) 298-3281
tgarber@fbfglaw.com

Daniel Herrera
**CAFFERTY CLOBES MERIWETHER**
 **& SPRENGEL LLP**
150 S. Wacker Drive, Suite 3000
Chicago, IL 60606
Telephone: (312) 782-4880
dherrera@caffertyclobes.com

Tina Wolfson
**AHDOOT & WOLFSON, P.C.**
1016 Palm Ave
West Hollywood, CA 90069
Telephone: (310) 474-9111
twolfson@ahdootwolfson.com

*Plaintiffs' Executive Committee*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT** was electronically filed on January 10, 2023 using the Court's NextGen system, thereby electronically serving it on all counsel of record.

*/s/ Matthew D. Schelkopf*
Matthew D. Schelkopf